IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SHARON WRIGHT AUSTIN, MICHAEL
MCDONALD, AND DANIEL A. SMITH,

      Plaintiffs,                    Civil Action No.:

v.

UNIVERSITY OF FLORIDA BOARD OF TRUSTEES,
the public body corporate acting for and behalf of the
University of Florida, W. KENT FUCHS, in his official
capacity as President of the University Florida, and
JOSEPH GLOVER, in his official capacity as Provost
of the University of Florida,

      Defendant.
_____/

## COMPLAINT

Plaintiffs Sharon Wright Austin, Michael McDonald, and Daniel A. Smith (collectively, "Plaintiffs"), by and through the undersigned attorneys, file this Complaint for injunctive and declaratory relief against Defendants University of Florida Board of Trustees, W. Kent Fuchs, in his official capacity as President of the University of Florida, and Joseph Glover, in his official capacity as Provost of the University of Florida (collectively, "Defendants").

## NATURE OF THE CASE

1. The University of Florida is a public research institution with a mission "to share the benefits of its research and knowledge for the public good." Contrary to that goal—and to foundational principles of academic freedom and free speech—it has sought to restrict Plaintiffs, three political science professors, from testifying on behalf of voting-rights groups in a lawsuit challenging Florida's Senate Bill 90 ("SB 90"). The University will continue to censor Plaintiffs it is not stopped.

2. The University of Florida sought to prevent Plaintiffs from testifying for one reason: Plaintiffs sought approval to testify in court against the voting restrictions embodied in SB 90 instead of supporting that law.

3. But Plaintiffs' job as public university professors and researchers is not to be mouthpieces for a particular administration's—or any administration's—point of view. It is to develop and share their knowledge with the people of Florida while upholding the University's values.

4. Nor did Plaintiffs surrender their constitutional rights when they became public employees. By discriminating against Plaintiffs based on the viewpoints they wish to express and by seeking to prevent them from

offering expert testimony on issues of overwhelming public importance, the University of Florida violated Plaintiffs' First Amendment rights.

5. Plaintiffs ask this Court to vindicate those rights by enjoining and declaring unlawful the University's Policy of stifling faculty speech against the State.

## PARTIES

6. Plaintiff Sharon Wright Austin is a Professor of Political Science at the University of Florida. Professor Austin has been a member of the University faculty since 2001. Her scholarship and research focuses on African American mayoral elections, African American and Caribbean American political relationships, rural African American political activism, and African American political behavior. Professor Austin has authored books on African American political participation and published numerous articles on related topics. In addition, she was until recently the Director of the University's African American Studies program.

7. Plaintiff Michael McDonald is a Professor of Political Science at the University. Professor McDonald has been a member of the University faculty since 2014. His research focuses on elections, including voter turnout and eligibility. He has consulted on redistricting measures and served as an expert witness in lawsuits concerning elections in states around the country.

Professor McDonald is also a co-principal investigator on the Public Mapping Project, which encourages public participation in redistricting.

8. Plaintiff Daniel A. Smith is a Professor of Political Science and Chair of the University's Political Science Department. Professor Smith has been a member of the University faculty since 2003. His research examines the effects of ballot measures, campaign financing, redistricting, and electoral laws on voting and political participation in the United States. Professor Smith has served as an expert witness in a number of lawsuits concerning voting rights, ballot measures, campaign finance laws, and redistricting. He has also testified to Congress and the state legislatures of Colorado and Florida on elections issues.

9. Plaintiffs frequently are asked to consult and testify in lawsuits concerning their areas of research and teaching. Many of these cases challenge state or federal legislation and seek emergent relief. Thus, Plaintiffs may be required to provide research or analysis on a highly expedited basis, sometimes without knowing whether the State is a party to the litigation and, if so, whether their testimony will be for or against the State's position in the litigation.

10. Defendant University of Florida Board of Trustees is the public body corporate of the University. It sets policy for the institution and serves as the institution's legal owner and governing board.

11. Defendant W. Kent Fuchs is the President of the University. As President, Defendant Fuchs is responsible for the general administration of all University activities. Defendant Fuchs is being sued only in his official capacity.

12. Defendant Joseph Glover is the Provost of the University. As Provost, Defendant Glover is the chief academic officer and the second highest-ranking officer of the University, acting for the President in his absence. Defendant Glover is responsible for: supervising the allocation of academic resources; improving instruction and coordinating instructional activities; developing and improving research activities; evaluating University academic activity; establishing the University's policy with respect to employment, promotion, and tenure of academic faculty; and implementing the University's Affirmative Action/Equal Opportunity Program. Defendant Glover is being sued only in his official capacity.

## **JURISDICTION AND VENUE**

13. Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress deprivation under color of state law their rights secured by the First Amendment of the United States Constitution.

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiffs' claim arises under the Constitution and laws of the United States.

15. This Court has personal jurisdiction over Defendants, who are sued in their official capacities as officers of the State of Florida or its political subdivisions.

16. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendants perform their official duties in this judicial district at the University's campus in Gainesville, Florida. Venue also is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to Plaintiffs' claim occurred in this judicial district.

17. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201–2202.

## FACTUAL BACKGROUND

18. On Thursday, May 6, 2021, Governor Ron DeSantis signed SB 90 into law. Among other things, SB 90 imposes obstacles on Florida voters' ability to cast ballots through in-person voting, mail-in voting, and the use of secure drop-boxes for early voting. It also places new restrictions on third-party voter-registration drives and prohibits certain organizations, including churches, from providing assistance to voters waiting in line to vote.

19. Voting-rights advocates quickly sued to enjoin SB 90, arguing that it disproportionately harms Black and Latino voters and poor voters. The lawsuits were consolidated before this Court under the caption *League of Women Voters of Florida, Inc., et al., v. Laurel M. Lee* ("*League of Women Voters*"), No. 4:21-cv-00186-MW-MAF (N.D. Fla.).

**Plaintiffs Agree to Serve as Expert Witnesses in Support of Voting-Rights Advocates' Challenge to SB 90.**

20. Attorneys for the plaintiffs in the *League of Women Voters* litigation asked Professors Austin, McDonald, and Smith to act as expert witnesses in support of their challenge to SB 90 and ultimately testify at trial, to which Plaintiffs readily agreed. Those attorneys asked Plaintiffs to testify on topics including the history of voting discrimination against minority groups, the use of mail balloting and in-person early voting in Florida, and the impact of vote-by-mail measures on minority groups.

7

21. Plaintiffs had undertaken similar work before. In particular, Professors McDonald and Smith previously served as expert witnesses in a number of lawsuits opposing voting regulations in states around the country. Some of those lawsuits challenged Florida legislation and named officers of the State of Florida as defendants.[1]

22. As is typical and expected in expert witness engagements, Professors McDonald and Smith received fair compensation for their time and expenses in preparing their expert testimony in those cases. Plaintiffs' engagement in the *League of Women Voters* litigation was no different in this respect.

23. The University did not object to Professor Smith and McDonald's prior work as expert witnesses. If anything, it commended them. For example, in Professor Smith's annual performance reviews, the University praised his research and advocacy on voting rights as "impactful and important for our colleagues, students, and the citizens of Florida." And it celebrated both his considerable scholarly writings as well as his role as an

---

[1] Professor Smith has served as an expert witness in a number of cases, including: *Gruver, et al. v. Barton, et al.*, No. 1:19-cv-00121-MW-GRJ (N.D. Fla. 2019); *Rivera v. Detzner*, No. 1:18-cv-00152 (N.D. Fla. 2018); *League of Women Voters of Florida, Inc. v. Detzner*, No. 4:18-cv-00251-MW-CAS (N.D. Fla. 2018); *Florida Democratic Party v. Scott*, No. 4:16-cv-00626 (N.D. Fla. 2016); *Arcia v. Detzner*, 1:12-cv-22282-WJZ (S.D. Fla. 2012); and *Romo v. Scott*, No. 2012-CA-000412 (Fla. Cir. Ct. 2012).

advocate on voting issues, calling his work "important both as a scholar and as a contribution to the people of Florida."

**The University Blocks Plaintiffs from Undertaking Outside Activities in Opposition to the State's Policies.**

24. The current version of the University's Conflicts of Commitment and Conflicts of Interest Policy ("the Policy"), which took effect on July 1, 2020, requires faculty members to file a request on the University's online conflicts system ("UFOLIO") each time they seek to participate in an outside activity. As applied by the University, the Policy provides the University discretion to deny the request on the ground that the proposed outside activity conflicts with the "interests" of the State.

25. Prior to the Policy's enactment, faculty members were required only to file a conflict-of-interest report once a year.

26. The Policy does not make any distinction between paid or unpaid outside activities. Rather, the Policy defines "outside activity" as "any *paid or unpaid* activity . . . which could create an actual or apparent Conflict of Commitment or Conflict of Interest." (Emphasis added.)  A "conflict," in turn, is defined as any "situation[s] which interfere[s] with—or reasonably appear[s] to interfere with— [the professors'] professional obligations to the University," regardless of whether the faculty member receives compensation for that activity.

9

27. In accordance with the Policy, Plaintiffs submitted requests through UFOLIO disclosing their engagement as expert witnesses in connection with the *League of Women Voters* litigation.

28. The University refused to approve each of Plaintiffs' applications, offering a series of shifting and inconsistent explanations that laid bare the University's real goal: to prevent Plaintiffs from testifying in support of a challenge to the State's policies.

29. On July 7, 2021 and again on October 11, 2021, the University sent Professor Smith a disapproval notice. In explaining the basis for its decision, the University made no attempt to hide that it was denying Professor Smith's application because he sought to testify on behalf of voting rights groups and not the State. It told him: "Outside activities that may pose a conflict of interest to the executive branch of the State of Florida create a conflict for the University of Florida."

30. On October 13, 2021, the University sent Professor McDonald a disapproval notice, which once again equated the interests of the University—a public research institution—with those of the State. It stated: "UF [w]ill deny its employees' requests to engage in outside activities when it determines the activities are adverse to its interests."

31. On October 15, 2021, the University sent Professor Austin a disapproval notice containing materially the same language and adding: "As UF is a state actor, litigation against the [S]tate is adverse to UF's interests."

32. On October 29, 2021, Plaintiffs' counsel sent a letter to Ryan Fuller, Associate Vice President and Deputy General Counsel for the University, which noted that the University's Policy violated Plaintiffs' constitutional rights and asked the University to reverse its disapproval decisions.

33. In response, the University adopted an all-new justification for its actions. In a statement posted on its website on October 30, 2021, the University suggested that the reason for the disapprovals was not only that Plaintiffs' testimony was expected to be "adverse to the [U]niversity's interests as a state of Florida institution" but also that Plaintiffs would be "paid" for their time and expenses.

34. On November 1, 2021, when Plaintiffs' counsel sent another letter to the University asking for clarity, the University retreated to yet a new position. In a letter replying to Plaintiffs' counsel, Fuller reiterated that Plaintiffs' testimony "involved activities that are adverse to the State of Florida." But, he asserted, "pursuant to the University's policy related to outside activities," Plaintiffs could testify as long as it was "in their personal

capacity[ies], without the use of any University resources and without compensation."

35. Apparently recognizing the inconsistencies in its shifting positions, in a November 1, 2021 letter from President Fuchs to the "campus community," the University announced it was "immediately appointing a task force to review the [U]niversity's conflict of interest policy and examine it for consistency and fidelity." As to Plaintiffs, President Fuchs' letter stated: "[I]f the professors wish to testify pro bono on their own time without using [U]niversity resources, they are free to do so."

36. But, as President Fuchs and Mr. Fuller surely knew, Plaintiffs' work as expert witnesses would be performed solely in their personal capacities, and it would not impinge on the time Plaintiffs are expected to devote to their work for the University or use University resources. As for the University's suggestion that its real problem with Plaintiffs' testimony was that they would be compensated for it, news reports would soon give lie to that, too.

**The University Restricts Other Faculty from Speaking Out Against the State's Policies.**

37. In the days following President Fuchs' announcement, reports surfaced that the University had denied several other faculty members' applications. Those applications had one thing in common with Plaintiffs':

they sought permission to support groups bringing litigation against the State.

38. Upon information and belief, on or about July 9, 2020, the University of Florida denied a request made by four faculty members at the Levin College of Law—Professors Kenneth Nunn, Mark Fenster, Teresa Jean Reid, and Sarah H. Wolking—to sign an *amicus curiae* brief in *Jones v. DeSantis*. That case challenged legislation mandating that Florida residents with felony convictions pay outstanding fines before they could be eligible to vote. The law professors were ultimately permitted to sign the brief only if they did not list their University affiliations.[2]

39. Upon information and belief, Professors Nunn, Fenster, Reid, and Wolking did not seek or receive compensation for signing the *amicus curiae* brief.

40. Upon information and belief, in or about August 2021, the University of Florida denied a request by Dr. Jeffrey L. Goldhagen, a pediatrician and a professor at the University of Florida College of

---

[2] *See* Brief for 93 Professors of Law as Amici Curiae Supporting Plaintiffs-Appellees, *Jones v. DeSantis*, 975 F.3d 1016 (11th Cir. 2020) (No. 20-12003), 2020 WL 4698621, at *1-6.

Medicine, to submit a sworn statement in litigation concerning legislation banning mask mandates in schools.[3]

41.     Upon information and belief, Dr. Goldhagen did not seek or receive compensation for his testimony.[4]

42.     Notably, the State has *not* prohibited testimony by professors at public universities that favor its viewpoint. Florida International University, like the University of Florida, has adopted a policy that limits faculties outside activities that pose a conflict of interest with the "university, the Board of Governors, and/or the State of Florida."  Upon information and belief, pursuant to that policy, Florida International University permitted Professor Dario Moreno to receive compensation for being an expert witness for the Republican National Committee and the National Republican Senatorial Committee as defendants in the very same litigation in which the University forbade Plaintiffs from doing the same for voting rights groups.

***

---

[3] *See* Michael Wines, *In Florida, a Firestorm Over Silenced University Professors Grows,* N.Y. TIMES (Nov. 4, 2021), https://www.nytimes.com/2021/11/04/us/florida-professors-lawsuit.html.

[4] *See* Lindsay Ellis & Emma Pettit, *'I'm Speechless': What Prompted the U. of Florida to Tell Professors Not to Testify?*, THE CHRONICLE OF HIGHER EDUCATION (Nov. 2, 2021), https://www.chronicle.com/article/im-speechless?cid=reg_wall_signup&bc_nonce=ohndloeylisxiij6r19nhh.

43. On November 5, 2021, the University reversed its denials of Plaintiffs' UFOLIO applications, apparently as a matter of discretion. The University's unconstitutional Policy remains in effect, however. Unless and until it is rescinded or declared unconstitutional to the extent it equates the University's "interest" with that of the State, the University's Policy will continue to impede Plaintiffs from serving as expert witnesses or otherwise lending their analysis or expertise to litigation challenging State policies, in violation of the First Amendment.

**FIRST CLAIM FOR RELIEF**
**FIRST AMENDMENT**
**U.S. Const. amends. I, XIV; 42 U.S.C. § 1983**
**(Against All Defendants)**

44. Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

45. The First Amendment declares that "Congress shall make no law . . . abridging the freedom of speech." The First Amendment applies to the States under the Fourteenth Amendment.

46. 42 U.S.C. § 1983 provides a cause of action, including for declaratory or injunctive relief, against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.

47. Defendants violated Plaintiffs' rights under the First Amendment by restricting Plaintiffs from testifying as expert witnesses or serving as expert consultants, including for fair compensation, on the basis of their viewpoint. Defendants also violated Plaintiffs' rights under the First Amendment by imposing a prior restraint on their speech, namely by requiring the University's permission to testify.

48. Discrimination and prior restraint on the basis of viewpoint or content are presumptively unconstitutional. Thus the University's restrictions must be struck down unless they are narrowly tailored to serve a compelling interest of the State.

49. The State has no compelling interest in silencing University faculty and preventing them from speaking on a topic of such significant public importance as elections. And Plaintiffs' interest in speaking freely on a matter of public concern far outweighs any interest that the State may have in censoring their testimony. "The notion that the State may silence the testimony of state employees simply because that testimony is contrary to the interests of the State in litigation or otherwise, is antithetical to the

protection extended by the First Amendment." *Hoover v. Morales*, 164 F.3d 221, 226 (5th Cir. 1998).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.  Preliminary and permanent injunctive relief preventing Defendants from enforcing any policy or practice that provides the University discretion to limit Plaintiffs' ability to undertake outside activities, on a paid or unpaid basis, on the ground that the proposed activity is not aligned with the "interests" of the State of Florida or any of its entities or instrumentalities;

2.  Declaratory relief declaring unlawful Defendants' policy or practice that provides the University discretion to limit Plaintiffs' ability to undertake outside activities, on a paid or unpaid basis, on the ground that the proposed activity is not aligned with the "interests" of the State of Florida or any of its entities or instrumentalities;

3.  Reasonable attorneys' fees and costs; and

4.  Such other and further relief as this Court may deem just and proper.

Dated: November 5, 2021

By: s/ Paul Donnelly

| | |
|---|---|
| David A. O'Neil<br>Debevoise & Plimpton LLP<br>801 Pennsylvania Avenue N.W.,<br>Suite 500<br>Washington, D.C. 20004<br>(202) 383-8000<br>daoneil @debevoise.com | Paul Donnelly<br>Florida Bar No. 813613<br>paul@donnellygross.com<br>LAURA GROSS<br>Florida Bar No. 858242<br>laura@donnellygross.com<br>Conor P. Flynn<br>Florida Bar No. 1010091<br>conor@donnellygross.com |
| Morgan A. Davis*<br>Jaime Freilich-Fried*<br>Samuel Rosh*<br>Soren Schwab*<br>Katharine Witteman*<br>Debevoise & Plimpton LLP<br>919 Third Avenue<br>New York, New York 10022<br>(212) 909-6000<br>mdavis@debevoise.com<br>jmfried@debevoise.com<br>sjrosh@debevoise.com<br>sschwab@debevoise.com<br>kwitteman@debevoise.com | Donnelly + Gross LLP<br>2421 NW 41st Street, Suite A-1<br>Gainesville, FL 32606<br>(352) 374-4001 |

*Application for admission
pro hac vice forthcoming

*Counsel for Plaintiffs Sharon Wright Austin, Michael McDonald, and
Daniel A. Smith*