# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

|  |  |
|---|---|
| SHARON WRIGHT AUSTIN, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No.: 1:21-cv-00184-MW-GRJ |
| UNIVERSITY OF FLORIDA BOARD OF TRUSTEES, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS' MOTION TO DISMISS
## AND MEMORANDUM OF LAW

Amy Meyers Hass
 *Vice President and*
 *General Counsel*
Fla. Bar No. 483346
Ryan Fuller
 *Associate Vice President and*
 *Deputy General Counsel*
Fla. Bar No. 635324
UNIVERSITY OF FLORIDA
OFFICE OF GENERAL COUNSEL
123 Tigert Hall, P.O. Box 113125
Gainesville, Florida 32611
(352) 392-1358
amhass@ufl.edu
ryanf@ufl.edu

H. Christopher Bartolomucci
D.C. Bar No. 453423
Brian J. Field*
D.C. Bar No. 985577
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com
bfield@schaerr-jaffe.com

*Motion for admission *pro hac vice*
forthcoming

*Counsel for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

MOTION TO DISMISS ............................................................................1

MEMORANDUM OF LAW ......................................................................1

INTRODUCTION ....................................................................................1

BACKGROUND ......................................................................................3

    A.    UF's Collective Bargaining Agreement With the Faculty Union and the CBA's "Outside Activity and Conflict of Interest" Policy ......3

    B.    UF's Regulation 1.011 and Policy on Conflicts ...................................5

    C.    Three UF Professors Seek Approval to Work as Paid Experts in Litigation Against Their Employer, the State of Florida. ....................8

    D.    Reconsidering Its Initial Decision, UF Approves the Professors' Requests and Forms a Task Force to Review Its Conflicts Policy. ......9

    E.    After UF Approves Their Requests, Plaintiffs File This Lawsuit. .....11

    F.    UF Revises Its Conflicts Policy. ..........................................................12

RULE 12(b)(1) AND RULE 12(b)(6) STANDARDS ...............................14

ARGUMENT ...........................................................................................15

    I.    This Case Is Moot.............................................................................. 15

        A.    The Past Controversies Involving Plaintiffs and UF Are Over.......................................................................................15

        B.    The Mootness Exceptions for "Voluntary Cessation" and Disputes "Capable of Repetition, Yet Evading Review" Do Not Apply.............................................................18

    II.    Plaintiffs Lack Standing to Sue UF for Injunctive or Declaratory Relief. ............................................................................ 20

    III.    Any Challenge to UF's Revised Conflicts Policy Is Not Ripe. ......... 23

    IV.    The Claims of the Original Plaintiffs Are Barred by Their Failure to File Grievances Under the CBA. ....................................... 26

    V.    The Original Plaintiffs Have Waived Their First Amendment Claims................................................................................................ 31

CONCLUSION ........................................................................................33

## TABLE OF AUTHORITIES

**Cases**

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) ...................................................33

*31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003)...................................23

*Abbott v. Pastides*, 900 F.3d 160 (4th Cir. 2018) .....................................................20

*Al Najjar v. Ashcroft*, 273 F.3d 1330 (11th Cir. 2001)............................................19

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)........................................................15

*Apalachicola Bay & River Keeper, Inc. v. Gulf Power Co.*,
    No. 4:14-cv-268-MW/CAS, 2014 WL 11512203 (N.D. Fla. Sept. 26, 2014).....15

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)....................................................................15

*Ashwander v. TVA,* 297 U.S. 288 (1936)..................................................................25

*Ass'n for Children for Enforcement of Support, Inc. v. Conger*,
    899 F.2d 1164 (11th Cir. 1990).......................................................................... 24, 25

*Baker v. Farmers Elec. Co-op., Inc.*, 34 F.3d 274 (5th Cir. 1994)..........................29

*Barnard v. Lackawana Cty.*, 194 F. Supp. 3d 337 (M.D. Pa. 2016),
    *aff'd*, 696 F. App'x 59 (3d Cir. 2017) ............................................................. 31, 32

*Bay v. United Services Auto. Ass'n*, 305 So. 3d 294 (Fla. 4th DCA 2020)............32

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007).....................................................15

*Beta Upsilon Chi Upsilon Chapter at Univ. of Fla. v. Machen*,
    586 F.3d 908 (11th Cir. 2009)................................................................. 16, 17, 18

*Bolden v. Se. Pa. Transp. Auth.*, 953 F.2d 807 (3d Cir. 1991)...............................32

*Burke v. Barnes*, 479 U.S. 361 (1987).....................................................................15

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*,
    572 F.3d 1271 (11th Cir. 2009)...........................................................................14

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)...................................................23

*City of Miami v. Fraternal Order of Police Lodge No. 20*,
    378 So. 2d 20 (Fla. 3d DCA 1979)......................................................................29

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)........................................ 21, 26

*Dixon v. Pub. Health Trust of Dade Cty.*,
    567 F. App'x 822 (11th Cir. 2014)................................................................. 28, 29

*Dow Jones & Co. v. Kaye*, 256 F.3d 1251 (11th Cir. 2001)....................................15

## TABLE OF AUTHORITIES (CONT'D)

**Cases (cont'd)**

*Finstad v. State of Fla., Dep't of Bus. & Prof'l Reg.*,
  295 F. App'x 352 (11th Cir. 2008)........................................................16

*Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250 (N.D. Fla. 2016)...............20

*Green v. United Parcel Serv., Inc.*, 847 F. App'x 207 (5th Cir. 2021) ..................33

*Harmon v. City of Kansas City*, 197 F.3d 321 (8th Cir. 1999)................................20

*Harrison v. United Mine Workers of Am. 1974 Benefit Plan & Trust*,
  941 F.2d 1190 (11th Cir. 1991)..........................................................16

*Johnson v. Sikes*, 730 F.2d 644 (11th Cir. 1984).....................................................25

*Leonard v. Clark*, 12 F.3d 885 (9th Cir. 1994)........................................................32

*Libertarian Party v. Dardenne*, 595 F.3d 215 (5th Cir. 2010)...............................19

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ........................................................ 20, 23

*Parker v. Governor of Pa.*, No. 20-3518, 2021 WL 5492803
  (3d Cir. Nov. 23, 2021) ................................................................... 18, 19

*Renne v. Geary*, 501 U.S. 312 (1991)......................................................................19

*Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019) ..................................................21

*Summers v. Teichert & Son, Inc.*, 127 F.3d 1150 (9th Cir. 1997) ..........................33

*Tracy v. Fla. Atlantic Univ. Bd. of Trustees*,
  980 F.3d 799 (11th Cir. 2020)................................................... 3, 27, 29

*Troiano v. Supervisor of Elections in Palm Beach Cty.*,
  382 F.3d 1276 (11th Cir. 2004)..........................................................18

*Tsao v. Captiva MVP Rest. Partners, LLC*,
  986 F.3d 1332 (11th Cir. 2021)..........................................................21

*United Fire & Cas. Co. v. Progressive Express Ins. Co.*,
  No. 6:19-cv-1049-Orl-41EJK, 2021 WL 4458319
  (M.D. Fla. Mar. 31, 2021) .................................................................32

*United States v. Pielago*, 135 F.3d 703 (11th Cir. 1998)........................................30

*Warner Cable Commc'ns, Inc. v. City of Niceville*,
  911 F.2d 634 (11th Cir. 1990)............................................................24

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) ..............................................15

*Youngblood-West v. AFLAC, Inc.*, 796 F. App'x 985 (11th Cir. 2019) .................32

# TABLE OF AUTHORITIES (CONT'D)

**Statutes**

Fla. Stat. § 447.401 ...................................................................27

**Rules**

Fed. R. Civ. P. 12(b)(1)........................................................1, 14

Fed. R. Civ. P. 12(b)(6)................................................ 1, 14, 15, 29

**Other Authorities**

BLACK'S LAW DICTIONARY (6th ed. 1990) ...............................28

13A CHARLES ALAN WRIGHT ET AL.,
   FEDERAL PRACTICE & PROCEDURE § 3532.1 (2d ed. 1984) .................................24

## MOTION TO DISMISS

Pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants—the University of Florida Board of Trustees, President Kent Fuchs, Provost Joseph Glover, and Dean Laura Rosenbury—hereby move to dismiss Plaintiffs' amended complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## MEMORANDUM OF LAW

### INTRODUCTION

Dismissal of Plaintiffs' amended complaint is warranted for three primary reasons:  First, this case is moot.  The public controversy involving the three UF professors who were denied permission to act as paid expert witnesses in litigation against the State of Florida is now over.  Indeed, that controversy was over even before this case began.  UF *approved* the professors' outside activity requests *before* they filed this lawsuit.  They simply refuse to take yes for an answer.  Also before Plaintiffs filed suit, UF formed a Task Force to review its conflicts policy.[1]  In late November, UF President Kent Fuchs accepted the Task Force's recommendations— thereby revising UF's conflicts policy and making this moot case even mooter.  Under the newly revised policy, UF will apply a "strong presumption" that a faculty

---

[1] This memorandum uses the term "conflicts policy" to refer to the conflict of interest policy stated in UF's rules and regulations and in the CBA between the UF Board of Trustees and the United Faculty of Florida, UF.

member's request to testify as an expert witness should be approved, even if the testimony is adverse to the State and even if the faculty member is compensated.

Second, Plaintiffs lack standing to seek injunctive or declaratory relief with respect to UF's conflicts policy. They have no standing because the policy is not injuring them. UF has not denied them permission to engage in any outside activities that they wish to perform at the present time.

Third, any challenge to UF's current conflicts policy (*i.e.*, the revised policy) is not ripe for court review. Plaintiffs have not submitted, and UF has not denied, any requests for approval of outside activities under the revised policy.

The claims of the other three professors who joined the amended complaint as plaintiffs also must be dismissed. As to two of those professors, UF *approved* their outside activity requests more than a year ago; there is no live controversy as to them. As to the last professor, Dr. Goldhagen, the amended complaint alleges that, after UF denied his request months ago, he lost his chance to testify as an expert. If so, no relief may be granted to him because the opportunity has come and gone. Dr. Goldhagen himself recently stated in a videotaped interview with a television news station that he participated in the litigation despite UF's disapproval. Either way, his claim here is moot.

For these reasons and others, as explained below, the Court should dismiss this case for lack of jurisdiction and for failure to state a claim for relief.

2

## BACKGROUND

**A.     UF's Collective Bargaining Agreement With the Faculty Union and the CBA's "Outside Activity and Conflict of Interest" Policy**

Certain UF faculty members, including original Plaintiffs Austin, McDonald, and Smith, belong to a union, the United Faculty of Florida, UF Chapter (or "UFF-UF" for short).  The current Collective Bargaining Agreement ("CBA") between the UF Board of Trustees and UFF-UF was executed on July 30, 2021, and runs through June 30, 2024.  *See* Ex. 1.[2]  The CBA addresses "Academic Freedom and Responsibility."  Art. 10.  It also includes a policy on "Outside Activity and Conflict of Interest."  Art. 26.  Another article of the CBA governs "Grievance Procedure and Arbitration."  Art. 28.  Like the rest of the CBA, Articles 10, 26, and 28 were negotiated with, and agreed to by, UFF-UF.

UF, like other public universities,[3] permits faculty members to engage in outside activity, including paying work, so long as it does not constitute a conflict of interest or conflict of commitment.  Under Article 26 of the CBA, the UF Board of Trustees and the union "agree[d]" that "[a] faculty member's primary professional obligations are to maintain the highest ethical and professional standards and, as an

---

[2] All exhibits accompany the declaration of UF Deputy General Counsel Ryan Fuller.

[3] *See Tracy v. Fla. Atlantic Univ. Bd. of Trustees*, 980 F.3d 799 (11th Cir. 2020) (rejecting professor's First Amendment and vagueness challenges to the "Conflict of Interest/Outside Activities" policy in FAU's collective bargaining agreement).

agent of the University, act in its best interests." Art. 26.1(a). Thus, faculty members

"may engage in approved Outside Activity, including employment" so long as the

outside activity is lawful and does not "conflict with their University duties and

responsibilities." *Id*.

The CBA defines the term "Conflict of Interest" as follows:

> "Conflict of Interest" shall mean a Private Interest, or
> relationship to a relative, that would reasonably appear to
> (a) adversely influence a faculty member's actions,
> judgement or decisions, required to carry out Inside
> Activities or (b) create an unlawful conflict with the
> faculty member's position as a public employee, as
> decreed by state or federal law, which includes a situation
> in which regard for a private interest leads to disregard of
> a public duty or interest.

Art. 26.2(g).

Faculty members seeking to perform outside activity must report the proposed

activity and obtain approval. "Faculty must disclose Reportable Outside Activities

through the UFOLIO system. Faculty must receive approval through the UFOLIO

system prior to commencing such activities." Art. 26.4(a); *see also* Appendix G to

CBA, "UFOLIO Electronic System for Disclosure and Review of Outside Activities

and Interests." Expert witness activities are reportable: "An employee must report

if the employee serves or seeks approval to serve as an expert witness and/or engage

in consulting in the area of their Institutional Expertise or Inside Activities in a legal

matter like a lawsuit or potential lawsuit." Art. 26.2(k)(9).

4

The University of Florida is committed to robust academic freedom for its faculty members.  Article 26 provides that it may not be used to violate a faculty member's right of academic freedom, as that right is defined in the CBA.  "This Article shall not be used to deny or retaliate against the legitimate exercise of rights protected by this Agreement, including but not limited to the rights protected by ARTICLE 10, ACADEMIC FREEDOM AND RESPONSIBILITY."  Art. 26.1(c).

Faculty members may grieve UF's denial of permission to engage in outside activity.  Article 26.9—captioned "Grievance Procedure"—states that "[a] faculty member may grieve the University's … denial of an Outside Activity … citing Impermissible Conflict."  Art. 26.9(a).  Thus, a faculty member who believes that the denial of an outside activity request violates her academic freedom may file a grievance along such lines.

### B.     UF's Regulation 1.011 and Policy on Conflicts

UF has promulgated Regulation 1.011, captioned "Disclosure and Regulation of Outside Activities and Financial Interests."  Ex. 2, https://tinyurl.com/3zrenpra.  Regulation 1.011(1) provides:

> The University of Florida encourages its Faculty and Staff to engage in activities supporting their professional growth, creating new knowledge and ideas, and furthering the University's mission of excellence in education, research, and service.  University employees, however, have an obligation to commit their primary professional time and intellectual energy to the University and maintain the highest ethical and professional standards.  Further,

5

personal gain from Outside Activities or Financial Interests, as defined in the University of Florida Policy on Conflicts of Commitment and Interest, must not influence—or create the appearance of influencing—the decisions or actions of the University.

Regulation 1.011(2) states that "all Faculty and Staff shall adhere to the University of Florida Policy on Conflicts of Commitment and Interest (the 'Policy on Conflicts')."

The Policy on Conflicts, Ex. 3, https://tinyurl.com/3yh9kff7, states:

1.  Policy Statement and Purpose

The University of Florida encourages its Employees to engage in activities supporting their professional growth, creating new knowledge and ideas, and furthering the University's mission of excellence in education, research, and service.  University Employees' primary professional obligation, however, is to act in the best interest of the University and to maintain the highest ethical and professional standards.  A University Employee's Outside Activities or interests must not conflict, or appear to conflict, with their professional obligations to the University of Florida.  Accordingly, this Policy establishes standards and requirements to protect the University's financial wellbeing, reputation, and legal obligations and provides a system for identifying, reporting, and managing real or apparent conflicts.

The Policy on Conflicts offers these definitions of "Conflict of Interest" and "Outside Activity":

*Conflict of Interest:* occurs when a University Employee's financial, professional, commercial or personal interests or activities outside of the University affects, or appears to

6

affect, their professional judgement or obligations to the University.

*Outside Activity:* any paid or unpaid activity undertaken by an Employee outside of the University which could create an actual or apparent Conflict of Commitment or Conflict of Interest.  Outside Activities may include consulting, participating in civic or charitable organizations, working as a technical or professional advisor or practitioner, or holding a parttime job with another employer.

Section 4(C) of the Policy—captioned "Conflict of Interest"—provides:

Employees must avoid situations which interfere with—or reasonably appear to interfere with—their professional obligations to the University.  Such situations might create an appearance of impropriety and, therefore, must be disclosed. As discussed below, Employees will use the UFOLIO system to disclose Outside Activities in which they wish to engage.  When the University determines a Conflict of Interest may exist with an Employee, the University may, in its sole discretion, prohibit the individual from engaging in the activity presenting a potential conflict; take actions to limit the individual's activity; or implement other measures the University deems reasonably necessary to eliminate the potential conflict.

Section 5(B) lists "potential Conflicts of Interest and Outside Activities [that] must be disclosed," including: "9. Expert Witness/Legal Consulting: You serve or you are seeking approval to serve as an expert witness and/or engage in consulting in a legal matter like a lawsuit or a potential lawsuit."

Finally, Section 6 states that "[f]or activities and interests disclosed through UFOLIO," UF officials "will determine whether a disclosed activity, interest or

7

circumstance presents a Conflict of Interest."

Faculty members who do not belong to UFF-UF and are not subject to the CBA are covered by Regulation 1.011 and the Policy on Conflicts. *See* Fuller Decl. ¶ 7.

### C. Three UF Professors Seek Approval to Work as Paid Experts in Litigation Against Their Employer, the State of Florida.

The original Plaintiffs here—faculty members Sharon Wright Austin, Michael McDonald, and Daniel A. Smith—were asked to act as experts in support of the plaintiffs in a voting rights case challenging Senate Bill 90. UF initially denied their requests. *See* Am. Compl. ¶¶ 52–67 (Doc. 19). By late October 2021, UF's decision started to receive public attention and criticism from some quarters. *Id*. ¶ 72.

By email dated October 26 addressed to the UF Office of General Counsel, Paul Ortiz, the President of UFF-UF, protested the denial of the faculty members' requests. Ortiz wrote: "The union believes that this is a violation of several articles of our 2021-2024 Collective Bargaining Agreement including Article 10 as well as Article 26." Ex. 4. Ortiz indicated that the matter could be grieved. "The only reason we are not filing a grievance at this point," Ortiz wrote, is that "the impacted faculty have chosen to pursue this violation of their freedoms in federal court." *Id*.

On October 30, UF addressed the controversy. UF posted a statement that affirmed its support for "free speech and our faculty's academic freedom" and explained that "the university denied requests of these full-time employees to

undertake outside paid work that is adverse to the university's interests as a state of Florida institution."  Ex. 5.

**D.      Reconsidering Its Initial Decision, UF Approves the Professors' Requests and Forms a Task Force to Review Its Conflicts Policy.**

As November came the controversy continued.  On November 1, President Fuchs and Provost Glover issued another statement.  *See* Ex. 6.  Their statement first reiterated that "the University of Florida stands firmly behind its commitment to uphold our most sacred right as Americans—the right to free speech—and to faculty members' right to academic freedom.  Nothing is more fundamental to our existence as an institution of higher learning than these two bedrock principles."  *Id*.

The President and Provost also announced the creation of a "task force to review the university's conflict of interest policy and examine it for consistency and fidelity."  *Id*.  The statement noted that "it is critical to ensure the policy advances the university's interests while protecting academic freedom."  *Id*.

Finally, the Fuchs/Glover statement announced that UF had changed its decision and would allow the professors to act as unpaid expert witnesses.  "[I]f the professors wish to testify pro bono on their own time without using university resources, they are free to do so."  *Id*.

On November 5, President Fuchs issued another statement, Ex. 7, which he sent by email to the UF campus community, Ex. 8.  He confirmed the formation of "a task force that will review UF's practices regarding requests for approval of

outside activities involving potential conflicts of interest and conflicts of commitment." Ex. 7. He explained that the seven-member Task Force would recommend "how UF should respond when employees request approval to serve as expert witnesses in litigation in which their employer, the state of Florida, is a party." *Id*. Appointed to the Task Force were: Joe Glover, Provost and Chief Academic Officer; Katie Vogel Anderson, Clinical Associate Professor at the College of Pharmacy; Hub Brown, Dean of the College of Journalism and Communications; Clay Calvert, Professor of Law and Professor of Journalism and Communications; Terra DuBois, Chief Compliance, Ethics & Privacy Officer; John Kraft, Professor and Susan Cameron Chair of International Business at the Warrington College of Business; and Laura Rosenbury, Dean of the Levin College of Law. *Id*.

In his November 5 statement, President Fuchs also ordered the approval of the professors' requests. He directed "UF's Conflicts of Interest Office to reverse the decisions on recent requests by UF employees to serve as expert witnesses in litigation in which the state of Florida is a party and to approve the requests regardless of personal compensation." *Id*.

Although President Fuchs' new decision did not satisfy Plaintiffs or their lawyers, it won plaudits elsewhere. The Foundation for Individual Rights in Education ("FIRE"), which had criticized the initial decision, told UF that "FIRE is very pleased with UF's decision to allow the professors to serve as expert witnesses

regardless of personal compensation." Ex. 9.

E.    **After UF Approves Their Requests, Plaintiffs File This Lawsuit.**

Despite UF's approval of their requests, original Plaintiffs Austin, McDonald, and Smith filed the instant lawsuit on November 5.  Notably, they filed suit *after* President Fuchs issued his public statement earlier that day.  The statement was issued soon after 12:00 p.m. EDT.  *See* Ex. 8.  Per PACER, the complaint was filed almost five hours later, just before 5:00 p.m. EDT.  The original complaint of November 5 referenced President Fuchs' decision approving Plaintiffs' requests earlier that day.  *See* Compl. ¶ 43 (Doc. 1).

On November 15, Plaintiffs filed an amended complaint that added three more Plaintiffs—UF faculty members Kenneth B. Nunn, Teresa J. Reid, and Jeffrey Goldhagen.  *See* Am. Compl. (Doc. 19).  The new complaint alleges the following concerning the new Plaintiffs:

In July 2020, Professors Nunn and Reid received permission from UF to participate as *amici* in support of a lawsuit challenging Senate Bill 7066.  Nunn's request was "unconditionally approved."  Reid received approval on the condition that she participate in her personal capacity.  As filed, the *amici* brief listed Nunn and Reid (and two other UF professors) without their institutional affiliations.  *See* Am. Compl. ¶¶ 28–40.

In August 2021, an attorney asked Dr. Goldhagen to serve as an expert witness

for the plaintiffs in mask mandate litigation against the State.  Goldhagen agreed to

do so *pro bono*, but was denied permission.  He encouraged the attorney to subpoena

his testimony (and thereby circumvent UF's decision), but the attorney did not do

so.  *See* Am. Compl. ¶¶ 42–50.

According to a published report, however, Dr. Goldhagen participated in the

litigation despite UF's decision.  "Our team had the opportunity to speak with Dr.

Jeffrey Goldhagen, he is a professor at UF college in medicine … He says he was

denied the chance to participate in court pro-bono three times. … Goldhagen said he

decided to work with the lawyers on the cases anyways."  Ex. 10, Giselle Thomas,

*UF professor says he was denied three requests for him to participate in court*, CBS4

NEWS (Nov. 3, 2021), https://tinyurl.com/2p2jejna.  In his videotaped interview, Dr.

Goldhagen stated that he disregarded UF's decision because "[t]he decision to not

allow me to participate was not one that I personally or professionally could sustain."

*Id*.; *see also* video at 1:23–1:32.

F.     **UF Revises Its Conflicts Policy.**

In late November, the Task Force delivered its report and recommendations

to President Fuchs.  *See* Ex. 11, Task Force on Outside Activities: Final Report (Nov.

22, 2021), https://tinyurl.com/yu3ht75b.  The Task Force recommended that UF

revise its conflicts policy to:

- Publicly affirm the academic freedom of faculty when performing their duties as teachers and scholars;

- Publicly affirm the free speech rights of faculty and staff to comment on matters of public concern;

- Clarify that such comments, including to the media, are not reportable as outside activities when made by faculty and staff in their capacities as individual citizens and not on behalf of another person or entity;

- Emphasize that comments on matters of public concern become reportable outside activities, subject to university review for potential conflicts of interest or conflicts of commitment, as defined in UF policy and the CBA between the UF Board of Trustees and the UFF-UF, when faculty and staff seek to testify as expert witnesses on behalf of a party in litigation;

- Establish a strong presumption that the university will approve faculty or staff requests to testify as expert witnesses, in their capacities as private citizens, in all litigation in which the State of Florida is a party, regardless of whether the faculty or staff member is compensated for such testimony, including in cases challenging the constitutionality, legality, or application of a Florida law; and

- Impose a heavy burden on the university to overcome the strong presumption set forth above, such that requests to serve as expert witnesses

in litigation in which the State of Florida is a party would be denied only when clear and convincing evidence establishes that such testimony would conflict with an important and particularized interest of the university, which the university must set forth in writing.

*See* Task Force Report 2–3.

On November 23, President Fuchs accepted the recommendations of the Task Force. In a statement, UF indicated that "UF President Kent Fuchs approved the recommendations of a presidential task force appointed to review UF's conflicts of interest policy and is asking the appropriate campus offices to proceed with implementation." Ex. 12, *UF affirms no external influence in faculty expert testimony decisions: President also accepts recommendations from conflicts of interest task force*, UF NEWS (Nov. 23, 2021), https://tinyurl.com/269fwstn.

## RULE 12(b)(1) AND RULE 12(b)(6) STANDARDS

"Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). Where, as here, "a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence" such as declarations and relevant documents. *Id*. In a factual attack on jurisdiction, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial

14

court from evaluating for itself the merits of jurisdictional claims." *Apalachicola Bay & River Keeper, Inc. v. Gulf Power Co.*, No. 4:14-cv-268-MW/CAS, 2014 WL 11512203, at *1 (N.D. Fla. Sept. 26, 2014) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

A complaint should be dismissed under Rule 12(b)(6) if it lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A plaintiff's allegations must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## ARGUMENT

### I.  This Case Is Moot.

### A.  The Past Controversies Involving Plaintiffs and UF Are Over.

"Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case." *Burke v. Barnes*, 479 U.S. 361, 363 (1987). There is no live controversy here. "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit," federal courts may not entertain a moot suit. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).[4]

---

[4] Mootness is, of course, assessed as things now stand, not as they were pre-suit. *See Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001) ("When we consider our jurisdiction for mootness, we look at the events at the present time …").

After initially denying the original Plaintiffs' outside work requests, UF later approved the requests of Professors Austin, McDonald, and Smith to perform paid expert witness work. Therefore, the controversy between them and UF is now moot. *See Beta Upsilon Chi Upsilon Chapter at Univ. of Fla. v. Machen*, 586 F.3d 908 (11th Cir. 2009) (First Amendment controversy over UF's denial of recognition to student group became moot when UF recognized the group and amended its policy); *Finstad v. State of Fla., Dep't of Bus. & Prof'l Reg.*, 295 F. App'x 352 (11th Cir. 2008) (lawsuit moot where Board of Surveyors reversed its own decision); *Harrison v. United Mine Workers of Am. 1974 Benefit Plan & Trust*, 941 F.2d 1190, 1193 (11th Cir. 1991) ("As to those appellants who have submitted applications, the case is moot. The Plan has approved all of the applications submitted by Black Diamond retirees ... There is no case or controversy between these appellants and the Plan."). Here, "the controversy at issue has ended." *Beta Upsilon Chi*, 586 F.3d at 910. UF's approval of the original Plaintiffs' requests mooted the controversy even before they filed suit.

The past disputes that involved the three Plaintiffs who joined the amended complaint also are over. UF approved Nunn's and Reid's participation as *amici*. Indeed, UF did so more than a year ago. Although UF denied Goldhagen's request to testify as an expert witness in litigation, that months-old dispute is now moot because, according to the amended complaint, the opportunity came and went. *See*

16

Am. Compl. ¶ 50 ("the case moved too quickly, and the lawyer [who approached Goldhagen] instead sought other expert witnesses"). Or did it? According to a different account he himself recently gave to a news organization in a videotaped interview, Goldhagen disregarded UF's decision and participated in the litigation "anyways." Ex. 10.

The past controversies involving Plaintiffs have been made even mooter than moot by UF's revised conflicts policy. Under the revised policy, UF will apply a "strong presumption" that a faculty member may testify as an expert witness in litigation to which the State of Florida is a party, no matter what the faculty member's testimony is or whether the faculty member is compensated. *See* Task Force Report 2. The revised policy imposes a "heavy burden on the university to overcome the strong presumption" such that a request to testify in litigation as an expert witness may be denied only when "clear and convincing evidence" establishes that such testimony would "conflict with an important and particularized interest of the university, which the university must set forth and explain in writing." *Id*. at 2–3. UF will apply the same strong presumption, heavy burden, and clear-and-convincing-evidence standard to a faculty member's request to participate in litigation as an *amicus curiae*. *See* Fuller Decl. ¶ 17.

Accordingly, at this point in time, as to all six Plaintiffs, "no controversy exists and this [case] is merely academic." *Beta Upsilon Chi*, 586 F.3d at 916. This Court

"lack[s] the power to retain jurisdiction over a moot controversy for the purpose of rendering an advisory opinion." *Id*. at 918.

**B.    The Mootness Exceptions for "Voluntary Cessation" and Disputes "Capable of Repetition, Yet Evading Review" Do Not Apply.**

The "voluntary cessation" exception to the mootness doctrine does not apply here for two reasons. First, UF is a state entity. A private defendant who halts his challenged conduct may return to his old ways. But, as the Eleventh Circuit explained in a case involving UF, when "the defendant is not a private citizen but a government actor" courts apply a "rebuttable presumption that the objectionable behavior will *not* recur." *Beta Upsilon Chi*, 586 F.3d at 916 (quoting *Troiano v. Supervisor of Elections in Palm Beach Cty.*, 382 F.3d 1276, 1283 (11th Cir. 2004) (emphasis in original)). In *Beta Upsilon Chi*, the Eleventh Circuit held that, because UF had recognized the student group seeking recognition and had changed its recognition policy, plaintiff "BYX cannot overcome the presumption that the 'objectionable behavior will *not* recur.'" *Id*. at 917. The same line of reasoning applies to the materially similar facts here. Second, this case did not become moot "as a response to litigation." *Parker v. Governor of Pa*., No. 20-3518, 2021 WL 5492803, at *4 (3d Cir. Nov. 23, 2021). UF reversed its decision on the original Plaintiffs' requests *before* the first complaint was filed in this case.

The exception for controversies "capable of repetition, yet evading review" is also inapplicable. For starters, "the mootness exception for disputes capable of

repetition yet evading review ... will not revive a dispute which became moot before the action commenced." *Renne v. Geary,* 501 U.S. 312, 320 (1991).  The original Plaintiffs commenced this action *after* President Fuchs mooted the controversy by approving their outside activity requests.

Even if the two-part "capable of repetition, yet evading review" test applied here, the exception would not apply.  This "narrow exception" applies "only in the exceptional circumstance in which the same controversy will recur and there will be inadequate time to litigate it prior to its cessation." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1340 (11th Cir. 2001).  "There are two prongs to the 'capable of repetition, yet evading review' exception, and [the plaintiffs] bear the burden of proving both prongs." *Libertarian Party v. Dardenne*, 595 F.3d 215, 216–17 (5th Cir. 2010); *accord Parker*, *supra*, at \*4.  As to the "capable of repetition" prong, Plaintiffs have not proved the same controversy (*i.e.*, UF's refusal to allow them to participate as experts or *amici* in litigation against the State) "will recur." *Al Najjar*, 273 F.3d at 1340.  Under UF's revised policy, there is a strong presumption that faculty members may testify as paid expert witnesses against the State, and a heavy burden is imposed on UF such that the strong presumption may be overcome only by clear and convincing evidence of a conflict with an important and particularized university interest. *See* Task Force Report 2–3.

Nor have Plaintiffs satisfied the "evading review" prong.  They have not

shown that the time period between a denial of a request to participate in litigation and the closing of the window of opportunity to participate is too short to obtain effective court relief.  The judges of the U.S. District Court for the Northern District of Florida are nimble when it comes to TRO and PI motions.  *See*, *e.g.*, *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250 (N.D. Fla. 2016) (granting TRO one day after motion was filed and one day before injury-causing deadline; setting PI hearing for two days later).

## II.    Plaintiffs Lack Standing to Sue UF for Injunctive or Declaratory Relief.

With the controversies between them and UF over, Plaintiffs lack standing to bring this suit seeking injunctive and declaratory relief as to UF's conflicts policy. The suit, therefore, should be dismissed.

The fact that UF *in the past* denied a request to engage in outside activity (which denial was temporary in the case of the three original Plaintiffs) does not give a requestor standing to seek injunctive relief.  It is well established that "a plaintiff seeking prospective injunctive relief may not rely on prior harm to establish Article III standing." *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018) (quotation marks omitted).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *see also Harmon v. City of Kansas City*, 197 F.3d 321, 327 (8th Cir. 1999) ("The mere fact

that injurious activity took place in the past does nothing to convey standing to seek injunctive relief against future constitutional violations."). Here, Plaintiffs allege that UF, in the past, unlawfully denied some of their outside work requests. Without more, that allegation does not give them standing to seek an injunction.[5]

Because past harm does not suffice for injunctive relief, Plaintiffs must show that they themselves will almost certainly suffer the same injury again in the very near future. The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up; emphases in original). *Clapper* disapproved of a more lax Second Circuit standard—the "objectively reasonable likelihood" standard—as "inconsistent with our requirement that threatened injury must be certainly impending to constitute injury in fact." *Id.* at 410 (quotation marks omitted). The Eleventh Circuit has applied the *Clapper* standard in recent cases. *See, e.g.*, *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1338–39 (11th Cir. 2021).

---

[5] Plaintiffs do not acquire standing by contending that an injunction is needed as an insurance policy just to be sure that UF will not improperly deny their future requests. "Standing also does not follow from the conclusion that the injunctive relief sought by a plaintiff would prevent the plaintiff from suffering the same injury in the future, which is always true when a plaintiff seeks an injunction prohibiting a defendant from repeating an action that injured the plaintiff in the past." *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019).

Plaintiffs have not shown that future injury is certainly impending.  They do not have any pending outside activity requests, much less ones proposing involvement in litigation against the State of Florida.  It cannot be said when, or if, they will submit any such requests.  Furthermore, UF *granted* the original Plaintiffs' requests to serve as expert witnesses against the State.  President Fuchs also formed a Task Force to review UF's conflicts policy, and he accepted the Task Force's recommendations.  *See* Exs. 11 & 12.  Under UF's revised policy, there is a strong presumption in favor of allowing faculty members to testify as expert witnesses, even if their testimony is against the State and is compensated.  *See* Task Force Report 2.  Only clear and convincing evidence of a conflict with an important and particularized university interest may overcome the heavy burden imposed by that strong presumption.  *See id.* at 2–3.  Given these developments, any claim of future injury here is speculative at best.

There is another prerequisite to injunctive relief that Plaintiffs have not met. Plaintiffs, as injunction seekers, must show that their future injury is not only likely, but likely to occur in the *immediate future*.  It is not enough to allege or show that a future injury is likely to occur someday.  Both the Eleventh Circuit and the Supreme Court have imposed this requirement in cases such as this one.  "When a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury."  *31 Foster*

*Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (plaintiff seeking injunction to avoid repetition of past harm must show "a real and immediate threat of repeated injury") (quoting *O'Shea*, 414 U.S. at 496).

Here, Plaintiffs have not demonstrated an "immediate threat that [they] will be wronged again." *Lyons*, 461 U.S. at 111.  Plaintiffs have no pending requests to perform outside work.  Even if they did, it would not mean that UF would turn down the requests on an (allegedly) unlawful basis.  No injury is on the cusp of occurrence.

In sum, Plaintiffs have not shown a future injury that is certainly impending and about to occur immediately.[6]  They have no standing.

## III.   Any Challenge to UF's Revised Conflicts Policy Is Not Ripe.

As shown above, this case is moot (strike one), and Plaintiffs lack standing (strike two).  But they have another Article III problem:  Any challenge to UF's revised conflicts policy is not ripe for court review at this time (strike three).  Indeed, Plaintiffs filed their amended complaint before UF revised its policy.

"The central concern [of the ripeness doctrine] is whether the case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." *Warner Cable Commc'ns, Inc. v. City of Niceville*, 911 F.2d

---

[6] Although the original and amended complaints requested preliminary injunctions, Plaintiffs have not filed a PI motion.  If they did file such a motion, they could not demonstrate the requisite "irreparable injury."

634, 642 (11th Cir. 1990) (quoting 13A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3532.1, at 112 (2d ed. 1984)).  The instant case is rife with uncertainties.  It is uncertain whether, or when, Plaintiffs will be asked to serve as experts or *amici* in future litigation against the State of Florida.  Plaintiffs cannot be certain that UF would deny permission under its newly revised policy or if any such denial would be based on Plaintiffs' adversity to the State in litigation.  On the contrary, any new requests submitted by the Plaintiffs would be handled under UF's revised policy, with its "strong presumption" that UF will approve a faculty member's request to act as a paid expert witness in litigation against the State.  *See* Task Force Report 2–3.  The revised policy also clarifies that faculty are free to comment on matters of public concern in their individual capacities (not on behalf of another person or entity) and that when they do so such commentary is not reportable as outside activity.  *Id*. at 2.

A sampling of the Eleventh Circuit's reasoning in its ripeness cases confirms that this case is unripe.  In *Association for Children for Enforcement of Support, Inc. v. Conger*, 899 F.2d 1164 (11th Cir. 1990), the Eleventh Circuit held that the plaintiffs' First Amendment claim was not ripe because it was "based on what they *predict* will happen as a result of [the challenged] policy should they attempt, at some time in the future," to engage in conduct seemingly contrary to the policy.  *Id*. at 1166 (emphasis in original).  The Court stated:  "This is plainly the type of

24

hypothetical case that we should avoid deciding. We do not generally decide cases based on a party's predicted conduct." *Id*.[7]

Similarly, in *Johnson v. Sikes*, 730 F.2d 644 (11th Cir. 1984), the Eleventh Circuit explained that the plaintiffs' claims were unripe because they were "based merely on assumed, potential invasions of their constitutional rights" and not on "any injury currently being suffered by" the plaintiffs. *Id*. at 648–49. The Court stated that "the hypothetical and contingent nature of the questions raised in this appeal counsel against issuing an opinion premised on uncertain and contingent future events that may not occur as anticipated or may not occur at all." *Id*. at 649. The Court added that "[o]ur decision not to render an opinion advising what the law would be on an assumed set of facts is also consistent with the well-established rule that a court is never to 'anticipate a question of constitutional law in advance of the necessity of deciding it.'" *Id*. (quoting *Ashwander v. TVA,* 297 U.S. 288, 346 (1936) (Brandeis, J., concurring)).

Plaintiffs ask this Court to assume or predict that they will once again be asked to serve as experts or *amici* in litigation against the State and that UF will deny their

---

[7] *See also Elend v. Basham*, 471 F.3d 1199, 1211–12 (11th Cir. 2006): "When a case involving prospective relief provides a court with no factual assurance that future injury is likely and no clues about its contours should such an injury arise, we are left with only the faintest picture of a possible constitutional transgression occurring someday, somewhere in this country. Such a claim is not fit for adjudication by this Court."

requests on that basis, even though UF has a revised conflicts policy. That ask is an improper one. *See Clapper*, 568 U.S. at 414 (declining "to endorse standing theories that rest on speculation about the decisions of independent actors"). Contrary to Article III, Plaintiffs ask this Court to render an impermissible advisory opinion. Plaintiffs may return to this Court if and when they have a constitutional claim that is ripe for resolution. At this time, Plaintiffs are not properly before this Court.

## IV.   The Claims of the Original Plaintiffs Are Barred by Their Failure to File Grievances Under the CBA.

As shown above, the doctrines of mootness, standing, and ripeness require dismissal here. But even if UF's temporary denial of the original Plaintiffs' activity requests were somehow a "live" controversy, those Plaintiffs—Austin, McDonald, and Smith—would have still another problem: They failed to grieve or arbitrate their disputes with UF, in violation of the CBA. Therefore, the claims they assert against Defendants in this case are barred.

Plaintiffs Austin, McDonald, and Smith are in the bargaining unit represented by the UF Chapter of UFF-UF. *See* Fuller Decl. ¶ 3. They did not, however, file grievances over UF's denial of their outside activity requests. *Id*. ¶ 4.

Article 28 of the CBA governs "Grievance Procedure and Arbitration." This process consists of three steps: "Step 1. Hearing by the dean or designee," "Step 2. Review by the Provost or designee," and "Step 3. Arbitration." Art. 28.1(a). The CBA includes arbitration as its final step, *see* Art. 28.9, in accordance with the

Florida Public Employee Relations Act. *See* Fla. Stat. § 447.401 ("Such grievance procedure shall have as its terminal step a final and binding disposition by an impartial neutral, mutually selected by the parties"). The arbitration process is an important protection. Union members are "not at the mercy of the University's judgment because the collective bargaining agreement provide[s] for an independent arbitrator." *Tracy*, 980 F.3d at 805.

The grievance and arbitration process under the CBA is "mandatory." *Id*. The CBA states that "[t]he procedures in this Article shall be the sole and exclusive method for resolving the grievances of faculty members except where explicitly specified elsewhere in this Agreement." Art. 28.1(a). In *Tracy*, the Eleventh Circuit considered a similarly-worded CBA between Florida Atlantic University and its faculty union. Professor Tracy claimed that FAU fired him in breach of the CBA, but he did not grieve his dispute. The Eleventh Circuit ruled for FAU, explaining that "[t]he CBA clearly provides that the grievance procedure was mandatory, stating that the procedure 'shall be the sole and exclusive method for resolving the grievances of employees.'" *Tracy*, 980 F.3d at 805.

The short-lived public dispute between UF and Professors Austin, McDonald, and Smith fell within the CBA's definition of a grievance. "The term 'grievance' shall mean a dispute concerning the interpretation or application of a specific term or provision of this Agreement." Art. 28.2(a). "The key term in the definition is

'concerning.'  That term means '[r]elating to' or 'affecting.'" *Dixon v. Pub. Health Trust of Dade Cty.*, 567 F. App'x 822, 827 (11th Cir. 2014) (quoting BLACK'S LAW DICTIONARY 289 (6th ed. 1990)).  "So a claim is a 'grievance' under the CBA if it is a disagreement that relates to or affects specific provisions of the CBA."  *Id.*

Plaintiffs' disputes were "grievances" because they were disagreements that related to two specific provisions of the CBA—Article 10 on "Academic Freedom and Responsibility" and Article 26 on "Outside Activity and Conflict of Interest." The disputes clearly related to Article 26, which provides that "[a] faculty member may grieve the University's … denial of an Outside Activity citing insufficient disclosure or Impermissible Conflict."  Art. 26.9(a).  "The process and deadline for filing" such a grievance "shall be in accordance with ARTICLE 28 in all respects."  Art. 26.9(a)(2).

Article 26 expressly provides that it "shall not be used to deny … the rights protected by ARTICLE 10, ACADEMIC FREEDOM AND RESPONSIBILITY." Art. 26.1(c).  Thus, academic freedom may be invoked to grieve the denial of an outside activity request.  Plaintiffs certainly could have grieved the denial of their requests based on academic freedom.  Indeed, UFF-UF President Ortiz's letter to UF maintained that the denials violated Articles 10 and 26 and could be grieved.  *See* Ex. 4.

A grievance must be filed "no later than forty-five (45) days following the act

or omission giving rise to the grievance." Art. 28.6(a). "The faculty member will lose all rights to a review of the dispute unless the faculty member files a grievance within the time specified." *Id*. UF sent disapproval notices to Smith, McDonald, and Austin on October 11, 13, and 15, respectively. *See* Am. Compl. ¶¶ 60-63. For each of them, the 45-day period has run. Therefore, they have forfeited their claims. *See Dixon*, 567 F. App'x at 828 ("Because … Dixon's claims are 'grievances,' those claims are void under [the CBA] because she did not follow [the] three-step grievance procedure."); *Tracy*, 980 F.3d at 805 (former professor's failure to grieve barred his breach of contract claim against FAU); *City of Miami v. Fraternal Order of Police Lodge No. 20*, 378 So. 2d 20 (Fla. 3d DCA 1979) (union members' court action precluded because they failed to grieve). The claims of the original Plaintiffs should be dismissed under Rule 12(b)(6). *See Baker v. Farmers Elec. Co-op., Inc.*, 34 F.3d 274, 284–85 (5th Cir. 1994) (dismissal for failure to file grievance under CBA should take the form of dismissal with prejudice); *City of Miami*, 378 So. 2d at 26 (ordering dismissal of the complaint).

Article 23 of the CBA did not allow the original Plaintiffs to skip the grievance process and head straight to federal court. Article 23, captioned "Other Faculty Member Rights," provides that "[a]ny alleged violation of [constitutional] rights shall not be subject to the grievance and arbitration procedure of this Agreement, but shall be subject to vindication only by a court of competent jurisdiction." Art. 23.1.

But Article 23 is a collection of miscellaneous faculty rights. It does not address, or even mention, outside activity requests. In contrast, Article 26 establishes a specific, detailed, and expedited process for outside activity requests and provides that the denial of such requests may be grieved based on academic freedom grounds. Thus, Articles 26, not Article 23, applies and controls here. "When two contract terms conflict, the specific term controls over the general one." *United States v. Pielago*, 135 F.3d 703, 710 (11th Cir. 1998); *see id*. ("Where the document contains both general and specific provisions relating to the same subject, the specific provision controls.") (quotation marks omitted). Here, Article 26 is "the more specifically applicable provision." *Id*.

In short, the claims of original Plaintiffs Austin, McDonald, and Smith are barred by their failure to grieve and arbitrate their disputes with UF.[8]

---

[8] Nor did the Plaintiffs who joined the amended complaint, Goldhagen, Reid, and Nunn, file a grievance. UF rules and regulations permit faculty members who are not in the collective bargaining unit to commence proceedings and file grievances to resolve a variety of disputes or complaints, including complaints involving university practices bearing on academic freedom. *See* Rule 6C1-7.0441; Regulations 7.041 & 7.042 (Exs. 13, 14 & 15). These three Plaintiffs did not avail themselves of this process. *See* Fuller Decl. ¶ 4.

**V.     The Original Plaintiffs Have Waived Their First Amendment Claims.**

Plaintiffs contend that the First Amendment gives them a right to participate in litigation against the State as *amici* or paid experts even if UF disapproves.  As union members bound by the CBA negotiated and agreed to by their union, Plaintiffs Austin, McDonald, and Smith have waived any First Amendment right they may have to act as an experts or *amici* when that outside activity is not approved through the conflict of interest process set forth in Article 26 of the CBA.

Constitutional rights, including First Amendment rights, may be waived, including in a contract.  Here, Austin, McDonald, and Smith are union members bound by their union's CBA.  In the CBA, UFF-UF agreed to the Article 26 process for outside activity.  The original Plaintiffs are bound by the CBA.  Assuming *arguendo* that they have a First Amendment right to participate in litigation over UF's disapproval, they waived that right.  Faculty members must grieve and, if necessary, arbitrate UF's disapproval, including on the ground that it violates academic freedom under Article 10 of the CBA.

In *Barnard v. Lackawana County*, 194 F. Supp. 3d 337 (M.D. Pa. 2016), *aff'd*, 696 F. App'x 59 (3d Cir. 2017), the plaintiff union member, Barnard, was suspended without pay by her employer, the County, for engaging in a sympathy strike contrary to the CBA.  Barnard filed a Section 1983 suit alleging First Amendment retaliation. But the District Court dismissed her claim, and the Third Circuit affirmed the

dismissal.  The courts held that Barnard's First Amendment claim failed because, as a union member, she was bound by the terms of the CBA negotiated by her union; the CBA barred sympathy strikes; and thus Barnard waived any First Amendment right she had to engage in such a strike.  The Third Circuit explained that "a union may expressly or implicitly waive an individual employee's constitutional rights in the context of the collective bargaining process."  *Barnard*, 696 F. App'x at 62 (citing *Bolden v. Se. Pa. Transp. Auth.*, 953 F.2d 807, 826-29 (3d Cir. 1991) (en banc) (union waived union members' Fourth Amendment rights by consenting to drug testing in the CBA)); *see also Leonard v. Clark*, 12 F.3d 885, 889-92 (9th Cir. 1994) (CBA article waived union members' First Amendment right and barred their Section 1983 claim).

The Third Circuit's analysis in *Barnard* applies here as well.  In the Eleventh Circuit, too, an individual is "free to waive her right to speech in her private agreements."  *Youngblood-West v. AFLAC, Inc.*, 796 F. App'x 985, 992 (11th Cir. 2019); *see also United Fire & Cas. Co. v. Progressive Express Ins. Co.*, No. 6:19-cv-1049-Orl-41EJK, 2021 WL 4458319, at *3 (M.D. Fla. Mar. 31, 2021) ("One can waive any contractual, statutory or constitutional right.") (quoting *Bay v. United Services Auto. Ass'n*, 305 So. 3d 294, 299 (Fla. 4th DCA 2020)).  Plaintiffs Austin, McDonald, and Smith are bound the CBA that was negotiated and agreed to by the union to which they belong.  *See Green v. United Parcel Serv., Inc.*, 847 F. App'x

207, 208 (5th Cir. 2021); *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1151 (9th Cir. 1997).  The UFF-UF agreed that its members would use the grievance process, including arbitration, in the event that UF denied an outside activity request.  "As in any contractual negotiation, a union may agree to the inclusion of an arbitration provision in a collective-bargaining agreement in return for other concessions from the employer.  Courts generally may not interfere in this bargained-for exchange." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257 (2009).

In sum, the original Plaintiffs have waived the First Amendment claims that they assert against Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be granted, and the case should be dismissed for lack of jurisdiction and for failure to state claim.

Respectfully submitted,

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci
D.C. Bar No. 453423
Brian J. Field*
D.C. Bar No. 985577
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com
bfield@schaerr-jaffe.com

*Motion for admission *pro hac vice* forthcoming

33

Amy Meyers Hass
  *Vice President and General Counsel*
Fla. Bar No. 483346
Ryan Fuller
  *Associate Vice President and*
  *Deputy General Counsel*
Fla. Bar No. 635324
UNIVERSITY OF FLORIDA
OFFICE OF GENERAL COUNSEL
123 Tigert Hall, P.O. Box 113125
Gainesville, Florida 32611
(352) 392-1358
amhass@ufl.edu
ryanf@ufl.edu

*Counsel for Defendants*

Dated:  December 1, 2021

34

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1(F)</u>

Pursuant to Local Rule 7.1(F), I certify that foregoing is in compliance with the Court's word limit.   According to the word processing program used to prepare this memorandum, the document contains 7,937 words, excluding those portions exempted under the Rule.

<u>/s/ H. Christopher Bartolomucci</u>
H. Christopher Bartolomucci

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed in the Court's CM/ECF system this 1st day of December, 2021, and thereby served on all counsel of record.

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci
