IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

------------------------------------x
SHARON WRIGHT AUSTIN, MICHAEL : 
MCDONALD, AND DANIEL A. SMITH, :
JEFFREY GOLDHAGEN, TERESA J. REID, :
and KENNETH B. NUNN, :   1:21-cv-00184-MW-GRJ
 :
      Plaintiffs, :
 :
   v. :
 :
UNIVERSITY OF FLORIDA BOARD OF :
TRUSTEES, the public body corporate acting for :
and behalf of the University of Florida, W. KENT :
FUCHS, in his official capacity as President of the :
University of Florida, JOSEPH GLOVER, in his :
official capacity as Provost of the University of :
Florida, and LAURA ROSENBURY, in her :
official capacity as Dean of the Fredric G. Levin :
College of Law, :
 :
      Defendants. :
------------------------------------X

**DECLARATION OF KENNETH B. NUNN**

I, Kenneth B. Nunn, hereby declare and state as follows:

1. I am a Professor of Law and the Associate Director of the Center on Children and Families at University of Florida's Fredric G. Levin College of Law (the "Law School"). I have been a member of the

University of Florida's (the "University") faculty since 1990. I have personal knowledge of the matters set forth herein.

2. My areas of teaching and expertise include criminal law, criminal procedure, African American history and the law, race and the justice system, and law and cultural studies.

3. I previously served as a member of the Innocence Commission of the State of Florida, which was charged with identifying causes of wrongful convictions in the State and recommending changes in legislation, court rules, and law enforcement practices to reduce the incidence of wrongful convictions. I have also authored numerous articles, given scholarly presentations, and signed amicus briefs on issues related to my fields of expertise.

4. Until recently, the Law School has encouraged its faculty, myself included, to engage with the public on important issues through writing, speeches, and participation in litigation.

5. For that reason, I have been surprised and deeply concerned by the University's Conflicts of Commitment and Conflicts of Interest Policy ("the Policy") and how the University and the Law School have interpreted and applied it to restrict speech based on viewpoint.

6. On January 31, 2020, Gary Wimsett, Jr., Assistant Vice President for Conflicts of Interest, gave a presentation to the Law School faculty on the Policy. Based on his explanation, I understood that, pursuant to the Policy, faculty must file a request for permission on the University's online conflicts system ("UFOLIO") each time we seek to participate in an "Outside Activity."

7. On February 10, 2020, Dean Rosenbury emailed the Law School faculty to provide "some clarification" on the Policy's scope. Ex. 1.[1] In that email, she told us: "Writing or *signing on* to an amicus brief in your capacity as an individual law professor" was not an "Outside Activity" that required prior approval under the Policy because it was "[c]onsidered [p]art of [y]our UF [a]ssignment." (emphasis added.) *Id.* Only "[a]micus briefs *written for another individual or entity*" were considered "Outside Activities" under the Policy. (emphasis added.) *Id.*

8. Around the time the Policy went into effect, I was contacted by an attorney drafting an amicus brief in support of the plaintiffs in *Jones, et al. v. DeSantis, et al.*, No. 20-12003 (11th Cir.). That case challenged Florida Senate Bill 7066, which requires Florida citizens who have completed their sentence for felony convictions to pay any financial

---

[1] "Ex. X" refers to the exhibits attached to the Declaration of Morgan A. Davis submitted herewith.

3

obligations included in their sentence before they can exercise their right to vote. I was asked if I would be interested in signing on to the amicus brief opposing Florida Senate Bill 7066. The attorney also asked me if any of my colleagues would be interested in signing onto the brief, and I offered to reach out to them.

9. On July 1, 2020, I emailed over two dozen Law School colleagues who had expertise in constitutional law, voting rights law, civil rights law, or criminal procedure to ask whether they would be interested in joining the amicus brief in *Jones v. DeSantis*. Ex. 3. I requested that they respond to me by July 8, 2020. *Id.*

10. Approximately nine Law School professors agreed to sign on to the amicus brief, in addition to the Law School's Center for the Study of Race and Race Relations.

11. In light of Dean Rosenbury's February 10, 2020 guidance, I did not think that I—or they—needed to seek the University's permission merely to sign the amicus brief in *Jones v. DeSantis*. Indeed, signing on to the amicus brief seemed consistent with my job responsibilities at the Law School, where the courses I teach involve implicating the rights of criminal defendants and those convicted of felonies.

12. Further, I had previously signed numerous amicus briefs on issues relevant to my areas of expertise with no opposition from the University.

13. But on July 9, 2020, Dean Rosenbury emailed the Law School faculty, stating:

> [F]aculty participation in litigation against the state of Florida or any agency thereof, including through amicus briefs, is considered a potential conflict of interest. If you seek to participate in such litigation or to write or sign on to an amicus brief in support of a party suing the state of Florida, you must fill out a disclosure form through UFOLIO and receive approval before participating. . . .

Ex. 4.

14. Dean Rosenbury added: "Entities of the College of Law, such as centers, clinics, or other classes, seeking to participate in such litigation or amicus briefs must separately receive approval from me, the General Counsel, and President Fuchs." *Id.*

15. I was confused by this sudden change, which was inconsistent with Dean Rosenbury's previous advice. On July 9, 2020, I emailed Dean Rosenbury to ask her to clarify the Policy as it applied to signing the amicus brief in *Jones v. DeSantis*. *Id.* Dean Rosenbury responded: "You are correct that this is not an outside activity, but it is a potential conflict of

5

interest because the amicus brief will be filed in an action against the state. You, and others, must therefore disclose on that basis." *Id.*

16. On July 13, 2020, Dean Rosenbury wrote to me and other members of the Law School faculty:

> I have confirmed that the university will approve this activity so long as you participate solely in your individual capacity. You may not participate in your capacity as an employee of the University of Florida or on behalf of the Levin College of Law or the University of Florida. Please ensure that the amicus brief clearly indicates that any law school or university affiliation is included for identification purposes only.

Ex. 25.

17. Consistent with Dean Rosenbury's advice, I completed my UFOLIO disclosure for participation in the litigation. I included the following language in my disclosure:

> [Signing on to the amicus brief] will not put me in a position adverse to the interests of the University of Florida. I simply wish to sign on to an amicus brief, as one of more than 100 professors at law, to express an opinion about the proper interpretation of the law in regards to not infringing on the voting rights of ex-felons as provided by citizen initiative in the State of Florida. I understand that I may not participate in my capacity as an employee of the University of Florida or on behalf of the Levin College of Law or the University of Florida. I will ensure that the amicus brief clearly indicates that any law school or university affiliation is included for identification purposes only.

6

Ex. 6.

18. My UFOLIO request to sign the amicus brief in *Jones v. DeSantis* was approved on July 14, 2020. Ex. 7.

19. Most of the 10 professors who had expressed interest in signing the amicus brief in *Jones v. DeSantis* ultimately did not do so. Only four Law School professors, including me, were listed among the 93 signatories to the amicus brief. Ex. 8. The Center for the Study of Race and Race Relations was not listed among the signatories. *Id.*

20. In addition, my institutional affiliation was omitted from the brief. I and the three other Law School professors who signed the brief were the only signatories who did not have our institutional affiliations listed alongside our signatures. *Id.*

21. Although I agreed to join the amicus brief in *Jones v. DeSantis* in my personal capacity, the complete omission of my institutional affiliation weakened the message I wanted to convey. I have gained prominence in my field in part because of my 30-year tenure at the University and the extensive scholarship and other activities I have engaged in as a Law School professor. My professional association with the Law School—Florida's top-ranked law school—reflects my years of practice and scholarship. Including my

institutional affiliation would have given greater weight and credibility to my signature on the amicus brief.

22. The Law School's actions with respect to the Policy have also made me hesitant to sign on to amicus briefs in the future or otherwise participate in litigation.

23. I am frequently asked to participate in lawsuits concerning my areas of research and teaching. Many of these cases seek emergent relief, including emergency motions in death penalty cases. Because of the policy's vaguely worded terms—and the significant discretion it vests in the University and Law School to define them—I am unable to determine whether I am required to seek approval under the Policy for certain engagements and, if so, whether the activity would even be approved. Moreover, because the Policy provides no timeline for approval, I know that by the time the University issues a determination on my application, the opportunity to participate in the litigation may have passed.

24. For example, on November 3, 2021, I received an invitation to join an amicus brief in support of Terrence Andrus's request for resentencing for a crime committed as a juvenile in *Andrus v. Texas*, No. 21-6001. Ex. 27. Ordinarily, I would not hesitate to lend my name and prominence as a criminal law scholar to an amicus brief on such an

8

important issue.  Nevertheless, on November 7, 2021, I declined the invitation.  *Id.*  I explained to my colleague that, "with all the turmoil going on down here with university oversight of our amicus signons, I decided to wait until there is more clarity" on the Policy's scope.  *Id.*  The Policy was the sole reason I decided not to sign the amicus brief in *Andrus*.

25.  If I were to engage in an activity that the University deems a "conflict" without prior approval, I fear that the University would punish me, such as withholding institutional support or funding for my projects.  It is concerning to me that termination is among the potential repercussions of not complying with the Policy.

26.  Based on conversations that I have had with other professors, many of my colleagues are also reticent to participate in litigation in light of the Policy.  Indeed, a number of my colleagues who had initially expressed an interest in signing on to the amicus brief in *Jones* opted not to sign on after the Dean's July 9, 2020 email.

27.  I fear that if this Policy were permitted to stay in place, it will not only further stifle and chill the Law School's faculty, but it will teach the newest generation of lawyers—our students—that freedom of speech is a right that can be limited if, and when, it is convenient for the State to do so.

9

28. Although the task force convened by President Fuchs has recommended various amendments to the Policy, none of those amendments would alleviate my concerns about the Policy. As an initial matter, the amendments do not even address how the Policy applies to professors seeking to sign onto an amicus brief. Moreover, they fail to ensure that I will not be discriminated again based on viewpoint because the University still retains the discretion to deny requests based on "an important and particularized interest" of the University and fails to define what such an interest might be. Further, there is no clear timeframe provided for the review process, nor is there a way to expedite the review in circumstances requiring rapid turnarounds, such as in a death penalty case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate.

Executed on December 2, 2021.

_____
Kenneth B. Nunn