IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

------------------------------------x

SHARON WRIGHT AUSTIN, MICHAEL
MCDONALD, AND DANIEL A. SMITH,
JEFFREY GOLDHAGEN, TERESA J. REID,
and KENNETH B. NUNN,

      Plaintiffs,

  v.

UNIVERSITY OF FLORIDA BOARD OF
TRUSTEES, the public body corporate acting for
and behalf of the University of Florida, W. KENT
FUCHS, in his official capacity as President of the
University of Florida, JOSEPH GLOVER, in his
official capacity as Provost of the University of
Florida, and LAURA ROSENBURY, in her
official capacity as Dean of the Fredric G. Levin
College of Law,

      Defendants.

------------------------------------X

1:21-cv-00184-MW-GRJ

## DECLARATION OF TERESA J. REID

I, Teresa J. Reid, hereby declare and state as follows:

    1.    I am a Master Lecturer and Master Legal Skills Professor at the University of Florida's Fredric G. Levin College of Law (the "Law School"). I have been a member of the University of Florida's (the "University") faculty since 1987. I have personal knowledge of the matters set forth herein.

2. My areas of teaching and expertise include the death penalty, legal writing, appellate advocacy, legal ethics, legal professionalism, evidence, and mediation. I have presented numerous lectures and performed pro bono work on these topics, including by signing onto amicus briefs in the areas of criminal law and legal professionalism.

3. Until recently, the Law School encouraged the faculty to lend our voices and legal skills to issues that are important to our community or in the public interest, including by signing onto amicus briefs.

4. I was, therefore, surprised when I first learned of the University's Conflicts of Commitment and Conflicts of Interest Policy (the "Policy"), and how the Policy has been interpreted by the Law School.

5. Based on a communication from Dean Laura Rosenbury to the Law School Faculty on February 10, 2020, I was initially under the impression that signing on to an amicus brief was not considered an "Outside Activity" that would require disclosure and approval through the conflicts process ("UFOLIO"). Ex. 1.[1]

6. On July 1, 2020, I received an email from my colleague, Professor Kenneth Nunn, asking if I would be interested in signing on as an amicus in the *Jones, et al. v. DeSantis, et al.*, No. 20-12003 (11th Cir.)

---

[1] "Ex. X" refers to the exhibits attached to the Declaration of Morgan A. Davis, submitted herewith.

litigation, which challenged a statute restricting voting rights of Florida residents with felony convictions. Ex. 3. I readily agreed.

7. Shortly thereafter, however, the Policy as it applied to amicus briefs signed by Law School faculty shifted. In an email dated July 9, 2020 to the Law School faculty, Dean Rosenbury stated that there had been a change: now, Law School faculty were required to seek permission before signing onto an amicus brief in a case opposing the State of Florida. Ex. 4.

8. Though I was concerned by this sudden shift—which came only days after Professor Nunn had emailed colleagues to ask if they wanted to join the amicus brief in *Jones*—I submitted a UFOLIO request for approval to sign on as an amicus in *Jones*.

9. On July 12, 2020, my UFOLIO request to sign the amicus brief in *Jones* was approved with the condition that I "participate in this outside relationship in [my] individual capacity only." Ex. 5. My approval notice from the University further stated that I was "*not permitted to use any UF marks, logos or other identifiers* in [my] outside activity/interest, and [could] not otherwise imply or suggest any official affiliation with UF." (emphasis added.) *Id.*

10. When the amicus brief was filed, only four Law School professors, including myself, were listed among the 93 signatories. Ex. 8.

3

In addition, my institutional affiliation was omitted from the brief. I was one of only four law professors without my institutional affiliation listed. *Id.*

11.  Although I understood that I was permitted to join the amicus brief in *Jones v. DeSantis* in my personal capacity only, the additional requirement that my institutional affiliation not be listed lessened the impact of my signature on the brief. I was asked to sign this particular amicus brief and have been asked to sign amicus briefs in the past in part because of my more-than-thirty-year tenure at the University. My professional association and affiliation with the University, one of the country's leading public law schools and the State's top-ranked law school, not only lends credibility to my signature, but it also reflects decades of hard work and devotion to educating the next generation of lawyers and advocates. Including it also would have aided the court in weighing a matter of fundamental significance to the people of Florida. My institutional affiliation was therefore an important part of the message that I intended to convey in signing the amicus brief. By preventing me from including it, the University suppressed my speech.

12.  The University's Policy has left me concerned that I will not be permitted to sign on to an amicus brief or otherwise participate in litigation adverse to the State's viewpoint in the future. The Policy—including the

amendments to the Policy recommended by the task force—provides no clarity as to what activities must be disclosed and what the criteria are for determining whether an activity constitutes a conflict of interest. Critically, the amendments do not even address signing amicus briefs. In addition, the amendments provide no clear guidelines for how long the University's review and approval process will take.

13. I am often asked to advise in lawsuits concerning my areas of teaching. Many of these cases seek emergent relief, including emergency motions in death penalty cases, and the time window for my participation is very short. If I were to submit a UFOLIO request, there is a real risk that this window will have closed by the time I receive a decision. More importantly, the University retains the discretion to deny my application if it does not agree with the viewpoint I seek to express.

14. If I were to take the risk of proceeding—even in a minor capacity, doing no more than answering a simple question—without the University's approval, I could face serious professional consequences. Indeed, the Policy states that one such consequence is termination. This is particularly concerning for me because I am not tenured.

15. I am also concerned about the potential ramifications of this Policy for my students, whose work apparently may be covered by the

Policy when supervised by faculty.  It is my job to teach law students—individuals just beginning their legal careers—that it is their job and ethical duty to stand up against actions by government entities that infringe their rights or the rights of others.  Yet, they are now bearing witness to the University's actions, under color of state law, that are infringing the rights of their professors and mentors.  They have seen firsthand the impact of the University's actions and the reluctance amongst the faculty to speak up for fear of repercussions.  I fear that if this Policy is able to remain in effect, our students—our future—will also be silenced by the University.  Such an outcome should never happen in a place of learning where dialogue, open communication, and acceptance of diverse viewpoints should be applauded, not suppressed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate.

Executed on December 1, 2021.

_____
Teresa J. Reid