IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
SHARON WRIGHT AUSTIN, MICHAEL
MCDONALD, AND DANIEL A. SMITH,
JEFFREY GOLDHAGEN, TERESA J. REID,
and KENNETH B. NUNN,

        Plaintiffs,

  v.

UNIVERSITY OF FLORIDA BOARD OF
TRUSTEES, the public body corporate acting for
and behalf of the University of Florida, W. KENT
FUCHS, in his official capacity as President of the
University of Florida, JOSEPH GLOVER, in his
official capacity as Provost of the University of
Florida, and LAURA ROSENBURY, in her
official capacity as Dean of the Fredric G. Levin
College of Law,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

1:21-cv-00184-MW-GRJ

**DECLARATION OF JEFFREY GOLDHAGEN**

I, Jeffrey Goldhagen, hereby declare and state as follows:

1. I am a Professor of Pediatrics and the Chief of the Division of Community and Societal Pediatrics at the University of Florida College of Medicine – Jacksonville (the "Medical School"). I have been a member of

the University of Florida's (the "University") faculty since 1993.  I have personal knowledge of the matters set forth herein.

2. My practice focuses on community-based pediatrics and public health services.  I currently serve as the Medical Director for the Partnership for Child Health and the President of the International Society for Social Pediatrics and Child Health.  In addition, I am a co-founder of the Population Health Consortium of Northeast Florida, a group formed in 2020 to help coordinate a public health response to the COVID-19 pandemic.  I have also served as an expert witness in litigation relating to lead poisoning of children.  Previously, I served as the Director of the Duval County Health Department and the Medical Director of Cleveland, Ohio's Department of Public Health.

3. I view it as a key part of my role as a physician to help advocate for measures that will serve public health interests locally, nationally, and internationally.  In the past, the Medical School has encouraged and supported my work in these areas.

4. On or around August 11, 2021 I was asked by Charles Gallagher of Gallagher & Associates Law Firm, P.A. to serve as an expert witness in a lawsuit seeking to enjoin Governor DeSantis's Executive Order Number 21-185 (the "Executive Order"), which precludes school districts

from enacting mask mandates and threatens to withhold funds from any school district choosing to require masks in schools. I was specifically asked to testify about the impact of COVID-19 on the pediatric population and the health benefits of requiring students to wear masks in schools to prevent the spread of SARS-Cov-2. I believed it was my responsibility, and in keeping with my oath as a physician, to serve as an advocate for such an important public health measure to help stem the spread of SARS-Cov-2 and protect children within the State of Florida. I did not hesitate to say yes.

5. I did not request compensation for my work in this case. Instead, because this was a crucial matter of public health, I opted to donate my time pro bono.

6. As I have done with previous expert witness assignments, I planned to make clear that any written reports or testimony were submitted in my personal capacity only, and that any viewpoints expressed did not necessarily represent the view of the University.

7. In accordance with the University's Conflicts of Interest and Conflicts of Commitment Policy (the "Policy"), I submitted a UFOLIO request disclosing my engagement as an expert witness in the Executive Order case on or about August 11, 2021. The UFOLIO form did not have a section where I could disclose whether I was receiving compensation; it

simply asked whether the amount of compensation I would receive would be greater or less than $5,000. Therefore, my UFOLIO application did not disclose that I would not be receiving any compensation for my work.

8. The next day, I received a notification that Gary Wimsett had marked my application "denied." Ex. 11.[1] The stated reason for the denial was: "Outside activities that may pose a conflict of interest to the executive branch of the State of Florida create a conflict for the University of Florida." *Id.*

9. After receiving the disapproval notice, I informed Mr. Gallagher of the University's disapproval. Eager to participate in this important case, I urged him to subpoena me for my testimony, since I understood that, if he did so, I would be required to testify. The case, however, moved too quickly, and I believe Mr. Gallagher instead sought other expert witnesses who were not prevented from participating.

10. Because my initial request was denied, and I was not given an opportunity to appeal the denial, I was not allowed to testify. This left me unable to share my expertise, experience, and medical knowledge in a case concerning one of the most critical public health matters of our time.

---

[1] "Ex. X" refers to the exhibits attached to the Declaration of Morgan A. Davis submitted herewith.

11. I am deeply troubled by the University's Policy and how it has been applied to prevent faculty from participating in litigation on crucial matters of public health. I am aware of an additional colleague within the Medical School who has had a similar experience requesting approval through UFOLIO and who has received similarly worded disapproval notices stating that they cannot participate in a particular case because it is a "conflict" to testify on behalf of plaintiffs who have brought suit against the State of Florida.

12. The Policy has effectively prevented my colleague and me from fulfilling the oaths we took when we became physicians. And this is occurring at a time when public health—and accurate information about public health—has never been more important. I worry about the potential implications for the people of Florida if the University is able to exercise such unlimited power over the speech of its faculty. I fear that this power can easily be used to further political ends rather than the public interest, as it was in my case.

13. In my view, the University's attempt to remedy the issue through the task force's recommended amendments to the Policy does not fix this problem. The amendments simply confirm that the University

retains discretion to deny requests and fail to provide concrete parameters to understand the situations in which a denial would be justified.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate.

Executed on December 2, 2021.

_____
Jeffrey Goldhagen, M.D.