IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

------------------------------------x
SHARON WRIGHT AUSTIN, MICHAEL
MCDONALD, AND DANIEL A. SMITH,
JEFFREY GOLDHAGEN, TERESA J. REID,
and KENNETH B. NUNN,

          Plaintiffs,

  v.

UNIVERSITY OF FLORIDA BOARD OF
TRUSTEES, the public body corporate acting for
and behalf of the University of Florida, W. KENT
FUCHS, in his official capacity as President of the
University of Florida, JOSEPH GLOVER, in his
official capacity as Provost of the University of
Florida, and LAURA ROSENBURY, in her
official capacity as Dean of the Fredric G. Levin
College of Law,

          Defendants.
------------------------------------X

1:21-cv-00184-MW-GRJ

## DECLARATION OF SHARON WRIGHT AUSTIN

I, Sharon Wright Austin, hereby declare and state as follows:

    1.    I am a Professor of Political Science at the University of Florida. I have been a member of the University of Florida's (the "University") faculty since 2001. I have personal knowledge of the matters set forth herein.

2. My scholarship and research focuses on African American mayoral elections, African American and Caribbean American political relationships, rural African American political activism, and African American political behavior. I have authored books on African American political participation and published numerous articles on related topics. In addition, until recently, I was the Director of the University's African American Studies program.

3. Earlier this year, I participated in an expert witness training program run by the NAACP. The goal of the program is to support faculty who are members of underrepresented groups in becoming expert witnesses.

4. After completing that program, I was contacted by attorneys representing voting right advocates who had sued to enjoin SB 90, a law that, among other things, imposes obstacles on Florida voters' ability to cast ballots through in-person voting, mail-in voting, and the use of secure drop-boxes for early voting. The attorneys asked if I would be willing to act as an expert witness in support of their challenge to SB 90, to which I readily agreed.

5. I was one of at least three University professors asked to act as an expert witness in the litigation challenging SB 90.

6. I was specifically asked to testify on topics including the history of voting discrimination against minority groups and the impact of vote-by-mail measures on minority groups. The attorneys requested that I draft an expert report, submit to a deposition, and ultimately testify at trial.

7. I understood that I would be testifying in my personal capacity and not as a representative of the University. I also would be compensated for my time and expenses while serving as an expert witness, but my opinions and testimony would not be contingent in any way on the outcome of the litigation.

8. In accordance with the University's Conflicts of Interest and Conflicts of Commitment Policy (the "Policy"), I submitted a request through UFOLIO disclosing my engagement as an expert witness in connection with the SB 90 litigation.

9. On October 15, 2021, I received by email a disapproval notice stating that "UF will deny its employees' requests to engage in outside activities when it determines the activities are adverse to its interests." Ex. 15.[1] The notice further stated that, "[a]s UF is a state actor, litigation against the [S]tate is adverse to UF's interests." *Id.*

---

[1] "Ex. X" refers to the exhibits attached to the Declaration of Morgan A. Davis, submitted herewith.

10. In the following weeks, my counsel sent a number of letters to the University pointing out that the University's Policy violated my and my colleagues' constitutional rights and asking the University to reverse its disapproval decisions.

11. In response to these communications and the public outcry that followed, the University adopted a series of shifting explanations. On October 30, 2021, the University issued a statement that my testimony would be adverse to the University's interests as a public institution, in part because I would be paid for my time and expenses. Ex. 16. On November 1, 2021, Ryan Fuller, the University's Deputy General Counsel, said in an email that I could participate as an expert witness—but only if I did so in my personal capacity and without compensation for my work. Ex. 18. President Fuchs reinforced the latter position when he issued a statement on November 1, 2021 that my colleagues and I could in fact testify, but only if we did so pro bono. Ex. 17.

12. Despite these public statements, during this time, the University did not communicate directly with me with regard to my UFOLIO request and the status of my request in the UFOLIO system remained "denied."

13.    On November 5, 2021, the University reversed its UFOLIO denials for my and my colleagues' participation as expert witnesses in the SB 90 litigation.

14.    Though I am able to testify as an expert witness in the SB 90 litigation, the University's Policy remains in effect, and the amendments proposed by the task force do not remedy the Policy's defects.  The amendments fail to ensure that I will not be discriminated against based on my viewpoint.  That is because the University still retains the discretion to deny my request to serve as an expert witness if doing so would be adverse to "an important and particularized interest" of the University, and the amendments fail to define what such an interest would or could be.  As long as this Policy remains in place, my ability to exercise my First Amendment rights by testifying on matters of public concern is left to the University's discretion.  This leaves me hesitant to attempt to serve as an expert witness in the future out of a concern that the University will, again, use its considerable discretion to deny my request because of the viewpoint that I wish to express.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate.

Executed on December 3, 2021.

*Sharon Wright Austin*
Sharon Wright Austin