IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SHARON WRIGHT AUSTIN, MICHAEL
MCDONALD, AND DANIEL A. SMITH,
JEFFREY GOLDHAGEN, TERESA J. REID,
and KENNETH B. NUNN,

    Plaintiffs,

 v.

UNIVERSITY OF FLORIDA BOARD OF
TRUSTEES, the public body corporate acting for
and behalf of the University of Florida, W. KENT
FUCHS, in his official capacity as President of the
University of Florida, JOSEPH GLOVER, in his
official capacity as Provost of the University of
Florida, and LAURA ROSENBURY, in her
official capacity as Dean of the Fredric G. Levin
College of Law,

    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

1:21-cv-00184-MW-GRJ

## DECLARATION OF MICHAEL MCDONALD

I, Michael McDonald, hereby declare and state as follows:

  1. I am a Professor of Political Science at the University of Florida. I have been a member of the University of Florida's (the "University") faculty since 2014. I have personal knowledge of the matters set forth herein.

2. My research focuses on elections, including voter turnout and eligibility. I have consulted on redistricting measures and served as an expert witness in lawsuits concerning elections in states around the country. I am also a co-principal investigator on the Public Mapping Project, which encourages public participation in redistricting. Until recently, the University seemed to encourage these activities, and even discussed them during my annual performance reviews.

3. On October 4, 2021, I was contacted by attorneys representing voting right advocates who had sued to enjoin SB 90, a law that, among other things, imposes obstacles on Florida voters' ability to cast ballots through in-person voting, mail-in voting, and the use of secure drop-boxes for early voting. They asked if I would be willing to serve as an expert witness for them, and I agreed.

4. I was one of at least three University of Florida professors that agreed to act as an expert witness.

5. The attorneys asked me to draft an expert report to rebut the report filed by one of the defendants' experts. I was asked to critique the data sources and methodology found in the defendants' expert's report, which involved an historical review of Florida's election laws and a comparison of Florida's laws to other states.

6.     As with previous expert witness engagements, I understood that I would be providing services in my personal capacity and not as a representative of the University. Also like my previous expert witness engagement, I would be compensated for my time and expenses.

7.     In accordance with the University's Conflicts of Interest and Conflicts of Commitment Policy (the "Policy"), I submitted a request through UFOLIO disclosing my engagement as an expert witness in connection with the SB 90 litigation.

8.     On October 13, 2021, I received a disapproval notice by email stating that "UF [w]ill deny its employees' requests to engage in outside activities when it determines the activities are adverse to its interests." Ex. 14.[1] This was an outright denial, and I was not told how I could mitigate the potential conflict until after public criticism mounted against the University, and my counsel contacted the General Counsel's Office.

9.     Following my denial, my counsel sent a series of letters to the University urging the University to reverse its disapproval decisions and reminding the University that the Policy, and how it was applied, violated my and my colleague's constitutional rights.

---

[1] "Ex. X" refers to the exhibits attached to the Declaration of Morgan A. Davis, submitted herewith.

10. In response to the communications and the public outcry that followed, the University adopted a series of shifting explanations. On October 30, 2021 the University issued a statement, which said that the issue with my colleagues' and my testimony was that we were testifying for a cause adverse to the University's interests as a public institution. Ex. 16. On November 1, 2021, Ryan Fuller, the University's Deputy General Counsel, stated via email that the true issue was that we would be compensated for our time and expenses preparing to act as expert witnesses. Ex. 18. Also on November 1, President Fuchs issued a statement which said that we *could* participate if we did so pro bono and in our personal capacities. Ex. 17.

11. On November 5, 2021, after the Policy was made public and became the subject of widespread criticism, the University reversed its denials of my request to participate in the SB 90 litigation as expert witnesses. Ex. 20.

12. While this one denial has been reversed, the University's unconstitutional Policy remains in effect. Though the University's task force has issued amendments to the current Policy, even the amended Policy vests an enormous amount of discretion in the University, allowing the

4

University to continue to regulate the speech of its faculty based on viewpoint.

13. Furthermore, these amendments to the current Policy add additional layers of bureaucracy that will further delay the University's response times to UFOLIO decisions, leaving faculty members unable to speak in the interim. This is particularly important in my field, since election cases are often expedited. In the past, I have been asked to provide an expert report in less than a single day. I believe that the Policy and its amendments will work to restrain my ability to speak and serve as an expert witness in the future.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate.

Executed on December 2, 2021.

Michael McDonald