IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SHARON WRIGHT AUSTIN, MICHAEL :
MCDONALD, AND DANIEL A. SMITH, :
JEFFREY GOLDHAGEN, TERESA J. REID, :
and KENNETH B. NUNN, :          1:21-cv-00184-MW-GRJ
:
          Plaintiffs, :
:
     v. :
:
UNIVERSITY OF FLORIDA BOARD OF :
TRUSTEES, the public body corporate acting for :
and behalf of the University of Florida, W. KENT :
FUCHS, in his official capacity as President of the :
University of Florida, JOSEPH GLOVER, in his :
official capacity as Provost of the University of :
Florida, and LAURA ROSENBURY, in her :
official capacity as Dean of the Fredric G. Levin :
College of Law, :
:
          Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DECLARATION OF DANIEL A. SMITH**

I, Daniel A. Smith, hereby declare and state as follows:

    1.    I am a Professor of Political Science and the Chair of the Political Science Department at the University of Florida (the "University"). I have been a member of the University's faculty since 2003. I have personal knowledge of the matters set forth herein.

2. My research and scholarship examines the effects of ballot measures, campaign financing, redistricting, and electoral laws on voting and political participation in the United States. I have served as an expert witness in a number of lawsuits concerning voting rights, ballot measures, campaign finance laws, and redistricting, and a number of cases in which I have testified have named the State of Florida as a defendant.[1] I have also testified before Congress and the state legislatures of Colorado and Florida on elections issues.

3. In all of my previous engagements as an expert witness, I testified in my personal capacity, not as a representative of the University, and I was compensated for my time and expenses. My understanding is that this is typical for expert witnesses, including those employed by public universities.

4. The University has never objected to my prior work as an expert witness. To the contrary, in my annual performance reviews, the University has praised my research and advocacy on voting rights, calling it both impactful and important for our colleagues, students, and the citizens of

---

[1] The cases in which I have served as an expert witness include: *Gruver, et al. v. Barton, et al.*, No. 1:19-cv-00121-MW-GRJ (N.D. Fla. 2019); *Rivera v. Detzner*, No. 1:18-cv-00152-MW-GRJ (N.D. Fla. 2018); *League of Women Voters of Florida, Inc. v. Detzner*, No. 4:18-cv-00251-MW-CAS (N.D. Fla. 2018); *Florida Democratic Party v. Scott*, No. 4:16-cv-00626-MW-CAS (N.D. Fla. 2016); *Arcia v. Detzner*, 1:12-cv-22282-WJZ (S.D. Fla. 2012); and *Romo v. Scott*, No. 2012-CA-000412 (Fla. Cir. Ct. 2012).

Florida. It has also commended my scholarly writings and my role as an advocate on voting issues, calling my work "important both as a scholar and as a contribution to the people of Florida." Ex. 24.[2]

5. Given the University's past support for my advocacy on voting issues, I did not hesitate to say yes when I was contacted by attorneys representing voting right advocates who had sued to enjoin SB 90. I was one of at least three University of Florida professors asked to act as an expert witness in that litigation.

6. I was asked to testify on a number of topics, including the history of voting discrimination against minority groups, the use of mail balloting and in-person early voting in Florida, and the impact of vote-by-mail measures on minority groups. The attorneys asked that I draft an expert report, submit to a deposition, and ultimately testify at trial.

7. In accordance with the University's Conflicts of Interest and Conflicts of Commitment Policy (the "Policy"), I submitted a request through UFOLIO disclosing my engagement as an expert witness in connection with the SB 90 litigation. Ex. 9.

8. On July 7, 2021 and again on October 11, 2021, I received notices through UFOLIO that my application had been disapproved. Exs.

---

[2] "Ex. X" refers to the exhibits attached to the Declaration of Morgan A. Davis, submitted herewith.

3

10, 13. The only explanation for my disapproval was that "[o]utside activities that may pose a conflict of interest to the executive branch of the State of Florida create a conflict for the University of Florida." Ex. 10. When I asked Dean Richardson of the College of Arts and Sciences for clarification, he told me that he had "consulted with the General Counsel and the VP, Office of Government and Community Relations" and that my application "remains disapproved for the reason cited." Ex. 36.

9. Following my denial, my counsel sent numerous letters to the University, urging the University to reverse the disapproval and noting that the Policy violated both my and my colleagues' constitutional rights.

10. The University refused to budge, issuing a statement on October 30, 2021, which said that our testimony would be adverse to the University's interests since it is a public institution. Ex. 16. In a communication via email on November 1, Ryan Fuller, the University's Deputy General Counsel, emphasized that a portion of the conflict stems from the fact that we would be compensated for our work as expert witnesses. Ex. 18. In addition, President Fuchs publicly stated on November 1 that we could participate in the litigation in our personal capacities but only if our work was pro bono. Ex. 17.

4

11. The University's statements implied that my colleagues and I were interested only in making a profit. Nothing could be further from the truth. I believe strongly that it is part of my duties to the people of the State of Florida to contribute my knowledge and expertise to matters of public importance, and I know of few matters more important to our democracy than voting rights.

12. After the University's Policy became public and was widely criticized, the University reversed its denial of my request to participate as expert witnesses in the SB 90 litigation on November 5, 2021. Exs. 22, 23.

13. While I am able to testify as an expert in this particular case, I feel no sense of comfort about my prospects of serving as an expert witness in the future. The University has made clear through the way it has interpreted and applied its Policy that it would seek to silence voices who disagree with the policies of the governing party in the State of Florida. And the amendments issued by the task force fail to place any true guard rails in place to prevent the University from, once again, silencing voices it disagrees with. Moreover, the amendments fail to provide any guidance on the timeframe for the review and approval process, nor do they provide any avenue for an expedited review. This is a significant issue when it comes to high-stakes, fast-moving cases, such as the elections-related cases for which

5

I am often asked to serve as an expert witness. This leaves the University fully able to continue its discriminatory viewpoint-based denials under the guise of a "remedied" Policy.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate.

Executed on December 2, 2021.

_____

Daniel A. Smith