# Exhibit 32

**The Gainesville Sun | Gainesville.com**

CAMPUS

# UF task force recommends high bar for blocking faculty from expert testimony against state

**Danielle Ivanov** The Gainesville Sun
Published 7:16 p.m. ET Nov. 23, 2021

In a five-page report released Tuesday night by University of Florida President Kent Fuchs, a special task force made 10 recommendations for revisions to the university's policies and procedures for how UF should respond when employees request approval to serve as expert witnesses in litigation in which their employer, the state of Florida, is a party.

The president said he accepted the recommendation and is "asking the appropriate offices to proceed with implementation," allowing for modifications with employee unions' collective bargaining agreements.

The move comes after a barrage of scrutiny and pushback since news broke in October that a handful of professors were denied approval by UF to participate in lawsuits against the State of Florida.

The UF's President's Task Force on Outside Activities and Conflicts of Interest's report came a week ahead of schedule after the group of seven, including faculty and administrators, was initially asked by Fuchs to give a recommendation the Monday after Thanksgiving.

**Background:** UF professors could testify in voting rights case if they are unpaid, spokeswoman says

**Doctor speaks out:** University of Florida professor told not to give legal counsel participated in lawsuit anyway

**UF backtracks:** University of Florida President Fuchs reverses decision blocking professors' testimony against state

Its members had previously held five public meetings over Zoom since Nov. 9 before voting unanimously to send the new report to Fuchs in Monday's short afternoon gathering, which

lasted only six minutes.

Here is a summary of the 10 recommendations:

1. Policy should publicly affirm the academic freedom of faculty performing their duties as teachers and scholars.
2. Policy should publicly affirm the free speech rights of faculty and staff to comment on matters of public concern.
3. Policy should clarify that comments, including those to the media, are not reportable as outside activities when made by faculty and staff as individual citizens not on behalf of another person or entity.
4. Policy should emphasize that comments on matters of public concern become reportable outside activities subject to university review when faculty and staff seek to testify as expert witnesses on behalf of a party in litigation.
5. Policy should establish a strong presumption that the university will approve faculty or staff requests to testify as expert witnesses as private citizens in all litigation in which the State of Florida is a party, regardless of viewpoint and compensation.
6. Requests to serve as expert witnesses in litigation in which the State of Florida is a party may be denied only with clear and convincing evidence that such testimony would conflict with an important and particularized interest of the university, which the university must set forth and explain in writing. Just saying there is a conflict is not enough, and neither is "an undifferentiated fear or apprehension of harm."
7. Policy should preserve the university's ability to deny requests to serve as expert witnesses when those requests, along with other outside activities, would cumulatively amount to a conflict of commitment.
8. Create a standing Provost's Advisory Committee to review proposed denials and provide a documented recommendation to the Provost, who will make the final determination. The committee should have regular meetings, consistent membership with voting rights and established structure, including diverse faculty with three-year terms and UF administrators. The Dean of each college should designate a faculty representative to serve as a dedicated consultant to confer with the committee.
9. Include an appeal process for all denials of requests to engage in an outside activity.
10. Increase transparency in the Conflict of Interestest Program process, including requiring documentation and specific reasoning for disapprovals with sufficient detail.

## Task force member: Conflict of viewpoint is not necessarily conflict of interest

Clay Calvert, one of the seven members and a UF professor of law and journalism and communications, said after the Monday vote that he thinks the task force did a good job with its recommendations and that he hoped, should they become policy, that their enforcers will keep a few things in mind:

The university, as a public institution, should have as its highest priority serving the public interest of the citizens of Florida. Faculty can do that by sharing their expert knowledge and opinions on matters of public concern, which Florida's courts and citizens should have the right to hear, he said.

"A conflict of viewpoint is not necessarily a conflict of interest," he said.

"I hope that when these decisions are made under these policies that they're grounded neither in fear of possible financial repercussions to the University of Florida nor in any efforts to curry favor to those powerful few who may control or influence the purse strings that affect the University of Florida," Calvert said.

Hub Brown, dean of the UF College of Journalism and Communications and another task force member, said Tuesday was extremely confident in the group's recommendations.

"I think that we are better off as a university because we had this conversation," Brown said. "We're better off as a university because we were able to articulate these principles and that those principles are grounded in the First Amendment. So I'm very, very happy with where we are."

The task force's last two planned public meetings, scheduled for Tuesday and Monday of next week were canceled after the group's recommendation was sent to Fuchs, according to UF spokeswoman Hessy Fernandez. Its work is now done.

## UF has been center of attention due to controversy

Eyes and minds from around the city, state, country and world have been trained on the university for the past month as the issue of employees' outside work and conflicts of interest has unfolded, with many questioning UF's commitments to academic freedom and free speech.

Court documents filed in late October first showed that three political science professors from UF were restricted from giving expert testimony in a voting lawsuit against the state. A few days later, the university said the trio could participate but only unpaid, on their own time and without using UF resources.

As more faculty came forward saying they were also restricted, including four law professors and one doctor, UF backtracked, with Fuchs announcing the task force's creation and asking the university's Conflicts of Interest Office "to reverse the decisions on recent requests by UF employees to serve as expert witnesses in litigation in which the state of Florida is a party and to approve the requests regardless of personal compensation, assuming the activity is on their own time without using university resources."

Some of the professors have since filed suit against the university, alleging their First Amendment rights were violated. And multiple inquiries, investigations, talks, petitions, letters and protests have been launched from groups like UF's faculty union, Faculty Senate and accreditor, the Southern Association of Colleges and Schools Commission on Colleges.

Attorneys for those professors issued a statement Tuesday evening saying there are not satisfied with the task force recommendations.

**Local protests:** Protest on the street and in writing show continued concern at UF over academic freedom

**Accreditor reaches out:** Accreditor: Did University of Florida violate academic freedom standards by blocking professors' testimony?

**Union demands:** UF faculty union sticks by its list of demands on academic freedom

In an emailed statement, David A. O'Neil and Paul Donnelly, counsel to the six professors suing UF, said Tuesday night after the task force's recommendations were published that they were disappointed but not surprised by its "window-dressing recommendations."

"The proposed changes address only the narrow issue of expert testimony, and even on that limited topic, they fail to cure the constitutional problem with the university's conflict of interest policy," the statement read. "That policy still allows the university to restrain the faculty's free speech based on impermissible reasons and in the University's discretion. We will continue to press the University to make the real change that the Constitution requires."

The concern has even drawn the attention of a U.S. Congress subcommittee. On Thursday, Nov. 18, the U.S. House of Representatives Subcommittee on Civil Rights and Civil Liberties

sent a letter to the UF president requesting a number of documents and announcing it was "investigating the extent to which your university's actions have undermined the integrity of academic freedom and interfered with employees' constitutional right to speak freely as private citizens on matters of great public concern."