# Exhibit 34

CONNECT:   Email Newsletter Sign Up



# PRESS RELEASES

Home // News // Press Releases

## Florida Members of Congress Call on UF to Lift Gag on Professors in Voting Rights Suit

Washington, November 2, 2021

*Washington D.C.* – Today, Florida's entire Democratic congressional delegation sent a letter to University of Florida President Kent Fuchs condemning the school's attempt to block three professors from testifying in a state voting rights lawsuit and the federal lawmakers requested that school administrators reverse any attempts to stifle the instructors' academic freedoms and free speech rights.

"As a delegation, there are few values we want to foster and protect more in our public university system than the freedom to speak out against laws that infringe on our fundamental rights as citizens," said the letter, led by U.S. Rep. Debbie Wasserman Schultz (FL-23), a University of Florida graduate. "We urge you to reconsider this 'prior restraint' on speech that violates the First Amendment as well as the deeply rooted principles of academic freedom that we know you and the University of Florida community hold so dear."

Administrators at UF contend that the professors' testifying in a lawsuit challenging the discriminatory impact of a new voting rights law would pose a conflict and be "adverse to UF's interest." However, the professors participated in a similar 2019 legal challenge to a Florida law that also placed restrictions on voting rights.

"On matters of public concern, state university professors should not be punished or prohibited from speaking if they do not disrupt the educational environment or proper functioning of the University," the



freedoms and free speech rights. Among the Florida Members signing the letter, Wasserman Schultz, and Reps. Kathy Castor (FL-14), Ted Deutch (FL-22), Frederica Wilson (FL-24), Lois Frankel (FL-21), Charlie Crist (FL-13), Val Demings (FL-10), Al Lawson (FL-05), Stephanie Murphy (FL-07), and Darren Soto (FL-09).

The lawmakers noted that any action to restrict the professors' free speech rights would undermine the school's claims to academic freedom, and its ability to recruit and retain top academic talent. And given the law they are challenging, the professors' efforts should be encouraged.

"Professors Smith, McDonald, and Austin are lending their voice and expertise to oppose this unconstitutional and undemocratic effort, one that most disturbingly, will disproportionately inhibit Black and Latino citizens from exercising their fundamental right to vote," the legislators wrote. "Rather than standing in the way, the University of Florida should encourage faculty in efforts that prevent the infringement of fundamental rights. Assisting political actors in carrying on Florida's ugly vestige of minority voter suppression would be a historic stain on the university and this Administration's legacy."

Read the entire letter below:

November 2, 2021

Dr. W. Kent Fuchs

President

University of Florida

Gainesville, FL 32611

Dear President Fuchs,

*We write to express our profound disappointment with the decision to prevent three University of Florida professors from serving as expert witnesses in a lawsuit challenging Florida's new, restrictive and undemocratic voting rights law.  As a delegation, there are few values we want to foster and protect more in our public university system than the freedom to speak out against laws that infringe on our fundamental rights as citizens.  We urge you to reconsider this 'prior restraint' on speech that violates the First Amendment as well as the deeply rooted principles of academic freedom that we know you and the University of Florida community hold so dear.*

*The First Amendment safeguards expression from regulation by public institutions, inside and outside the classroom.  On matters of public concern, state university professors should not be punished or prohibited from speaking if they do not disrupt the educational environment or proper functioning of the university.  In this instance, it is hard to envision a matter of greater public concern than whether Florida's citizens can exercise their right to vote.  By offering their expert testimony, in no way do these professors interfere with an*

  

testimony clearly infringes on the First Amendment rights of Professors Smith, McDonald, and Austin.

Further, any action to muzzle these professors also contradicts the University of Florida's own claim to honor academic freedom. Since its founding over 160 years ago, the University of Florida has been a premier public research university, with distinguished faculty and top-ranked academic programs. Along with educational rigor, the university also measures its success on community impact and improving lives. According to school regulations, faculty must be "free to cultivate a spirit of inquiry and scholarly criticism" and "publish the results in a manner consistent with professional obligations." These regulations are consistent with well-established principles of academic freedom developed by educational associations and implemented nationwide. The scholarship conducted at the university is done, as its own mission states, to serve "the public good," and institutional censorship on political grounds must not be tolerated.

In some of its public statements, the university also seems to have taken a modified position that participation in this voting rights lawsuit would not constitute a conflict of interest, but only if the professors were working pro bono. This distinction is troubling for many reasons. Most importantly, it is common practice in the legal profession to compensate experts when they contribute to testimony or written reports. The ability to exercise their academic freedom and First Amendment rights should not be dependent on forgoing payment. Second, it appears to be applied inconsistently. This latest pro bono position seems to represent a sharp break from past precedent at the University of Florida and would position the university firmly outside the mainstream of elite academic institutions. Since 2012, Professor Smith has repeatedly testified in voting rights cases against the state of Florida. In each instance, it is our understanding that his participation has been approved by the university, and he has been paid for his work. The decision to change course and only permit pro bono participation provides even greater credence to the assumption that this decision involved politically-motivated viewpoint discrimination.

The University of Florida also indicated in a public statement that permitting faculty to participate in this lawsuit would be "adverse to the University's interests as a Florida institution." Nothing could be further from the truth. The passage of SB 90 will make voter registration harder, limit voting-by-mail, and curb the secure ballot drop boxes that 1.5 million Floridians used in 2020. Professors Smith, McDonald, and Austin are lending their voice and expertise to oppose this unconstitutional and undemocratic effort, one that most disturbingly, will disproportionately inhibit Black and Latino citizens from exercising their fundamental right to vote. Rather than standing in the way, the University of Florida should encourage faculty in efforts that prevent the infringement of fundamental rights. Assisting political actors in carrying on Florida's ugly vestige of minority voter suppression would be a historic stain on the university and this Administration's legacy.

It is our hope that you simply reverse your current positions and allow these professors to participate with compensation in this voting rights lawsuit. The prospect that the University of Florida would stand on an academic island in this respect would undoubtedly chill its ability to retain and recruit top talent.




such faculty participation?

2.      Why has there been a change from past precedent that allowed University of Florida professors to participate in lawsuits against the state of Florida? Has the university ever previously prevented faculty participation in a lawsuit against the state of Florida because it deemed it a conflict of interest? If so, can you please provide examples?

3.       If there was indeed a recent change in policy, can you please provide information indicating the timing and notification that was provided to the faculty of this change?

4.       If, as you claim, this testimony is "adverse to the interests" and therefore constitutes a conflict of interest, how would permitting pro bono participation mitigate this conflict? Have there been other instances of denying professors the ability to testify for pay, and a pro bono alternative was offered instead? Again, can you please provide examples?

We appreciate your consideration and look forward to your response.

####

Tags:  College Affordability/Student Loans/Pell

CONNECT ON
# SOCIAL








D. Wasserman Schultz @RepDWSTweets a minute ago
Dissent is critical for a truly free people. That does not exist in Cuba, as yesterday's crackdown on peaceful prot…

D. Wasserman Schultz @RepDWSTweets a min
The #BuildBackBetter Act offers a once-in-
to lower prescription drug costs for millions

CONNECT:      Email Newsletter Sign Up



## STAY
# CONNECTED

Receive regular email updates from Debbie

Enter Email

### SIGN UP

      

## OFFICE
# LOCATIONS

### Washington, D.C.

1114 Longworth H.O.B.
Washington, DC 20515
Phone: (202) 225-7931
Fax: (202) 226-2052

CONNECT:     Email Newsletter Sign Up



Fax: (954) 845-0396

## Aventura Office

19200 West Country Club Dr
Aventura, FL 33180
Phone: (305) 936-5724
Fax: (305) 932-9664



Privacy Policy    Contact Me