# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

|  |  |
|---|---|
| SHARON WRIGHT AUSTIN, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No.: 1:21-cv-00184-MW-GRJ |
| UNIVERSITY OF FLORIDA BOARD OF TRUSTEES, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

The author block

Amy Meyers Hass
 *Vice President and
 General Counsel*
Fla. Bar No. 483346
Ryan Fuller
 *Associate Vice President and
 Deputy General Counsel*
Fla. Bar No. 635324
UNIVERSITY OF FLORIDA
OFFICE OF GENERAL COUNSEL
123 Tigert Hall, P.O. Box 113125
Gainesville, Florida 32611
(352) 392-1358
amhass@ufl.edu
ryanf@ufl.edu

H. Christopher Bartolomucci
D.C. Bar No. 453423
Brian J. Field*
D.C. Bar No. 985577
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com
bfield@schaerr-jaffe.com

*Admitted *pro hac vice*

*Counsel for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY INJUNCTION STANDARDS ........................................1

ARGUMENT ..........................................................................................2

I.      PLAINTIFFS HAVE FAILED TO SHOW ACTUAL AND IMMINENT IRREPARABLE INJURY...........................................................................2

      A.    The Original Plaintiffs........................................................... 3

      B.    The New Plaintiffs................................................................. 5

      C.    Plaintiffs' Argument for Irreparable Harm Fails. ................ 7

      D.    Plaintiffs' Delay in Seeking a Preliminary Injunction Undermines Their Claim of Irreparable Harm................... 11

      E.    Plaintiffs Seek to Alter, Not Preserve, the Status Quo...................... 12

II.     PLAINTIFFS HAVE FAILED TO SHOW THAT THEY CLEARLY ARE LIKELY TO SUCCEED ON THE MERITS.....................................14

      A.    This Court Lacks Jurisdiction. ........................................... 14

            1.    Mootness ................................................................... 14

            2.    Lack of Standing ....................................................... 15

            3.    Lack of Ripeness ....................................................... 16

            4.    12(b)(6) Arguments in Motion to Dismiss ............... 16

      B.    Plaintiffs Have Not Clearly Established That They Are Likely to Succeed on the Merits of Their First Amendment Claim............. 17

            1.    Plaintiffs' Unbridled Discretion Argument Fails. ................... 19

            2.    Plaintiffs' Viewpoint Discrimination Argument Fails. ........... 23

            3.    Plaintiffs' Overbreadth Argument Fails. ................................. 24

III.    The Remaining Preliminary Injunction Factors Do Not Support Relief.......26

CONCLUSION.........................................................................................27

CERTIFICATION PURSUANT TO LOCAL RULE 7.1(F)..................................29

CERTIFICATE OF SERVICE .................................................................30

# TABLE OF AUTHORITIES

## Cases

*Barrett v. Walker County School District*,
   872 F.3d 1209 (11th Cir. 2017) .............................................. 7, 9, 15, 22

*Bloedorn v. Grube*, 631 F.3d 1218 (11th Cir. 2011) ................................19

*Callahan v. U.S. Dep't of HHS*, 939 F.3d 1251 (11th Cir. 2019) ............................1

*Cheshire Bridge Holdings, LLC v. City of Atlanta*,
   15 F.4th 1362 (11th Cir. 2021) ................................................................24

*City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988) .............. 19, 22

*Doe v. Valencia Coll.*, 903 F.3d 1220 (11th Cir. 2018) .................................... 24, 25

*FF Cosmetics FL, Inc. v. City of Miami Beach*,
   866 F.3d 1290 (11th Cir. 2017) ...................................................... 10, 24

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) .............................21

*Hand v. DeSantis*, 946 F.3d 1272 (11th Cir. 2020) .......................................... 14, 15

*Hoover v. Morales*, 164 F.3d 221 (5th Cir. 1998) ................................ 10, 17, 18, 23

*Isle of Dreams, LLC v. City of N. Bay Vill.*,
   513 F. App'x 917 (11th Cir. 2013) .......................................................8

*LaCroix v. Lee County*, 819 Fed. App'x 839 (11th Cir. 2020) ...............................15

*Laird v. Tatum*, 408 U.S. 1 (1972) ........................................................8

*Martinez v. Mathews*, 544 F.2d 1233 (5th Cir. 1976) ...............................13

*Motient Corp. v. Dondero*, 529 F.3d 532 (5th Cir. 2008) ....................................5, 14

*Ne. Fla. Ch. of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*,
   896 F.2d 1283 (11th Cir. 1990) ...............................................13

*Nken v. Holder*, 556 U.S. 418 (2009) .......................................................26

*Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020) ....................................10

## TABLE OF AUTHORITIES (CONT'D)

**Cases (cont'd)**

*Powers v. Sec'y, Fla. Dep't of Corr.*, 691 F. App'x 581 (11th Cir. 2017)....... 12, 13

*Rankin v. McPherson*, 483 U.S. 378 (1987) ............................................................19

*Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000) (en banc)...................... 1, 7, 9, 13

*Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020)...................................23

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) .................................23

*Study Edge, LLC v. Skoolers Tutoring Ctr., LLC,*
    No. 1:17cv76-MW/GRJ, 2017 WL 6994563
    (N.D. Fla. Dec. 8, 2017) ........................................................ 1, 5, 12, 13

*Swain v. Junior*, 961 F.3d 1276 (11th Cir. 2020) ................................................2, 26

*Tracy v. Fla. Atl. Univ. Bd. of Trustees*, 980 F.3d 799 (11th Cir. 2020)......... *passim*

*United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995)......................18

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)........................................2

*Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244 (11th Cir. 2016).............. 1, 11, 12

**Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2009) ..............................................................2

Defendants—the University of Florida ("UF") Board of Trustees, President Kent Fuchs, Provost Joseph Glover, and Dean Laura Rosenbury—hereby oppose Plaintiffs' motion for a preliminary injunction (Doc. 30).

## PRELIMINARY INJUNCTION STANDARDS

Plaintiffs face "a tough road in establishing four prerequisites to obtain a preliminary injunction." *Wreal, LLC v. Amazon.com, Inc*., 840 F.3d 1244, 1248 (11th Cir. 2016). "Such relief is appropriate if—but only if—the movant shows (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Callahan v. U.S. Dep't of HHS*, 939 F.3d 1251, 1257 (11th Cir. 2019) (quotation marks omitted). As both your honor and the Eleventh Circuit have emphasized, "A preliminary injunction should not be granted unless the movant *clearly* carries its burden of persuasion on *each* of these prerequisites." *Study Edge, LLC v. Skoolers Tutoring Ctr., LLC*, No. 1:17cv76-MW/GRJ, 2017 WL 6994563, at *1 (N.D. Fla. Dec. 8, 2017) (emphases in original) (quotation marks omitted); *see also Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (movant must have "clearly established" all four factors).

As shown below, Plaintiffs have not clearly carried their burden. In particular,

they have fallen short on the two most important factors, irreparable harm and likely merits success.

## ARGUMENT

## I. PLAINTIFFS HAVE FAILED TO SHOW ACTUAL AND IMMINENT IRREPARABLE INJURY.

The irreparable injury test is demanding:  "As we have emphasized on many occasions, the asserted irreparable injury must be neither remote nor speculative, but actual and imminent."  *Swain v. Junior*, 961 F.3d 1276, 1292 (11th Cir. 2020).   A mere possibility, or fear, of harm is not enough.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").   Nor does it suffice for Plaintiffs to contend that UF's revised policy "poses a danger" to their rights "in the abstract."  *Swain*, 961 F.3d at 1292.

Plaintiffs fail to show that, absent an injunction, they will suffer "actual" and "imminent" injury.[1]  Indeed, they fail to show that they will suffer any injury at all.

---

[1] "Actual" is defined as: existing in fact; real.  "Imminent" means: threatening to occur immediately; dangerously impending; about to take place.  *See* BLACK'S LAW DICTIONARY (11th ed. 2009).

### A.     The Original Plaintiffs

UF *approved* the requests of original Plaintiffs Austin, McDonald, and Smith to act as paid expert witnesses in litigation against the State of Florida.  *See* Fuller Decl. ¶ 11 (Doc. 23-1 at pg. 2); Ex. 7 to Fuller Decl. (Doc. 23-1 at pg. 206); Ex. 8 to Fuller Decl. (Doc. 23-1 at pg. 208); *see also* Docs. 31-20, 31-22 & 31-23 (approval notices) (exhibits to Davis Decl.).  UF then significantly revised its conflicts policy. *See* Fuller Decl. ¶ 17 (Doc. 23-1 at pg. 3) & Exs. 11 & 12  (Doc. 23-1 at pp. 219–23, pp. 225–26).

Under the revised policy, there is now a "strong presumption" that a faculty member may testify as an expert in litigation to which the State is party, regardless of the substance of the faculty member's testimony and regardless of whether the faculty member is compensated for her testimony.  Fuller Decl. ¶ 17 (Doc. 23-1 at pg. 3) & Ex. 11 (Doc. 23-1 at pg. 225).  The revised policy imposes a "heavy burden on the university to overcome the strong presumption" that a faculty member may testify as an expert, such that a request to do so may be denied only when "clear and convincing evidence" establishes that such testimony would "conflict with an important and particularized interest of the university, which the university must set forth and explain in writing."  Fuller Decl. ¶ 17 (Doc. 23-1 at pg. 3) & Ex. 11 (Doc. 23-1 at pp. 225–26).

UF's decisions to grant the original Plaintiffs' requests and to revise its

conflicts policy to make it much more favorable to faculty members who wish to act as experts in litigation—decisions that UF made even *before* Plaintiffs filed their first complaint, *see* Fuller Decl. ¶ 12 (Doc. 23-1 at pg. 3)—have significantly altered the landscape.  While it might have made sense for the original Plaintiffs to move for an injunction *before* UF decided to grant their requests and revise its policy, they did not do so.  But moving for such relief in the current posture, *after* UF made decisions very favorable to them, is curious to say the least.

The past controversy concerning the original Plaintiffs has been overtaken by events—UF approved their requests.  *See* Austin Decl. ¶ 14 ("I am able to testify as an expert witness in the SB 90 litigation") (Doc. 30-4); McDonald Decl. ¶ 11 (UF "reversed its denials of my request to participate in the SB 90 litigation") (Doc. 30-5); Smith Decl. ¶ 13 ("I am able to testify as an expert in this particular case") (Doc. 30-6).  An injunction now would have no point.  There is no need or warrant for one.

The original Plaintiffs do not identify in their declarations (Docs. 30-4, 30-5, 30-6) any pending requests to perform outside activities.  Indeed, UF has no pending requests from them.  *See* Second Fuller Decl. ¶ 7.[2]  Nor do they identify any actual, specific outside activity opportunities, now available to them, that they contend UF will not approve.  Even if they had pending requests or could point to current outside

---

[2] The second Fuller declaration accompanies this brief.  The first Fuller declaration, filed with Defendants' motion to dismiss, is cited herein as "Fuller Decl."

work opportunities that they think UF would deny, that would not be enough to show irreparable injury.  But they have not even made that showing.

In sum, they have not shown that, without an injunction, they will suffer any harm, much less actual, imminent, irreparable harm.  *See Motient Corp. v. Dondero*, 529 F.3d 532, 537 (5th Cir. 2008) ("There has been no showing that there will be any future harm, let alone irreparable harm.").  The original Plaintiffs have not "*clearly* carrie[d]" their burden to demonstrate irreparable injury in the form of actual and imminent harm.  *Study Edge*, 2017 WL 6994563, at *1.

### B.    The New Plaintiffs

The amended complaint added Plaintiffs Nunn, Reid, and Goldhagen.  They do not require or deserve injunctive relief any more than the original Plaintiffs.

UF granted, back in July 2020, the requests made by Professor Nunn and Professor Reid to join an *amici* brief in a case challenging state law.  *See* Docs. 30-1, 30-2.  On July 12, 2020, Dean Rosenbury sent an email to Nunn advising him that the *amici* brief could include his UF affiliation so long as the brief stated that the affiliation was for informational purposes only.  *See* Second Fuller Decl. ¶ 3; Exs. 2 to Second Fuller Decl.  The approval notices sent by UF to Nunn and Reid through the UFOLIO system that same day said the same thing.  *See* Second Fuller Decl. ¶ 5; Exs. 3 & 4 to Second Fuller Decl.  This continues to be UF policy.  *See* Second Fuller Decl. ¶ 4.  Thus, in the future, as in the past, if Plaintiffs or any faculty member

wish to perform approved outside activity by lending their names to an *amici* brief, the brief may identify them as UF professors.  Like the original Plaintiffs, Nunn and Reid have not shown any irreparable injury requiring preliminary injunctive relief.  They have failed to show that, without an injunction, they will suffer harm both actual and imminent.  Nunn and Reid have no pending outside activity requests.  *See* Second Fuller Decl. ¶ 7.  The newly relaxed conflicts policy applies to them.

Finally, we come to Goldhagen.  He states (Doc. 30-3) that his outside activity request, submitted in August 2021, was denied.  *Id*. ¶¶ 7–8.[3]  "Eager to participate" in the mask mandate case, Goldhagen "urged" the attorney who had sought his expert services to subpoena his testimony.  *Id*. ¶ 9.  "I understood that, if he did so, I would be required to testify," notwithstanding UF's denial.  *Id*.  But the case "moved to quickly" and the attorney "sought other expert witnesses."  *Id*.  By this account, the opportunity to act as an expert in that case is no longer available to Goldhagen.  An injunction would do him no good.  The ship has sailed.  Plaintiffs make no argument to the contrary.

As Defendants explained in their motion to dismiss, Goldhagen recently told a very different story to a news organization.  *See* Mot. to Dismiss 12 (Doc. 23).  In a videotaped interview, Goldhagen told CBS4 News that he *did* testify, despite UF's

---

[3] UF subsequently approved his request on November 5, after it decided to revise its policy.  *See* Ex. 26 to Davis Decl. (Doc. 31-26).

denial of his request.  "The decision to not allow me to participate was not one that I personally or professionally could sustain," Goldhagen stated on video.  *See* Ex. 10 to Fuller Decl. (Doc. 23-1 at pg. 216).  If Goldhagen told the truth when he said that he did not "sustain" UF's decision, but participated anyway, he cannot claim that his speech was prevented.  But whether or not he spoke in the past, he has failed to show that his speech is about to be curtailed in the immediate future.

In sum, neither the original Plaintiffs nor the new Plaintiffs have "clearly established" actual and imminent irreparable injury.  *Siegel*, 234 F.3d at 1176.

### C.    Plaintiffs' Argument for Irreparable Harm Fails.

Plaintiffs offer only a brief irreparable harm argument on pages 32–33 of their motion.  They rely on *Barrett v. Walker County School District*, 872 F.3d 1209 (11th Cir. 2017), but *Barrett* does not save the day for them.  In *Barrett*, the district court, after granting summary judgment to Barrett, entered a permanent (not preliminary) injunction.  The Eleventh Circuit held:  "Barrett suffered an irreparable injury.  His right to speak at the February 17 meeting was violated and his right to speak at future meetings was chilled and could be prevented altogether under the Policy."  *Id*. at 1229 (citing *Siegel*, 234 F.3d at 1178).

The instant case is very different from *Barrett*.  Here, the original Plaintiffs were allowed to speak under the old UF policy; UF granted their requests.  And since then UF has adopted a significantly revised policy.  Two of the new Plaintiffs, Nunn

and Reid, were also allowed to speak, more than a year ago.  It is not clear whether Goldhagen spoke or not; according to his declaration he did not, but according to his videotaped interview he did.  In any event, that was under the old policy.  The much relaxed new policy is here now.  The new UF policy is nothing like the school board policy in *Barrett*, which gave "unbridled discretion" to the board and was never revised.  Far from conferring unbridled discretion, the revised UF policy enacts a strong presumption in favor of permitting faculty members to work as paid experts against the State.  Furthermore, none of the Plaintiffs has a pending outside activity request or has identified an actual and specific outside activity opportunity that is now available to them.  And none of the Plaintiffs contend, or could reasonably contend, that he or she has been chilled by the revised policy.  "'Allegations of a subjective chill' alone are not enough."  *Isle of Dreams, LLC v. City of N. Bay Vill.*, 513 F. App'x 917, 920 (11th Cir. 2013) (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)).[4]  Plaintiffs Goldhagen and McDonald submitted new outside activity requests on November 16 and December 7, respectively, and UF approved those requests.  *See* Second Fuller Decl. ¶¶ 9–10.  Again, the new policy sets a strong presumption in favor of faculty members testifying as experts.  If, hypothetically,

---

[4] Nunn alleges that he declined an invitation to join an *amicus* brief on November 7, 2021.  But that was *before* UF adopted its new policy on November 23.  *See* Ex. 12 to Fuller Decl. (Doc. 23-1 at pg. 225).  None of the Plaintiffs claims to have turned down outside work after November 23.

UF in the future denied an outside activity request under the new policy, that would be the time for the affected faculty member to come to this Court.  Now is not the time.

The Eleventh Circuit in *Barrett* cited *Siegel*, and only *Siegel*, in support of its holding that "Barrett suffered an irreparable injury."  *Barrett*, 872 F.3d at 1229 (citing *Siegel*, 234 F.3d at 1178).  Here's what *Siegel* said:  "The only areas of constitutional jurisprudence where we have said that an on-going violation may be presumed to cause irreparable injury involve the right of privacy and certain First Amendment claims establishing an imminent likelihood that pure speech will be chilled or prevented altogether." 234 F.3d at 1178.  So Plaintiffs have two problems.  First, there is no "on-going violation" of here.  Plaintiffs have not identified any speaking opportunity, now open to them, that UF has said they must pass up.  Second, they have not shown an "imminent likelihood" that their speech "will be chilled or prevented altogether."  *Id.*[5]  On the contrary, UF's revised conflicts policy creates a strong presumption that they may work as paid experts in litigation against the State.  And both Goldhagen and McDonald filed new outside activity requests in, respectively, November and December, 2021.  No chilling there.  UF approved the requests.  *See* Second Fuller Decl. ¶¶ 9–10.

---

[5] Again, "imminent" is defined as threatening to occur immediately; dangerously impending; about to take place.  *See supra* note 1.

Plaintiffs also cite *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290 (11th Cir. 2017), and *Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020). Mot. 33 (Doc. 30). But those cases just say that "an ongoing violation of the First Amendment constitutes an irreparable injury." *FF Cosmetics FL*, 866 F.3d at 1298; *Otto*, 981 F.3d at 870 (quoting *FF Cosmetics FL*). And as just explained, there is no such "ongoing violation" here.

It is telling that Plaintiffs do not cite *Hoover v. Morales*, 164 F.3d 221 (5th Cir. 1998), in their irreparable harm argument. In *Hoover*, Texas A&M professors challenged a policy that "prohibits university professors from taking employment as consultants or expert witnesses when doing so would create a conflict with the interests of the State." *Id*. at 223. A legislative rider, also challenged, denied payment of salary to professors violating the policy. The professors obtained a TRO and a preliminary injunction. As to irreparable harm, they argued that "State enforcement of the rider and policy threatened to block [them] from acting as expert witnesses in major litigation brought by the State against the tobacco industry, whose trial was to start in only months." Brief of Appellees Dr. Hoover *et al*. at 3, *Hoover v. Morales*, No. 97-50734 (5th Cir.), attached as Ex. 5 to Second Fuller Decl. The professors had already "been retained" as experts in that litigation. *Hoover*, 164 F.3d at 224 & n.1.

The Plaintiffs here are not in the same boat as the Texas A&M professors, and

10

they have not made a comparable showing of alleged irreparable harm.   UF has not blocked, or threatened to block, Plaintiffs from working as experts in a case about to go to trial.   Nor has UF threatened them with a loss of pay.

Assuming *arguendo* that the Fifth Circuit correctly held that the Texas A&M professors proved irreparable harm, the showing made by the Plaintiffs here falls far short of that made by the professors in *Hoover*.

### D.   Plaintiffs' Delay in Seeking a Preliminary Injunction Undermines Their Claim of Irreparable Harm.

In this Circuit, "a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Wreal*, 840 F.3d at 1248.   Here, the one month delay between the commencement of this action and the filing of the motion for preliminary injunction provides further support for the conclusion that Plaintiffs are not facing irreparable injury.   If they were about to suffer actual and imminent harm, they would have moved faster.

Plaintiffs filed their complaint on November 5, 2021, after UF announced its decisions to grant the original Plaintiffs' outside activity requests and to revise its policy.   *See* Doc. 1.   They amended their complaint ten days later, on November 15. *See* Doc. 19.   They filed their preliminary injunction motion on December 3, nearly a month after commencing this action.   *See* Doc. 30.   By that time, Defendants had already filed their motion to dismiss, two days earlier, on December 1.   *See* Doc. 23.

As the Eleventh Circuit explained in *Wreal*, "the very idea of a *preliminary*

11

injunction is premised on the need for speedy and urgent action." 840 F.3d at 1248 (emphasis in original). Plaintiffs' four-week delay in seeking an injunction suggests that the alleged injury here is not irreparable, i.e., actual and imminent. *See Study Edge*, 2017 WL 6994563, at *5 ("The long delay in seeking a preliminary injunction indicates to this Court that speedy and urgent action was not needed here—and that no irreparable harm was imminent."). Since the Plaintiffs evidently did not see a need for speed, neither should this Court.

To be clear, Defendants are not arguing that Plaintiffs dilly-dallied for so long that their motion ought to be denied on that basis alone. *Cf. Wreal*, 840 F.3d at 1248 ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm."). But it is fair to say that their "failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Id*.

### E.   Plaintiffs Seek to Alter, Not Preserve, the Status Quo.

Enough has been said to reject Plaintiffs' assertion of irreparable injury. But one last point is in order. Plaintiffs' motion seeks to alter, not preserve, the status quo. That fact adds even more weight to the burden they must carry here.

"The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Powers v. Sec'y, Fla. Dep't of Corr.*, 691 F. App'x 581, 583 (11th Cir. 2017) (quoting *Ne. Fla.*

*Ch. of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990)). Even before Plaintiffs filed suit, UF granted the original Plaintiffs' requests and decided to revise its conflicts policy. Before Plaintiffs moved for an injunction, UF adopted the revised policy.

Plaintiffs ask this Court to change, not maintain, the status quo by enjoining Defendants from enforcing the revised policy. *See* Mot. 34 (Doc. 30). Such relief is "particularly disfavored" under both Eleventh Circuit and binding Fifth Circuit precedents. *See Powers*, 691 F. App'x at 583 ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo[,] is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.") (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)). Here, the facts and the law clearly disfavor the Plaintiffs.

\*   \*   \*

Plaintiffs have failed to "*clearly* carr[y]" their burden to show they will suffer actual and imminent irreparable harm absent an injunction, and thus the Court need go no further. *Study Edge*, 2017 WL 6994563, at \*1. Because they failed to put the irreparable injury factor in the win column, their proposed injunction should be denied "on that basis alone." *Siegel*, 234 F.3d at 1176.

13

## II.   PLAINTIFFS HAVE FAILED TO SHOW THAT THEY CLEARLY ARE LIKELY TO SUCCEED ON THE MERITS.

### A.   This Court Lacks Jurisdiction.

As explained in Defendants' motion to dismiss, this Court lacks jurisdiction for three reasons—mootness and lack of standing and ripeness.  *See* Mot. to Dismiss 15–26 (Doc. 23).   Plaintiffs cannot succeed on the merits without jurisdiction. Defendants hereby incorporate the arguments made in their motion to dismiss.

#### 1.   Mootness

This case is moot, for two reasons.  First, UF granted Plaintiffs' requests. Second, UF revised its policy.  As to the first reason, Plaintiff got what they wanted. That makes this matter moot.  *See Motient*, 529 F.3d at 538 ("[T]hat fight is over. Motient won.").  UF approved all of the Plaintiffs' requests, including Goldhagen's requests from August and September, 2021.  *See* Second Fuller Decl. ¶ 8.  UF also approved recent requests by Goldhagen and McDonald in November and December, 2021.  *Id*. ¶¶ 9–10.  Accordingly, as in *Motient*, "the possibility of any irreparable harm [is] speculative at best."  529 F.3d at 538.  "Any ruling by this or any other court would merely be a prediction of what the result should be if certain events were to occur at some unspecified future date."  *Id*.

As to the second reason, UF's revised policy includes a strong presumption in favor of faculty members acting as experts in litigation against the State of Florida. *Hand v. DeSantis*, 946 F.3d 1272 (11th Cir. 2020), is instructive here.  The Eleventh

Circuit held in *Hand* that the case was moot because "[i]n light of the changes to Florida's voter re-enfranchisement system since this case began … no plaintiff requires relief from Florida's former re-enfranchisement system." *Id*. at 1275.  So too here.  UF's policy has changed.  The old policy is no more.  The kerfuffle over the old policy has ended.  There is no longer "an active controversy." *Id*.  The "voluntary cessation" and "capable of repetition, yet evading review" exceptions to the mootness doctrine do not apply here. *See* Mot. to Dismiss 15–20 (Doc. 23).

## 2.    Lack of Standing

Plaintiffs lack standing to seek an injunction. *See* Mot. to Dismiss 20–23 (Doc. 23).  In *LaCroix v. Lee County*, 819 Fed. App'x 839 (11th Cir. 2020), plaintiff LaCroix challenged on First Amendment grounds a county permitting ordinance that allegedly granted unbridled discretion to county officials and was overbroad.  The Eleventh Circuit held that LaCroix lacked standing to seek injunctive relief.  It explained that "LaCroix has failed to provide the location of his future free speech activity with the requisite specificity to demonstrate a substantial likelihood of future injury." *Id*. at 843.  The Court distinguished *Barrett* on the ground that "unlike the plaintiff in *Barrett*, LaCroix has not shown that he is 'subject to' or 'imminently will be subject to' the Permitting Ordinance." *Id*. at 843–44 (quoting *Barrett*, 872 F.3d at 1220).  Here, Plaintiffs have the same problem as LaCroix.  They have not showed that they have actual and specific outside activity opportunities available to them

15

that would likely be denied under UF's revised policy regarding participation in litigation adverse to the State.  *LaCroix*, not *Barrett*, controls here.

### 3. Lack of Ripeness

Plaintiffs' challenge to the revised conflicts policy is not ripe for court review. *See* Mot. to Dismiss 23–26 (Doc. 23).  UF's revised policy has not even been applied to most of the Plaintiffs.  In November and December, 2021, UF approved, under the revised policy, new outside activity requests made by Goldhagen and McDonald. *See* Second Fuller Decl. ¶¶ 9–10.  UF also approved, under the revised policy, three old requests made by Goldhagen.  *Id*. ¶ 8.  Unless and until UF denies a new request made by one of the Plaintiffs under the revised policy, any challenge by them to the revised policy is not ripe.  *See Tracy v. Fla. Atl. Univ. Bd. of Trustees*, 980 F.3d 799, 810 n.3 (11th Cir. 2020) (holding that professor's "challenge to the University's application of the Policy's 'conflict of interest' definition" was unripe).

### 4. 12(b)(6) Arguments in Motion to Dismiss

The claims of the original Plaintiffs cannot succeed for the additional reasons that (1) their claims are barred by their failure to file grievances under the collective bargaining agreement ("CBA"), and (2) they waived their First Amendment claims. *See* Mot. to Dismiss 26–33 (Doc. 23).  Defendants incorporate both arguments here. *See also Tracy*, 980 F.3d at 805 n.2 (explaining that the district court "ruled that Plaintiff had waived his constitutional challenge to the Policy because, as a former

union president and as a union member, Plaintiff had accepted the CBA's terms, one of which included the policy that Plaintiff now challenges").

### B. Plaintiffs Have Not Clearly Established That They Are Likely to Succeed on the Merits of Their First Amendment Claim.

This Court need not reach the merits, but if it does, Plaintiffs have failed to clearly carry their burden to show a substantial likelihood of success on the merits. Because Plaintiffs must *clearly* carry this burden, they must do more than win the game. They must beat the point spread. This they cannot do.

The two most pertinent authorities with respect to this case would seem to be *Tracy* and *Hoover*. In *Tracy*, the Eleventh Circuit *rejected* a university professor's First Amendment attacks on his school's conflicts policy. The professor argued that the policy violated the unbridled discretion doctrine and was a prior restraint, content-based, overbroad, and vague. The Court rejected all of his attacks. *Tracy*, 980 F.3d at 805–10. More to come on *Tracy*, *infra*.

In *Hoover*, the Fifth Circuit affirmed a preliminary injunction in a case that involved a Texas A&M policy that had "the effect of *prohibiting* state employees from acting as consultants or expert witnesses on behalf of parties opposing the State in litigation." *Hoover*, 164 F.3d at 223 (emphasis added). But UF's policy flips the script. Its policy is nearly the opposite of the Texas A&M policy. UF's policy does not prohibit faculty members from acting as experts in litigation against the State.

17

On the contrary, under UF's policy there is a strong presumption in favor of allowing such outside activity.

Even as to the very different Texas A&M policy, the First Amendment issues were not cut and dried.  Concurring in the result only, Judge DeMoss wrote:

> In my view this case raises a serious and fundamental issue not previously decided by the United States Supreme Court or this Court.  That is, whether the State of Texas or one of its state universities can prohibit a state employee or a full-time professor at the university from serving as a compensated expert witness against the state when the subject matter of his testimony and the basis of his qualifications as an expert are directly connected with, and are the product of, his employment by the state.  That issue was expressly left undecided by the Supreme Court in *National Treasury Employees* ….

*Id*. at 228 (citing *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995)).

The instant case, unlike the *NTEU* case referenced by Judge DeMoss, is not one in which "the content of [Plaintiffs'] messages has nothing to do with their jobs." *NTEU*, 513 U.S. at 465.  In fact, Plaintiffs' outside expert witness work has a lot to do with their UF employment.  Plaintiffs are full-time UF faculty members who want, on the side, to take part in litigation against the State of Florida, their employer.  They want to deploy, against their employer, expertise and reputations developed, at least in part, from their employment at UF and the resources and opportunities UF makes available to them.  UF agreed that the Plaintiffs may assist or support parties and attorneys suing the State.  But it is not clear they had a First Amendment right

to do this while working for UF.  As Justice Scalia said in a somewhat different context, "no law enforcement agency is required by the First Amendment to permit one of its employees to 'ride with the cops and cheer for the robbers.'"  *Rankin v. McPherson*, 483 U.S. 378, 394 (1987) (dissenting).  In the context of this case, it may be said that no UF employee has a constitutional right to work for the Gator *and* feed their employer to one.  Thus, Plaintiffs have not clearly established that UF's revised conflicts policy, with its strong presumption in favor of allowing faculty members to work as experts, violates the First Amendment.

The specific First Amendment theories advanced by Plaintiffs also fail, as shown next.

### 1.    Plaintiffs' Unbridled Discretion Argument Fails.

"Under the [unbridled-discretion] doctrine, a licensing scheme that 'allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity' can be challenged as facially unconstitutional." *Tracy*, 980 F.3d at 809 (quoting *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 769–70 (1988)).  But permit requirements pass muster if they "contain narrowly drawn, reasonable, and definite standards to guide the official's decision." *Id.* (quoting *Bloedorn v. Grube*, 631 F.3d 1218, 1236 (11th Cir. 2011)).  Here, Plaintiffs' unbridled discretion argument (Mot. 17–20) fails for two reasons.

First, the argument fails for the same reason that the same argument failed in

*Tracy*—it is "purely speculative." *Tracy*, 980 F.3d at 810. The Eleventh Circuit rejected Professor Tracy's argument that FAU's conflicts policy "operates as a prior restraint on speech that is unconstitutional under the unbridled-discretion doctrine." *Id.* at 809. It do so because his "argument suffer[ed] from a critical defect"—his "failure to identify even a single instance in which the University has determined that an outside speech activity constitutes a prohibited 'conflict of interest.'" *Id.* So too here. UF revised its policy on November 23, 2021, and Plaintiffs have not identified one instance in which UF has applied the revised policy to prohibit a faculty member from testifying as an expert or joining an *amicus* brief. Like Tracy's argument, Plaintiffs' argument here is "purely speculative." *Id.* at 810.

Second, Plaintiffs' argument fails because UF's conflicts policy provides appropriate standards to guide the decision making of UF officials. UF officials do not have unbridled discretion. UF's policy states that a conflict of interest "occurs when a University Employee's financial, professional, commercial or personal interests or activities outside of the University affects, or appears to affect, their professional judgment or obligations to the University." Ex. 1 to Second Fuller Decl., Policy on Conflicts ¶ 3. Comments, including to the media, are not considered outside activities when made in a faculty member's individual capacity. *See* Ex. 11 to Fuller Decl. (Doc. 23-1 at pg. 221). Furthermore, the revised policy "[e]stablishes a strong presumption that the university will approve faculty or staff requests to

20

testify as expert witnesses, in their capacities as private citizens, in all litigation in which the State of Florida is a party." *Id*. The revised policy "[i]mposes a heavy burden on the university to overcome the strong presumption." *Id*. The presumption is overcome "only when clear and convincing evidence establishes that such testimony would conflict with an important and particularized interest of the university, which the university must set forth and explain in writing." *Id*. at pp. 221–22. The revised policy also allows a requester to appeal a denial. *Id*. at pg. 223.

These standards and procedures stand in stark contrast to the policies challenged in the cases on which Plaintiffs rely. *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992), for example, differs markedly from this case. In that case the Supreme Court reviewed a county ordinance that authorized a county administrator to charge a permit fee. Holding that the ordinance violated the First Amendment by "vesting … unbridled discretion in a government official," the Supreme Court noted that "[t]he decision how much to charge … is left to the whim of the administrator"; "[t]here are no articulated standards either in the ordinance or in the county's established practice"; "[t]he administrator is not required to rely on any objective factors"; and the "decision is unreviewable." *Id.* at 133. Not so here. As shown above, Plaintiffs challenge a conflicts policy that sets forth the review standards, includes a presumption *in favor* of approving requests, and permits an appeals process. *Forsyth* shows the weakness of Plaintiffs' claim.

The same is true of *City of Lakewood*, where the Supreme Court reviewed a city ordinance authorizing the mayor to grant or deny permits for newsracks under any terms that the mayor "deemed necessary and reasonable." 486 U.S. at 769. Striking down the ordinance, the Court noted that the mayor could simply deny the permit by stating that "it is not in the public interest" or could grant the permit and then place "the newsrack … in an inaccessible location without providing any explanation whatever." *Id.* That fundamentally differs from the policy Plaintiffs challenge, which requires that any denials be supported by specific reasoning and sufficient detail.

Plaintiffs' reliance on *Barrett* fares no better, as that case involved a regulation requiring board of education approval before a member may speak at a board meeting. 872 F.3d at 1214. Under the regulation, a member of the public had to obtain approval at least one week before the board meeting, but "the Board completely control[ed] the timing of a step at the beginning of the process." *Id.* Thus, the board could "drag[ ] its feet in completing this step" and the "member of the public cannot finish the rest of the steps in time to be permitted to speak." *Id.* In holding that this regulation violated the First Amendment, the Eleventh Circuit focused on the timing, *id.* at 1212, and the county's ability to "control the clock" to its advantage, *id.* at 1214.

Here, unlike in *Barrett*, there is no evidence that UF has ever timed its

decisions to run out the clock on outside activity requests.  Plaintiffs do not contend that any of UF's past decisions on their outside activity requests under the old policy came too late, let alone that UF dragged its feet purposefully.  For example, UF acted in one day on Goldhagen's request to testify as an expert.  He submitted his request on August 11, 2021, and it was denied on August 12.  *See* Doc. 31-1.  And UF approved McDonald's most recent request, submitted on December 7, 2021, to perform legal consulting work in only three days.  *See* Second Fuller Decl. ¶ 10.  UF officials are entitled to a presumption that they will in good faith do their best to process outside activity requests in a timely manner.  *See Speech First, Inc. v. Killeen*, 968 F.3d 628, 646 (7th Cir. 2020) ("The University is a public entity and an arm of the state government of Illinois, and therefore receives the presumption that it acts in good faith."); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019) (same).

## 2.    Plaintiffs' Viewpoint Discrimination Argument Fails.

Plaintiffs' argument that the policy is a viewpoint-based prior restraint (Mot. 20–22) lacks merit.  Plaintiffs cite *Hoover*, but that case does not help them.  *Hoover* involved a university policy "*prohibiting* state employees from acting as consultants or expert witnesses on behalf of parties opposing the State in litigation."  164 F.3d at 223 (emphasis added).  UF's revised policy does not prohibit such outside work.  Indeed, the policy applies a strong presumption in favor of allowing such work.

Significantly, the presumption expressly applies to "all litigation in which the State of Florida is a party, *regardless of the viewpoint* of the faculty or staff member's testimony." Ex. 11 to Fuller Decl. (Doc. 23-1 at pg. 221) (emphasis added). Furthermore, Plaintiffs have not identified any instance in which UF has applied the newly revised policy to discriminate against any viewpoint. UF granted all of the Plaintiffs' requests under either the old policy or the new policy.

### 3.   Plaintiffs' Overbreadth Argument Fails.

Plaintiffs argue (Mot. 22–25) that UF's policy is facially overbroad. It is not. "A facial-overbreadth challenge requires a showing that the statute punishes a substantial amount of protected free speech." *Tracy*, 980 F.3d at 808 (quotation marks omitted). "That is not easy to do." *Doe v. Valencia Coll.*, 903 F.3d 1220, 1232 (11th Cir. 2018). Indeed, "overbreadth challenges are a disfavored mechanism for invalidating an ordinance." *FF Cosmetics FL*, 866 F.3d at 1302. "The fact that there may be some conceivable impermissible applications is not enough." *Id*. at 1303–04. "[P]erfection is not required to survive an overbreadth challenge." *Cheshire Bridge Holdings, LLC v. City of Atlanta*, 15 F.4th 1362, 1378 (11th Cir. 2021) (quotation marks omitted). Here, Plaintiffs have not clearly carried their burden to show that the revised policy is facially overbroad. "As the party with 'the burden of demonstrating, from the text of the law and from *actual fact*, that substantial overbreadth exists,' Plaintiff has not shown 'a *realistic danger* that the

statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.'" *Tracy*, 980 F.3d at 810 (quoting *Valencia Coll.*, 903 F.3d at 1232) (emphases in *Tracy*).

UF's conflicts policy applies to both speech and non-speech outside activities, including, as an example of the latter, "holding a parttime job with another employer." Ex. 1 to Second Fuller Decl., Policy on Conflicts ¶ 3. Under the revised policy, "comments, including those to the media, are not reportable as outside activities when made by faculty and staff in their capacities as individual citizens and not on behalf of another person or entity." Ex. 11 to Fuller Decl. (Doc. 23-1 at pg. 221). Such "comments on matters of public concern become reportable outside activities, subject to university review for potential conflicts of interest or conflicts of commitment … when faculty and staff seek to testify as expert witnesses on behalf of a party in litigation." *Id*. But the "strong presumption" applies that UF will approve such requests, and UF faces a "heavy burden" to overcome it. *Id*. This is so even if the faculty member is testifying in support of a litigant adverse to the State of Florida and "regardless of the viewpoint" of the faculty member's testimony. *Id*. The revised policy is not facially overbroad. *Cf. Tracy*, 980 F.3d at 808 (rejecting as "meritless" Professor Tracy's argument that the reporting requirement of FAU's conflicts policy was facially overbroad).

## III.   THE REMAINING PRELIMINARY INJUNCTION FACTORS DO NOT SUPPORT RELIEF.

The third and fourth factors in the injunction analysis—the balance of harms and public interest—may be considered together in suits against public defendants. *See Swain*, 961 F.3d at 1293 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Plaintiffs have not clearly demonstrated that they will be harmed absent an injunction or that the public interest would *not* be harmed by an injunction.  Because they have not shown that they will suffer any harm without an injunction, it cannot be said that harm to them exceeds the harm to Defendants from an injunction.  But it would harm UF to bring to a halt all enforcement of its revised conflicts policy.

Conflict of interest policies are common because they serve important public and university interests.  *See*, *e.g*., *Tracy*, 980 F.3d 799 (involving FAU's conflicts policy).  Under its conflicts policy, "The University of Florida encourages its Faculty and Staff to engage in activities supporting their professional growth, creating new knowledge and ideas, and furthering the University's mission of excellence in education, research, and service."  UF Regulation 1.011(1), Ex. 2 to Fuller Decl. (Doc. 23-1 at pg. 186).  The policy explains that "University employees, however, have an obligation to commit their primary professional time and intellectual energy to the University and maintain the highest ethical and professional standards."  *Id*. UF's conflicts policy thus serves legitimate and important interests.  Granting to each of the hundreds of full-time UF faculty members a free pass to moonlight in

any way they want and whenever they want—even if serious conflicts issues or violations of ethics laws result—would disserve the public interest.  On this score, Defendants object to Plaintiffs' proposed preliminary injunction on the ground that it is overbroad and inappropriate.  It would enjoin the enforcement of UF's revised conflicts policy as to "any" UF faculty member, not just the Plaintiffs themselves. Mot. 34 (Doc. 30).

Finally, the three original Plaintiffs are bound by a collectively bargained policy agreed to by their union.  Enforcing that bargain struck between labor and management is in the public interest.

## CONCLUSION

For the foregoing reasons, as well as those stated in Defendants' motion to dismiss, Plaintiffs' preliminary injunction motion should be denied, and Defendants' motion should be granted.

Respectfully submitted,

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci
D.C. Bar No. 453423
Brian J. Field*
D.C. Bar No. 985577
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com
bfield@schaerr-jaffe.com

*Admitted *pro hac vice*

Amy Meyers Hass
  *Vice President and General Counsel*
Fla. Bar No. 483346
Ryan Fuller
  *Associate Vice President and*
  *Deputy General Counsel*
Fla. Bar No. 635324
UNIVERSITY OF FLORIDA
OFFICE OF GENERAL COUNSEL
123 Tigert Hall, P.O. Box 113125
Gainesville, Florida 32611
(352) 392-1358
amhass@ufl.edu
ryanf@ufl.edu

Dated:  December 17, 2021                    *Counsel for Defendants*

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(F)**

Pursuant to Local Rule 7.1(F), I certify that foregoing is in compliance with the Court's word limit.   According to the word processing program used to prepare this memorandum, the document contains 6,708 words, excluding those portions exempted under the Rule.

/s/ H. Christopher Bartolomucci
H. Christopher Bartolomucci

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed in the Court's CM/ECF system this 17th day of December, 2021, and thereby served on all counsel of record.

/s/ H. Christopher Bartolomucci
H. Christopher Bartolomucci