IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SHARON WRIGHT AUSTIN,
et al.,

       *Plaintiffs*,

v.                              **Case No.: 1:21cv184-MW/GRJ**

UNIVERSITY OF FLORIDA BOARD
OF TRUSTEES, et al.,

       *Defendants*.

_____/

## ORDER DENYING MOTION TO DISMISS[1]

This is a First Amendment case. Plaintiffs are professors at the University of Florida. Their one-count amended complaint alleges that the University of Florida's policy on conflicts of interest violates the First Amendment because it discriminates based on viewpoint and content and because it is an unconstitutional prior restraint on speech. Plaintiffs seek declaratory and injunctive relief "preventing Defendants from enforcing any policy or practice that provides the University discretion to limit Plaintiffs' ability to undertake outside activities, on a paid or unpaid basis, on the

---

[1] Defendants' reply brief is due January 5, 2022. Oral argument is set in this case for January 7, 2022. In their briefs on Plaintiffs' motion for preliminary injunction, both parties discuss mootness, ripeness, and standing at length. This Court has considered those arguments and decides the issue now because it finds that further argument is unnecessary. Because this Court decides threshold justiciability issues here, it also limits the scope of the pending oral argument solely to the merits of Plaintiffs' claims and the application of the preliminary injunction factors. Defendants need not file a reply brief in support of their motion to dismiss.

ground that the proposed activity is not aligned with the 'interests' of the State of Florida or any of its entities or instrumentalities." ECF No. 19 at 26.

Plaintiffs also move for a preliminary injunction "enjoin[ing] defendants from enforcing the University's unconstitutional Policy . . . . to the extent it applies to *any* faculty member's participation, whether by providing expert testimony or otherwise, in litigation involving the State of Florida." ECF No. 30 at 40 (emphasis added).

Defendants move to dismiss, asserting that Plaintiffs lack standing and that their claims are moot and unripe. On the merits, Defendants argue that Plaintiffs have failed to state a claim for relief because they have not completed the grievance process set out in their collective bargaining agreement ("CBA") and because they have otherwise waived their First Amendment claim. This Court addresses each point in turn. But first, it briefly recites Plaintiffs' allegations, with which both sides are already familiar.

I

Plaintiffs are professors at the University of Florida who have participated as expert witnesses in past and pending litigation. ECF No. 19 ¶¶ 7–12. Over the past two years, the University at some point either denied or limited at least one request by each Plaintiff to participate in litigation because it considered Plaintiffs' participation to be adverse to the State of Florida or the "executive branch of the State of Florida." *Id*. ¶¶ 26–68. In the face of recent public criticism, and before this

Court reviewed its conflict-of-interest policies, the University of Florida reversed its decision denying three Plaintiffs' requests to participate in a pending voting-rights case. *Id*. ¶¶ 72–77.

Defendant Fuchs has since accepted recommendations—submitted by a hand-picked "task force"—to change the University of Florida's conflict-of-interest policy to impose a "strong presumption that the university will approve faculty or staff requests to testify as expert witnesses, in their capacities as private citizens, in all litigation in which the State of Florida is a party." ECF No. 23-1 ¶¶ 16–17. The University may deny a request to testify as an expert witness based only on "clear and convincing evidence" that such testimony conflicts with "an important and particularized interest of the university, which the university must set forth and explain in writing." *Id*. ¶ 17. But the proposed revisions to the policy do not identify in advance which interests suffice as "important and particularized," nor does the policy set any time limits on the approval process. *See* ECF No. 23-1 at 221. Even with the approved revisions, the challenged policy leaves it in the University's "sole discretion" to approve or deny such requests. *Id*.; *see also* ECF No. 44-1 at 3.

Plaintiffs mount what appear to be facial and as-applied challenges against the policy, asserting that it violates the First Amendment. Plaintiffs allege that the policy grants the University of Florida "unlimited discretion to block speech that it dislikes," and "it will continue to impede Plaintiffs from participating in litigation or

other forms of advocacy that challenge State policies[.]" ECF No. 19 ¶ 86. Plaintiffs also allege that the policy is impermissibly vague and overbroad. *Id*. ¶¶ 94–95.

## II

As it must, this Court first addresses threshold jurisdictional issues. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citation omitted). In this case, Defendants raise a factual attack as to whether this Court has jurisdiction to hear Plaintiffs' claim. Thus, this Court "may consider extrinsic evidence such as deposition testimony and affidavits," in determining whether it has subject matter jurisdiction. *Id*.

Defendants make two jurisdictional arguments. First, Defendants assert that Plaintiffs lack standing—and, relatedly, that Plaintiffs' claims are not ripe. Second, Defendants argue that Plaintiffs' case is moot. This Court will address each argument in turn, starting with standing and ripeness.

## A

To establish standing, Plaintiffs must show (1) that they have suffered an injury-in-fact that is (2) traceable to Defendants and that (3) can likely be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Defendants argue both that Plaintiffs are not injured and that this case is not ripe because there is no credible threat of enforcement.

1

The injury-in-fact requirement applies "most loosely where First Amendment rights are involved, lest free speech be chilled even before the law or regulation is enforced." *Harrell v. Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010). And ripeness—which seeks to prevent the premature adjudication of inchoate disputes—requires this Court to evaluate (1) whether this case is fit "for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).[2]

This is a pre-enforcement challenge.[3] And thus, as to the injury-in-fact inquiry, "[t]his is one of those cases where 'the Article III standing and ripeness issues . . .

---

[2] The "hardship prong" of the ripeness analysis "is not an independent requirement divorced from the consideration of the institutional interests of the court and agency." *Harrell*, 608 F.3d 1241, 1259 (quoting *AT&T Corp. v. FCC*, 349 F.3d 692, 700 (D.C. Cir. 2003). "Where there are no significant agency or judicial interests militating in favor of delay, lack of hardship cannot tip the balance against judicial review." *Id*. (cleaned up) (quoting *Consol. Rail Corp. v. United States*, 896 F2d 574, 577 (D.C. Cir. 1990)). As the Eleventh Circuit has previously noted, "since the very existence of censorial power is unacceptable, there is little reason for a court to forbear entertaining an anticipatory challenge in order to allow that power to be exercised." *Id*. (cleaned up) (quoting *Intern. Soc. for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 823 (5th Cir. 1979)). Here, Plaintiffs have demonstrated that they will suffer hardship if this Court delays review of their claim. *See, e.g.*, ECF No. 30-1 ¶¶ 22-28; ECF No. 30-2 ¶¶ 12-15; ECF No. 30-3 ¶¶; ECF No. 30-4 ¶ 14; ECF No. 30-5 ¶¶ 12-13. Accordingly, the relevant institutional considerations favor immediate review of Plaintiffs' First Amendment claim.

[3] Though the University's policy has been enforced against each Plaintiff in a manner that allegedly violates their First Amendment rights, the revised policy has not been enforced against

5

boil down to the same question.' " *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1304 (11th Cir. 2017) (en banc) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014)). That question is, "when [does] the threatened enforcement of a law create[] an Article III injury[?]" *Driehaus*, 573 U.S. at 158. As the Supreme Court has often done, in addressing this issue, this Court will use the term "standing" to describe both standing and ripeness. *Id.* at 157 n.5. "A person can bring a pre-enforcement suit when he has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution." *Wollschlaeger*, 848 F.3d at 1304 (quoting *Driehaus*, 573 U.S. at 159) (cleaned up).

Plaintiffs allege that they have each been asked to offer their expertise in past and pending litigation involving issues of public concern, and that Defendants have prevented them from doing so by applying the conflict-of-interests policy to litigation adverse to the State of Florida. Plaintiffs also allege, in their amended complaint and in supporting affidavits, that they intend to participate in future litigation adverse to the State. Plus, Plaintiffs attest to their fears, based on the revised policy, both of repercussions if they participate in litigation and that the University will delay the approval process to thwart their participation in time-

---

them. Even so, Plaintiffs assert that they suffer the ongoing harm of self-censorship stemming from the policy's terms and the recent enforcement of the unrevised policy against them.

sensitive cases. *See, e.g.*, ECF No. 19 ¶¶ 82–86; ECF No. 30-1; ECF No. 30-2; ECF No. 30-3; ECF No. 30-4; ECF No. 30-5; ECF No. 30-6. Plaintiffs also express their concerns that the revised policy does not remedy the University's allegedly unbridled discretion to approve or deny requests to participate in outside activities, including testifying as expert witnesses in litigation challenging state law. *See* ECF Nos. 30-1 and 30-2.

There is no doubt Plaintiffs' intended course of conduct, participating in litigation as expert witnesses, is affected with a constitutional interest. *See Rainey v. Jackson State Coll.*, 481 F.2d 347, 350 (5th Cir. 1973) (noting where college allegedly breached one-year contract because of professor's participation as defense expert in obscenity trial "make out what appear to us to be a clear case of impermissibly freighting plaintiff's contract with a deprivation of the First Amendment right to free speech"). And Plaintiffs have demonstrated that, for fear of repercussion or retaliation, they are self-censoring from such participation. An "alleged danger of this [policy] is, in large measure one of self-censorship; *a harm that can be realized without an actual prosecution.*" *ACLU v. Fla. Bar*, 999 F.2d 1486, 1493 (11th Cir. 1993) (emphasis in original) (quoting *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988)).

That said, the question remains as to whether a credible threat of enforcement—of denying permission to participate in such litigation or other

punitive action—exists. In the First Amendment context, the Eleventh Circuit has described the analysis for determining whether a credible threat of enforcement exists as "quite forgiving." *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 1998) (citation omitted). Indeed, "[i]f a challenged law or rule was recently enacted, or if the enforcing authority is defending the challenged law or rule in court, an intent to enforce the rule may be inferred." *Harrell*, 608 F.3d at 1257. The conflict-of-interest policy here is newly "revised," based on the Task Force's recommendations and Defendant Fuchs's "adoption" of them, and all Defendants are defending the policy. On that basis alone, this Court finds that a credible threat of enforcement exists.

But even if that were not enough, public statements by the Chairman of the University's Board of Governors leave this Court with little doubt that the University of Florida intends to enforce its conflict-of-interest policy in the manner Plaintiffs fear. Speaking only ten days after Defendant Fuchs's "adoption" of the proposed changes to the conflict-of-interest policy supposedly mooted this case, Chairman Hosseini struck a different tone. According to Chairman Hosseini, faculty members had "taken advantage of their positions" by using those positions "to improperly advocate personal political viewpoints to the exclusion of others." ECF No. 45-4 at 12. "This. Will. Not. Stand." he remarked, "[i]t must stop, and it WILL stop." *Id.* at 13–14. Chairman Hosseini also made explicit what was implicit in the University's

earlier denials. "Think of everything we've been able to accomplish during the past five years" he said. *Id.* at 15. "These things were all made possible through the support of our state leaders." *Id.* at 16. And those leaders, he explained, "are fed up with the waste of [state] dollars by the few who are misusing their positions." *Id.* at 18. So, he closed, "[i]t is time to stand up for what is right and to put a stop to what is wrong." *Id.* In short, Plaintiffs' activities anger Tallahassee, that threatens the University's funding, and so the University must halt Plaintiffs' activities.[4] *See also* ECF No. 45-5 at 26 ("It is evident that faculty throughout UF are feeling greater and greater pressure to conform to political pressures and to stifle or modify their speech and research to avoid retaliation. It is also clear that this pressure is coming from the senior UF administration and not just from the COI office.").

In a different context, the Eleventh Circuit explained that, when plaintiffs "can't show that they've been threatened with prosecution . . . by either the [defendants] or anyone under [their] control. . . . that's a problem." *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1204 (11th Cir. 2021). Here, the threat is explicit, and so Defendants have "a problem." The threat of enforcement is credible, and thus Plaintiffs have sufficiently alleged an Article III injury.

2

---

[4] Of course, some might interpret Hosseini's statement differently, but, at the motion-to-dismiss stage, this Court must draw "all reasonable inferences . . . in the light most favorable to" Plaintiffs. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1198 n.2 (11th Cir. 2001).

Next, causation. Plaintiffs must establish causation by showing that "their injuries are connected with" Defendants' conduct. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019) (cleaned up) (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018)). In other words, Plaintiffs must show that their injury—self-censorship—is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560.

To do so, Plaintiffs need only show "that there is a substantial likelihood of causation." *Duke Power Co. v. Env't Study Grp.*, 438 U.S. 59, 75 n.20 (1978). This is not an exacting standard; "[p]roximate causation is not a requirement of Article III standing." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014). And thus "[a] plaintiff . . . need not show (or, as here, allege) that 'the defendant's actions are the very last step in the chain of causation.' " *Wilding*, 941 F.3d at 1126 (quoting *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)). "[E]ven harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003).

Defendants do not challenge Plaintiffs on this point. And after reviewing the allegations and attachments in the record, this Court concludes that Plaintiffs have established that their injuries are fairly traceable to Defendants' conduct. This is

because each Defendant has a role in enforcing the challenged policy. The University of Florida Board of Trustees "sets policy for the institution and serves as the institution's legal owner and governing board." ECF No. 19 ¶ 13. Kent Fuchs is the President of the University of Florida, who, in his official capacity, "is responsible for the general administration of all University activities." *Id*. ¶ 14. As shown by his own actions, Defendant Fuchs can unilaterally reverse a conflicts decision without explanation and unilaterally change the conflict-of-interest policy. *See, e.g.*, *id*. ¶ 68; ECF No. 23-1 ¶¶ 11–12, 16. Joseph Glover is the Provost of the University of Florida who is responsible for, among other things, "overseeing the University's Conflicts of Interest Office," and "establishing the University's policy with respect to employment, promotion, and tenure of academic faculty." ECF No. 19 ¶ 15. And Laura Rosenbury, as Dean of the University of Florida's law school, enforces the conflict-of-interest policy as it applies to law professors, including Plaintiffs Nunn and Reid. *Id*. ¶ 16. In short, this Court can easily trace Plaintiffs' injuries to each Defendant.

3

Next, redressability. The redressability prong "focuses . . . on whether the injury that a plaintiff alleges is likely to be redressed through the litigation." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008) (emphasis removed). A "substantial likelihood" of redressability will satisfy this prong. *Duke*

*Power*, 438 U.S. at 79. Plaintiffs have shown that a court order enjoining Defendants from enforcing the University's policy in a manner that forbids participation in litigation adverse to the State would redress Plaintiffs' asserted self-censorship injuries.

*     *     *

In sum, for standing and ripeness, the record establishes that Plaintiffs are subject to the policy requiring pre-approval to participate as expert witnesses in litigation challenging state law. Plaintiffs also assert that the revised conflict-of-interest policy continues to grant the University "unbridled discretion" to grant or deny a request to testify as an expert witness. Plus, Plaintiffs have submitted requests for approval in the past and intend to do so in the future. Because Plaintiffs will be subject to the challenged policy when they apply for approval in the future, they have standing to mount the challenge in this case. *See CAMP Legal Def. Fund, Ind. v. City of Atlanta*, 451 F.3d 1257, 1274–75 (11th Cir. 2006) ("That city officials have not yet exercised their discretion to refuse CAMP's proposed festivals is immaterial because it is the existence, not the imposition, of standardless requirements that causes CAMP injury. Where a plaintiff alleges that a statute grants unbridled discretion, a plaintiff need only be 'subject to' the provision to establish a constitutional injury." (citations omitted)). Moreover, Plaintiffs' claims are

otherwise fit for judicial review. *See Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1380–81 (11th Cir. 2019).

B

Having determined that Plaintiffs have standing and that their claims are ripe, this Court next addresses Defendants' argument that their post-suit actions have mooted this case. Defendants argue that this case is moot because (1) the University retroactively approved Plaintiffs' requests to participate in litigation against the state and (2) the University "adopted" new policy requirements applying a heightened evidentiary standard and a strong presumption in favor of permitting faculty and staff to testify as expert witnesses in litigation against the state.

A case is moot when it is "impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (cleaned up). But even when a defendant voluntarily ceases the activity at issue in a case, the case "does not necessarily" become moot. *Cook v. Bennett*, 792 F.3d 1294, 1299 (11th Cir. 2015). Faced with voluntary cessation, a court can find a case moot only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968)). Ordinarily, the burden rests with the defendant to show that the wrongful behavior will not recur and—relevant here—because this Court presumes the government acts in good faith,

13

"government actors carry a lesser burden than others." *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 531 (11th Cir. 2013). With these principles in mind, this Court addresses Defendants' arguments.

1

Defendants' first argument—that this case is moot because the University retroactively reversed its decisions prohibiting Plaintiffs from testifying against the state—fails because it contorts Plaintiffs' claim into something it is not. This case is not about what *has* happened; this case is about what *will* happen. Plaintiffs seek only prospective relief. ECF No. 19 at 26. Further, Plaintiffs contend that the University reversed course on its earlier denials to try to ride out the firestorm of criticism those denials triggered. Once that storm is over, Plaintiffs say, the University will pick up right where it left off. And that renewed application of the conflict-of-interest policy is what Plaintiffs sue to prevent. *Cf. Beta Upsilon Chi Upsilon Chapter at the Univ. of Fla. v. Machen*, 586 F.3d 908, 917 (11th Cir. 2009) (holding when the plaintiff did not "mount a facial challenge to the text of the Regulation," but "merely challenged UF's refusal to register the [plaintiff] chapter as an RSO," the case was moot once "[t]he chapter [was] registered").

In short, Defendants' first argument attacks the claims Defendants wish Plaintiffs had made, not the claims Plaintiffs make. This case is not moot just because the University reversed its past decisions.

14

2

Though a closer call, Defendants' second argument fairs no better. Defendants argue that, because the University revised its conflicts policy after Plaintiffs filed their amended complaint—requiring "clear and convincing evidence" of a conflict of interest and imposing a "strong presumption" that professors be permitted to testify against the state—this case is moot. Defendants are mistaken.

To be sure, the presumption favoring government actors "is particularly warranted in cases where the government repealed or amended a challenged . . . policy—often a clear indicator of unambiguous termination." *Doe v. Wooten*, 747 F.3d 1317, 1322 (11th Cir. 2014). So "the enactment of new legislation which repeals or materially amends the law being challenged . . . renders [a] lawsuit . . . moot." *United States v. Georgia*, 778 F.3d 1202, 1204 (11th Cir. 2015). But the keyword is "materially." When an amendment to a challenged policy does not address the issue the plaintiff has identified with the policy, the amendment "does not moot a request for prospective relief." 13C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.6, Westlaw (database updated Apr. 2021). The classic example is when, as here, "the amendment changes only other parts of " the policy and leaves the challenged "provision unchanged." *Id.*

For example, the Supreme Court confronted a similar shift in policy in a challenge to a Jacksonville ordinance that gave "preferential treatment to certain

minority-owned businesses in the award of city contracts." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 658 (1993). While the case was before the Court, Jacksonville repealed the challenged ordinance and replaced it with a similar, but narrower, ordinance. *Id.* at 661. Having replaced the challenged ordinance, Jacksonville then asked the Court to dismiss the case as moot. *Id.*

The Court declined to do so. Rejecting Jacksonville's argument, the Court explained that "[t]here [was] no mere risk that Jacksonville will repeat its allegedly wrongful conduct;" by implementing the new ordinance, "it ha[d] already done so." *Id.* at 662. It made no difference "that the new ordinance differ[ed] in certain respects from the old one." *Id.* If the imposition of a new ordinance could always moot a case, the Court explained, "a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect." *Id.* Finally, the Court explained that the case before it was not moot because the new ordinance "disadvantage[d] [the plaintiffs] in the same fundamental way" as the old ordinance. *Id. See also Seay Outdoor Advert., Inc. v. City of Mary Esther, Fla.*, 397 F.3d 943, 947 (11th Cir. 2005) ("The Supreme Court cautions against holding a challenge to a repealed law moot if the law is . . . replaced by another constitutionally suspect law.").

So too here. Defendants have already repeated their allegedly wrongful conduct by implementing the new policy. That policy, like the old policy, sets no time limit within which the University must decide a request to testify. Allowing it, Plaintiffs say, to run out the clock on any request. More to the point, the new policy does not repudiate the premise that the University may reject a request to testify not because testifying would interfere with the professor's duties, but because the testimony the professor intends to deliver would so infuriate Florida's political leaders that it would harm the University's bottom line. And it is that premise that Plaintiffs contend violates the Constitution.

Because the new policy retains the features Plaintiffs challenge, it harms Plaintiffs in the same fundamental way as the old policy. *See CAMP*, 451 F.3d at 1275 ("[I]t is the existence, not the imposition, of standardless requirements that causes [Article III] injury."). In short, even under the new policy, the harm alleged in Plaintiffs' amended complaint continues unabated. This case is not moot.

III

Next, this Court considers Defendants' 12(b)(6) arguments for dismissal based on the collective bargaining agreement. In evaluating Defendants' motion, this Court accepts the allegations in the amended complaint as true and construes them in the light most favorable to Plaintiffs. *See Hunt v. Amico Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). "To withstand a motion to dismiss under Rule 12(b)(6), a

complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A 'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plaintiff's allegations must amount to 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555).

In moving to dismiss for failure  to state a claim, Defendants make two arguments. First, they assert that Plaintiffs Austin, McDonald, and Smith failed to grieve or arbitrate their disputes under their CBA, and therefore their claims are barred. Second, Defendants assert these same Plaintiffs waived their First Amendment claims under the CBA. This Court addresses each argument in turn.

A

First, Defendants assert that Plaintiffs Austin, McDonald, and Smith's failure to grieve under their CBA the University's denial of their request to participate in voting-rights litigation bars them from pursuing their claims. Defendants point to Article 28 of the CBA, which sets out a three-part "mandatory" grievance process and—according to Defendants—controls over Article 23's specific carve-out for asserting constitutional claims in court. ECF No. 23 at 31, 34–35. Not so.

Defendants attach the CBA to their motion to dismiss. *See* ECF No. 23-1 at 7.[5]  Article 28 of the CBA specifically provides that "[t]he procedures in this Article shall be the sole and exclusive method for resolving the grievances of faculty members *except where explicitly specified elsewhere in this Agreement*." ECF No. 23-1 at 128 (emphasis added). Article 28 defines a "grievance" as "a dispute concerning the interpretation or application of a specific term or provision of this Agreement, *subject to specific exclusions appearing in other articles of this Agreement*." *Id*. (emphasis added). Article 28 also explains the process for filing a grievance this way: "*Except as explicitly specified elsewhere in this Agreement*, this grievance procedure shall be the sole review mechanism for resolving disputes regarding rights or benefits that are provided exclusively by this Agreement." *Id*. at 129 (emphasis added).

Accordingly, Article 28 recognizes that the CBA identifies some disputes elsewhere in the agreement that are not subject to Article 28's grievance requirements. Relevant here is Article 23, which provides that "[*a*]*ny* alleged violation of [faculty members' constitutional] rights *shall not be subject to the grievance and arbitration procedure of this Agreement*, but shall be subject to

---

[5] In ruling on Defendants' motion to dismiss, this Court may consider the CBA's terms without converting Defendants' motion into a motion for summary judgment. This is because, "[i]n ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Both requirements are met here.

vindication *only by a court of competent jurisdiction*." ECF No. 23-1 at 104 (emphasis added). The plain language of the CBA thus "explicitly specifies" that *any* alleged constitutional violations—like Plaintiffs' First Amendment challenge—are not subject to the grievance procedure under Article 28.

Moreover, a recent Eleventh Circuit case addressing a similar issue provides little help for Defendants' argument. Citing *Tracy v. Florida Atlantic University Board of Trustees*, 980 F.3d 799 (11th Cir. 2020), Defendants claim that the CBA's mandatory grievance procedures apply to Plaintiffs' claims and that their failure to timely grieve their disputes means that Plaintiffs have forfeited their claims. But, in *Tracy*, the Eleventh Circuit differentiated between the professor's contract claim— which was subject to the CBA's grievance requirements—and the professor's constitutional claims. The Eleventh Circuit ultimately disposed of the professor's constitutional claims on the merits after assuming without deciding that the grievance procedures under her CBA did not apply to bar her section 1983 claim. *See Tracy*, 980 F.3d at 806 (listing cases "indicating that § 1983 claims generally need not be exhausted and that collective bargaining agreements are not immune to constitutional challenges"); *see also Hochman v. Bd. of Ed. of City of Newark*, 534 F.2d 1094, 1097 (3d Cir. 1976) ("When appropriate federal jurisdiction is invoked alleging violation of First Amendment rights, . . . we may not insist that he first seek his remedies elsewhere no matter how adequate those remedies may be.").

In sum, the plain language of the CBA explicitly specifies an exception to Article 28's grievance requirements for "*any alleged violation*" of a faculty member's constitutional rights. And myriad case law confirms that such section 1983 claims are *not* subject to exhaustion of state administrative remedies—including union grievance procedures. *See Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 73 (2d Cir. 1988) ("Nor is it permissible in light of *Patsy v. Board of Regents*, . . . to require initial recourse to available state proceedings, including union grievance proceedings, for the enforcement of First Amendment rights protectable in federal court pursuant to section 1983." (citing *Patsy v. Bd. of Regents*, 457 U.S. 496 (1982))). For these reasons, Plaintiffs Austin, McDonald, and Smith may proceed with their claims in federal court despite their failure to grieve their disputes under the CBA.

## B

Lastly, Defendants assert that Plaintiffs Austin, McDonald, and Smith agreed to grieve any denial to participate in outside activities as an "impermissible conflict" under Article 26 of the CBA and therefore waived their First Amendment claims. ECF No. 23 at 36–38. To support this proposition, Defendants heavily rely on the Third Circuit's unpublished decision in *Barnard v. Lackawanna County*, 696 F. App'x 59 (3d Cir. 2017). In *Barnard*, the Third Circuit affirmed the district court's dismissal of a union member's First Amendment retaliation claim based on her

suspension for participating in a sympathy strike when her collective bargaining agreement specifically waived her First Amendment right to participate in sympathy strikes. The district court noted that "[t]he Supreme Court has long recognized that a party may waive constitutional rights if there is 'clear' and 'compelling' evidence of waiver and that waiver is voluntary, knowing, and intelligent." *Barnard v. Lackawanna Cnty.*, 194 F. Supp. 3d 337, 343 (M.D. Pa. 2016) (quoting *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 205 (3d Cir. 2012)). In dismissing Barnard's First Amendment claim, the district court cited relevant portions of her CBA that explicitly and specifically defined a "strike" and "sympathy strike" and waived the right to engage in such activities for the rest of the agreement. *Id*. at 344 ("The terms of the CBA unambiguously waive the plaintiff's ability to participate in strikes or sympathy strikes. The court need not interpret the contract to come to this conclusion.").

Here, on the other hand, Plaintiffs' CBA explicitly reaffirms their constitutional rights and their ability to challenge "any alleged violation" of such rights in court. *See* ECF No. 23-1 at 104. And Defendants cite no provision of the CBA that waives Plaintiffs' First Amendment right to be free from content- or viewpoint-based discrimination in the conflict-of-interest approval process. A dispute arising from the CBA that is not grounded in an alleged constitutional violation must be grieved in accordance with the CBA. But the CBA explicitly

carved out "any alleged [constitutional] violation" from such grievance procedures—as discussed above. Accordingly, at this point, this Court cannot agree that Plaintiffs waived their First Amendment claim through the CBA. For these reasons, Defendants' motion to dismiss, ECF No. 23, is **DENIED**.

      **SO ORDERED on January 3, 2022.**

                              **s/Mark E. Walker**
                              **Chief United States District Judge**