UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SHARON WRIGHT AUSTIN, *et al.*,

    *Plaintiffs*,

v.

UNIVERSITY OF FLORIDA
BOARD OF TRUSTEES, *et al.*,

    *Defendants*.

Case No.: 1:21-cv-00184-MW-GRJ

**DEFENDANTS' SUPPLEMENTAL BRIEF**

Pursuant to this Court's order of January 7, 2022, Defendants hereby submit this supplemental brief in opposition to Plaintiffs' motion for preliminary injunction.

**ARGUMENT**

**I.   Introduction to the Pickering Doctrine**

The University of Florida ("UF") is strongly committed to academic freedom and First Amendment rights for its faculty members. UF's policy on outside activities and conflicts of interest and commitment ("conflicts policy") is fully consistent with that commitment. UF agrees that "citizens do not surrender their First Amendment rights by accepting public employment." *Lane v. Franks*, 573 U.S. 228, 231 (2014). UF also agrees that "the First Amendment protection of a public

employee's speech depends on a careful balance 'between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id*. (quoting *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563, 568 (1968)) (brackets in *Lane*).

As the Supreme Court has explained many times, "when individuals enter into government employment or contracts, they accept certain restrictions on their freedom as part of the deal." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1878 (2021) (citing cases).[1]  "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "When they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions." *Id*. at 419. "[T]he extra power the government has in this area comes from the nature of the government's mission as employer." *Waters v. Churchill*, 511 U.S. 661, 674 (1994) (plurality).  The foregoing principles apply

---

[1] "The Court has made clear that public employees do not surrender *all* their First Amendment rights by reason of their employment.  Rather, the First Amendment protects a public employee's right, *in certain circumstances*, to speak as a citizen addressing matters of public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (emphases added).

when a public university professor wishes to offer expert testimony or opinion in a court case in her individual capacity. *See Lane*, 573 U.S. at 242 ("A public employee's sworn testimony is not categorically entitled to First Amendment protection simply because it is speech as a citizen on a matter of public concern.").

The Supreme Court has described the current *Pickering* doctrine as follows:

> *Pickering* and later cases in the same line concern the constitutionality of restrictions on speech by public employees.  Under those cases, employee speech is unprotected if it is not on a matter of public concern (or is pursuant to an employee's job duties), but speech on matters of public concern may be restricted only if the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees outweighs the interests of the employee, as a citizen, in commenting upon matters of public concern.

*Harris v. Quinn*, 573 U.S. 616, 652–53 (2014) (cleaned up).  The interest of public employers in the efficient delivery of services encompasses a broad array of concerns, such as their "legitimate interests in the effective and efficient fulfillment of their responsibilities to the public, including promoting efficiency and integrity in the discharge of official duties, and maintaining proper discipline in public service." *Lane*, 573 U.S. at 242 (cleaned up).  "The government's interest in achieving its goals as effectively and efficiently as possible is … a significant one when it acts as employer." *Waters*, 511 U.S. at 675 (plurality).

*Pickering* cases typically are not facial challenges to a public employer's

3

policy. *Pickering* cases most commonly arise in the context of an individual public employee who alleges that she has been discharged or otherwise suffered adverse employment action in retaliation for speech protected by the First Amendment. *See*, *e.g.*, *Lane*, 573 U.S. at 231–32 (plaintiff alleged he was terminated in retaliation for testifying under subpoena about programmatic fraud); *Garcetti*, 547 U.S. at 415 (plaintiff alleged he was reassigned to a new position, transferred to a new location, and denied a promotion in retaliation for writing a memorandum recommending dismissal of criminal charges); *Pickering*, 391 U.S. at 566 (teacher alleged she was fired after writing a letter to the editor criticizing the school board). This is not such a case. None of the Plaintiffs in this case has suffered, or even alleged, any adverse employment action in retaliation for engaging in speech. They are challenging UF's revised conflicts policy on its face. The *Pickering* doctrine, however, does not help them.

II.  **The *Pickering* Doctrine Fails to Support Plaintiffs' Proposed Preliminary Injunction.**

Plaintiffs are challenging UF's revised conflicts policy, on its face,[2] in the context of a motion for a preliminary injunction. Therefore, it is Plaintiffs' burden to show that they *clearly* are likely to prevail on an argument that the policy facially

---

[2] This cannot be an as-applied challenged because UF has not applied its policy, as revised on November 23, 2021, to restrict any speech of any of the Plaintiffs.

4

violates the First Amendment based on the *Pickering* doctrine. This they cannot do.

On its face, UF's policy includes broad recognition and protection of the right of faculty members to make comments as citizens on matters of public concern. The policy states that "comments, including those to the media, are not reportable as outside activities when made by faculty and staff in their capacities as individual citizens and not on behalf of another person or entity." Doc. 23-1 at pg. 221. Thus, not only are UF faculty members free under UF's policy to comment as private citizens on matters of public concern, they need not even report such comments as outside activities.

Although a faculty member's participation as an expert witness in litigation is a reportable outside activity, *see id*., UF's revised policy does not prohibit all such speech. Far from it. The policy on its face "[e]stablishes a strong presumption that the university will approve faculty or staff requests to testify as expert witnesses, in their capacities as private citizens, in all litigation in which the State of Florida is a party, regardless of the viewpoint of the faculty or staff member's testimony and regardless of whether the faculty or staff member is compensated for such testimony." *Id*. The policy goes on to say that "[t]his presumption is particularly important in cases that challenge the constitutionality, legality, or application of a Florida law." *Id*.

5

UF's revised policy "[i]mposes a heavy burden on the university to overcome the strong presumption set forth above, such that requests to serve as expert witnesses in litigation in which the State of Florida is a party may be denied only when clear and convincing evidence establishes that such testimony would conflict with an important and particularized interest of the university, which the university must set forth and explain in writing." *Id*. at pp. 221–22. "A general assertion that such testimony is a conflict of interest is insufficient to rebut the strong presumption in favor of such testimony." *Id*. at pg. 222. "Additionally, an undifferentiated fear or apprehension of harm resulting from a conflict is insufficient to rebut the strong presumption in favor of such testimony." *Id*.

UF's revised policy on its face fully comports with the *Pickering* doctrine. UF could have written a more speech-restrictive policy that would still comply with the First Amendment. But "the government may certainly choose to give additional protections to its employees beyond what is mandated by the First Amendment, out of respect for the values underlying the First Amendment," and UF has made that First Amendment-friendly choice here. *Waters*, 511 U.S. at 674 (plurality). UF's policy carefully balances the interests of UF's faculty and staff in commenting as private citizens on matters of public concern against UF's legitimate interest as a public university "in the effective and efficient fulfillment of [its] responsibilities to the public." *Lane*, 573 U.S. at 242. And the revised policy strikes the balance very

6

far on the employees' side of the ledger. Under the policy, commenting on matters of public concern in one's private capacity is not even a reportable outside activity. And even as to serving as an expert witness in litigation against the State of Florida, the revised policy enacts a "strong presumption" in favor of allowing such outside activities. UF carries a "heavy burden" to overcome the presumption. It may do so only when there is "clear and convincing evidence" that the proposed expert work would conflict with an "important and particularized interest of the university," which it must explain in writing.

The *Pickering* doctrine recognizes that some limits on a public employee's speech as a private citizen on matters of public concern are necessary, proper, and constitutional. "Government agencies are charged by law with doing particular tasks. Agencies hire employees to help do those tasks as effectively and efficiently as possible." *Waters*, 511 U.S. at 674–75 (plurality). "When someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her. Restraints are justified by the consensual nature of the employment relationship and by the unique nature of the government's interest." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 386–87 (2011) (quotation marks omitted). If this Court accepts the Plaintiffs' invitation to facially invalidate UF's revised conflicts policy, to the extent that the policy applies

7

to a faculty member's outside activities involving participation in litigation as an expert witness or *amicus curiae*, UF will be left with no ability to regulate such activities, regardless of their effect on UF's mission as a public university. Such an outcome would be contrary to the Supreme Court's *Pickering* doctrine. This Court should not go down that road.

## CONCLUSION

For the foregoing reasons, as well as those set forth in UF's prior briefing and at oral argument, Plaintiffs' motion for preliminary injunction should be denied.

Respectfully submitted,

| | |
|---|---|
| Amy Meyers Hass | */s/ H. Christopher Bartolomucci* |
|   *Vice President and General Counsel* | H. Christopher Bartolomucci |
| Fla. Bar No. 483346 | Brian J. Field (*pro hac vice*) |
| Ryan Fuller | Kenneth A. Klukowski |
|   *Associate Vice President and* | SCHAERR | JAFFE LLP |
|   *Deputy General Counsel* | 1717 K Street NW, Suite 900 |
| Fla. Bar No. 635324 | Washington, DC 20006 |
| Shayne Ashley Thomas | (202) 787-1060 |
|   *Senior Counsel* | cbartolomucci@schaerr-jaffe.com |
| Fla. Bar No. 585025 | bfield@schaerr-jaffe.com |
| UNIVERSITY OF FLORIDA | kklukowski@schaerr-jaffe.com |
| OFFICE OF GENERAL COUNSEL | |
| 123 Tigert Hall, P.O. Box 113125 | |
| Gainesville, Florida 32611 | |
| (352) 392-1358 | |
| amhass@ufl.edu | |
| ryanf@ufl.edu | |
| sthomas777@ufl.edu | |

*Counsel for Defendants*

Dated: January 12, 2022