Sharon Wright Austin

*vs.*

University of Florida Board of Trustee

Hearing Before:

Judge Mark Walker

January 14, 2022

Vol 1



PHIPPS REPORTING

*Raising the Bar!*

Judge Mark Walker
January 14, 2022

```
              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF FLORIDA
                     GAINESVILLE DIVISION

                CASE NO.:  1:21-CV-00184-MW-GRJ


SHARON WRIGHT AUSTIN, MICHAEL
McDONALD and DANIEL A. SMITH,

          Plaintiffs,
vs.
UNIVERSITY OF FLORIDA BOARD OF TRUSTEES,
the public body corporate acting for and on
behalf of the University of Florida, W. KENT
FUCHS, in his official capacity as President
of the University of Florida, and JOSEPH
GLOVER, in his official capacity as Provost
of the University of Florida,

          Defendants.
_____/

               TELEPHONIC TRANSCRIPT OF
          PRELIMINARY INJUNCTION ORAL ARGUMENT

                VOLUME 1 (Pages 1 - 57)


    DATE TAKEN:  Friday, January 14, 2022
    TIME:        2:2 p.m. to 3:23 p.m.
    PLACE:       U.S. District Court, Northern District
                 of Florida
                 111 North Adams Street
                 Tallahassee, Florida 32301
    BEFORE:      MARK WALKER, Chief District Judge


    This cause came on to be heard at the time and
place aforesaid, when and where the following
proceedings were stenographically reported by:


               STENOGRAPHICALLY REPORTED BY:
                 KIMBERLY S. BARTHOLOMEW
                  Professional Stenographer


Job No.  227851
```

Judge Mark Walker
January 14, 2022

```
                                                         Page 2
 1   APPEARANCES:  (Attorneys appearing telephonically.)

 2

 3              ON BEHALF OF PLAINTIFFS:

 4                DEBEVOISE & PLIMPTON, LLP
                  801 Pennsylvania Avenue, NW, Suite 500
 5                Washington, D.C. 20005
                  (202)383-8000
 6                BY: DAVID A. O'NEIL, ESQUIRE
                  daoneil@debevoise.com
 7

 8

 9              ON BEHALF OF DEFENDANTS:

10                SCHAERR JAFFE, LLP
                  1717 K Street NW, Suite 900
11                Washington, D.C. 20006
                  (202)787-1060
12                BY: H. CHRISTOPHER BARTOLOMUCCI, ESQUIRE
                  cbartolomucci@schaerr-jaffe.com
13

14

15

16

17

18

19

20

21

22

23

24

25
```

Judge Mark Walker
January 14, 2022

Page 3

```
 1                        I N D E X

 2   PROCEEDINGS                                    PAGE

 3   Telephonic Oral Arguments on

 4   Motion for Preliminary Injunction

 5     By Mr. David O'Neil                          11

 6     By H. Christopher Bartolomucci               13

 7

 8

 9

10

11                     INDEX OF EXHIBITS

12   PLAINTIFF'S         DESCRIPTION                PAGE

13   None

14

15

16   DEFENDANT'S         DESCRIPTION                PAGE

17   None

18

19

20

21

22

23

24

25   CERTIFICATE OF REPORTER                        57
```

Judge Mark Walker
January 14, 2022

Page 4

1    Proceedings began/continued at 2:02 p.m.:

2            THE COURT:  Good afternoon.  This is Judge

3    Walker.  We're here on Case Number 1:21-cv-184.

4    We're here for a continuation of a telephonic oral

5    argument on a Motion for Preliminary Injunction.

6            We're only going to have two people speaking

7    today, other than me.  The Court that is.

8    Mr. O'Neil on behalf of the plaintiff, and

9    Mr. Bartolomucci on behalf of the defendants.

10           Let me remind everyone that this is a federal

11   proceeding and you may not record these

12   proceedings.  Having said that, this is a public

13   proceeding and certainly anybody that wants to

14   listen in can listen in.

15           The last time we had folks that called in and

16   no matter how many times I said you need to mute

17   your phone, we can hear you, they continued to talk

18   and disrupt the proceedings.  And the court

19   reporter as well as the Court were unable to hear

20   the lawyers, and so I had to disconnect one of

21   those calls.

22           I don't want to have to do that again, because

23   I want anybody that wants to listen to this call to

24   be able to listen in.  But you cannot disrupt these

25   proceedings, and I've got to be able to hear the

Judge Mark Walker
January 14, 2022

Page 5

1    lawyers, and the court reporter has to be able to

2    create a record.  So please mute your phones.

3        Let me verify, I've been told by my courtroom

4    deputy that I have everyone on the line that needs

5    to be on the line, but let me verify.

6        Mr. O'Neil, are you on the line?

7        MR. O'NEIL:  I am, Your Honor.

8        THE COURT:  Mr. Bartolomucci?

9        MR. BARTOLOMUCCI:  Yes, Your Honor.

10       THE COURT:  Welcome.

11       Let me thank you for your thoughtful papers

12   that you filed.  I received the defense's

13   supplemental brief, ECF Document 58, as well as the

14   plaintiff's supplemental brief, ECF Number 60.  And

15   I've reviewed those.

16       Before we get too far in the weeds, I did want

17   to mention something from the last hearing, because

18   I left a topic.

19       And in fairness to Mr. Bartolomucci, I started

20   talking about some statements made by the president

21   of the University, and I brought up Rule 201 of the

22   Rules of Evidence and pointed out that the Court

23   could take judicial notice without it being

24   requested by a party.  I also pointed out, referred

25   to case law that talks about a party's own website,

Judge Mark Walker
January 14, 2022

Page 6

1   something off of it you could take judicial notice

2   of.  I also talked about that I realized there were

3   other evidentiary issues, such as hearsay, that

4   could come into play, and it was a party statement.

5        We never got to the last point, which is

6   whether or not the statements that I was asking

7   about were judicative facts within the meaning of

8   Rule 201.  We don't need to do that.  But I did, in

9   fairness to Mr. Bartolomucci, want to point out

10  that I never got to that final argument, which

11  certainly the defense could have had a thoughtful

12  argument as to why, Judge, we don't think it's

13  relevant.  But even if you think it's relevant and

14  even if you think it relates to the issues in this

15  case, it's still not a judicative fact within the

16  meaning of Rule 201.

17       And so I didn't realize that we switched

18  gears, Mr. Bartolomucci, and went to another topic.

19  But that would have been the last phase of that

20  discussion that we never got to.  I did just want

21  to clarify that on the record.

22       This matter initially was set for oral

23  argument only, and neither side sought to present

24  any testimony at the hearing.  And there had been

25  some indication that the parties believed it would

Judge Mark Walker
January 14, 2022

1    take about an hour.  The last hearing lasted a
2    couple of hours.  But the bulk of that, the great
3    bulk of it was the Court asking questions.
4        I ended that proceeding by saying that I was
5    going to give both sides an opportunity to not only
6    circle back and address anything that came up at
7    that hearing, but to also make any points that they
8    didn't get to make that they wanted to make.  So
9    that's how we're going to start today.
10       I'll first start with Counsel for the
11   plaintiff and I'll go to Mr. Bartolomucci.  I'm not
12   going to interrupt you during this phase of this
13   hearing.  I want both of you to have a full and
14   fair opportunity uninterrupted to clarify or make
15   any additional points that you wanted to make.
16       For the benefit of the listeners, and
17   Mr. O'Neil, I know you and Mr. Bartolomucci know
18   this, but for the benefit of the listeners, because
19   I've been told some members of the public are on
20   the line by my courtroom deputy, the lawyers have
21   filed extensive papers in this case and have made
22   incredibly thoughtful arguments.  They're not going
23   to reiterate and repeat everything they filed in
24   their papers, otherwise, there wouldn't have been
25   any point for them to take all the time to file the

Judge Mark Walker
January 14, 2022

Page 8

```
 1   thoughtful papers they filed.
 2       This is to give them an opportunity to sum up
 3   their arguments, to clarify points, or to, again,
 4   address any concerns raised by the Court at the
 5   last hearing.
 6       So with those qualifications, let me turn it
 7   over to Mr. O'Neil.
 8       Mr. O'Neil, before I do, though, do you have
 9   any idea approximately how long you would like?
10   I'm trying to keep track of time to take a break
11   for the court reporter.
12       MR. O'NEIL:  Judge, you had mentioned that you
13   have specific questions about the Amicus brief
14   issue, so I'm anticipating that you will ask about
15   those separately and I don't plan to address them
16   at the top.
17       THE COURT:  I am going to -- that is the
18   question that I'm going to have for you.  Because
19   what's going to happen is, I'm going to hear from
20   you and Mr. Bartolomucci, and I'm going to then ask
21   my questions after we take a break.  And absolutely
22   I'm going to have questions for you about the
23   Amicus briefs issue.
24       MR. O'NEIL:  Okay.  So putting that issue to
25   the side, I just need a few minutes, I think, to
```

Judge Mark Walker
January 14, 2022

Page 9

1    address the Court.

2         THE COURT:  No problem.

3         And Mr. Bartolomucci, and I know this is

4    flexible and fluid.  I don't have a timer, I'm

5    really just asking this for my planning purposes.

6    And I'm not artificially limiting your

7    presentation.

8         Approximately how long would you like, sir?

9         MR. BARTOLOMUCCI:  Your Honor, I believe I,

10   too, only need a few minutes for an opening

11   statement.

12        THE COURT:  Okay.  All right.  And when I

13   say -- and by that I mean, I'm not going to have

14   nearly as many questions as I did last time.  In

15   fact, I've just got -- I'm going to call it one

16   question for you with some subparts, and one

17   question for the plaintiff with some subparts.

18   Because, again, you both have done a good job in

19   briefing these issues.

20        Now is the time for anything you all want to

21   add to your papers, anything we talked about the

22   last time that you want to circle back to,

23   although, I promised I wasn't going to use that

24   phrase.  But, anyway, it is what it is.  But now is

25   your time.  And again, take the time you need.

Judge Mark Walker
January 14, 2022

Page 10

1          Let me start with Mr. O'Neil.

2          MR. O'NEIL:  Thank you, Your Honor.  As you

3     noted, we have extensively briefed these issues.

4     We appreciate the Court allowing us the opportunity

5     to submit some briefing on those.

6          So I'm just going to add a couple of points

7     about Pickering.  One specific and then one more

8     general.

9          First, we've explained why, because the policy

10    here is these speech restriction that applies in

11    advance to a large set of speakers.  It's subject

12    to the heightened review in NTEU.

13         And on that point, I'd also like to draw this

14    Court's attention to the Supreme Court's 28th

15    decision -- 2018 decision in Janus v. American

16    Federation.  There the Court explained that under

17    NTEU the government must, "Shoulder a heavier

18    burden," and, "Is entitled to considerably less

19    deference in its assessment that predicted harm

20    justifies a particular impingement on first

21    amendment rights."

22         The Court then said this, "The end product of

23    these adjustments is a test that more closely

24    resembles exacting scrutiny than the traditional

25    Pickering analysis."

Judge Mark Walker
January 14, 2022

1          That means that in this case the defendants

2    have the burden to show that the policy is narrowly

3    tailored to serve compelling state interests.

4    Defendants have not identified any interest under

5    Pickering that would permit them to disapprove

6    expert testimony on matters of public concern.

7    They certainly haven't showed that the policy is

8    narrowly tailored to further any compelling

9    government interest.

10         The second point is more fundamental.  The

11   defendants here are the chair of the board of

12   trustees, the president, the provost, and the dean

13   of the law school of one of the top five public

14   universities in the United States.

15         They have had multiple opportunities in public

16   statements, in revisions to this policy, in

17   addresses to faculty, in numerous rounds of

18   briefing, and in oral argument before this Court to

19   say what should be obvious to any university

20   administrator.  We will never attempt to prohibit

21   faculty speech -- sorry.  We will never attempt to

22   prohibit faculty from speaking as citizens because

23   of the content of their speech or the popularity of

24   their opinions.

25         The University's interest is not the interest

Judge Mark Walker
January 14, 2022

Page 12

1    of the majority party and the state legislature or

2    its current governor.  That is academic freedom

3    101.

4         It is distressing and chilling to these

5    plaintiffs that these statements are not gospel at

6    an academic institution to which they've devoted

7    their careers.  As long as the defendants will not

8    change the policy to make these and other points

9    unambiguous, the policy is unconstitutional and it

10   must be enjoined.

11        Thank you, Your Honor.

12        THE COURT:  Thank you, Mr. O'Neil.

13        Mr. Bartolomucci, and let me -- if you could

14   just alert me, you can either respond to Mr. O'Neil

15   now or make the points you wanted to make and then

16   to the extent you wish to respond, you can respond.

17   But if you will just let me know in what order

18   you're going to do it.

19        MR. BARTOLOMUCCI:  Your Honor, I believe we've

20   said our piece on the Pickering issue in the brief

21   we filed this week.  But there is a different

22   matter I wanted to speak to.

23        THE COURT:  Certainly.

24        MR. BARTOLOMUCCI:  Well, thank you, because I

25   do have something important to say, and I

Judge Mark Walker
January 14, 2022

1    appreciate the opportunity to make this statement.

2         Just two days ago facts came to the

3    University's attention for the first time that we

4    believe should fundamentally change how the Court

5    views this case.

6         These newly discovered facts relate to

7    misconduct on the part of the three original

8    plaintiffs.  The University's conflicts policy is

9    clear that a faculty member may not engage in

10   outside work unless and until the University

11   approves it.

12        But we now know that Smith, Austin and

13   McDonald were actively working as experts before

14   they submitted their requests, and continued that

15   work even after the University denied their

16   requests.

17        Smith was working on his expert report no

18   later than May 15 of last year, before he submitted

19   his first request on June 4.  The University denied

20   his request on July 7.  Despite that denial, Smith

21   kept working.  He signed his expert report on

22   September 1, and he sat for a deposition on

23   October 25, which was after the University had

24   denied on October 11 a second request he made on

25   October 4.

Judge Mark Walker
January 14, 2022

Page 14

1          Professor Austin was working on her expert
2     report no later than July 16, and she signed her
3     report on September 1.  But she did not request
4     permission until October 12.  And even after the
5     University denied her request, she continued to
6     work, sitting for a deposition on October 27.
7          Professor McDonald submitted his request on
8     October 4.  On October 13 he signed his expert
9     declaration.  That same day UF denied his request.
10    Despite the denial, he sat for a deposition on
11    October 29.
12         These facts, Your Honor, are nowhere to be
13    found in the Complaint or these plaintiffs'
14    Declarations.  These plaintiffs, Your Honor, have
15    misled their employer, defense Counsel, and this
16    Court.
17         We knew that Dr. Goldhagen was not abiding by
18    the University's process.  Now we know that the
19    three original plaintiffs were also flagrantly
20    ignoring that process.
21         This misconduct impacts four key issues in
22    this case.  First, these plaintiffs, like
23    Goldhagen, have unclean hands.  They don't deserve
24    equitable relief.  This Court should not enjoin a
25    process that the plaintiffs don't even abide by.

Judge Mark Walker
January 14, 2022

Page 15

1          Second, there is no chilling effect.  The
2     policy didn't chill them.  They went to work before
3     submitting requests and kept working even after
4     their requests were denied.
5          Third, the planning issue.  The complaint
6     about the lack of the time limit on UF's decision
7     is phony.  These plaintiffs went to work even
8     before they made a request.  They weren't waiting
9     for the University to make a decision.
10          Fourth, they lack standing.  These plaintiffs
11     aren't injured by the process.  They don't even
12     honor the process.
13          For these reasons, Your Honor, the defendants
14     believe it is very important, indeed vital, that
15     they be allowed to make a supplemental filing next
16     week documenting these facts and explaining how
17     they impact the Motion or Preliminary Injunction.
18          Frankly, I'm not even sure it makes sense to
19     continued today's hearing.  This Court might be
20     better served by holding this hearing after it
21     receives a supplemental filing from the University.
22          Thank you, Your Honor.  That's my statement.
23          THE COURT:  Mr. O'Neil, I certainly have some
24     questions.  I'm, quite frankly, mystified why some
25     of these facts could possibly be newly discovered

Judge Mark Walker
January 14, 2022

Page 16

1    as opposed to newly argued, which are two different

2    things.  But I'll -- are you prepared to respond or

3    do you need --

4         MR. O'NEIL:  No, Your Honor.  I mean, I can't

5    respond immediately on those specific dates and

6    facts, but I would like to respond on the

7    general -- on the general comments.

8         THE COURT:  You can respond to the general

9    comments, and then respond to Mr. Bartolomucci's

10   request to reopen the hearing to add additional

11   evidence to the hearing.

12        I would like to point out, I didn't limit

13   anyone from taking depositions in this case.  I

14   didn't limit anyone from seeking discovery prior to

15   the hearing.  In fact, I think I issued an Order in

16   this case and had a hearing and asked if anybody

17   needed to do any of those things to which I

18   received a no.  But setting aside the fact --

19   setting those facts aside.

20        But you can go ahead, Mr. O'Neil.

21        MR. O'NEIL:  Thank you, Your Honor.

22        Well, I'll start there.  Your Honor at the end

23   of December made clear that either party could seek

24   factual discovery or development for purposes of

25   PI, and Mr. Bartolomucci said that he did not want

Judge Mark Walker
January 14, 2022

1     to.

2          At the last oral argument you made clear that

3     the scope of this hearing would not be limited to

4     Pickering.  I note that Mr. Bartolomucci says that

5     these facts were newly discovered two days ago.

6     You know, they filed their brief two days ago.

7     It's unclear why it's first brought to this Court's

8     attention in the context of oral argument.

9          But putting those issues aside,

10    Mr. Bartolomucci has just done an excellent job of

11    explaining the chill that is -- that these

12    plaintiffs and other faculty members are subject

13    to.  I mean, far from walking away from the initial

14    denials, as defendants have occasionally tried to

15    do in public statements and statements to this

16    Court, the defendants are now doubling down on them

17    and making clear that these plaintiffs may be

18    subject to punishment for their refusal to follow

19    what they strongly believe is an unconstitutional

20    prior restraint.

21         We are seeking a preliminary injunction

22    precisely because we believe that the prior

23    restraint that the University attempted to impose,

24    that the University did impose, and then denials of

25    their speech, which we believe were flagrantly

Judge Mark Walker
January 14, 2022

Page 18

1  unconstitutional, that those are illegal, that the

2  policy under which they were made should be

3  enjoined, and that the defendant should be enjoined

4  from imposing any punishment for defendants simply

5  exercising their First Amendment right as they were

6  entitled to do.

7      I would note also that this same set of facts

8  was present in Hoover.  I will find the citations

9  for it.  But if I recall correctly, the professor

10 in Hoover testified notwithstanding the denial,

11 because he believed that the denial of his ability

12 to speak was unconstitutional, sought a preliminary

13 injunction to obtain that relief, and then

14 succeeded.

15     We are confident that we will succeed here as

16 well, and we believe that Mr. Bartolomucci's

17 comments demonstrate in a really vivid way why this

18 policy needs to be enjoined.

19     THE COURT:  Mr. O'Neil, let me ask you a

20 question about the Amicus policy.

21     I guess the first is, for purposes of this

22 Court's analysis of your arguments, assuming

23 arguendo -- well, I don't think Mr. Bartolomucci is

24 accusing Professor Nunn of misconduct, so not --

25 setting that issue aside with respect to the three

Judge Mark Walker
January 14, 2022

Page 19

1    professors, but with respect to Professor Nunn and

2    the Amicus brief, what is the policy and what is

3    the problem with the policy?  And I don't ask that

4    question -- I'm being serious, because I understand

5    what the policy is as it relates to expert

6    testimony and your challenge to what you believe is

7    a standardless standard of important and

8    particularized interest.  But separate and apart

9    from that is, exactly what is it that you're --

10   what is the policy and what is it that you're

11   asking me to enjoin?

12        I've tried to piece together the emails from

13   the dean of the law school.  I know in February of

14   2020 you didn't have to report that activity under

15   the conflict policy.  That changed in July of 2020

16   based on the --

17        MR. O'NEIL:  Judge.

18        THE COURT:  Yes, sir.

19        MR. O'NEIL:  Judge, I'm sorry to interrupt.

20   I'm having a little bit of trouble hearing you.

21   I'm not sure if it's just me.

22        THE COURT:  My apologies.

23        MR. O'NEIL:  That's better.  Thank you.

24        THE COURT:  Sure.  First, I understand what

25   the policy is as it refers to expert testimony.

Judge Mark Walker
January 14, 2022

Page 20

1    But exactly what are you saying the policy is?

2    What is the problem with the policy?  Does it

3    require approval across the board or just for cases

4    involving the state?  Because that's what appears

5    to be the issue where the dean of the law school

6    engrafts this new rule in July of 2020 based on the

7    record evidence that's before this Court.

8         And so I'm trying to find out what is the

9    policy, what's the problem with the policy?  Are

10   you suggesting it applies to all briefs or just

11   those involved with the state?

12        And finally, if you could help me understand,

13   is there going to be a different analysis, and I'm

14   going to call it Pickering progeny, because I

15   understand there is a difference -- some Courts

16   have treated it -- and we'll get there later,

17   talking about the difference between NTEU and

18   Pickering.

19        But is there going to be a different analysis

20   here?  Because it's not that you can't file the

21   brief, it's not that you can't sign the brief, it's

22   that you can't identify yourself as being

23   affiliated with the University.

24        And so I know there is a few layers there, but

25   I just want to make sure, there's a lot of briefing

Judge Mark Walker
January 14, 2022

Page 21

1    about the experts and the expert policy and

2    applying the law to those.  Both sides have done

3    less briefing as it relates to this parallel, but

4    it appears to me to be a slightly different issue.

5         So if you could address that, then I'm going

6    to have Mr. Bartolomucci address that, and then

7    we're going to take -- meaning the Amicus.  I'll

8    call it the Amicus issue.  Then we'll take a break.

9    I promise I'm not going to cut anybody off.  I'll

10   let both sides reply to each other on other issues

11   to the extent you need to.

12        But Mr. O'Neil, let's stick with the Amicus

13   policy that I put in air quotes.

14        MR. O'NEIL:  Your Honor, could I very briefly

15   follow up on my previous comments about the Hoover

16   case.  I just want to provide you with the

17   citation.

18        THE COURT:  Certainly.  And I'll let

19   Mr. Bartolomucci respond or reply to that later.

20        Go ahead.

21        MR. O'NEIL:  Okay.  So it's on page seven of

22   the appellee's brief in Hoover, which the

23   defendants actually attached to the second Fuller

24   Declaration.  And that is document 44-5, page 19.

25   The Texas A&M denied his request to participate as

Judge Mark Walker
January 14, 2022

1   an expert witness in the litigation, and I'm

2   quoting the brief here, "Dr. Welsh disregarded this

3   threat to his University salary, choosing to

4   testify anyway regardless of whether an injunction

5   issued, as it ultimately did."

6       And that's the citation.

7       THE COURT:  Those are the facts, Mr. O'Neil.

8   But did the court -- which, of course, I'm not

9   bound by the Fifth, it would merely be persuasive.

10  Does the Court address that fact in the context of

11  saying -- I mean, I know Mr. Bartolomucci raised it

12  as unclean hands.  I'm assuming what he is arguing

13  is that there is no injury or chilling effect as

14  evidenced by the fact that they did that.

15      Did the Court address that or is that just a

16  fact that existed in that case?

17      MR. O'NEIL:  Well, it's a fact that existed in

18  that case, you know, that actually the District

19  Court decision there is not available on Westlaw,

20  but obviously the Fifth Circuit upheld the

21  preliminary injunction on these facts.  So it was

22  something the Court was clearly aware of.

23      THE COURT:  And they have an independent

24  obligation to consider standing, but it would be

25  implicit that they found there was still standing

Judge Mark Walker
January 14, 2022

Page 23

1    notwithstanding that fact.  It's not explicit, I
2    guess is what my question is.
3          MR. O'NEIL:  I'm not aware that it's explicit,
4    that's correct.
5          THE COURT:  And now if you could turn to the
6    multiple layers --
7          MR. O'NEIL:  Yes.
8          THE COURT:  -- as it relates to the Professor
9    Nunn and the Amicus policy.
10          MR. O'NEIL:  So the Amicus issue is
11    significant for two reasons:  The first is that
12    it's simply another demonstration confirmation of
13    the fact the defendants equate the University's
14    interest for purposes of conflicts of interests
15    policies with the ideological position with the
16    state --
17          THE COURT:  So let me stop you there,
18    Mr. O'Neil.
19          So first, Judge, even if Professor Nunn wasn't
20    a plaintiff, and even if we didn't talk about the
21    Amicus policy, or Amicus, tomato-tomato, then we
22    still would have introduced that into the record
23    because it supports the other professor's claim as
24    it relates to experts testifying.
25          So that's your first point, correct?

Judge Mark Walker
January 14, 2022

Page 24

1        MR. O'NEIL:  That's correct.

2        Second, it is --

3        THE COURT:  So setting aside that it's

4   relevant to the other arguments in terms of

5   Professor Nunn seeking injunctive relief as it

6   pertains to him and other law professors moving

7   forward, what says you?

8        MR. O'NEIL:  Yes.  So that's the second point.

9        Those restrictions in connection with Amicus

10  briefs are unlawful in their own right.

11       What happened here, and you do have to piece

12  together the UFOLIO responses and emails.  But what

13  happened here was that the University at second

14  level review of the Reid UFOLIO request, so this is

15  the official responsible for the conflict of

16  interest policy who reviews the request after Dean

17  Rosenbury does, that official instructed Professor

18  Reid that she could not use, "Any UF marks, logos

19  or identifiers in connection with the Amicus

20  brief," and was otherwise prohibited from,

21  "Implying or suggesting any official affiliation

22  with UF."

23       That's what we challenged, because that meant

24  that either Professors Reid nor Nunn were permitted

25  to state the basic fact that they are professors of

Judge Mark Walker
January 14, 2022

Page 25

1    law at the University of Florida.

2        And for that Amicus brief that is perhaps to

3    be an essential message.  I'm Teresa Reid, you

4    should listen to me because I'm a law professor at

5    the University of Florida and an expert on these

6    topics.  Just listing your name doesn't carry the

7    same message and it's of much less use to the Court

8    and the public.

9        There's no compelling justification based in

10   Pickering or anything else that would justify that

11   restriction.  Law professors express opinions all

12   the time.  That's what they do.  And there's no

13   realistic risk that the public will believe that

14   whatever legal position the professors endorse by

15   signing an Amicus brief is the official position of

16   the University of Florida.  And that's presumably

17   why until July, 2020, until Professor Nunn asked

18   his colleagues to sign this brief challenging the

19   Florida law on ex-felons the law school's policy

20   was just signing an Amicus brief was not even

21   considered an outside activity and didn't require

22   any pre-approval.

23       If the position of the defendants is now

24   different, so professors now may list their

25   institutional affiliations on Amicus briefs, then

Judge Mark Walker
January 14, 2022

1    the policy should be revised to reflect that and it

2    should be enjoined until that change is made.

3         Your Honor, there is a reason that you are

4    confused and need to piece together the documents

5    to try to understand this policy.  It is utterly

6    confused at the moment.  Is signing an Amicus brief

7    an inside activity or an outside activity?  We

8    don't know.  Rosenbury said it's an inside activity

9    but still has to be reported because it's a

10   conflict of interest.  The policy says nothing

11   about it at all.

12        Last week at oral argument defendants said

13   signing an Amicus brief is an outside activity

14   requiring pre-approval, but they pointed to a

15   provision in the policy that talks about providing

16   professional services to someone else, and that's

17   not what an Amicus brief is.

18        Law professors are generally confused about

19   what they're required and permitted to do in this

20   phase, and it is currently chilling their speech.

21        THE COURT:  I understand your position.

22        Let me do this:  I'm going to put you all on

23   hold for a minute.  And, Mr. Bartolomucci, when we

24   come back, I'll let you respond to Mr. O'Neil both

25   as it relates to the Amicus brief issue, again I'm

Judge Mark Walker
January 14, 2022

Page 27

 1   using that as shorthand, as well as reply to what

 2   Mr. O'Neil said as it relates to your request to

 3   reopen the record.

 4        So I'm going to put you on hold and we'll be

 5   back in just a minute.  Thank you.

 6        (A break was taken off the record from

 7   2:36 p.m. to 2:39 p.m.)

 8        THE COURT:  We're back on the record.  Thank

 9   you for holding.

10        Mr. O'Neil, can you hear me?

11        MR. O'NEIL:  I can, Your Honor.

12        THE COURT:  Mr. Bartolomucci, can you hear me?

13        MR. BARTOLOMUCCI:  Yes, I can, Your Honor.

14        THE COURT:  All right.  Mr. Bartolomucci, I've

15   got to ask as it relates to your assertion that

16   these are newly discovered facts, setting aside the

17   issue that nobody asked for discovery, if that's

18   something you wanted to explore when they were

19   first retained and so forth.

20        But setting that aside, for the life of me

21   since these expert reports, not only the reports

22   themselves but when they were dated and when they

23   were filed with the Court are all a matter of

24   public record.  I'm just perplexed, and I'll go so

25   far as, quite frankly, it's strange credulity for

Judge Mark Walker
January 14, 2022

1  you to suggest that these are newly discovered

2  facts when placed in context that it was all part

3  of the public record.  You all were well aware of

4  who they were, what cases they were participating

5  in, what they were filing.

6       So not only did you not formally ask for

7  discovery, you didn't even go look on PACER, which

8  you clearly have access to because you've been

9  filing stuff on my docket to get these reports.  So

10 help me to understand how in the world I would view

11 this as newly discovered anything and would reopen

12 the record.

13      But before you do that, Mr. O'Neil, you're

14 going to have to respond, and I'm not sure it's

15 determinative of anything.  It seems to me I can

16 take judicial notice of when these reports were

17 filed.  They were filed in the election cases.

18 While I can't take judicial notice of the content,

19 substantive content of something or what a ruling

20 was, both sides will have to let me know why I

21 wouldn't -- I can't consider the date that are on

22 the reports that were available to everyone, that

23 certainly -- that reports are dated before the

24 approval.  I'm not sure that this is not much to do

25 about nothing as it relates to reopening discover,

Judge Mark Walker
January 14, 2022

1    because I'm not sure why I couldn't consider those

2    facts in any event.  But be thinking about that,

3    Mr. O'Neil.

4          Mr. Bartolomucci, just for the life of me,

5    since the University has taken the position that

6    the doctor just doesn't listen and does what he

7    wants and you knew that was an issue, and since all

8    these documents and the expert reports and the

9    dates on them were public record and the very thing

10   that you all are arguing about, I've got to say

11   that I'm flummoxed that you're saying these are the

12   very reports and the experts and their testimony

13   we're talking about, yet, Judge, we had no idea,

14   none at all.  I'm just flabbergasted.

15         And the last two days I learned the earth is

16   not round, and these professors, there's gambling

17   in Casablanca, and these professors had their

18   reports that were public record dated before they

19   were given approval.

20         And I'm using strong language for a reason,

21   because at the end of the day both you and

22   Mr. O'Neil are officers of the Court before --

23   before you are lawyers representing a client.

24         So help me to understand how this is newly

25   discovered.

Judge Mark Walker
January 14, 2022

Page 30

```
 1          MR. BARTOLOMUCCI:  Yes, Your Honor.  This is
 2    Chris Bartolomucci.
 3          First let me very plainly say and represent to
 4    you, if we piece these facts together, we first
 5    learned of them Wednesday night --
 6          THE COURT:  No.  Stop, Mr. Bartolomucci.  Not
 7    going to do it.  It is squirrely for you to do this
 8    the way you've done it.  And if I sound agitated, I
 9    am.  You're going to answer my question directly.
10    And if I have to call you to Tallahassee and place
11    you under oath, I've only done it with a lawyer
12    once before, I'll do it again.  Answer my question.
13          You didn't ask for any discovery.  You've
14    always known these reports were at issue.  Are you
15    saying, Judge, I was just incompetent and didn't
16    bother to pull the public records and see where
17    they were dated; is that the answer?
18          MR. BARTOLOMUCCI:  No.
19          THE COURT:  Because you can't tell me --
20          MR. BARTOLOMUCCI:  Your Honor --
21          THE COURT:  When did you suddenly decide,
22    Mr. Bartolomucci, other than we really don't have a
23    defense to Pickering and we really didn't answer
24    your questions, and we'll get there in a minute,
25    that we're going to quote for the press' benefit on
```

Judge Mark Walker
January 14, 2022

Page 31

1    this hearing, drop this bombshell and attack the

2    professors as, "Having unclean hands"?

3         I want you to walk me through the timeline and

4    the thought process that lead us here today.

5         MR. BARTOLOMUCCI:  Yes, Your Honor.  I would

6    be happy to, and I'm attempting to.

7         The Complaint in this case, the Declaration

8    submitted by the three original plaintiffs and the

9    preliminary injunction briefs provided no notice or

10   hint whatsoever that these plaintiffs had been

11   engaged in their expert witness work even before

12   they made the request and even after --

13        THE COURT:  Why would that be in their

14   affidavit, Mr. Bartolomucci?  Why would they put

15   that in their affidavit?  Why would they say, oh,

16   by the way, Mr. Bartolomucci, why don't you go look

17   at our expert reports and when they were dated?

18        I'm not aware of why it was incumbent upon

19   Mr. O'Neil or his clients.  Were they supposed to

20   show up at your office and walk you through stuff?

21   I don't understand.

22        MR. BARTOLOMUCCI:  Your Honor, the papers that

23   we were given by the plaintiffs indicated that

24   plaintiffs made a request and the University denied

25   it, and, therefore, they wanted the injunction.

Judge Mark Walker
January 14, 2022

 1   And that's not at all how things happen.

 2        Unlike Dr. Goldhagen, who gave an interview to

 3   a television station, you know, saying I went ahead

 4   and did the expert witness work anyway, there

 5   was -- we were -- had no notice --

 6        THE COURT:  No.  Wrong.  Wrong, Mr.

 7   Bartolomucci.  These three experts, they didn't

 8   postdate their reports.  They filed in a public

 9   record expert reports with a date that suggest they

10   did it before it was approved, which is exactly

11   what you want to talk about.

12        MR. BARTOLOMUCCI:  Again --

13        THE COURT:  So how is that any different than

14   the doctor giving a public speech?

15        MR. BARTOLOMUCCI:  We now know those facts,

16   and we learned them two days ago.  These facts were

17   not in the possession of the UF's General Counsel's

18   office --

19        THE COURT:  What was your due diligence to

20   ascertain, since you already raised the issue as it

21   relates to the doctor about due diligence and no

22   harm, and you've said there was no chilling effect,

23   since I said you could engage in discovery and

24   since as I've now noted and it's clear these are

25   public records that are actually on this Court's

Judge Mark Walker
January 14, 2022

Page 33

1   docket, the expert reports, what is the due

2   diligence you engaged in on behalf of your client

3   who presumably is paying you and you're not doing

4   this for free, to ascertain what the facts here

5   were so you could mount a defense?

6        MR. BARTOLOMUCCI:  Your Honor, the discovery

7   process is still open, the preliminary injunction

8   process is ongoing.  We have --

9        THE COURT:  So under your theory,

10  Mr. Bartolomucci, I could never have a, preliminary

11  injunction hearing, it would be continued ad

12  infinitum as new facts develop because discovery is

13  ongoing.  So I could never close discovery and I

14  could rely on lawyers to wait, sit on their hands,

15  do nothing, bill their clients, and then wait for a

16  second hearing that you weren't even entitled to

17  but asked for another reason, which, you know, if

18  it walks like a duck, it quacks like a duck, I view

19  this 11th-hour, you know, epiphany on your part to

20  be questionable.  But again, how did this -- did it

21  just miraculously come up as an issue, how did this

22  come up?

23       MR. BARTOLOMUCCI:  It came up because on

24  Wednesday night we began to research the filings in

25  the election case.

Judge Mark Walker
January 14, 2022

Page 34

1       THE COURT:  Why?  Why then, why not in
2    December?
3       MR. BARTOLOMUCCI:  As part of general
4    discovery.  As you know, discovery in this case --
5       THE COURT:  I've heard enough, Counsel.  And
6    I've got to tell you -- anyway.  I'm going to stop
7    there because, number one --
8       Let me go to Mr. O'Neil.  Setting aside the
9    serious ethics issues I think that now exist in
10   this case.
11      Mr. O'Neil...
12      Actually, I'm going to put everybody on hold
13   for a minute.
14      (A break was taken off the record from
15   2:49 p.m. to 2:52 p.m.)
16      THE COURT:  Thank you for holding.
17      Mr. O'Neil, are you on the line?
18      MR. O'NEIL:  I am.
19      THE COURT:  Mr. Bartolomucci?
20      MR. BARTOLOMUCCI:  Yes, Your Honor.
21      THE COURT:  Mr. O'Neil, let me ask you,
22   because, quite frankly, I'm not sure why any of
23   this is necessary.  The argument has been made.
24      Help me to understand, Mr. O'Neil, we have a
25   public record, and we know the date when the report

Judge Mark Walker
January 14, 2022

Page 35

1    was submitted to this Court.  There is a date on

2    that report.  Any reasonable inference would be

3    drawn that you're retained before you produce the

4    report, you didn't produce it instantaneously.

5         So it seems to me that timeline, unless you

6    believe that that's not a fact, I know I can't --

7    Court's findings or the substance of a Court

8    document I can't take judicial notice of.

9         But do you believe the -- certainly the date

10   it was filed and that it was filed, the expert

11   report, I think you can take judicial notice of.  I

12   think it's more problematic the date that the

13   report is signed, although, that's certainly a lot

14   farther away than the substantive findings or

15   something that's in it.

16        At the end of the day, Mr. O'Neil, isn't that

17   timeline properly before this Court and there's no

18   reason for me to reopen the hearing for the

19   additional presentation of evidence?  Why wouldn't

20   I just take judicial notice of the fact that the

21   reports were dated before approval and that the --

22   I can take a fact, any reasonable inference is

23   drawn therefrom if the dates of the reports were

24   prior to the approval.  By definition they were

25   retained long before the approval, separate and

Judge Mark Walker
January 14, 2022

Page 36

1    apart from any arguments about what that means or

2    doesn't mean.  Why wouldn't I just take judicial

3    notice of those facts?

4         MR. O'NEIL:  Your Honor, we agree, you

5    certainly can take judicial notice of those facts.

6    Obviously, you know, the Austin expert report is

7    UCS No. 238-7, Smith is 238-19 -- 9.  These are

8    documents that are on the public record.  We have

9    no objection to you taking judicial notice of them.

10        And in this connection, Your Honor, I would

11   just like to draw your attention to the Smith

12   Declaration, the first Smith Declaration where he

13   actually explains, given the University's support,

14   past support for my efficacy on voting issues, I

15   did not hesitate to say yes when I was contacted

16   about representing billing rights advocates who had

17   sued to enjoin the SV-90.  I was asked to testify

18   on a number of topics.  The attorneys asked that I

19   draft an expert report.  And then he says, I

20   submitted a request for UFOLIO.  And then on

21   October 11th it was denied.  He never says that he

22   wasn't doing any work on it beforehand.

23        THE COURT:  You're saying implicit in his

24   Declaration it would be that he did in fact start?

25        MR. O'NEIL:  The inference from the

Judge Mark Walker
January 14, 2022

Page 37

1   Declaration is that he did in fact start, yes.

2   Because he didn't -- he did not imagine that the

3   University for the first time would object, it had

4   always encouraged him to do this before.  And the

5   same is true for the other three professors.

6        THE COURT:  Let me turn to Mr. Bartolomucci on

7   this point.

8        And I understand why you want the evidence on

9   the record and want to be able to argue it, and

10  you've argued it and made your argument plain as to

11  why you think that there is:  A, unclean hands;

12  and, B, no standing because there's no injury

13  because there's no chilling effect.  You've made

14  that plain, so I understand your argument.

15       If I take judicial notice of the reports that

16  are filed and the dates of those reports, which

17  predate the approval which by definition suggest

18  that the work began long before the day of the

19  report, which means it's long before the approval,

20  aren't the very facts that you want before this

21  Court before this Court?

22       MR. BARTOLOMUCCI:  Not entirely, Your Honor.

23  Certainly the dates of the report I think would be

24  judicially noticeable.  But the content of the

25  report reflect work performed before the dates on

Judge Mark Walker
January 14, 2022

Page 38

1    which the reports were signed.

2         So I think you would have to look at the

3    contents of the Austin report and the Smith report

4    to draw out the facts about when the work began

5    and --

6         THE COURT:  Mr. Bartolomucci how could --

7         MR. BARTOLOMUCCI:  -- dates of the

8    depositions.

9         THE COURT:  I'm just -- the laws of physics

10   don't apply, and space time continuum don't apply

11   to expert reports?  How in the world could the work

12   not have begun long before the report was signed?

13   I don't even understand how any fact to the

14   contrary could be possible.

15        MR. BARTOLOMUCCI:  Of course they would, Your

16   Honor.  But from the reports from the contents you

17   can glean a specific date by which the report, the

18   work must have begun.

19        THE COURT:  If you don't seek prior approval

20   before the work, and implicit that you can't do an

21   expert report workout some lengthy work, whether

22   it's three weeks or three months, why would that

23   possibly make any difference?

24        I mean, either it informs this Court's

25   decision as it relates to no chilling effect or it

Judge Mark Walker
January 14, 2022

Page 39

1    doesn't.  I don't understand why does the length of
2    time they were working on it before they got
3    approval, since it's clear they had been working on
4    it for quite some time, and it's clear they signed
5    it before they got approval, why is it a material
6    fact --
7        MR. BARTOLOMUCCI:  Your Honor --
8        THE COURT:  -- whether it's three weeks or
9    three months?
10       MR. BARTOLOMUCCI:  -- simply allow us to put
11   the documents in the record in a supplemental
12   filing?
13       THE COURT:  Well, that's fine.
14       Mr. O'Neil, do you have any objection to us
15   supplementing the record by 5:00 p.m. today with
16   the expert reports?
17       MR. O'NEIL:  Your Honor, as long as it's
18   limited just to the contents of the report and it
19   doesn't contain additional argument, I have no
20   objection to that.  I mean, I think the Court has
21   been very indulgent in allowing --
22       THE COURT:  That's a nice way of putting it,
23   Mr. O'Neil.
24       Mr. Bartolomucci, other than the reports, what
25   is it you were asking to file, if anything?

Judge Mark Walker
January 14, 2022

Page 40

```
1        MR. BARTOLOMUCCI:  The depositions of the
2   three professors which are also on the record, the
3   public report.
4        THE COURT:  Mr. O'Neil, any objection to the
5   depositions?
6        MR. O'NEIL:  No, Your Honor.
7        THE COURT:  All right.  Mr. Bartolomucci you
8   can file the three depositions combined with the --
9   as well as the three expert reports by 5:00 p.m.
10  today and they are properly part of this record,
11  and you've explained why they matter.
12       Let me make plain, though, to any reviewing
13  Court.  I frankly think it is outrageous that I
14  took judicial notice of any of this or allowed the
15  record to be supplemented in this way.
16       For the life of me, I still don't understand
17  how anyone could argue in good faith that this is
18  newly discovered anything.  These are public
19  records that could have been obtained by due
20  diligence.
21       Mr. O'Neil in a very thoughtful way has
22  pointed out if anybody thought that this was an
23  issue, they clearly were on noticed based on, for
24  example, the Smith Declaration, which the clear
25  implication was I thought I could do this and it
```

Judge Mark Walker
January 14, 2022

Page 41

1    was just a perfunctory matter to get approval, so I

2    said yes.  So the timing is implicit in that.

3        I'm not aware of any principle of law that

4    would suggest a judge who allowed parties to take

5    discovery and they chose not to would then reopen

6    discovery and continue a preliminary injunction

7    hearing so that somebody can supplement the record

8    and make arguments about something that is in not

9    just any public record, not just in any case, but

10   the very cases that are at the heart of this case,

11   namely whether or not professors at UF could

12   testify in those election cases.

13       If that's the standard, then this Court would

14   always have to reopen discovery for any purpose at

15   any time, that is reopen the record at any purpose

16   at any time, and I don't believe that is permitted.

17       I make explicit finding, even though the

18   record is now complete, that any lawyer exercising

19   due diligence in this case could and would have

20   discovered the very materials we've now

21   supplemented with as evidenced by the fact that

22   Mr. Bartolomucci has acknowledged on this record,

23   all be it not under oath, that he did the very

24   thing I suggested anybody would do, which is,

25   review the related record.  So we now have a

Judge Mark Walker
January 14, 2022

Page 42

1   complete record in that regard.

2        Mr. O'Neil, I cut you off.

3        MR. O'NEIL:  No, that's all right, Your Honor.

4   I was just going to note that the Court, I think,

5   was indulgent in allowing an additional briefing on

6   Pickering, even though that was obviously at issue

7   in the previous briefing.  So we would oppose any

8   further briefing.

9        THE COURT:  Well, let me say, it's not that it

10  was at issue in any prior briefing.  I want to,

11  again, talk about what we did the first hearing.

12       I did not allow -- and Mr. Bartolomucci was

13  absolutely right, I did not allow -- and

14  Mr. O'Neil, I'm sure you weren't thrilled with

15  this.  I did not allow you to bring a claim that

16  you did not bring in your Complaint, because your

17  preliminary injunction is tied to your Complaint

18  and you did not have a Fourteenth Amendment void

19  perfectas claim (phonetic), and I did not permit

20  that.

21       What you did do, and nobody can argue with a

22  straight face that you didn't, you brought a First

23  Amendment claim related to the suppression of

24  speech of public employees.  If you type in public

25  employees speech in Google, I haven't done it, but

Judge Mark Walker
January 14, 2022

Page 43

1    I'm quite confident the first thing that's going to

2    pop up is the word Pickering.  I mean, that's -- so

3    the idea is Pickering is a test, it's an analytical

4    framework that courts use to analyze -- that is, I

5    should say, Pickering and its progeny, because I

6    don't want to ignore NTEU and how those two work

7    together.  Pickering and it's progeny is the

8    analytical framework that you evaluate First

9    Amendment claims.

10         So even if you had not used the word,

11   Mr. O'Neil, Pickering in your brief, it would have

12   been incumbent upon this Court in evaluating a

13   First Amendment claim involving a public employee

14   to consider Pickering and NTEU.

15         There is a difference between bringing --

16   arguing claims that were not made versus whether or

17   not I apply the law that has to be applied.  Those

18   are two very different things.  But let me find out

19   from you, because I'm going to put you all on hold

20   one last time.

21         Mr. O'Neil, anything additional that you want

22   to sum up or argue, if so, how much time?  And I'm

23   going to have the same question for

24   Mr. Bartolomucci.

25         MR. O'NEIL:  Your Honor, just a couple of

Judge Mark Walker
January 14, 2022

Page 44

 1    minutes.

 2         THE COURT:  Mr. Bartolomucci?

 3         MR. BARTOLOMUCCI:  Two minutes to address the

 4    Amicus issue, Your Honor.

 5         THE COURT:  All right.  Very good.  I'm going

 6    to put you on hold, give the court reporter a rest,

 7    and then we'll be back on.  Thank you.

 8         (A break was taken off the record from

 9    3:04 p.m. to 3:09 p.m.)

10         THE COURT:  Thank you for holding.

11         Mr. O'Neil, you've got a couple of minutes,

12    what you said you need to sum up.  I'm not going to

13    have a timer on.  The same goes for

14    Mr. Bartolomucci.

15         MR. O'NEIL:  Thank you, Your Honor.  I do want

16    to address one substantive point to start.

17         The defendants have made very much the strong

18    presumption and the heavy burden to rebut what is

19    contained in the task force report.  And I just

20    want to be clear about why that is not sufficient.

21         First, a presumption and a rebuttal is not

22    what the Constitution requires.  The Constitution

23    makes clear that the government cannot silence

24    speech on public issue, period, except for the most

25    compelling reasons in a narrowly tailored way.  The

Judge Mark Walker
January 14, 2022

Page 45

1    policy replaces that strict scrutiny with something

2    less, a presumption that can be overcome with an

3    important interest.

4        Second, even under the constitutional task for

5    ordinary public employees who, unlike these

6    plaintiffs, do not have as part of their job

7    speaking truth to power.  The government can rely

8    only on a very specific kind of countervailing

9    interest, the efficient provision of public

10   services.  This policy doesn't limit the government

11   to that interest or even try to define what an

12   interest is.

13       And third, the general strong presumption does

14   not eliminate the fact that the policy remains

15   viewpoint discriminatory, both as the defendant

16   have interpreted and applied it and as it is

17   written.

18       While all speech, regardless of viewpoint, may

19   receive a strong presumption of approval, speech

20   opposing the state, or in the defendants' words

21   adverse to UF's interest, is subject to a

22   heightened standard of review.

23       I want to turn Your Honor to the standing

24   issues that Mr. Bartolomucci has suggested or

25   raised by the information that he brought that he

Judge Mark Walker
January 14, 2022

Page 46

1   has referenced today.

2       As this Court noted, this case is not about

3   what has happened in the past, it's about what will

4   happen under this policy.  If you combine the

5   public statements of the Board of Trustee Chair

6   with the speech that Mr. Bartolomucci has given

7   today, I think it's unmistakable what's going to

8   happen if this Court does not enjoin this policy.

9   The University, the defendants, are standing fully

10  behind this policy and the way they have applied

11  it, and they have every intention of continuing to

12  apply it.

13      And I guess I'll end on that note with where I

14  started.  The job of these defendants as leaders of

15  one of the flagship public institutions of higher

16  learning is to create an environment in which the

17  creation and sharing of knowledge for the good of

18  the people of Florida is encouraged.  They have

19  come in to Court today, and instead of saying what

20  should be obvious, we will not discriminate against

21  speech based on viewpoint, they've come in and

22  they've attacked faculty members who have been at

23  this University for decades.

24      One of the leaders of the College of Law, the

25  head of pediatric medicine at the College of

Judge Mark Walker
January 14, 2022

1    Medicine, the Chair of the Political Science

2    Department, these plaintiffs are themselves

3    chilled.  Dr. Goldhagen, who has proudly worked at

4    the University for 30 years, is considering his

5    employment options.

6         But, Your Honor, think of the rank and file

7    faculty members who hear what defendants are saying

8    in this courtroom today and what Board of Trustee

9    Chair has said publicly.  They are chilled.  The

10   faculty center report documents, and it's no

11   surprise.  And they will continue to be chilled

12   until this policy is enjoined.

13        Thank you.

14        THE COURT:  Thank you.

15        Mr. Bartolomucci, I know you said you wanted

16   to address the Amicus issue, and you certainly can

17   respond and take as much time as you need to what

18   Mr. O'Neil just argued.

19        MR. BARTOLOMUCCI:  Thank you, Your Honor.

20        I think it's only necessary for me to comment

21   on the Amicus issue.

22        The University policy was and is that a

23   University professor who signs on to an Amicus

24   brief may disclose her University affiliation,

25   including title, so long as the professor indicates

Judge Mark Walker
January 14, 2022

Page 48

1    on the brief that the affiliation is provided for

2    identification purposes only.  This is exactly what

3    the law school dean told Professors Nunn and Reid

4    when they sought to join the Amicus brief had

5    discussed in this case.

6         The UFOLIO approval for Professor Reid states,

7    "Please ensure that the Amicus brief clearly

8    indicates that any law school or University

9    affiliation is included for identification purposes

10   only."  And the approval given to professor --

11        THE COURT:  Mr. Bartolomucci, I know I said I

12   wasn't going to interrupt, but as I understand it,

13   what you're saying is, Judge, this is not a case

14   where -- and it's misstated to say this is a case

15   where a professor can sign off on a brief, he can

16   speak, he can do so for himself.  But he can't

17   identify himself at the University.  Judge, that's

18   simply not true.  What the record reflects is, you

19   can sign off on the brief, you can identify where

20   you're from, you can identify you're a professor.

21   All we require is for you to disclaim that you're

22   speaking for anyone other than yourself.  And that

23   is a very different issue than the way it was

24   previously stated or presented to you.

25        In that case, the only limitation is not a

Judge Mark Walker
January 14, 2022

Page 49

 1   limitation at all, which is, you can't say you're

 2   speaking for the University, which is a give in

 3   that you can't speak for the University.  And

 4   that's no limitation at all on the citizen's right

 5   to speak, correct?

 6        MR. BARTOLOMUCCI:  That's correct, Your Honor.

 7   I agree with all of that, and I would point to the

 8   second Fuller Declaration as further support for

 9   this.

10        In our view there is simply nothing to be

11   enjoined here with respect to Amicus briefs.

12        And I think that's all I need to say, Your

13   Honor.

14        THE COURT:  All right.  I understand.

15        MR. O'NEIL:  Your Honor, may I just briefly

16   respond to that?

17        THE COURT:  Certainly.  But I'm going to give

18   Mr. Bartolomucci the last word.  Go ahead.

19        MR. O'NEIL:  Okay.  I just want to make sure

20   that the Court is focused on the actual record

21   before it.

22        Document 44-4 is the Reid UFOLIO response.

23   And although at level one the Rosenbury says,

24   "Please ensure that the Amicus brief clearly

25   indicates that a law school or university

Judge Mark Walker
January 14, 2022

Page 50

1    affiliation is included for ID purposes only,"

2    that's what she says.

3         Then at level two if you look at Gary

4    Winsett's approval, which supersedes Rosenbury's,

5    it says, "You are not permitted to use any UF

6    marks, logos or other identifiers in your outside

7    activity interests, and you shall not otherwise

8    imply or suggest any affiliation with UF."

9         That means you can't use any words that say

10   the University of Florida.  And in fact, in this

11   brief what went on it was Teresa Reid, Kenneth

12   Nunn, they were the only ones, they and two others

13   from the University of Florida law school were the

14   only ones who did not have an affiliation listed.

15        THE COURT:  Mr. O'Neil, let me ask you briefly

16   before I turn to Mr. Bartolomucci.

17        I wasn't suggesting what is or is not in the

18   record.  What I was suggesting was that what the

19   legal argument would be is if the only limitation

20   is you have to make plain you're speaking

21   individually and not on behalf of the University,

22   and maybe you don't, but I'm assuming, Mr. O'Neil,

23   you would agree if that were the case there would

24   be no claim?

25        MR. O'NEIL:  That's correct, I can't find that

Judge Mark Walker
January 14, 2022

Page 51

1    in the policy or anything else other than the

2    Fuller Declaration.  And I don't think a

3    declaration submitted as part of litigation is

4    sufficient policy for the law school on this.

5         But if the University wants to make that

6    clear, we would not regard it as a violation of the

7    First Amendment if law school professors can sign

8    Amicus briefs with their title with their UF

9    affiliation.  But it's clear that they're not

10   speaking officially on behalf of the University.

11        THE COURT:  So the issue isn't a legal issue,

12   the issue would be factually what is the policy and

13   what is the record before this Court, correct?

14        MR. O'NEIL:  Well, I think the record before

15   this Court is that --

16        THE COURT:  No, I understand.  I don't want to

17   make this overly complicated.

18        Mr. O'Neil, you take umbrage not with my

19   question to Mr. Bartolomucci and the statement of

20   law that it wouldn't be a First Amendment issue if

21   the only limitation --

22        MR. O'NEIL:  That's correct.

23        THE COURT:  -- is you're not speaking with the

24   Court.

25        What you took issue with is, what is the state

Judge Mark Walker
January 14, 2022

Page 52

1    of the record as it relates to what the policy of

2    the University is in that regard.  You all disagree

3    about what the facts are, not with that basic legal

4    principle that a University could limit somebody

5    from identifying themselves as speaking for a

6    University?

7         MR. O'NEIL:  That's correct, Your Honor.  And

8    because the University is regulating speech here,

9    you know, to quote a Supreme Court case, "Precision

10   is the touchstone when dealing with rights like

11   these."  So it's on the University to articulate a

12   clear policy, and it has not done that.

13        THE COURT:  I understand.

14        And Mr. Bartolomucci, I said and I stand by

15   that, I'm going to give you the last word.

16        And obviously I'm going to go back, and thank

17   you for directing me to it, I need to reread, not

18   read, reread the statement.  And I also want to go

19   back and reread the documents attached to the

20   responses to the law professors.  But again, I

21   wanted to give you the last word.

22        MR. BARTOLOMUCCI:  Thank you, Your Honor.

23        And since my friend on the other side just

24   opened the door to this, let me just complete the

25   record.

Judge Mark Walker
January 14, 2022

Page 53

1        Gary Winsett's level two approval of Professor

2   Reid's request, these remarks are prefaced with the

3   words personal capacity.  So what he was saying, it

4   may be read and should be read to be consistent

5   with the guidance by the law school dean.

6   Professor Nunn's approval request I would note does

7   not include any of the verbiage that Mr. Winsett

8   used in Reid's approval.  And in addition, there

9   was an email from the dean to Professor Nunn

10  telling him pointblank that he could use his UF

11  affiliate.

12       I think at the very most what the plaintiffs

13  have shown here, that there was some confusion in

14  the past as to the policy, but that confusion, if

15  any, has now been dispelled, and this is simply not

16  the stuff of which an injunction is made.

17       THE COURT:  And Mr. Bartolomucci, I think I

18  know what you mean, but when you say dispelled,

19  dispelled because is there something in this record

20  that clarifies and says if that's the way you read

21  that one response, it's wrong?  How has it been

22  dispelled?

23       MR. BARTOLOMUCCI:  By the second Fuller

24  Declaration, Your Honor.

25       THE COURT:  I understand what you're saying.

Judge Mark Walker
January 14, 2022

```
 1    That is you're saying, the University has filed a

 2    Declaration saying -- it says what it was says,

 3    but, Judge, that clarifies.

 4         And Mr. Bartolomucci, I don't want to put

 5    words in your mouth.  As I would understand it,

 6    Judge, Mr. O'Neil has said as it relates to the

 7    three professors that wanted to serve as experts,

 8    that all UF needs to do is repudiate that that's

 9    not the policy and they're not doing that and

10    there's no case.

11         And you're saying, as I understand it, Judge,

12    you've got to hold them to that as it relates to

13    the Amicus issue, because we've done that.  And

14    we've said, less there be any confusion, you can

15    identify yourself as a professor, you just can't

16    say you're speaking for the University.  Is that a

17    general summary of your response?

18         MR. BARTOLOMUCCI:  Yeah, in general I do

19    believe I agree with that, Your Honor.

20         THE COURT:  Okay.  Thank you.

21         All right.  Well, I thank you for, again, the

22    supplemental briefing.  We probably could have

23    shortened part of this exchange by simply

24    supplementing the record, which we ultimately did

25    without objection from the plaintiff.
```

Judge Mark Walker
January 14, 2022

Page 55

1        My hope is, recognizing the importance of this

2    issue, but I would rather get it done right rather

3    than quickly.  I'll obviously consider your

4    arguments today, go back and review some things in

5    the record in light of your supplemental briefing

6    as well as your arguments today on the record.

7        But I hope in the next ten days to get out an

8    order.  I understand the importance of setting

9    preliminary injunctions on a fast track.  And when

10   I say fast track, so long as the parties are

11   afforded an opportunity to engage in whatever

12   discovery they believe is necessary and so forth,

13   and to in a timely way get out an Order.  And so

14   this is on the front burner and I will do my best

15   to try to get out an Order in the next ten days or

16   so.

17       So I thank you for your hard work.  I'll do my

18   best to try to work as fast as I can along with my

19   other commitments, that is the other cases on my

20   docket.  But I will not just sit on this case.

21       But again, I thank you for your hard work on

22   this case.  And I will try to, again, get an Order

23   issued on it on an expedited basis.

24       So thank you for your hard work.

25       Court is in recess.

Judge Mark Walker
January 14, 2022

Page 56

1    MR. O'NEIL:  Thank you, Your Honor.

2    (The proceedings were concluded at 3:23 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Judge Mark Walker
January 14, 2022

Page 57

1                    CERTIFICATE OF REPORTER

2

3

4

5     STATE OF FLORIDA          )

6     COUNTY OF LEON            )

7

8

9            I, KIMBERLY S. BARTHOLOMEW, Professional Court

10       Reporter, certify that I was authorized to and did

11       stenographically report the foregoing proceedings 1

12       through 56, and that the transcript is a true and

13       complete record of my stenographic notes.

14            DATED this 24th day of January, 2022.

15

16

17

18

19       _____

20            KIMBERLY S. BARTHOLOMEW,
         Professional Stenographer
21       Kimesuu@aol.com

22

23

24

25

| | | | |
|---|---|---|---|
| **1** | **25** | **5** | **acknowledged** |
| | 13:23 | | 41:22 |
| **1** | **27** | **58** | **actively** |
| 13:22 14:3 | 14:6 | 5:13 | 13:13 |
| **101** | **28th** | **5:00** | **activity** |
| 12:3 | 10:14 | 39:15 40:9 | 19:14 25:21 |
| **11** | **29** | | 26:7,8,13 |
| 13:24 | 14:11 | **6** | 50:7 |
| **11th** | **2:02** | **60** | **actual** |
| 36:21 | 4:1 | 5:14 | 49:20 |
| **11th-hour** | **2:36** | | **ad** |
| 33:19 | 27:7 | **7** | 33:11 |
| **12** | **2:39** | **7** | **add** |
| 14:4 | 27:7 | 13:20 | 9:21 10:6 |
| **13** | **2:49** | | 16:10 |
| 14:8 | 34:15 | **9** | **addition** |
| **15** | **2:52** | **9** | 53:8 |
| 13:18 | 34:15 | 36:7 | **additional** |
| **16** | | | 7:15 16:10 |
| 14:2 | **3** | **A** | 35:19 39:19 |
| **19** | **30** | **A&m** | 42:5 43:21 |
| 21:24 | 47:4 | 21:25 | **address** |
| **1:21-cv-184** | **3:04** | **abide** | 7:6 8:4,15 |
| 4:3 | 44:9 | 14:25 | 9:1 21:5,6 |
| | **3:09** | **abiding** | 22:10,15 |
| **2** | 44:9 | 14:17 | 44:3,16 47:16 |
| **201** | **3:23** | **ability** | **addresses** |
| 5:21 6:8,16 | 56:2 | 18:11 | 11:17 |
| **2018** | | **absolutely** | **adjustments** |
| 10:15 | **4** | 8:21 42:13 | 10:23 |
| **2020** | **4** | **academic** | **administrator** |
| 19:14,15 20:6 | 13:19,25 14:8 | 12:2,6 | 11:20 |
| 25:17 | **44-4** | **access** | **advance** |
| **238-19** | 49:22 | 28:8 | 10:11 |
| 36:7 | **44-5** | **accusing** | **adverse** |
| **238-7** | 21:24 | 18:24 | 45:21 |
| 36:7 | | | **advocates** |
| | | | 36:16 |

affidavit
31:14,15

affiliate
53:11

affiliated
20:23

affiliation
24:21 47:24
48:1,9 50:1,
8,14 51:9

affiliations
25:25

afforded
55:11

afternoon
4:2

agitated
30:8

agree
36:4 49:7
50:23 54:19

ahead
16:20 21:20
32:3 49:18

air
21:13

alert
12:14

allowed
15:15 40:14
41:4

allowing
10:4 39:21
42:5

amendment
10:21 18:5
42:18,23
43:9,13 51:7,

20

American
10:15

Amicus
8:13,23 18:20
19:2 21:7,8,
12 23:9,10,21
24:9,19 25:2,
15,20,25
26:6,13,17,25
44:4 47:16,
21,23 48:4,7
49:11,24 51:8
54:13

analysis
10:25 18:22
20:13,19

analytical
43:3,8

analyze
43:4

anticipating
8:14

apologies
19:22

appears
20:4 21:4

appellee's
21:22

applied
43:17 45:16
46:10

applies
10:10 20:10

apply
38:10 43:17
46:12

applying

21:2

approval
20:3 28:24
29:19 35:21,
24,25 37:17,
19 38:19
39:3,5 41:1
45:19 48:6,10
50:4 53:1,6,8

approved
32:10

approves
13:11

approximately
8:9 9:8

argue
37:9 40:17
42:21 43:22

argued
16:1 37:10
47:18

arguendo
18:23

arguing
22:12 29:10
43:16

argument
4:5 6:10,12,
23 11:18
17:2,8 26:12
34:23 37:10,
14 39:19
50:19

arguments
7:22 8:3
18:22 24:4
36:1 41:8
55:4,6

articulate
52:11

artificially
9:6

ascertain
32:20 33:4

assertion
27:15

assessment
10:19

assuming
18:22 22:12
50:22

attached
21:23 52:19

attack
31:1

attacked
46:22

attempt
11:20,21

attempted
17:23

attempting
31:6

attention
10:14 13:3
17:8 36:11

attorneys
36:18

Austin
13:12 14:1
36:6 38:3

aware
22:22 23:3
28:3 31:18
41:3

**B**

back
  7:6 9:22
  26:24 27:5,8
  44:7 52:16,19
  55:4

Bartolomucci
  4:9 5:8,9,19
  6:9,18 7:11,
  17 8:20 9:3,9
  12:13,19,24
  16:25 17:4,10
  18:23 21:6,19
  22:11 26:23
  27:12,13,14
  29:4 30:1,2,
  6,18,20,22
  31:5,14,16,22
  32:7,12,15
  33:6,10,23
  34:3,19,20
  37:6,22 38:6,
  7,15 39:7,10,
  24 40:1,7
  41:22 42:12
  43:24 44:2,3,
  14 45:24 46:6
  47:15,19
  48:11 49:6,18
  50:16 51:19
  52:14,22
  53:17,23
  54:4,18

Bartolomucci's
  16:9 18:16

based
  19:16 20:6
  25:9 40:23
  46:21

basic
  24:25 52:3

basis
  55:23

began
  33:24 37:18
  38:4

began/continued
  4:1

begun
  38:12,18

behalf
  4:8,9 33:2
  50:21 51:10

believed
  6:25 18:11

benefit
  7:16,18 30:25

bill
  33:15

billing
  36:16

bit
  19:20

board
  11:11 20:3
  46:5 47:8

bombshell
  31:1

bother
  30:16

bound
  22:9

break
  8:10,21 21:8
  27:6 34:14
  44:8

briefed
  10:3

briefing
  9:19 10:5
  11:18 20:25
  21:3 42:5,7,
  8,10 54:22
  55:5

briefly
  21:14 49:15
  50:15

briefs
  8:23 20:10
  24:10 25:25
  31:9 49:11
  51:8

bring
  42:15,16

bringing
  43:15

brought
  5:21 17:7
  42:22 45:25

bulk
  7:2,3

burden
  10:18 11:2
  44:18

burner
  55:14

**C**

call
  4:23 9:15
  20:14 21:8
  30:10

called
  4:15

calls
  4:21

capacity
  53:3

careers
  12:7

carry
  25:6

Casablanca
  29:17

case
  4:3 5:25 6:15
  7:21 11:1
  13:5 14:22
  16:13,16
  21:16 22:16,
  18 31:7 33:25
  34:4,10 41:9,
  10,19 46:2
  48:5,13,14,25
  50:23 52:9
  54:10 55:20,
  22

cases
  20:3 28:4,17
  41:10,12
  55:19

center
  47:10

chair
  11:11 46:5
  47:1,9

challenge
  19:6

challenged
  24:23

challenging
  25:18

change
  12:8 13:4
  26:2
changed
  19:15
chill
  15:2 17:11
chilled
  47:3,9,11
chilling
  12:4 15:1
  22:13 26:20
  32:22 37:13
  38:25
choosing
  22:3
chose
  41:5
Chris
  30:2
circle
  7:6 9:22
Circuit
  22:20
citation
  21:17 22:6
citations
  18:8
citizen's
  49:4
citizens
  11:22
claim
  23:23 42:15,
  19,23 43:13
  50:24
claims
  43:9,16

clarifies
  53:20 54:3
clarify
  6:21 7:14 8:3
clear
  13:9 16:23
  17:2,17 32:24
  39:3,4 40:24
  44:20,23
  51:6,9 52:12
client
  29:23 33:2
clients
  31:19 33:15
close
  33:13
closely
  10:23
colleagues
  25:18
College
  46:24,25
combine
  46:4
combined
  40:8
comment
  47:20
comments
  16:7,9 18:17
  21:15
commitments
  55:19
compelling
  11:3,8 25:9
  44:25
complaint
  14:13 15:5

31:7 42:16,17
complete
  41:18 42:1
  52:24
complicated
  51:17
concern
  11:6
concerns
  8:4
concluded
  56:2
confident
  18:15 43:1
confirmation
  23:12
conflict
  19:15 24:15
  26:10
conflicts
  13:8 23:14
confused
  26:4,6,18
confusion
  53:13,14
  54:14
connection
  24:9,19 36:10
considerably
  10:18
considered
  25:21
consistent
  53:4
Constitution
  44:22
constitutional

45:4
contacted
  36:15
contained
  44:19
content
  11:23 28:18,
  19 37:24
contents
  38:3,16 39:18
context
  17:8 22:10
  28:2
continuation
  4:4
continue
  41:6 47:11
continued
  4:17 13:14
  14:5 15:19
  33:11
continuing
  46:11
continuum
  38:10
contrary
  38:14
correct
  23:4,25 24:1
  49:5,6 50:25
  51:13,22 52:7
correctly
  18:9
Counsel
  7:10 14:15
  34:5
Counsel's
  32:17

**countervailing**
45:8

**couple**
7:2 10:6
43:25 44:11

**court**
4:2,7,18,19
5:1,8,10,22
7:3 8:4,11,17
9:1,2,12
10:4,16,22
11:18 12:12,
23 13:4
14:16,24
15:19,23 16:8
17:16 18:19
19:18,22,24
20:7 21:18
22:7,8,10,15,
19,22,23
23:5,8,17
24:3 25:7
26:21 27:8,
12,14,23
29:22 30:6,
19,21 31:13
32:6,13,19
33:9 34:1,5,
16,19,21
35:1,7,17
36:23 37:6,21
38:6,9,19
39:8,13,20,22
40:4,7,13
41:13 42:4,9
43:12 44:2,5,
6,10 46:2,8,
19 47:14
48:11 49:14,
17,20 50:15
51:11,13,15,

16,23,24
52:9,13
53:17,25
54:20 55:25

**Court's**
10:14 17:7
18:22 32:25
35:7 38:24

**courtroom**
5:3 7:20 47:8

**courts**
20:15 43:4

**create**
5:2 46:16

**creation**
46:17

**credulity**
27:25

**current**
12:2

**cut**
21:9 42:2

---

**D**

**date**
28:21 32:9
34:25 35:1,9,
12 38:17

**dated**
27:22 28:23
29:18 30:17
31:17 35:21

**dates**
16:5 29:9
35:23 37:16,
23,25 38:7

**day**
14:9 29:21

35:16 37:18

**days**
13:2 17:5,6
29:15 32:16
55:7,15

**dealing**
52:10

**dean**
11:12 19:13
20:5 24:16
48:3 53:5,9

**decades**
46:23

**December**
16:23 34:2

**decide**
30:21

**decision**
10:15 15:6,9
22:19 38:25

**declaration**
14:9 21:24
31:7 36:12,24
37:1 40:24
49:8 51:2,3
53:24 54:2

**Declarations**
14:14

**defendant**
18:3 45:15

**defendants**
4:9 11:1,4,11
12:7 15:13
17:14,16 18:4
21:23 23:13
25:23 26:12
44:17 46:9,14
47:7

**defendants'**
45:20

**defense**
6:11 14:15
30:23 33:5

**defense's**
5:12

**deference**
10:19

**define**
45:11

**definition**
35:24 37:17

**demonstrate**
18:17

**demonstration**
23:12

**denial**
13:20 14:10
18:10,11

**denials**
17:14,24

**denied**
13:15,19,24
14:5,9 15:4
21:25 31:24
36:21

**Department**
47:2

**deposition**
13:22 14:6,10

**depositions**
16:13 38:8
40:1,5,8

**deputy**
5:4 7:20

**deserve**
14:23

Judge Mark Walker
January 14, 2022

6

determinative
28:15

develop
33:12

development
16:24

devoted
12:6

difference
20:15,17
38:23 43:15

diligence
32:19,21 33:2
40:20 41:19

directing
52:17

directly
30:9

disagree
52:2

disapprove
11:5

disclaim
48:21

disclose
47:24

disconnect
4:20

discover
28:25

discovered
13:6 15:25
17:5 27:16
28:1,11 29:25
40:18 41:20

discovery
16:14,24
27:17 28:7

30:13 32:23
33:6,12,13
34:4 41:5,6,
14 55:12

discriminate
46:20

discriminatory
45:15

discussed
48:5

discussion
6:20

dispelled
53:15,18,19,
22

disregarded
22:2

disrupt
4:18,24

distressing
12:4

District
22:18

docket
28:9 33:1
55:20

doctor
29:6 32:14,21

document
5:13 21:24
35:8 49:22

documenting
15:16

documents
26:4 29:8
36:8 39:11
47:10 52:19

door
52:24

doubling
17:16

draft
36:19

draw
10:13 36:11
38:4

drawn
35:3,23

drop
31:1

duck
33:18

due
32:19,21 33:1
40:19 41:19

—————————

E

earth
29:15

ECF
5:13,14

effect
15:1 22:13
32:22 37:13
38:25

efficacy
36:14

efficient
45:9

election
28:17 33:25
41:12

eliminate
45:14

email
53:9

emails
19:12 24:12

employee
43:13

employees
42:24,25 45:5

employer
14:15

employment
47:5

encouraged
37:4 46:18

end
10:22 16:22
29:21 35:16
46:13

ended
7:4

endorse
25:14

engage
13:9 32:23
55:11

engaged
31:11 33:2

engrafts
20:6

enjoin
14:24 19:11
36:17 46:8

enjoined
12:10 18:3,18
26:2 47:12
49:11

ensure
48:7 49:24

entitled
  10:18 18:6
  33:16
environment
  46:16
epiphany
  33:19
equate
  23:13
equitable
  14:24
essential
  25:3
ethics
  34:9
evaluate
  43:8
evaluating
  43:12
event
  29:2
evidence
  5:22 16:11
  20:7 35:19
  37:8
evidenced
  22:14 41:21
evidentiary
  6:3
ex-felons
  25:19
exacting
  10:24
excellent
  17:10
exchange
  54:23

exercising
  18:5 41:18
exist
  34:9
existed
  22:16,17
expedited
  55:23
expert
  11:6 13:17,21
  14:1,8 19:5,
  25 21:1 22:1
  25:5 27:21
  29:8 31:11,17
  32:4,9 33:1
  35:10 36:6,19
  38:11,21
  39:16 40:9
experts
  13:13 21:1
  23:24 29:12
  32:7 54:7
explained
  10:9,16 40:11
explaining
  15:16 17:11
explains
  36:13
explicit
  23:1,3 41:17
explore
  27:18
express
  25:11
extensive
  7:21
extensively
  10:3

extent
  12:16 21:11

_____

**F**

face
  42:22
fact
  6:15 9:15
  16:15,18
  22:10,14,16,
  17 23:1,13
  24:25 35:6,
  20,22 36:24
  37:1 38:13
  39:6 41:21
  45:14 50:10
facts
  6:7 13:2,6
  14:12 15:16,
  25 16:6,19
  17:5 18:7
  22:7,21 27:16
  28:2 29:2
  30:4 32:15,16
  33:4,12 36:3,
  5 37:20 38:4
  52:3
factual
  16:24
factually
  51:12
faculty
  11:17,21,22
  13:9 17:12
  46:22 47:7,10
fair
  7:14
fairness
  5:19 6:9

faith
  40:17
farther
  35:14
fast
  55:9,10,18
February
  19:13
federal
  4:10
Federation
  10:16
file
  7:25 20:20
  39:25 40:8
  47:6
filed
  5:12 7:21,23
  8:1 12:21
  17:6 27:23
  28:17 32:8
  35:10 37:16
  54:1
filing
  15:15,21
  28:5,9 39:12
filings
  33:24
final
  6:10
finally
  20:12
find
  18:8 20:8
  43:18 50:25
finding
  41:17
findings

Judge Mark Walker
January 14, 2022

8

35:7,14

**fine**
39:13

**flabbergasted**
29:14

**flagrantly**
14:19 17:25

**flagship**
46:15

**flexible**
9:4

**Florida**
25:1,5,16,19
46:18 50:10,
13

**fluid**
9:4

**flummoxed**
29:11

**focused**
49:20

**folks**
4:15

**follow**
17:18 21:15

**force**
44:19

**formally**
28:6

**forward**
24:7

**found**
14:13 22:25

**Fourteenth**
42:18

**Fourth**
15:10

**framework**
43:4,8

**frankly**
15:18,24
27:25 34:22
40:13

**free**
33:4

**freedom**
12:2

**friend**
52:23

**front**
55:14

**full**
7:13

**Fuller**
21:23 49:8
51:2 53:23

**fully**
46:9

**fundamental**
11:10

**fundamentally**
13:4

---
**G**

**gambling**
29:16

**Gary**
50:3 53:1

**gave**
32:2

**gears**
6:18

**general**
10:8 16:7,8

32:17 34:3
45:13 54:17,
18

**generally**
26:18

**give**
7:5 8:2 44:6
49:2,17
52:15,21

**giving**
32:14

**glean**
38:17

**Goldhagen**
14:17,23 32:2
47:3

**good**
4:2 9:18
40:17 44:5
46:17

**Google**
42:25

**gospel**
12:5

**government**
10:17 11:9
44:23 45:7,10

**governor**
12:2

**great**
7:2

**guess**
18:21 23:2
46:13

**guidance**
53:5

---
**H**

**hands**
14:23 22:12
31:2 33:14
37:11

**happen**
8:19 32:1
46:4,8

**happened**
24:11,13 46:3

**happy**
31:6

**hard**
55:17,21,24

**harm**
10:19 32:22

**head**
46:25

**hear**
4:17,19,25
8:19 27:10,12
47:7

**heard**
34:5

**hearing**
5:17 6:24
7:1,7,13 8:5
15:19,20
16:10,11,15,
16 17:3 19:20
31:1 33:11,16
35:18 41:7
42:11

**hearsay**
6:3

**heart**
41:10

heavier
 10:17
heavy
 44:18
heightened
 10:12 45:22
hesitate
 36:15
higher
 46:15
hint
 31:10
hold
 26:23 27:4
 34:12 43:19
 44:6 54:12
holding
 15:20 27:9
 34:16 44:10
honor
 5:7,9 9:9
 10:2 12:11,19
 14:12,14
 15:12,13,22
 16:4,21,22
 21:14 26:3
 27:11,13
 30:1,20 31:5,
 22 33:6 34:20
 36:4,10 37:22
 38:16 39:7,17
 40:6 42:3
 43:25 44:4,15
 45:23 47:6,19
 49:6,13,15
 52:7,22 53:24
 54:19 56:1
Hoover
 18:8,10

21:15,22
hope
 55:1,7
hour
 7:1
hours
 7:2

_____

I

ID
 50:1
idea
 8:9 29:13
 43:3
identification
 48:2,9
identified
 11:4
identifiers
 24:19 50:6
identify
 20:22 48:17,
 19,20 54:15
identifying
 52:5
ideological
 23:15
ignore
 43:6
ignoring
 14:20
illegal
 18:1
imagine
 37:2
immediately
 16:5

impact
 15:17
impacts
 14:21
impingement
 10:20
implication
 40:25
implicit
 22:25 36:23
 38:20 41:2
imply
 50:8
Implying
 24:21
importance
 55:1,8
important
 12:25 15:14
 19:7 45:3
impose
 17:23,24
imposing
 18:4
include
 53:7
included
 48:9 50:1
including
 47:25
incompetent
 30:15
incredibly
 7:22
incumbent
 31:18 43:12
independent

22:23
indication
 6:25
individually
 50:21
indulgent
 39:21 42:5
inference
 35:2,22 36:25
infinitum
 33:12
information
 45:25
informs
 38:24
initial
 17:13
initially
 6:22
injunction
 4:5 15:17
 17:21 18:13
 22:4,21 31:9,
 25 33:7,11
 41:6 42:17
 53:16
injunctions
 55:9
injunctive
 24:5
injured
 15:11
injury
 22:13 37:12
inside
 26:7,8
instantaneously
 35:4

institution
  12:6
institutional
  25:25
institutions
  46:15
instructed
  24:17
intention
  46:11
interest
  11:4,9,25
  19:8 23:14
  24:16 26:10
  45:3,9,11,12,
  21
interests
  11:3 23:14
  50:7
interpreted
  45:16
interrupt
  7:12 19:19
  48:12
interview
  32:2
introduced
  23:22
involved
  20:11
involving
  20:4 43:13
issue
  8:14,23,24
  12:20 15:5
  18:25 20:5
  21:4,8 23:10
  26:25 27:17

  29:7 30:14
  32:20 33:21
  40:23 42:6,10
  44:4,24
  47:16,21
  48:23 51:11,
  12,20,25
  54:13 55:2
issued
  16:15 22:5
  55:23
issues
  6:3,14 9:19
  10:3 14:21
  17:9 21:10
  34:9 36:14
  45:24

_____

            J

Janus
  10:15
job
  9:18 17:10
  45:6 46:14
join
  48:4
judge
  4:2 6:12 8:12
  19:17,19
  23:19 29:13
  30:15 41:4
  48:13,17
  54:3,6,11
judicative
  6:7,15
judicial
  5:23 6:1
  28:16,18
  35:8,11,20

  36:2,5,9
  37:15 40:14
judicially
  37:24
July
  13:20 14:2
  19:15 20:6
  25:17
June
  13:19
justification
  25:9
justifies
  10:20
justify
  25:10

_____

            K

Kenneth
  50:11
key
  14:21
kind
  45:8
knew
  14:17 29:7
knowledge
  46:17

_____

            L

lack
  15:6,10
language
  29:20
large
  10:11

lasted
  7:1
law
  5:25 11:13
  19:13 20:5
  21:2 24:6
  25:1,4,11,19
  26:18 41:3
  43:17 46:24
  48:3,8 49:25
  50:13 51:4,7,
  20 52:20 53:5
laws
  38:9
lawyer
  30:11 41:18
lawyers
  4:20 5:1 7:20
  29:23 33:14
layers
  20:24 23:6
lead
  31:4
leaders
  46:14,24
learned
  29:15 30:5
  32:16
learning
  46:16
left
  5:18
legal
  25:14 50:19
  51:11 52:3
legislature
  12:1
length

39:1

**lengthy**
38:21

**level**
24:14 49:23
50:3 53:1

**life**
27:20 29:4
40:16

**light**
55:5

**limit**
15:6 16:12,14
45:10 52:4

**limitation**
48:25 49:1,4
50:19 51:21

**limited**
17:3 39:18

**limiting**
9:6

**list**
25:24

**listed**
50:14

**listen**
4:14,23,24
25:4 29:6

**listeners**
7:16,18

**listing**
25:6

**litigation**
22:1 51:3

**logos**
24:18 50:6

**long**
8:9 9:8 12:7

35:25 37:18,
19 38:12
39:17 47:25
55:10

**lot**
20:25 35:13

———————

**M**

**made**
5:20 7:21
13:24 15:8
16:23 17:2
18:2 26:2
31:12,24
34:23 37:10,
13 43:16
44:17 53:16

**majority**
12:1

**make**
7:7,8,14,15
12:8,15 13:1
15:9,15 20:25
38:23 40:12
41:8,17 49:19
50:20 51:5,17

**makes**
15:18 44:23

**making**
17:17

**marks**
24:18 50:6

**material**
39:5

**materials**
41:20

**matter**
4:16 6:22
12:22 27:23

40:11 41:1

**matters**
11:6

**Mcdonald**
13:13 14:7

**meaning**
6:7,16 21:7

**means**
11:1 36:1
37:19 50:9

**meant**
24:23

**medicine**
46:25 47:1

**member**
13:9

**members**
7:19 17:12
46:22 47:7

**mention**
5:17

**mentioned**
8:12

**message**
25:3,7

**minute**
26:23 27:5
30:24 34:13

**minutes**
8:25 9:10
44:1,3,11

**miraculously**
33:21

**misconduct**
13:7 14:21
18:24

**misled**
14:15

**misstated**
48:14

**moment**
26:6

**months**
38:22 39:9

**Motion**
4:5 15:17

**mount**
33:5

**mouth**
54:5

**moving**
24:6

**multiple**
11:15 23:6

**mute**
4:16 5:2

**mystified**
15:24

———————

**N**

**narrowly**
11:2,8 44:25

**needed**
16:17

**newly**
13:6 15:25
16:1 17:5
27:16 28:1,11
29:24 40:18

**nice**
39:22

**night**
30:5 33:24

**note**
17:4 18:7

42:4 46:13
53:6
**noted**
10:3 32:24
46:2
**notice**
5:23 6:1
28:16,18 31:9
32:5 35:8,11,
20 36:3,5,9
37:15 40:14
**noticeable**
37:24
**noticed**
40:23
**notwithstanding**
18:10 23:1
**NTEU**
10:12,17
20:17 43:6,14
**number**
4:3 5:14 34:7
36:18
**numerous**
11:17
**Nunn**
18:24 19:1
23:9,19 24:5,
24 25:17 48:3
50:12 53:9
**Nunn's**
53:6

**O**

**O'NEIL**
4:8 5:6,7
7:17 8:7,8,
12,24 10:1,2

12:12,14
15:23 16:4,
20,21 18:19
19:17,19,23
21:12,14,21
22:7,17 23:3,
7,10,18 24:1,
8 26:24 27:2,
10,11 28:13
29:3,22 31:19
34:8,11,17,
18,21,24
35:16 36:4,25
39:14,17,23
40:4,6,21
42:2,3,14
43:11,21,25
44:11,15
47:18 49:15,
19 50:15,22,
25 51:14,18,
22 52:7 54:6
56:1
**oath**
30:11 41:23
**object**
37:3
**objection**
36:9 39:14,20
40:4 54:25
**obligation**
22:24
**obtain**
18:13
**obtained**
40:19
**obvious**
11:19 46:20
**occasionally**
17:14

**October**
13:23,24,25
14:4,6,8,11
36:21
**office**
31:20 32:18
**officers**
29:22
**official**
24:15,17,21
25:15
**officially**
51:10
**ongoing**
33:8,13
**open**
33:7
**opened**
52:24
**opening**
9:10
**opinions**
11:24 25:11
**opportunities**
11:15
**opportunity**
7:5,14 8:2
10:4 13:1
55:11
**oppose**
42:7
**opposed**
16:1
**opposing**
45:20
**options**
47:5

**oral**
4:4 6:22
11:18 17:2,8
26:12
**order**
12:17 16:15
55:8,13,15,22
**ordinary**
45:5
**original**
13:7 14:19
31:8
**outrageous**
40:13
**overcome**
45:2
**overly**
51:17

**P**

**p.m.**
4:1 27:7
34:15 39:15
40:9 44:9
56:2
**PACER**
28:7
**papers**
5:11 7:21,24
8:1 9:21
31:22
**parallel**
21:3
**part**
13:7 28:2
33:19 34:3
40:10 45:6
51:3 54:23

participate
  21:25

participating
  28:4

particularized
  19:8

parties
  6:25 41:4
  55:10

party
  5:24 6:4 12:1
  16:23

party's
  5:25

past
  36:14 46:3
  53:14

paying
  33:3

pediatric
  46:25

people
  4:6 46:18

perfectas
  42:19

performed
  37:25

perfunctory
  41:1

period
  44:24

permission
  14:4

permit
  11:5 42:19

permitted
  24:24 26:19
  41:16 50:5

perplexed
  27:24

personal
  53:3

persuasive
  22:9

pertains
  24:6

phase
  6:19 7:12
  26:20

phone
  4:17

phones
  5:2

phonetic
  42:19

phony
  15:7

phrase
  9:24

physics
  38:9

PI
  16:25

Pickering
  10:7,25 11:5
  12:20 17:4
  20:14,18
  25:10 30:23
  42:6 43:2,3,
  5,7,11,14

piece
  12:20 19:12
  24:11 26:4
  30:4

place
  30:10

plain
  37:10,14
  40:12 50:20

plainly
  30:3

plaintiff
  4:8 7:11 9:17
  23:20 54:25

plaintiff's
  5:14

plaintiffs
  12:5 13:8
  14:14,19,22,
  25 15:7,10
  17:12,17
  31:8,10,23,24
  45:6 47:2
  53:12

plaintiffs'
  14:13

plan
  8:15

planning
  9:5 15:5

play
  6:4

point
  6:5,9 7:25
  10:13 11:10
  16:12 23:25
  24:8 37:7
  44:16 49:7

pointblank
  53:10

pointed
  5:22,24 26:14
  40:22

points
  7:7,15 8:3

10:6 12:8,15

policies
  23:15

policy
  10:9 11:2,7,
  16 12:8,9
  13:8 15:2
  18:2,18,20
  19:2,3,5,10,
  15,25 20:1,2,
  9 21:1,13
  23:9,21 24:16
  25:19 26:1,5,
  10,15 45:1,
  10,14 46:4,8,
  10 47:12,22
  51:1,4,12
  52:1,12 53:14
  54:9

Political
  47:1

pop
  43:2

popularity
  11:23

position
  23:15 25:14,
  15,23 26:21
  29:5

possession
  32:17

possibly
  15:25 38:23

postdate
  32:8

power
  45:7

pre-approval
  25:22 26:14

precisely
  17:22
Precision
  52:9
predate
  37:17
predicted
  10:19
prefaced
  53:2
preliminary
  4:5 15:17
  17:21 18:12
  22:21 31:9
  33:7,10 41:6
  42:17 55:9
prepared
  16:2
present
  6:23 18:8
presentation
  9:7 35:19
presented
  48:24
president
  5:20 11:12
press'
  30:25
presumption
  44:18,21
  45:2,13,19
previous
  21:15 42:7
previously
  48:24
principle
  41:3 52:4

prior
  16:14 17:20,
  22 35:24
  38:19 42:10
problem
  9:2 19:3
  20:2,9
problematic
  35:12
proceeding
  4:11,13 7:4
proceedings
  4:1,12,18,25
  56:2
process
  14:18,20,25
  15:11,12 31:4
  33:7,8
produce
  35:3,4
product
  10:22
professional
  26:16
professor
  14:1,7 18:9,
  24 19:1 23:8,
  19 24:5,17
  25:4,17
  47:23,25
  48:6,10,15,20
  53:1,6,9
  54:15
professor's
  23:23
professors
  19:1 24:6,24,
  25 25:11,14,
  24 26:18

29:16,17 31:2
37:5 40:2
41:11 48:3
51:7 52:20
54:7
progeny
  20:14 43:5,7
prohibit
  11:20,22
prohibited
  24:20
promise
  21:9
promised
  9:23
properly
  35:17 40:10
proudly
  47:3
provide
  21:16
provided
  31:9 48:1
providing
  26:15
provision
  26:15 45:9
provost
  11:12
public
  4:12 7:19
  11:6,13,15
  17:15 25:8,13
  27:24 28:3
  29:9,18 30:16
  32:8,14,25
  34:25 36:8
  40:3,18 41:9

42:24 43:13
44:24 45:5,9
46:5,15
publicly
  47:9
pull
  30:16
punishment
  17:18 18:4
purpose
  41:14,15
purposes
  9:5 16:24
  18:21 23:14
  48:2,9 50:1
put
  21:13 26:22
  27:4 31:14
  34:12 39:10
  43:19 44:6
  54:4
putting
  8:24 17:9
  39:22

─────────
    Q
─────────

quacks
  33:18
qualifications
  8:6
question
  8:18 9:16,17
  18:20 19:4
  23:2 30:9,12
  43:23 51:19
questionable
  33:20
questions

Judge Mark Walker
January 14, 2022

7:3 8:13,21,
22 9:14 15:24
30:24

**quickly**
55:3

**quote**
30:25 52:9

**quotes**
21:13

**quoting**
22:2

---

**R**

**raised**
8:4 22:11
32:20 45:25

**rank**
47:6

**read**
52:18 53:4,20

**realistic**
25:13

**realize**
6:17

**realized**
6:2

**reason**
26:3 29:20
33:17 35:18

**reasonable**
35:2,22

**reasons**
15:13 23:11
44:25

**rebut**
44:18

**rebuttal**

44:21

**recall**
18:9

**receive**
45:19

**received**
5:12 16:18

**receives**
15:21

**recess**
55:25

**recognizing**
55:1

**record**
4:11 5:2 6:21
20:7 23:22
27:3,6,8,24
28:3,12 29:9,
18 32:9
34:14,25 36:8
37:9 39:11,15
40:2,10,15
41:7,9,15,18,
22,25 42:1
44:8 48:18
49:20 50:18
51:13,14
52:1,25 53:19
54:24 55:5,6

**records**
30:16 32:25
40:19

**referenced**
46:1

**referred**
5:24

**refers**
19:25

**reflect**
26:1 37:25

**reflects**
48:18

**refusal**
17:18

**regard**
42:1 51:6
52:2

**regulating**
52:8

**Reid**
24:14,18,24
25:3 48:3,6
49:22 50:11

**Reid's**
53:2,8

**reiterate**
7:23

**relate**
13:6

**related**
41:25 42:23

**relates**
6:14 19:5
21:3 23:8,24
26:25 27:2,15
28:25 32:21
38:25 52:1
54:6,12

**relevant**
6:13 24:4

**relief**
14:24 18:13
24:5

**rely**
33:14 45:7

**remains**

45:14

**remarks**
53:2

**remind**
4:10

**reopen**
16:10 27:3
28:11 35:18
41:5,14,15

**reopening**
28:25

**repeat**
7:23

**replaces**
45:1

**reply**
21:10,19 27:1

**report**
13:17,21
14:2,3 19:14
34:25 35:2,4,
11,13 36:6,19
37:19,23,25
38:3,12,17,21
39:18 40:3
44:19 47:10

**reported**
26:9

**reporter**
4:19 5:1 8:11
44:6

**reports**
27:21 28:9,
16,22,23
29:8,12,18
30:14 31:17
32:8,9 33:1
35:21,23
37:15,16

38:1,11,16
39:16,24 40:9

**represent**
30:3

**representing**
29:23 36:16

**repudiate**
54:8

**request**
13:19,20,24
14:3,5,7,9
15:8 16:10
21:25 24:14,
16 27:2
31:12,24
36:20 53:2,6

**requested**
5:24

**requests**
13:14,16
15:3,4

**require**
20:3 25:21
48:21

**required**
26:19

**requires**
44:22

**requiring**
26:14

**reread**
52:17,18,19

**research**
33:24

**resembles**
10:24

**respect**
18:25 19:1

49:11

**respond**
12:14,16
16:2,5,6,8,9
21:19 26:24
28:14 47:17
49:16

**response**
49:22 53:21
54:17

**responses**
24:12 52:20

**responsible**
24:15

**rest**
44:6

**restraint**
17:20,23

**restriction**
10:10 25:11

**restrictions**
24:9

**retained**
27:19 35:3,25

**review**
10:12 24:14
41:25 45:22
55:4

**reviewed**
5:15

**reviewing**
40:12

**reviews**
24:16

**revised**
26:1

**revisions**
11:16

**rights**
10:21 36:16
52:10

**risk**
25:13

**Rosenbury**
24:17 26:8
49:23

**Rosenbury's**
50:4

**round**
29:16

**rounds**
11:17

**rule**
5:21 6:8,16
20:6

**Rules**
5:22

**ruling**
28:19

—————————

S

—————————

**salary**
22:3

**sat**
13:22 14:10

**school**
11:13 19:13
20:5 48:3,8
49:25 50:13
51:4,7 53:5

**school's**
25:19

**Science**
47:1

**scope**
17:3

**scrutiny**
10:24 45:1

**seek**
16:23 38:19

**seeking**
16:14 17:21
24:5

**sense**
15:18

**separate**
19:8 35:25

**separately**
8:15

**September**
13:22 14:3

**serve**
11:3 54:7

**served**
15:20

**services**
26:16 45:10

**set**
6:22 10:11
18:7

**setting**
16:18,19
18:25 24:3
27:16,20 34:8
55:8

**sharing**
46:17

**shortened**
54:23

**shorthand**
27:1

**Shoulder**
10:17

show
 11:2 31:20

showed
 11:7

shown
 53:13

side
 6:23 8:25
 52:23

sides
 7:5 21:2,10
 28:20

sign
 20:21 25:18
 48:15,19 51:7

signed
 13:21 14:2,8
 35:13 38:1,12
 39:4

significant
 23:11

signing
 25:15,20
 26:6,13

signs
 47:23

silence
 44:23

simply
 18:4 23:12
 39:10 48:18
 49:10 53:15
 54:23

sir
 9:8 19:18

sit
 33:14 55:20

sitting

 14:6

slightly
 21:4

Smith
 13:12,17,20
 36:7,11,12
 38:3 40:24

sought
 6:23 18:12
 48:4

sound
 30:8

space
 38:10

speak
 12:22 18:12
 48:16 49:3,5

speakers
 10:11

speaking
 4:6 11:22
 45:7 48:22
 49:2 50:20
 51:10,23 52:5
 54:16

specific
 8:13 10:7
 16:5 38:17
 45:8

speech
 10:10 11:21,
 23 17:25
 26:20 32:14
 42:24,25
 44:24 45:18,
 19 46:6,21
 52:8

squirrely
 30:7

stand
 52:14

standard
 19:7 41:13
 45:22

standardless
 19:7

standing
 15:10 22:24,
 25 37:12
 45:23 46:9

start
 7:9,10 10:1
 16:22 36:24
 37:1 44:16

started
 5:19 46:14

state
 11:3 12:1
 20:4,11 23:16
 24:25 45:20
 51:25

stated
 48:24

statement
 6:4 9:11 13:1
 15:22 51:19
 52:18

statements
 5:20 6:6
 11:16 12:5
 17:15 46:5

states
 11:14 48:6

station
 32:3

stick
 21:12

stop
 23:17 30:6
 34:6

straight
 42:22

strange
 27:25

strict
 45:1

strong
 29:20 44:17
 45:13,19

strongly
 17:19

stuff
 28:9 31:20
 53:16

subject
 10:11 17:12,
 18 45:21

submit
 10:5

submitted
 13:14,18 14:7
 31:8 35:1
 36:20 51:3

submitting
 15:3

subparts
 9:16,17

substance
 35:7

substantive
 28:19 35:14
 44:16

succeed
 18:15

succeeded
18:14

suddenly
30:21

sued
36:17

sufficient
44:20 51:4

suggest
28:1 32:9
37:17 41:4
50:8

suggested
41:24 45:24

suggesting
20:10 24:21
50:17,18

sum
8:2 43:22
44:12

summary
54:17

supersedes
50:4

supplement
41:7

supplemental
5:13,14
15:15,21
39:11 54:22
55:5

supplemented
40:15 41:21

supplementing
39:15 54:24

support
36:13,14 49:8

supports
23:23

supposed
31:19

suppression
42:23

Supreme
10:14 52:9

surprise
47:11

SV-90
36:17

switched
6:17

———————

**T**

tailored
11:3,8 44:25

taking
16:13 36:9

talk
4:17 23:20
32:11 42:11

talked
6:2 9:21

talking
5:20 20:17
29:13

talks
5:25 26:15

Tallahassee
30:10

task
44:19 45:4

telephonic
4:4

television

32:3

telling
53:10

ten
55:7,15

Teresa
25:3 50:11

terms
24:4

test
10:23 43:3

testified
18:10

testify
22:4 36:17
41:12

testifying
23:24

testimony
6:24 11:6
19:6,25 29:12

Texas
21:25

theory
33:9

therefrom
35:23

thing
29:9 41:24
43:1

things
16:2,17 32:1
43:18 55:4

thinking
29:2

thought
31:4 40:22,25

thoughtful
5:11 6:11
7:22 8:1
40:21

threat
22:3

thrilled
42:14

tied
42:17

time
4:15 7:25
8:10 9:14,20,
22,25 13:3
15:6 25:12
37:3 38:10
39:2,4 41:15,
16 43:20,22
47:17

timeline
31:3 35:5,17

timely
55:13

timer
9:4 44:13

times
4:16

timing
41:2

title
47:25 51:8

today
4:7 7:9 31:4
39:15 40:10
46:1,7,19
47:8 55:4,6

today's
15:19

told
5:3 7:19 48:3

tomato-tomato
23:21

top
8:16 11:13

topic
5:18 6:18

topics
25:6 36:18

touchstone
52:10

track
8:10 55:9,10

traditional
10:24

treated
20:16

trouble
19:20

true
37:5 48:18

Trustee
46:5 47:8

trustees
11:12

truth
45:7

turn
8:6 23:5 37:6
45:23 50:16

type
42:24

---

**U**

UCS
36:7

UF
14:9 24:18,22
41:11 50:5,8
51:8 53:10
54:8

UF's
15:6 32:17
45:21

UFOLIO
24:12,14
36:20 48:6
49:22

ultimately
22:5 54:24

umbrage
51:18

unable
4:19

unambiguous
12:9

unclean
14:23 22:12
31:2 37:11

unclear
17:7

unconstitutiona
l
12:9 17:19
18:1,12

understand
19:4,24
20:12,15
26:5,21 28:10
29:24 31:21
34:24 37:8,14
38:13 39:1
40:16 48:12
49:14 51:16
52:13 53:25

54:5,11 55:8

uninterrupted
7:14

United
11:14

universities
11:14

university
5:21 11:19
13:10,15,19,
23 14:5 15:9,
21 17:23,24
20:23 22:3
24:13 25:1,5,
16 29:5 31:24
37:3 46:9,23
47:4,22,23,24
48:8,17 49:2,
3,25 50:10,
13,21 51:5,10
52:2,4,6,8,11
54:1,16

University's
11:25 13:3,8
14:18 23:13
36:13

unlawful
24:10

unlike
32:2 45:5

unmistakable
46:7

upheld
22:20

utterly
26:5

---

**V**

verbiage
53:7

verify
5:3,5

versus
43:16

view
28:10 33:18
49:10

viewpoint
45:15,18
46:21

views
13:5

violation
51:6

vital
15:14

vivid
18:17

void
42:18

voting
36:14

---

**W**

wait
33:14,15

waiting
15:8

walk
31:3,20

Walker
4:3

Judge Mark Walker
January 14, 2022

**walking**
  17:13
**walks**
  33:18
**wanted**
  7:8,15 12:15,
  22 27:18
  31:25 47:15
  52:21 54:7
**website**
  5:25
**Wednesday**
  30:5 33:24
**weeds**
  5:16
**week**
  12:21 15:16
  26:12
**weeks**
  38:22 39:8
**Welsh**
  22:2
**Westlaw**
  22:19
**whatsoever**
  31:10
**Winsett**
  53:7
**Winsett's**
  50:4 53:1
**word**
  43:2,10 49:18
  52:15,21
**words**
  45:20 50:9
  53:3 54:5
**work**
  13:10,15 14:6

  15:2,7 31:11
  32:4 36:22
  37:18,25
  38:4,11,18,
  20,21 43:6
  55:17,18,21,
  24
**worked**
  47:3
**working**
  13:13,17,21
  14:1 15:3
  39:2,3
**workout**
  38:21
**world**
  28:10 38:11
**written**
  45:17
**wrong**
  32:6 53:21

─────────────
          **Y**
─────────────

**year**
  13:18
**years**
  47:4