## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

SHARON WRIGHT AUSTIN, *et al.*,

     *Plaintiffs*,

     v.

UNIVERSITY OF FLORIDA
BOARD OF TRUSTEES, *et al.*,

     *Defendants*.

Case No.: 1:21-cv-00184-MW-HTC

## DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## MOTION FOR ATTORNEYS' FEES AND COSTS

Amy Meyers Hass
  *Vice President and General Counsel*
  Florida Bar No. 483346
Ryan Fuller
  *Associate Vice President and*
  *Deputy General Counsel*
  Florida Bar No. 635324
UNIVERSITY OF FLORIDA
OFFICE OF GENERAL COUNSEL
123 Tigert Hall, P.O. Box 113125
Gainesville, FL 32611
(352) 392-1358
amhass@ufl.edu
ryanf@ufl.edu

H. Christopher Bartolomucci
  D.C. Bar No. 453423
Brian J. Field*
  D.C. Bar No. 985577
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com
bfield@schaerr-jaffe.com

*Admitted *pro hac vice*

*Counsel for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ...................................................................................1

STATEMENT OF FACTS .......................................................................2

ARGUMENT ...........................................................................................7

    I.    Plaintiffs are not prevailing parties because they lacked standing and their claims were unripe and moot. .............................................7

        A.    Plaintiffs lack standing. ....................................................8

        B.    Plaintiffs' claims are unripe. ............................................11

        C.    Plaintiffs' claims have been moot from the beginning.................12

    II.    Plaintiffs are not prevailing parties because the change in policy occurred irrespective of this Court's preliminary injunction. .................15

    III.    Plaintiffs are not prevailing parties because they received no enduring relief from this Court.................................................20

CONCLUSION......................................................................................23

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F) .....................25

CERTIFICATE OF SERVICE ...............................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amawi v. Paxton*, 48 F.4th 412 (5th Cir. 2022) ..........................................................20

*Austin v. Univ. of Fla. Bd. of Tr.*, No. 22-10448 (11th Cir. Mar. 20, 2023) .............6

*Austin*, No. 22-10448 .....................................................................................................6

*Beta Upsilon Chi Upsilon Ch. at Univ. of Fla. v. Machen*,
    586 F.3d 908 (11th Cir. 2009) ................................................................ 12, 13, 14

*Beta Upsilon Chi v. Machen*,
    No. 1:07cv135-MW/GRJ, 2014 WL 4928902 (N.D. Fla. Oct. 1, 2014),
    *aff'd*, 601 F. App'x 917 (11th Cir. 2015) ...........................................................21

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia*
    *Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001) ............................... 1, 18, 19

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ...................................................8

*Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009) .....................14

*Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217 (11th Cir. 2010) ........................9, 11

*Diffenderfer v. Gomez-Colon*, 587 F.3d 445 (1st Cir. 2009) ....................................22

*Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199 (11th Cir. 2012) .................15

*Doe v. Busbee*, 684 F.2d 1375 (11th Cir. 1982) .......................................... 7, 19, 21

*Finstad v. Fla., Dep't of Bus. & Pro. Regul.*,
    295 F. App'x 352 (11th Cir. 2008) ......................................................................12

*Gardner v. Mutz*, 962 F.3d 1329 (11th Cir. 2020) ................................................8, 12

*Granite State Outdoor Advert., Inc. v. City of Clearwater*,
    351 F.3d 1112 (11th Cir. 2003) ...........................................................................10

*Hallandale Pro. Fire Fighters Loc. 2238 v. City of Hallandale*,
    922 F.2d 756 (11th Cir. 1991) ................................................................................9

*Hand v. DeSantis*, 946 F.3d 1272 (11th Cir. 2020) .................................................13

*Hargett v. Tennessee State Conf. of NAACP*,
    No. 22-773 (U.S. docketed Feb. 16, 2023) .......................................................21

*Harmon v. City of Kansas City*, 197 F.3d 321 (8th Cir. 1999) .................................. 8

*Harrison v. United Mine Workers of Am. 1974 Benefit Plan & Tr.*,
    941 F.2d 1190 (11th Cir. 1991) ........................................................... 12

*Hewitt v. Helms*, 482 U.S. 755 (1987) ......................................................... 18

*Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712 (9th Cir. 2013) ...................... 19

*Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020) ........................... 7

*Laird v. Tatum*, 408 U.S. 1 (1972) ............................................................ 9

*Parker v. Governor of Pa.*,
    No. 20-3518, 2021 WL 5492803 (3d Cir. Nov. 23, 2021) ................................ 14

*Renne v. Geary,* 501 U.S. 312 (1991) ......................................................... 14

*Rhodes v. Stewart*, 488 U.S. 1 (1988) ....................................................... 15

*Sole v. Wyner*, 551 U.S. 74 (2007) ................................................... 1, 20, 21

*Tennessee State Conf. of NAACP v. Hargett*,
    53 F.4th 406 (6th Cir. 2022), *pet. for cert. docketed*,
    No. 22-773 (U.S. Feb. 16, 2023) ..................................................... 19, 22

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
    489 U.S. 782 (1989) ..................................................................... 18

*Thomas v. Haslam*,
    No. 20-6188, 2021 WL 3754240 (6th Cir. Aug. 25, 2021) .............................. 22

**Statutes**

42 U.S.C. § 1988 ............................................................................. 1

Fla. Stat. § 1012.977 ........................................................................ 2

**Rules**

11th Cir. R. 33-1 ............................................................................ 16

Fed. R. Evid. 408 ........................................................................... 17

## INTRODUCTION

Timing is everything. And here, the timing of UF's actions quickly dispel any argument that Plaintiffs are prevailing parties entitled to attorneys' fees. *See* 42 U.S.C. § 1988.

UF granted Plaintiffs' requests to act as expert witnesses and formed a task force to amend its conflicts policy before this case even started. Because UF gave Plaintiffs what they wanted so early on, Plaintiffs lacked standing to bring this lawsuit, and their claims were unripe and moot. As a result, Plaintiffs cannot be prevailing parties entitled to attorneys' fees, as there were no justiciable claims for Plaintiffs to prevail on.

Moreover, the Supreme Court has made clear that a defendant's voluntary change does not make a plaintiff a prevailing party unless the voluntary change was the result of a court order and provided the plaintiff with practical, enduring relief. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001); *Sole v. Wyner*, 551 U.S. 74, 83 (2007).

Here, UF approved the Professors' requests and revised the conflicts policy long before this Court entered a preliminary injunction. And thus the injunction was not the cause of these changes. Further, the injunction resulted in no on-the-ground relief for Plaintiffs. Plaintiffs are therefore not prevailing parties in this litigation.

**STATEMENT OF FACTS**

UF permits its faculty and staff to perform outside activities, including paid outside work, provided such activities do not constitute a conflict of commitment or a conflict of interest.  UF's policy, which requires disclosure and prior approval of certain reportable outside activities, derives from and is set forth in several documents, including Florida Statute § 1012.977(1); the collective bargaining agreement ("CBA") agreed to by the United Faculty of Florida ("UFF") and the Board of Trustees; a university regulation promulgated by the Board, Regulation 1.011; and UF's policy on "Conflicts of Commitment and Conflicts of Interest." (hereinafter, "Policy on Conflicts").  Collectively, these materials are referred to as UF's "conflicts policy."

Professors Austin, McDonald, and Smith performed outside work as expert witnesses on behalf of the plaintiffs who were adverse to the State of Florida in litigation challenging a new Florida election law.  Initially, in July and October 2021, UF's Conflict of Interest Office disapproved their requests.  *See* Doc. 30-4 at ¶ 9; Doc. 30-5 at ¶ 8; Doc. 30-6 at ¶ 8.  UF's Conflict of Interest Office also initially disapproved of Dr. Goldhagen's request to testify as an expert witness in a case against the State of Florida involving mask mandates at Florida schools.  Doc. 19 at ¶¶ 42–50.

2

To address the ensuing controversy surrounding Plaintiffs' requests, UF's President created a Task Force on November 5, 2021. President Fuchs issued a statement, *see* Doc. 23-1 at 205–06, which he emailed to the UF campus community, that confirmed the formation of "a task force that will review UF's practice regarding requests for approval of outside activities involving potential conflicts of interest and conflicts of commitment." Doc. 23-1 at 205, 208.

The same day he issued the statement, President Fuchs ordered the unconditional approval of the requests of the three Professors and Dr. Goldhagen. President Fuchs directed UF's Conflicts of Interest Office "to reverse the decisions on recent requests by UF employees to serve as expert witnesses in litigation in which the state of Florida is a party and to approve the requests regardless of personal compensation." *Id.* at 206.

And just a few weeks after that approval, the Task Force delivered its report to President Fuchs. *See* Doc. 23-1 at 219–23. The Task Force recommended that UF revise its conflicts policy to establish a "strong presumption that the university will approve faculty or staff requests to testify as expert witnesses, in their capacities as private citizens, in all litigation in which the State of Florida is a party, regardless of the viewpoint of the faculty or staff member's testimony." *Id.* at 221.

The next day, November 23, 2021, President Fuchs accepted all of the Task Force's recommendations and thereby revised UF's conflicts policy. *See* Decl. of

Ryan Fuller ¶ 7, Jan. 23, 2023 (Doc. 110-1) (hereinafter, "Fuller Decl."), attached hereto as Exhibit A.   UF issued a public statement that "President Kent Fuchs approved the recommendations of a presidential task force appointed to review UF's conflicts of interest policy and is asking the appropriate campus offices to proceed with implementation."  Doc. 23-1 at 225.

Following the approval of the Task Force's recommendations, UF considered, and ultimately made, further changes to its conflicts policy that were not motivated by the filing of this case or any claims therein.  *See* Fuller Decl. ¶ 8.  The revised Policy on Conflicts is attached as Exhibit 2 to Mr. Fuller's declaration.

Two events drove revisions to the policy.  First, in July 2021, the Board of Trustees and the UFF had agreed to a new CBA, which included Article 26 on "Outside Activity and Conflict of Interest."   Fuller Decl. ¶ 9.  But there were differences between Article 26 and UF's Policy on Conflicts.  For example, the two documents defined the term "Conflict of Interest" in different ways.  *Id.*  These changes are reflected in the Policy on Conflicts.  *Id*.

Second, UF implemented the Task Force recommendations that President Fuchs accepted in November 2021.  For example, the Task Force recommended the adoption of "an appeal process for all denials of requests to engage in an outside activity."  Doc. 23-1 at 223.  The Task Force suggested that "Within 30 calendar days of a denial of any request to engage in an outside activity, the requester may

appeal in writing to an appeals panel." *Id*.  Section 8 of the Policy on Conflicts now includes an appeal process along these lines.  Fuller Decl. ¶ 10.

In March 2022, UF's Assistant Vice President for Conflicts of Interest accepted a position in the private sector.  After conducting a search, UF hired Ms. Carolyne St. Louis as its new Assistant Vice President for Conflicts of Interest.  After assuming that role, she and the Conflicts of Interest Office worked with other UF officers and offices to get up to speed on Article 26 of the CBA and the Task Force recommendations and the resulting Policy revisions.  Fuller Decl. ¶ 11.

The changes to the Policy on Conflicts were the result of an organic process. They were not, as Plaintiffs assert, "adopted as a direct result of Plaintiffs' efforts." Doc. 119 at 5.  "Nor were they adopted in reaction to this litigation or in an effort to moot this litigation."  Fuller Decl. ¶ 12.  The changes pertinent to this litigation were adopted and implemented in November 2021.  Indeed, the changes to the CBA, the reversal of the initial decision on the Professors' requests, and the formation of the Task Force all occurred prior to the filing of this lawsuit.

Following the online publication of the revisions in October 2022, Plaintiffs moved for voluntary dismissal under Federal Rule of Civil Procedure 41(a)(2).  *See* Doc. 105.  In response to Plaintiffs' motion, this Court issued an order requesting supplemental briefing regarding whether the Court could act on the motion given the pending appeal before the Eleventh Circuit and whether Plaintiffs should first seek

relief from the Circuit in a motion to dismiss the appeal.  Doc. 106.  After this Court

asked the parties to brief whether it should act, Plaintiffs filed a motion to dismiss

the appeal with the Eleventh Circuit.  Mot. to Dismiss, *Austin v. Univ. of Fla. Bd. of*

*Tr.*, No. 22-10448 (11th Cir. Mar. 20, 2023), Doc. 25 (filed Jan. 6, 2023).   In

response to that motion, UF agreed that the case was moot, but disagreed as to the

timing of the mootness, as UF has consistently pointed out that this case has been

moot from its inception.  Appellants' Opp'n to Appellees' Mot. to Dismiss Appeal,

*Austin*, No. 22-10448, Doc. 28.

On March 20, 2023, the Eleventh Circuit dismissed the appeal as moot and

vacated this Court's preliminary injunction.  Order, *Austin*, No. 22-10448, Doc. 30-

2.

Plaintiffs argue that "the Eleventh Circuit dismissed the appeal and vacated

the preliminary injunction because the controversy is indisputably moot *now*, not

because the controversy was moot at any earlier date."  Doc. 119 at 11.  But the

Eleventh Circuit's order was just a few sentences and said nothing about when this

case became moot.  It only said what both parties agreed on—the case is moot.

Order, *Austin*, No. 22-10448, Doc. 30-2.

## ARGUMENT

**I.    Plaintiffs are not prevailing parties because they lacked standing and their claims were unripe and moot.**

A party who wins a motion for a preliminary injunction is not a "prevailing party" entitled to attorney's fees if the injunction was "entered under a mistake of law." *Doe v. Busbee*, 684 F.2d 1375, 1382 (11th Cir. 1982). "Under these circumstances, plaintiffs may not properly be considered to have vindicated a civil right as contemplated by Congress in § 1988, since in fact they had no right to the relief sought and obtained." *Id.*

When this Court entered the preliminary injunction, Plaintiffs lacked standing, and their claims were unripe and moot. Thus, the injunction was "entered under mistake of law," and Plaintiffs are not the prevailing party entitled to attorney's fees. Plaintiffs' assertion that this Court "need not review whether it originally had jurisdiction," relies on cases discussing "the merits of the underlying dispute." Doc. 119 at 10–11. The threshold issues of standing, ripeness, and mootness are not merits matters. They are jurisdictional issues that may be raised at any time, and this Court can and should reconsider those issues here. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (explaining that a district court has an "obligation to ensure its jurisdiction").

7

### A.      Plaintiffs lack standing.

"The first and foremost of standing's three elements is injury in fact." *Gardner v. Mutz*, 962 F.3d 1329, 1341 (11th Cir. 2020) (cleaned up).  But Plaintiffs cannot show injury in fact for five reasons.

First, Plaintiffs suffered no harm in the past because UF approved their expert witness work.  Even though UF initially denied the requests, that temporary decision did them no harm.  Plaintiffs continued to work as experts even after the denial.

Second, even if they did suffer a past harm from UF's temporary disapproval of their requests, a decision that UF reversed and Plaintiffs ignored, that alone cannot establish standing for injunctive relief.  *See Harmon v. City of Kansas City*, 197 F.3d 321, 327 (8th Cir. 1999).

Third, Plaintiffs have never pointed to any future injury that was certainly impending.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  When the district court granted the injunction, Plaintiffs had no pending requests for approval to work as expert witnesses, nor did they show that they had available opportunities for such work.  And even if they had, UF's revised conflicts policy, with its strong presumption in favor of expert witness work, would have applied.  Thus, the mere existence of the policy could not constitute a certainly impending injury.  *See* Order at 34, Doc. 65.

Fourth, Plaintiffs have never pointed to any imminent injury about to occur in the immediate future. *See Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) (quoting *Hallandale Pro. Fire Fighters Loc. 2238 v. City of Hallandale*, 922 F.2d 756, 760 (11th Cir. 1991)).  Plaintiffs did not show that, absent injunctive relief, UF would in the immediate future prevent them from serving as experts in litigation against the State of Florida.

Fifth, and finally, Plaintiffs have suffered no "chilling effect" that is cognizable as an injury.  "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Hallandale*, 922 F.2d at 761 (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)).   And Plaintiffs' own behavior disproves the supposed chilling effect. Professors Austin, McDonald, and Smith proceeded to work as experts without obtaining prior approval and continued to work as experts even after their requests were disapproved.  Plaintiffs' disregard for the original policy undercuts their argument that the revised policy, which is far more favorable to them, caused a chilling effect.

Aside from Plaintiffs' lack of injury, there has also never been a credible threat of enforcement during this lawsuit.  Given that UF approved Plaintiffs' requests and revised its conflicts policy to make it extremely favorable to them, this Court should reconsider whether Plaintiffs faced a credible threat of enforcement and thus had

9

standing.  In particular, in its analysis on this point, the Court incorrectly relied on remarks made by the Chairman of the UF Board of Trustees at a Board meeting on December 3, 2021.  *See* Doc. 45-4.

In his remarks, Chairman Hosseini praised UF's "amazing faculty members." *Id*. at 4–5.  But he noted that in "2019, UF received a letter from the NIH identifying two faculty members that NIH had reason to believe were spending significant time engaged in outside activities that they intentionally did not disclose." *Id*. at 7.  These remarks had nothing to do with Plaintiffs.  Yet the Court held that "Chairman Hosseini's remarks made plain that UF was beholden to the Florida Legislature." Doc. 65 at 21.  The Court further stated that, based on the Chairman's remarks, "the highest ranking UF official has all but promised to enforce the policy in the way Plaintiffs fear." *Id*. at 30–31.  But the Chairman did not say that, and neither he nor the Board as a body even enforces the conflicts policy.

In sum, Plaintiffs have suffered no past, present, or future injuries, and UF has not denied or threatened to deny Plaintiffs any expert witness opportunities. Plaintiffs therefore lacked, and continue to lack, standing to pursue their claims. Because they have lacked standing from the beginning of this case, Plaintiffs are not the prevailing party entitled to attorney's fees.  *See Granite State Outdoor Advert., Inc. v. City of Clearwater*, 351 F.3d 1112, 1120 (11th Cir. 2003) (holding that

Granite State was not the "prevailing party" because it had no standing to challenge the law at issue).

**B.    Plaintiffs' claims are unripe.**

"A ripeness analysis involves the evaluation of two factors: the hardship that a plaintiff might suffer without court redress and the fitness of the case for judicial decision." *Dermer*, 599 F.3d at 1221 (cleaned up). "This requirement is not satisfied if it would strain credulity to say that there is a credible threat that a plaintiff's *First Amendment* rights will be violated in the future." *Id.* (cleaned up; emphasis in original).

Here, the policy with the Task Force's recommendations has not been applied to Plaintiffs or injured them in any way. Plaintiffs never requested approval for any expert witness work under the revised policy, and UF never withheld such approval. And, as explained above, Plaintiffs did not show the district court a credible threat that UF would violate their First Amendment rights in the future. After all, UF approved their requests and then revised its conflicts policy to adopt a strong presumption in favor of expert work. Because Plaintiffs' claims are unripe, the Court had no jurisdiction to enter the injunction, and Plaintiffs cannot be the prevailing party.

**C.     Plaintiffs' claims have been moot from the beginning.**

Plaintiffs' claims suffer a third jurisdictional flaw—mootness.  Here, any controversy between Plaintiffs and UF ended before this lawsuit even started, and thus this case has been moot from the start.

UF approved the Professors' requests to serve as expert witnesses and only after that decision did the Professors file suit.  *See* Doc. 1 at ¶ 43.  Because Plaintiffs got what they wanted—approval to act as experts—before filing this lawsuit, the case was moot at that time.  *Gardner*, 962 F.3d at 1337 n.7; *see also Beta Upsilon Chi Upsilon Ch. at Univ. of Fla. v. Machen*, 586 F.3d 908 (11th Cir. 2009) (controversy over UF's denial of recognition of student group mooted when UF recognized the group and amended its recognition policy); *Finstad v. Fla., Dep't of Bus. & Pro. Regul.*, 295 F. App'x 352, 353 (11th Cir. 2008); *Harrison v. United Mine Workers of Am. 1974 Benefit Plan & Tr.*, 941 F.2d 1190, 1193 (11th Cir. 1991).

The lawsuit then became even mooter just a few weeks later, on November 23, 2021, when President Fuchs accepted all of the Task Force's recommendations and thereby revised UF's conflicts policy, making it much more favorable to Plaintiffs and expert work.  UF issued a statement reporting that "President Kent Fuchs approved the recommendations of a presidential task force appointed to review UF's conflicts of interest policy and is asking the appropriate campus offices to proceed with implementation."  Doc. 23-1 at 225.

Thus, even if the Court does not agree that the case was moot when filed, it was certainly moot as of November 23, 2021. *See Hand v. DeSantis*, 946 F.3d 1272, 1275 (11th Cir. 2020) ("an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed. ... If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." (citations omitted)); *Beta Upsilon Chi*, 586 F.3d at 916.

Regarding UF's mootness argument, this Court previously held that while "UF, as a governmental entity, would deserve a presumption that it is unlikely to resume its" old policy, Doc. 65 at 37, the new policy denied Plaintiffs the opportunity to participate in litigation against the state of Florida, *id.* at 36.  What opportunity the Court had in mind is unclear, as the Professors had already received approval to work on their cases involving the state of Florida, and they had no pending or impending requests for additional cases.

Nonetheless, it appears the Court was applying two exceptions to the rule that a defendant's revised policy ordinarily moots a case—the "capable of repetition yet evading review" and "voluntary cessation" doctrines.  But neither exception is applicable to this case.

Starting with voluntary cessation, that exception does not apply for two reasons.  First, as this Court recognized, UF is a state entity, and thus there is a

"rebuttable presumption that the objectionable behavior will *not* recur." *Beta Upsilon Chi*, 586 F.3d at 916 (emphasis in original).

Second, the voluntary cessation exception does not apply because this case did not become moot "as a response to litigation." *Parker v. Governor of Pa.*, No. 20-3518, 2021 WL 5492803, at *4 (3d Cir. Nov. 23, 2021). Before this lawsuit was even filed, UF reversed its decision on the original Plaintiffs' requests and formed a Task Force to revise the conflicts policy. Also before this lawsuit was filed, UFF and the Board of Trustees agreed to a new CBA that would require revisions to the conflicts policy. Fuller Decl. ¶ 9. In short, UF would have revised its policy regardless of the lawsuit. *Id.* ¶ 12.

The "capable of repetition yet evading review" exception is equally inapplicable. This exception "will not revive a dispute which became moot *before* the action commenced." *Renne v. Geary,* 501 U.S. 312, 320 (1991) (emphasis added). That is what happened here: President Fuchs approved the Professors' requests before they commenced this action.

All in all, even though both parties agreed this case was moot at the appellate level, the case did not become moot on appeal.[1] This case has always been moot or,

---

[1] Because this case did not become moot on appeal, Plaintiffs' reliance on *Common Cause/Georgia v. Billups* (at 7) is misplaced. 554 F.3d 1340 (11th Cir. 2009). In *Billups*, the legislature repealed the statute at issue only after the district court entered an injunction and "during the pendency of the appeal." *Id.* at 1346.

14

at a minimum, it has been moot since President Fuchs adopted the Task Force recommendations in November 2021.  Thus, there was no jurisdiction to enter the preliminary injunction and Plaintiffs are not prevailing parties.

Moreover, when a "case was moot before judgment issued," the judgment "afforded the plaintiffs no relief whatsoever." *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988).  And "[i]n the absence of relief, a party cannot meet the threshold requirement of § 1988 that he prevail, and in consequence he is not entitled to an award of attorney's fees." *Id.; see also Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199, 1205–06 (11th Cir. 2012) (holding that a plaintiff was not the "prevailing party" where case became moot before the district court issued a judgment on the merits).

## II.   Plaintiffs are not prevailing parties because the change in policy occurred irrespective of this Court's preliminary injunction.

Plaintiffs' entire motion hinges on the argument that the policy revisions "were adopted as a direct result of Plaintiff's efforts."  Doc. 119 at 5.  Plaintiffs state that "[t]he Revised Policy, and in particular the sections referenced above, is the result of months of negotiations between the parties." *Id*.  These negotiations, Plaintiffs admit, were "settlement negotiations." *Id*. at 5 n.2.  "The parties participated in mediation as required by the Eleventh Circuit" and "[a]fter mediation,

---

But here, the events and policy amendment process that mooted this case started even before Plaintiffs filed suit.

the parties engaged in settlement negotiations to resolve this matter."  Decl. of Morgan Davis ¶¶ 3–4 (Doc. 120); *see* Notice of Telephone Mediation (Doc. 120-1). Plaintiffs' fee motion discloses confidential communications with the Circuit Mediator herself, *see* Doc. 120-2, and documents exchanged during subsequent settlement negotiations and marked "CONFIDENTIAL — FOR SETTLEMENT DISCUSSION ONLY" and "FRE 408."  Doc. 120-2.[2]

Plaintiffs' disclosure of the substance of confidential Eleventh Circuit mediation and subsequent confidential settlement negotiations is improper and violates both an Eleventh Circuit rule and representations made by Plaintiffs to the Circuit Mediator.  Circuit Rule 33-1 provides: "Communications made during the mediation *and any subsequent communications related thereto* shall be confidential. Such communications shall not be disclosed by any party or participant in the mediation ...."  11th Cir. R. 33-1(c)(3) (emphasis added).  A document provided to the parties by the Kinnard Mediation Center in advance of the mediation states:

> To encourage efficient and frank settlement discussions, the court exercises great care to insure strict confidentiality in the mediation process.  11th Cir. R. 33-1's confidentiality provisions apply to all mediated appeals, including appeals that judges refer to mediation.  The rule directs all parties and participants in the mediation process to keep confidential all statements and comments made or received during the mediation *and in subsequent communications* ....

---

[2] Plaintiffs do not contend that they reached a settlement with Defendants.  Despite their negotiations, the parties did not settle.

Kinnard Mediation Ctr., *Mediation in the Eleventh Circuit Court of Appeals* 8, (Apr. 2017) (emphasis added), attached hereto as Exhibit B.   And in the mediation statement they submitted to the Circuit Mediator, Plaintiffs agreed to "maintain confidentiality with respect to settlement communications made and received during *and subsequent to the mediation."   Confidential Mediation Statement* ¶ 10, Doc. 120-1 (at p. 4 of 4) (emphasis added).   Finally, Federal Rule of Evidence 408(a) provides that statements made in settlement negotiations are not admissible to prove the validity of a claim.

Because of Plaintiffs' violation of confidentiality, the offending portions of their motion, declaration, and attached documents should be disregarded.   These materials should play no role in the Court's analysis of their fee request.   Out of respect for Rule 33-1 and the confidentiality of the mediation process, Defendants will not disclose or discuss here the substance of the parties' mediation or post-mediation settlement communications.

In any event, as explained in the attached declaration of UF Deputy General Counsel Ryan Fuller, the revisions to UF's Policy on Conflicts came about because of the Task Force recommendations and the need to bring the CBA into conformity with the other conflicts policies.   Further, even if it were proper to consider Plaintiffs' contention that their "efforts" resulted in the policy changes, and even if

this Court were to accept that contention, those efforts are an insufficient basis for an award of attorney's fees under Supreme Court and other precedent.

"The touchstone of the prevailing party inquiry" is some "material alteration of the legal relationship of the parties." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989). In other words, to be a prevailing party, a plaintiff must show that his success in the litigation "affect[ed] [] the behavior of the defendant." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis omitted).

Notably, the Supreme Court has explicitly rejected the theory that a party can achieve prevailing party status just because the defendant voluntarily changes its conduct during the litigation. *Buckhannon Bd. & Care Home*, 532 U.S. at 605. The plaintiffs in *Buckhannon* filed a lawsuit alleging that a state law violated the Fair Housing Amendments Act and the Americans with Disabilities Act. *Id.* at 601. Before the court could issue a judgment on the merits, the state legislature amended the law, and then the court dismissed the case as moot. *Id.* The plaintiffs moved for attorney's fees under a "catalyst theory," which said that if a plaintiff's lawsuit catalzyed a defendant's voluntary change, the plaintiff was a prevailing party. *Id.* at 601–02.

The Supreme Court rejected the catalyst theory, in part because it would require a "second major litigation" over the defendant's motive for the change. *Id.* at 609. Rather than engage in such an inquiry, the Supreme Court held that lower

courts should only grant prevailing party status when there is a "judicially sanctioned change" that affects the defendant's behavior.  *Id.* at 605–06 ("Never have we awarded attorney's fees for a nonjudicial 'alteration of actual circumstances.'") (citation omitted).  Thus, what *Buckhanon* teaches is that a plaintiff is the prevailing party after a defendant's voluntary change only when a court order caused that change.

Here, UF approved the Professors' requests before the lawsuit started and then voluntarily changed the conflicts policy soon after this litigation started.  So UF's voluntary changes occurred well before any court order in this case.  Put differently, there was no "judicially sanctioned change" that affected UF's conduct.

Plaintiffs' argument—that their lawsuit and settlement negotiations resulted in the policy change—is just a repackaged catalyst theory.  And *Buckhannon* forecloses such a theory.  *See also Doe*, 684 F.2d at 1380 (explaining that a party is not entitled to attorney's fees when the lawsuit "merely demands a state officer to do what he would have done in any case")*; Tennessee State Conf. of NAACP v. Hargett*, 53 F.4th 406, 413 (6th Cir. 2022) (Nalbandian, J., dissenting) (stating that awarding attorney's fees following a defendant's voluntary change "promotes the very thing *Buckhannon* cast aside"), *pet. for cert. docketed*, No. 22-773 (U.S. Feb. 16, 2023); *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716–17 (9th Cir. 2013) (explaining that a preliminary injunction is sufficient to confer prevailing

party status only when the injunction "force[s] the defendant to do something he otherwise would not have to do"); *Amawi v. Paxton*, 48 F.4th 412, 419 (5th Cir. 2022) ("The introduction of the ameliorative statute here, however, predated the district court's action, and given the bill's speedy passage through both houses and overwhelming legislative support, there is no basis to infer that the Texas legislature was motivated by a desire to preclude attorneys' fees.").

**III.   Plaintiffs are not prevailing parties because they received no enduring relief from this Court.**

Regardless of the cause of UF's changes, Plaintiffs received no practical or enduring relief from this Court's injunction and thus they are not entitled to attorneys' fees.

The Supreme Court has stated that a party who prevails on a motion for a preliminary injunction but then later is denied a permanent injunction is not a prevailing party entitled to attorney's fees. *Sole*, 551 U.S. at 83 ("Prevailing party status, we hold, does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case."). That is because winning a preliminary injunction is "a transient victory." *Id.* at 78. While the Supreme Court reserved the question in this case—whether the absence of a final judgment on a permanent injunction following a preliminary injunction

precludes an award of attorney's fees—for another day, *see id*. at 86, the principle

that only enduring court-ordered relief merits attorneys' fees applies here.[3]

First, in this case, the vacatur of the preliminary injunction was an undoing of

the victory Plaintiffs won before this Court.  Plaintiffs therefore obtained only "a

transient victory."  *Id*. at 78; *see also Doe*, 684 F.2d at 1381 (holding that plaintiffs

were not prevailing parties because "[t]heir successes were merely temporary, and

any benefit flowing from their successes in the district court was awarded under a

mistake of law.").

Second, preliminary injunctions can only provide enduring relief when the

plaintiff received not just injunctive relief, but also practical relief.  For example, the

Eleventh Circuit found that, even though their case became moot on appeal, a

fraternity was the prevailing party because they received their requested relief when

the university recognized the group as a student organization following the issuance

of an injunction.  *Beta Upsilon Chi v. Machen*, No. 1:07cv135-MW/GRJ, 2014 WL

4928902, at *1 (N.D. Fla. Oct. 1, 2014), *aff'd*, 601 F. App'x 917 (11th Cir. 2015).

---

[3] Circuits have split on the answer to this open question, and the State of Tennessee recently filed a petition for writ of certiorari asking the Supreme Court to resolve the dispute and hold that a preliminary injunction, without a subsequent ruling on the merits, is always insufficient to confer "prevailing party" status.  Pet. for Cert., *Hargett v. Tennessee State Conf. of NAACP*, No. 22-773 (U.S. docketed Feb. 16, 2023). The Supreme Court called for a response, which is due April 26, 2023. Docket Order, *Hargett*, No. 22-773 (U.S. Feb. 23, 2023).

Similarly, the First Circuit found that a plaintiff who won a preliminary injunction but never received a final decision on the merits due to mootness was entitled to attorney's fees because the plaintiff "obtained the desired practical outcome of their suit through the operation of that injunction," which was the distribution of bilingual ballots in the upcoming election. *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 454 (1st Cir. 2009). And the Sixth Circuit found that a plaintiff who won preliminary relief but whose case was mooted on appeal was the prevailing party because the preliminary injunction resulted in the practical outcome of the reinstatement of plaintiffs' "driver's licenses that had unconstitutionally been revoked." *Thomas v. Haslam*, No. 20-6188, 2021 WL 3754240, at *2 (6th Cir. Aug. 25, 2021); *see also Tennessee State Conf. of NAACP*, 53 F.4th at 413 (Nalbandian, J., dissenting) (explaining that a preliminary injunction could provide practical relief only when the relief sought is "for a single event").[4]

Here, Plaintiffs received no practical relief from this Court's preliminary injunction. UF granted their requests to work as experts before this case even started, and then UF amended its policy weeks after Plaintiffs filed their complaint. This Court's injunction had no practical effect on Plaintiffs' pending or impending requests to work as expert witnesses because no such requests existed. Plaintiffs

---

[4] It is also worth noting, as mentioned above, that the *Beta Upsilon Chi, Diffenderfer,* and *Thomas* cases became moot on appeal whereas the case here became moot before the issuance of the preliminary injunction.

therefore obtained no real relief and certainly no enduring relief sufficient for prevailing party status.

## CONCLUSION

Prior to this lawsuit, UF's President approved Plaintiffs' outside activity requests and formed a Task Force to recommend changes to UF's conflicts policy. Only a few weeks after the filing of Plaintiffs' complaint, the Task Force made its recommendations and the President accepted them, thereby changing the policy. The timing of those changes has several consequences—all of which preclude Plaintiffs from obtaining attorney's fees. Because of the timing of UF's changes, Plaintiffs have no standing, and their claims are unripe and moot. And also because of the timing of UF's changes (long before the preliminary injunction), the injunction provided Plaintiffs with no practical or enduring relief. Plaintiffs are therefore not prevailing parties, and the Court should deny Plaintiffs' motion for attorneys' fees.

Respectfully submitted,

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci
  D.C. Bar No. 453423
Brian J. Field*
  D.C. Bar No. 985577
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com
bfield@schaerr-jaffe.com

*Admitted *pro hac vice*

Amy Meyers Hass
  *Vice President and General Counsel*
  Florida Bar No. 483346
Ryan Fuller
  *Associate Vice President and*
  *Deputy General Counsel*
  Florida Bar No. 635324
UNIVERSITY OF FLORIDA
OFFICE OF GENERAL COUNSEL
123 Tigert Hall, P.O. Box 113125
Gainesville, FL 32611
(352) 392-1358
amhass@ufl.edu
ryanf@ufl.edu

Dated: April 20, 2023                    *Counsel for Defendants*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

I hereby certify that the foregoing Defendants' Opposition to Plaintiffs' Motion for Attorney's Fees and Costs contains 5,364 words.

*<u>s/ H. Christopher Bartolomucci</u>*
H. Christopher Bartolomucci

Dated: April 20, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of April, 2023, the foregoing document was filed electronically through the CM/ECF system and furnished by email to all counsel of record.

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci
