# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

SHARON WRIGHT AUSTIN, *et al.*,

*Plaintiffs*,

v.

UNIVERSITY OF FLORIDA
BOARD OF TRUSTEES, *et al.*,

*Defendants*.

Case No.: 1:21-cv-00184-MW-GRJ

<u>**DECLARATION OF RYAN FULLER**</u>

I am Ryan Fuller, Associate Vice President and Deputy General Counsel, University of Florida ("UF").

1.     This declaration discusses UF's conflicts policy.

2.     UF's conflicts policy derives from and is set forth in several documents. Florida law requires state universities to have policies that, "[a]t a minimum, … shall require employees engaged in the design, conduct, or reporting of research to disclose and receive a determination that [an] outside activity or financial interest does not affect the integrity of the state university …." Fla. Stat. § 1012.977(1).

3.     In July 2021, the Board of Trustees and the United Faculty of Florida ("UFF"), a faculty labor union, entered into a new collective bargaining agreement ("CBA"). *See* Collective Bargaining Agreement Between the University of Florida

Board of Trustees and the United Faculty of Florida, 2021-2024 (July 30, 2021), available at https://hr.ufl.edu/wp-content/uploads/2021/08/2021-2024-UFF-UF-Collective-Bargaining-Agreement.pdf.  Article 26 of the CBA addresses "Outside Activity and Conflict of Interest."  It provides that "Faculty members may engage in approved Outside Activity, including employment, and hold Financial Interests as long as the activities and interests are in accordance with the law and do not conflict with their University duties and responsibilities."  Art. 26.1(a).

4.      The Board of Trustees has promulgated Regulation 1.011, captioned "Disclosure and Regulation of Outside Activities and Financial Interests."  A prior version of Regulation 1.011 had stated: "Faculty and staff members may participate in outside activities and hold financial interests as long as the activities and interests do not violate any state or federal law or regulations, including but not limited to this regulation, and such activities and interests do not conflict with their duties and responsibilities to the University."  Regulation 1.011(1)(a) (effective Aug. 24, 2012) (attached as Exhibit 1).  The current version of the Regulation omits that language and instead states that "all Faculty and Staff shall adhere to the University of Florida Policy on Conflicts of Commitment and Interest (the 'Policy on Conflicts') and the Code of Ethics for Public Officers and Employees."  Regulation 1.011(2), available at:

https://regulations.ufl.edu/wp-content/uploads/2021/11/1011Disclosureand

2

RegulationofOutsideActivitiesandFinancialInterests.pdf.

5.      UF's policy "Conflicts of Commitment and Conflicts of Interest" (hereinafter, "Policy on Conflicts") was issued by the Conflicts of Interest Office, which is headed by the Assistant Vice President for Conflicts of Interest.

6.      UF revised its Policy on Conflicts in November 2021 in the wake of the controversy over UF's initial disapproval of requests made by Professors Austin, McDonald, and Smith to participate as expert witnesses in litigation challenging Senate Bill 90, Florida's new election law.

7.      On November 5, 2021, President Fuchs directed the Conflicts of Interest Office to approve the Professors' outside activity requests.  He also announced the formation of a Task Force to review UF's conflicts policy.  Later that month, the Task Force delivered its recommendations.  *See* Task Force on Outside Activities: Final Report (Nov. 22, 2021) ("Final Report"), available at https://tinyurl.com/yu3ht75b.  The Task Force recommended, among other things, that UF revise its conflicts policy to establish a strong presumption that UF will approve faculty or staff requests to testify as expert witnesses, in their capacities as private citizens, in all litigation in which the State of Florida is a party, regardless of the viewpoint of the faculty or staff member's testimony.  On November 23, President Fuchs approved the recommendations of the Task Force.  UF thereafter added the following footnote to its Policy on Conflicts: "This Policy is subject to the

recommendations of the UF Task Force on Outside Activities that were approved by President Fuchs on November 23, 2021." Doc. 44-1 at 6.

8.    The changes UF made to the Policy on Conflicts as a result of the adoption of the Task Force recommendations are reflected in the Policy published on UF's Policy Hub on October 13, 2022, which is attached hereto as Exhibit 2, and is available at https://hub.policy.ufl.edu/s/article/Conflicts-of-Commitment-and-Conflicts-of-Interest.

9.    Two events drove changes to the Policy on Conflicts.  First, in July 2021, the Board of Trustees and the UFF agreed to a new CBA, which included Article 26 on "Outside Activity and Conflict of Interest."  There were differences, however, between Article 26 and UF's Policy on Conflicts.  For example, the two documents defined the term "Conflict of Interest" in different ways.  UF worked on revisions to the Policy, in part, to bring the CBA and Policy on Conflicts more closely into alignment.  The Policy on Conflicts now defines "Conflict of Interest" in the way that Article 26 of the CBA did and does.  Section 3(B) of the Policy on Conflicts, like Article 26.2(g) of the CBA, now defines a "Conflict of Interest" as "a Private Interest, or relationship to a relative, that would reasonably appear to (a) adversely influence an Employee's actions, judgment or decisions, required to carry out Inside Activities or (b) create an unlawful conflict with the Employee's position as a public employee, as decreed by state or federal law, which includes a situation

4

in which regard for a Private Interest leads to disregard of a public duty or interest."

10.     Second, UF implemented the recommendations of the Task Force formed by President Fuchs in November 2021.  For example, the Task Force recommended the adoption of "an appeal process for all denials of requests to engage in outside activity."  Final Report at 4.  The Task Force suggested that "Within 30 calendar days of a denial of any request to engage in an outside activity, the requester may appeal in writing to an appeals panel."  *Id*.  Based on the adopted Task Force recommendations, Section 8 of the Policy on Conflicts now includes an appeal process along the lines recommended by the Task Force.

11.     In March 2022, UF's Assistant Vice President for Conflicts of Interest accepted a position in the private sector.  After conducting a search, UF hired Ms. Carolyne St. Louis as its new Assistant Vice President for Conflicts of Interest.  After assuming that role and studying the Policy on Conflicts, she and the Conflicts of Interest Office worked with other UF officers and offices to get up to speed on Article 26 of the CBA and the Task Force recommendations and the resulting Policy revisions.

12.     Revisions to the Policy on Conflicts were the result of an organic process to implement the Task Force's recommendations and more closely align the CBA and the Policy.  They were not, as Plaintiffs assert, "begrudgingly" adopted. Doc. 105 at 7.  Nor were they adopted in reaction to this litigation or in an effort to

moot this litigation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on January 23, 2023.

Ryan Fuller

# EXHIBIT 1

REGULATIONS OF THE

UNIVERSITY OF FLORIDA

1.011  Disclosure and Regulation of  Outside Activities and Financial Interests.

(1)     General Requirements.

(a)     All employees of the University of Florida must be committed to the University's goals of teaching, research, and service and recognize that their primary professional responsibility is to the University.  Faculty and staff members may participate in outside activities and hold financial interests as long as the activities and interests do not violate any state or federal law or regulations, including but not limited to this regulation, and such activities and interests do not conflict with their duties and responsibilities to the University.  All University employees, which includes Academic Personnel (AP), Technical, Executive, Administrative, and Managerial Support (TEAMS) employees, University Support Personnel System (USPS) employees, and Other Personnel Services (OPS) employees, are responsible for the full and faithful performance of their professional or institutional responsibilities and obligations.

(b)     All University employees are bound to observe, in all official acts, the highest standards of ethics consistent with the code of ethics of the State of Florida (Chapter ll2, Part III, Fla. Stat.), the advisory opinions rendered with respect thereto, other federal and state law, and the Regulations of the University of Florida, including but not limited to this Regulation 1.011.

(c)     No employee shall solicit or accept anything of value that is based upon an understanding that the official action or judgment of the employee would be influenced thereby.

(d)     No employee shall have an employment or contractual relationship or engage in a business or personal activity that will create a continuing or frequently recurring conflict between that employee's private interest and the performance of the employee's official duties.

(e)     An employee engaging in an outside activity must take reasonable precautions to ensure that the outside employer or other recipient of services understands that the employee is

engaging in such outside activity as a private citizen and not as an employee, agent, or spokesperson of the University.

(2)   Definitions.

(a)   "Outside activity" shall mean any private practice, private consulting, employment, teaching, research, business (including managerial interests or positions), or other activity, compensated or uncompensated, which is not part of the employee's assigned duties and for which the University provides no compensation.

(b)   "Conflict of interest," shall mean:

l.   any conflict between the private interests of the employee and the public interests of the University of Florida or the State of Florida, including conflicts of interest specified under Florida Statutes; or

2.   any outside activity or financial interest which interferes with the full and faithful performance of the employee's professional or institutional responsibilities or obligations, including but not limited to conflicts of commitment.

(c)   "Entity" or "entities" shall mean any for-profit or not-for-profit entity, any public agency, any individual, or any client.

(3)   Activities and Financial Interests To Be Reported.

(a)   The following outside activities and financial interests must be reported prior to engaging in the activity or acquiring the financial interest:

l.   Outside activities in which there is more than an incidental use of University facilities, equipment, and/or services.

2.   Outside activities in which a University student or other University employee is directly or indirectly supervised by the employee if the employee in any way supervises, evaluates or serves in a formal advisory role for the student or other employee at the University.

3.   Management, employment, consulting, and other contractual activities with, or ownership interest in, any entity (other than the University) that may enter into a business or other contractual transaction with the University.  In the case of material financial and managerial

2

interests, the information required extends to the spouse and/or children of the employee, and for managerial interests, to relatives.  These disclosures must include a statement of whether any contractual, service or other business relationship exists or is contemplated with the University to the employee's knowledge.

     a.     Material financial interest is defined as direct or indirect ownership of more than five (5) percent of the total assets, capital stock, ownership, or voting interest of an entity.

     b.     Managerial interest includes serving as an officer, director, partner, proprietor, etc. of an entity.

     c.     If the entity with which the employee has an employment, contractual or other business relationship or in which the employee, the employee's spouse, domestic partner and/or children have an ownership interest wishes to enter into a licensing or research agreement with the University or with the University of Florida Research Foundation, Inc., an exemption allowing such an agreement may be approved by the President or the President's designee and the Chair of the Board of Trustees.  Application for this exemption is made through the Office of Research.

     d.     If the employee has an employment, business or contractual relationship, a material financial interest or a managerial interest, concerning an entity that may enter into any business transaction with the University, the employee must disclose the interest to Purchasing Services, and the interest must be allowed and approved by Purchasing Services, in consultation with the Office of the Vice President and General Counsel, prior to any business transaction between the entity and the University.

4.     Management, employment, consulting, and other contractual activities with, or ownership interest in, an entity which competes with the University.

5.     Candidacy for or holding a public office.

6.     Required use of books, supplies, or other resources at the University of Florida when they are created or published by the employee, or the employee's spouse or domestic partner or minor child(ren), or by an entity in which the employee, or the employee's spouse or domestic

partner or minor child(ren) has any financial or managerial interest, if more than $500 is received or expected to be received annually by any or all of them individually or in the aggregate, directly or indirectly, or through the entity in which they have a financial or managerial interest, from the sale, assignment, license or use of such books, supplies or other resources by the employee, spouse, domestic partner, minor child(ren), and/or the entity in which there is a financial or managerial interest.

7.      Professional compensated activities, including but not limited to honoraria, consulting, teaching at another institution, and employment as an expert witness.

8.      Service on the board of directors or board of trustees or as an officer, or other management interests or position, with an entity.

9.      Any outside compensated employment.

10.     Any employment, contractual relationship, or financial interests, including intellectual property rights, of the employee which may create a continuing or recurring conflict between the employee's interests and the performance of the employee's University responsibilities and obligations, including time commitments.  This includes any outside activity in which the employee is required to waive rights to intellectual property.

(b)      Any employee submitting a federal, state or other government grant or contract proposal or conducting research or educational activities pursuant to a federal, state or other governmental grant or contract must adhere to the applicable requirements of the funding agency, including those involving the disclosure and regulation of outside activities and financial interests.  In addition to the disclosure requirements set forth in section (4) of this regulation, all required disclosures for federal, state or other governmental contracts and grants must be made to the Division of Sponsored Research in accordance with applicable federal, state or other governmental requirements.

(c)      Outside activities which the employee should conclude may create an actual or apparent conflict of interest, including conflict of time commitments, which are otherwise not

required to be reported under paragraphs (3)(a) or 3(b) above must be reported as soon as practicable.

(d)     The selection and use of instructional materials in which the employee, the employee's spouse or domestic partner or minor child(ren) has a financial interest are subject to the following guidelines.

1.     Employees who are instructors are responsible for the assignment of instructional materials, such as textbooks and other academic materials, for use by their students.  The selection of these materials must be made for academic reasons and may not be based on financial gains for the individual employee, the employee's spouse or domestic partner or minor child(ren) or the University.

2.     An employee, the employee's spouse or domestic partner or minor child(ren), and an entity in which the employee or the employee's spouse or domestic partner or minor child(ren) has a financial interest may not receive a financial benefit from materials reflecting general course information or assignments or evaluation materials used in University of Florida courses or other University instructional activities.  Examples of such materials are exams, quizzes, syllabi and extra credit assignments.

3.     If an employee, the employee's spouse or domestic partner or minor child(ren) may financially benefit from the sale or use of required books, supplies, or other resources, these materials may be required only under the following conditions:

a.     The department chair and dean or director have approved such an arrangement on the University's Disclosure of Outside Activities and Financial Interests ), submitted by the employee, and

b.     The materials have been selected for academic reasons independent of any financial gain for the persons and entities described, are offered at a fair market price, have been adopted for use at other higher education institutions, been through a peer review process, are the original works or creations of the employee and not a collection of the works of others, are protected by copyright, patent, or trademark, and are published or produced by an incorporated or registered

5

publisher, company, or entity.  Their use may not require the user to waive any intellectual property rights.

(e)   The reporting requirements of this regulation shall apply to full-time and part-time employees.  Unless otherwise required under federal, state or other governmental grant regulations, the reporting requirements shall not apply to activities performed wholly during an interval of the year in which the employee is assigned no professional or institutional responsibilities and obligations by the University.

(4)   Disclosure and Approval Procedures for all University employees.

(a)   The University's form entitled, "Disclosure of Outside Activities and Financial Interests " shall be filed with the President or designee, who shall normally be a dean, director, or vice president.  The form  may be obtained online at http://www.aa.ufl.edu/online-forms. Disclosures must be completed and filed at the beginning of employment, renewed at the beginning of each 12-month or 9-month appointment period, prior to such time as the outside activity or financial interest begins, or at such time as disclosure is required under applicable federal, state or other governmental grant requirements.   If a material change in the information presented occurs at any time, a new disclosure is required.  The following information is required as to each outside activity or financial interest reported:

1.   Name of employing entity, client or other recipient of services, or name of entity in which the financial interest is held, and nature of its business.  In the case of service as an expert witness or representation of a party in a lawsuit, the party represented by or employing the expert must be identified along with all other parties involved in the matter.

2.   Source of compensation, including client fees.

3.   Involvement of students and other employees in the activity, employing entity, or entity in which the financial interest is held.

4.   Nature or type of activity or financial interest (description of equity interest or intellectual property), including time spent if an activity is involved (estimated hours per week including travel).

6

5.      Location and anticipated dates of activity.

6.      Any conditions of the activity which involve waiving or impairing the employee's or University's right to intellectual property.

7.      Use of University equipment, facilities, or services in connection with the activity.

8.      Number of outside activities and financial interests filed for the current contractual year.

9.      Prior reporting of the activity or financial interest in the previous contractual year, if applicable.

10.    Any other documentation necessary to determine the nature and extent of any actual or potential conflict of interest.

(b)      If there are any questions regarding a potential conflict of interest, the employee should discuss the activity or financial interest with his or her chairperson or immediate supervisor, or designee of the Dean of the college or Director of the unit.

(c)      If the Dean or Director or designee finds that the proposed outside activity or financial interest is a prohibited conflict of interest or a conflict of interest that may be permitted only with conditions, the employee shall be notified promptly of the decision that he or she may not engage in the proposed activity while employed at the University or of the conditions under which the outside activity or financial interest may be permitted.

(e)      Authorization for an outside activity or financial interests is granted for a specific period of time, not to exceed one (1) year ending June 30th.  If the outside activity is to extend beyond June 30th, a new Disclosure of Outside Activities and Financial Interests must be submitted prior to July l of each year for the new fiscal-year period.  If the outside activity or financial interest is permitted with conditions, the employee is required to adhere to the conditions during the period that the activity or financial interest is authorized.

(f)      Academic Personnel are required to indicate annually as part of the effort reporting process whether they are involved in outside activities or have financial interests required to be reported under this regulation.  USPS and TEAMS employees are required to indicate on their

7

annual Performance Evaluation form whether they are involved in outside activities or have a financial interest required to be reported under this regulation.  OPS employees shall follow the reporting procedure as outlined in this regulation.  If the answer is affirmative, the employee must submit the Disclosure of Outside Activities and Financial Interests as required in this regulation.

(5)     Disclosure and Approval Procedures for Additional University Compensation.  Any employee who wishes to engage in additional employment in excess of one (1) full-time equivalent position at the University or who receives compensation as a University employee simultaneously from salaries appropriations and any appropriation other than appropriations for salaries must submit a Request for Approval of Additional University Compensation, which may be obtained online at http://www.aa.ufl.edu/online-forms, to the appropriate administrative officials and obtain approval prior to engaging in such activity.  A copy of this form may be obtained in the college or unit administrative offices.  No "Disclosure of Outside Activities and Financial Interests" need be filed for the activity as the secondary employment is within the University of Florida and the completion of the "Request for Approval of Additional University Employment" form fulfills the employee's obligation to report.  An exception to this procedure is employment by the University Press of Florida (UPF).  Approval of UPF employment is granted by the President or designee, and such approval, which is submitted by the UPF to the Office of the Provost, fulfills the employee's obligation to report the activity.

(6)     Procedure for Requesting Use of University Resources.  If an employee has the University's approval to engage in outside activity, the employee may request approval for the use of University equipment, facilities, or services in connection with the outside activity.  The University must approve the use in advance.  The employee must request such approval by completing and submitting the University's form entitled Request to Use University Equipment, Facilities, and Services in Conjunction with Non-University Outside Activity, which may be obtained online at http://www.aa.ufl.edu/online-forms.  The form should be attached to the

Disclosure of Outside Activities and Financial Interests .  The use of any of these resources will be allowed only on a non-interference basis, and there may be a charge for such use.

The changes to this regulation shall be effective August 24, 2012.


Authority:  BOG Regulation 1.001.

Law Implemented:  112.313, 112.3185, FS.

History--New 5-28-80, Formerly 6C1-7.391, Amended 3-6-85, Formerly 6C1-1.11, Amended 3-2-87, 5-21-89, 7-11-94, 4-30-95, 12-12-95, 6-28-98, 6-21-00, 5-22-01, 1-7-03, 7-5-04, Formerly 6C1-1.011, Amended  3-17-11, 6-8-12.

# EXHIBIT 2



ACADEMIC AFFAIRS

# Conflicts of Commitment and Conflicts of Interest

| | |
|---|---|
| Published: | Oct 13, 2022 |
| Responsible Unit: | Provost and Senior Vice President of Academic Affairs |

## 1.  Policy Statement and Purpose

The University of Florida encourages its Employees to engage in activities supporting their professional growth, creating new knowledge and ideas, and furthering the University's mission of excellence in education, research, and service. University Employees' primary professional obligation, however, is to act in the best interest of the University and to maintain the highest ethical and professional standards. A University Employee's Outside Activities or interests must not conflict, or appear to conflict, with their professional obligations to the University. Accordingly, this Policy establishes standards and requirements to protect the University's financial wellbeing, reputation, and legal obligations and provides a system for identifying, reporting, and managing real or apparent conflicts.

## 2.  Applicability

All University Employees as defined below. To the extent this Policy conflicts with other University policies or procedures, this Policy shall control.

## 3.  Definitions

A.  *Conflict of Commitment*: Outside Activities whose time of occurrence or duration would hinder the Employee from carrying out Inside Activities.

B.  *Conflict of Interest*: a Private Interest, or relationship to a relative, that would reasonably appear to (a) adversely influence an Employee's actions, judgment or decisions, required to carry out Inside Activities or (b) create an unlawful conflict with the Employee's position as a public employee, as decreed by state or federal law, which includes a situation in which regard for a Private Interest leads to disregard of a public duty or interest.

C.  *Days*: for purposes of this Policy, days shall be calendar days unless otherwise specified.

D.  *Employee*: University Faculty or Staff as defined herein.

E.   *Entity*: any business, company, or other organization, whether public or private, including without limitation any partnership, corporation, limited liability corporation, unincorporated association, or other institution or organization, whether for-profit or not-for-profit.

F.   *Faculty*: all positions identified as Academic Personnel in the University of Florida Regulation 7.003 Academic Personnel Employment Plan.

G.   *Financial Interest*: any Private monetary or equity Interest which would create a Conflict of Interest.

H.   *Inside Activity*: any activity an Employee does as part of their assigned responsibilities, including any University activities that form the basis for supervisory assessment of their University job performance.

I.   *Institutional Expertise*: an Employee's expertise in their University discipline or area of responsibility.

J.   *Investigator*: the principal Investigator, co-principal Investigator, or any other Employee responsible for the design, conduct, or reporting of proposed or funded research or educational activities.

K.   *Non-reportable Outside Activities*: include, but are not limited to:
   (1)   Any activity that is described as not reportable in UFOLIO or in other guidance communicated from the Office of the Provost; or
   (2)   Reporting for required jury duty; or
   (3)   Serving in the United States Armed Forces or other branches of the military; or
   (4)   Participating in scientific or educational conferences, invited colloquia or other events while representing the University, subsumed under Inside Activities; or
   (5)   Performing unpaid peer review, conference committee or journal editorial duties while representing the University, subsumed under Inside Activities;
   (6)   Research activities approved and coordinated through the University including research by Investigators conducted at Entities as part of a University sponsored project or research funding received by the University, subsumed under Inside Activities; or
   (7)   Reviewing proposals for a United States federal or state government sponsor or a domestic non-profit organization, subsumed under Inside Activities; or
   (8)   Writing or editing activities that are subsumed under Inside Activities; or
   (9)   Membership in an academic or professional society (however, serving on the Board or carrying a fiduciary role requires disclosure); or
   (10)   Signing an amicus brief when a UF entity is not a party.  When signing an amicus brief, an Employee is permitted to state his or her position with the University but must make clear that he or she is signing the amicus brief solely in his or her personal capacity.
   (11)   Receiving honors, academic awards, or an honorary degree from a non-profit institution that are not cash value prizes as set forth in Section 6(H) of this policy, subsumed under Inside Activities; or
   (12)   Taking Sabbatical or Professional Development Leave, subsumed under Inside Activities; or
   (13)   Serving as a program manager for a United States federal agency or working on an assignment through the Intergovernmental Personnel Act or a related federal program, subsumed under Inside Activities; or
   (14)   Participating in the Fulbright (Scholar) Fellowship program, subsumed under Inside Activities; or
   (15)   Serving as an external member of a thesis, dissertation, or promotion committee, subsumed under Inside Activities.

L.  *Other Disclosable Activities*: Non-reportable Outside Activities that taken alone or together could represent a Conflict of Commitment.

M.  *Outside Activity*: any activity undertaken by the Employee that is not an Inside Activity.

N.  *Private Interest*: a concrete Financial Interest, or other material or tangible interest, including compensated or uncompensated relationships, held by or inuring to an Employee or Reporting Household member, and arising from the Employee's Outside Activity.

O.  *Reportable Outside Activity*: any Financial Interest or Outside Activity that is required to be disclosed to the University as provided in Items 1 to 12 below.

(1)  <u>Management or Material Interest</u>: An Employee must report a management position (e.g., officer, director, partner, proprietor) held or material interest (more than a 5% ownership interest) owned by themselves, anyone in the Reporting Household, and any Relative (as defined in Florida Statute 112.312) whose position or interest is known to the employee, in an Entity that enters into any agreements or contracts with University (e.g., service agreements, leases, sales agreements).

(2)  <u>Publicly Traded Entity Payments/Ownership</u>: An Employee must report receipt of payments from or an ownership interest of $5,000 or more (including shares, partnership stake, or derivative interests such as stock options) in a publicly traded Entity by the employee or anyone in the Reporting Household where the payments or ownership interest reasonably appear to be related to the Employee's Inside Activities or Institutional Expertise. This does not include an ownership interest managed by a third party, such as a mutual or retirement fund.

(3)  <u>Privately Held Entity Ownership</u>: An Employee must report any remuneration of $5,000 or more or ownership in a privately held Entity by the Employee or a member of the Reporting Household, where the remuneration/ownership interest reasonably appears to be related to the Employee's Inside Activities or Institutional Expertise.

(4)  <u>Public Office/Candidate</u>: An Employee must report if the Employee is a candidate for public office or holds public office.

(5)  <u>Outside Teaching Appointments</u>: An Employee must report if the Employee has or is seeking approval to hold an additional (to their UF appointment) teaching appointment with an outside Entity, in the area of their Institutional Expertise that represents a Private Interest.

(6)  <u>Outside Research</u>: An Employee must report if the Employee oversees or conducts or is seeking approval to conduct any research in the general area of their Institutional Expertise at, or receive any research resources or funding from or through, any Entity other than the University. Research by Investigators conducted at Entities as part of a University sponsored project or research funding received by the University is subsumed under Inside Activity and hence does not need to be disclosed in UFOLIO.

(7)  <u>Classroom Works</u>: An Employee must report if the Employee requires or seeks approval to require students to purchase works to be used in the Employee's classroom when such works were created, authored or co-authored (e.g., textbook(s), computer software, electronic or digital media) by the Employee or Employee's

spouse and for which the Employee or their spouse will receive, or anticipate receiving payment, loan, subscription, advance, deposit of money or service or anything of monetary value.

(8)   Royalties/Copyright/Licensing Income: An Employee must report if the Employee receives royalties, licensing fees, and/or copyright income in the area of their Institutional Expertise of $5,000 or more, annually from an Entity other than the University.

(9)   Expert Witness/Legal Consulting: An Employee must report if the employee serves or seeks approval to serve as an expert witness and/or engage in legal consulting, including drafting an amicus brief, in the area of their Institutional Expertise or Inside Activities in a legal matter like a lawsuit or a potential lawsuit. Activities in this category are only reviewed for Conflicts of Commitment and to confirm Employees are acting in their personal capacity unless a University entity, including a direct support organization or affiliate, is a party to the proceeding or the Board of Governors Self-Insurance Plan is providing for the defense of an insured party in a medical liability proceeding.  Employees may identify their affiliation with the University so long as such identification does not indicate the Employees are speaking or acting on behalf of the University.

(10)   Professional Services Related to Institutional Expertise: An Employee must report if an Employee provides or seeks approval to provide professional services to an outside Entity in the area of the Employee's Inside Activities or Institutional Expertise that represent a Private Interest.

(11)   Leadership Roles: An Employee must report if the Employee has a senior management, administrative, or leadership role, that represents a Private Interest, with an outside Entity related to the Employee's Inside Activities or Institutional Expertise where the Employee makes executive business and/or financial decisions on behalf of the outside Entity.

(12)   Innovation Inducement Cash Value Prize: An Employee must report if they choose to participate, as an Outside Activity, in a competition, with a prize amount greater than $5,000, in the area of their Institutional Expertise.

P.   *Reporting Household*: a spouse, domestic partner, dependent child or stepchild or any Relative (as defined in Section 112.312 of the Florida Statutes) who shares a household with the Employee.

Q.   *Staff*: any regular, non-exempt or exempt Employee in research, academic, or administrative positions, including Technical, Executive, Administrative and Managerial Support (TEAMS) staff; University Support Personnel System (USPS) staff; Law Enforcement Officer (LEO) and Other Personnel Services (OPS) staff as  defined in University of Florida Regulation 1.100.

# 4.   Academic Freedom

As set forth in UF Regulation 7.018, academic freedom and responsibility are essential to the full development of a true university and apply to teaching, research, and creativity. In the development of knowledge, research endeavors, and creative activities, the faculty must be free to cultivate a spirit of inquiry and scholarly criticism and to examine ideas in an atmosphere of freedom and confidence. Faculty are free to engage in scholarly and creative activity and publish the results in a manner consistent with professional obligations. A similar atmosphere is required for university teaching. Consistent with the exercise of academic responsibility, a teacher has the freedom in the classroom to discuss academic subjects, select instructional materials and determine grades. The university student

must likewise have the opportunity to study a full spectrum of ideas, opinions, and beliefs, so that the student may acquire maturity for analysis and judgment. Objective and skillful exposition of such matters is the duty of every instructor.

## 5.   Employee Personal Speech

The University affirms the free speech rights of its Employees to comment on matters of public concern in accordance with the First Amendment to the U.S. Constitution and Article I, Section 4 of the Florida Constitution.  Statements made by Employees in their capacities as individual citizens and not on behalf of the University, another person or entity, including those to the media, are not reportable outside activities. This includes when Employees are speaking in their personal capacity about areas of their expertise and when they use their University credentials for identification purposes only.  However, comments on matters of public concern become reportable outside activities, subject to University review for potential Conflicts of Interest or Conflicts of Commitment, when Employees seek to speak on behalf of or represent another as part of an activity that constitutes a Reportable Outside Activity.

## 6.   Conflicts

A.   Guiding Principles

University Employees must adhere to the highest ethical and professional standards. Good judgment is essential and no set of rules can adequately address the myriad of potential conflicts. If Employees have questions concerning a potential Conflict of Commitment or Conflict of Interest, they must first discuss these concerns with their supervisor[1]. Real or apparent conflicts must be managed or disclosed as set forth in section 7 below.

B.   Conflicts of Commitment

1.   University Employees must commit their primary professional and intellectual energy towards supporting the University's mission of excellence in education, research and service. A Conflict of Commitment occurs when an Employee's professional time or energy is devoted to Outside Activities adversely affecting their capacity to satisfy their  obligations to the University of Florida.

2.   Conflicts of Commitment usually involve time allocation. For instance, when an Employee attempts to balance their University responsibilities with Outside Activities such as consulting or volunteering, they may be left with inadequate time to fulfil their University responsibilities.

3.   Employees wishing to engage in an Outside Activity that may present a Conflict of Commitment—however insignificant it may seem to the Employee—must disclose the Outside Activity to their supervisor and receive approval before engaging in the outside activity. Irrespective of disclosures, it is the responsibility of University supervisors (in the case of Faculty, their department chairs and deans) to identify and  manage any Conflicts of Commitment undertaken by their direct reports.

4.   If the University determines an Employee's Outside Activity will result in a Conflict of Commitment, the University may, in accordance with this Policy, prohibit the Employee from engaging in the Activity; require

the Employee take personal time off or a leave of absence to participate in the Activity; or implement other measures the University deems reasonably necessary. The viewpoint and content of the Employee's speech or other activity shall not be considered when assessing whether a Conflict of Commitment exists.

C.   Conflicts of Interest

Employees must avoid situations which interfere with—or reasonably appear to interfere with—their professional obligations to the University. Such situations might create an appearance of impropriety and, therefore, must be disclosed. As explained more below, Employees must disclose Reportable Outside Activities in which they wish to engage through the University's online reporting system, UFOLIO, or as otherwise directed by the University.  When the University determines an Employee's Outside Activity creates a Conflict of Interest, the University may, in accordance with this Policy, prohibit the Employee from engaging in the Activity; take actions to limit the Employee's activity; or implement other measures the University deems reasonably necessary to eliminate the potential conflict. The viewpoint and content of the Employee's speech or other activity shall not be considered when assessing whether a Conflict of Interest exists.

D.   Intellectual Property

The University's mission includes fostering invention and the development of new patentable and non-patentable ideas, technologies, methodologies, copyrights and other creations of the human mind. The University attempts to license many of these innovations to commercial Entities so the fruits of this innovation may reach the marketplace for the public good and provide resources for further innovation. The University, therefore, must be protected from both real and perceived disclosure of intellectual property with Entities in which University inventors have personal or financial interests or Entities that are adverse to the University's interest. More information, including  applicable definitions, the University's ownership rights to inventions and works can be found in the University's Intellectual Property Policy.

E.   Use of University Resources, Students and Employees

1.   Use of University facilities, equipment, or services for personal use and/or use in Outside Activities is prohibited. The University recognizes that sometimes Employees may incidentally use University facilities, equipment, or services for personal use and does not seek to discipline Employees for incidental use. Incidental use must not adversely affect the performance of Employees' University duties or the University's operations, must be extremely limited in duration and frequency, and must be restricted to matters that cannot be addressed during non-working time.

2.   An Employee engaging in any Outside Activity shall not make more than incidental use of the facilities, equipment, or services of the University in connection with such Outside Activity without prior approval of the University or designee. Approval for the use of University facilities, equipment, or services may be conditioned upon reimbursement for such use.

3.   An Employee engaging in any Outside Activity shall not involve University students or Employees in the Outside Activity unless otherwise disclosed and approved to do so. Employees are not generally permitted to engage in dual reporting relationships for Outside Activities which would involve an Employee supervising in the Outside Activity one of their UF students or UF employees they also have academic or supervisory authority over at UF.

F.   <u>No University Affiliation</u>

Employees engaging in an Outside Activity do so as private citizens and shall not represent themselves to the outside employer or other recipient of services as engaging in such Outside Activity on behalf of the University except when specifically authorized in writing by the University to do so.

G.   <u>No Signing Contracts/Agreements Before Approval</u>

Contracts/Agreements to engage in Reportable Outside Activities shall not be signed by Employees prior to formal disclosure and final approval of the relationship by the University of Florida.

H.   <u>Cash Value Prizes</u>

"Cash Value Prizes" are awards of cash exceeding $5,000 that recognize work performed in the area of an Employee's University expertise. Cash Value Prizes are distinct from grants, contracts, or gifts that are awarded in advance for proposed work. Cash Value Prizes generally fall into two main categories:  (1) Innovation Inducement Prizes, which are awarded to winners of competitions including challenge prizes by Federal or non-profit Agencies requiring the attainment, within a specific time frame, of specific material, technology translation, or commercialization goals; and (2) all other Cash Value Prizes, including recognition prizes for research, scholarly or artistic accomplishments such as the Nobel prizes, the Fields medal, Clay Millennium prize, National book award, or Pulitzer prize.

1.   Innovation Inducement Prizes

Employees wishing to compete for Innovation Inducement Prizes may do so as one of the following:

a.   An Outside Activity that does not make more than incidental use of University facilities, equipment, or services including student and staff time. Pursuit of an Innovation Inducement Prize within an Employee's area of expertise and/or using results from the Employee's previous work at the University does not itself constitute a Conflict within the meaning of this Policy. Monies awarded from the prize competition shall be the property of the Employee.

b.   An Inside Activity. With assigned effort to participate in the prize competition and approval by the chair/director, an Employee Investigator may use University facilities, equipment, or services, including graduate students research administration staff time.

(1)   If the prize is successfully obtained, the Employee Investigator shall be given the choice to treat the prize as described below.

i.   The Prize amount will be treated as net adjusted income and paid out in the same ratios as outlined under the terms of UFF CBA Article 22.7 (a) or Section C.6. of the UF Intellectual Property Policy, where applicable, but into residual funds (212). The creator(s) are the prize winners and their share will be paid as a lump sum additional pay. The "University program" shall be interpreted as the team of Employees who won the prize, and the funds for the "University program" shall be deposited into the residual accounts of these Employees.

ii.  The Award amount will be accounted for as an extramural award to the University but immediately transferred as: 65.6% to prize winners personal residual (fund 212) account. The remainder is journaled in the University's F&A holding project for return at the end of the fiscal year as all indirect costs are returned each year (10% additional to the PI/winner, 7.5% to the department, remainder to the college who will pay RCM to the University). Any allocation of prize funds to the Investigator's research residual account must be used for supporting the research mission of the University, i.e., direct research costs including but not limited to: summer salary, equipment purchases, travel, graduate student support, or other general research activities.

(2)  If the Investigator does not win the prize, the Investigator shall not be held liable for the University resources spent as part of the approved prize-participation budget.

2.  All other Cash Value Prizes

Employees wishing to pursue or accept such prizes, if not prohibited by law, do not need to report such activity as an Outside Activity. The full value of any prize obtained belongs to the Employee Investigator who received the prize.

# 7.   Disclosure Requirements

A.  <u>When to Disclose</u>

1.  Conflict of Interest:

Regardless of whether an Outside Activity occurs during a University assignment  or appointment, Employees must disclose Reportable Outside Activities through UFOLIO (or as otherwise directed by the University) and receive formal approval prior to commencing such activities or pursuing such interests, at the following times:
(1)  Upon initial hiring or engagement with the University;
(2)  Prior to acquiring, prior to engaging in, prior to committing to engage in, or implementing a material change to a Reportable Outside Activity; an Employee may resubmit a Reportable Outside Activity in UFOLIO even if it was previously denied, provided the reason for denial was based on insufficient disclosure, there is a change in the Employee's Inside Activities, or Institutional Expertise or there is a change to the proposed Reportable Outside Activity.
(3)  Prior to entering a relationship, including a familial relationship, which could reasonably be perceived as creating a Conflict of Interest; and
(4)  At least annually, when requested by the University, even if attesting to no change from previous disclosures or no disclosures.

Regarding the annual reporting obligation in section 7(A)4 above, Employees must annually disclose their Reportable Outside Activities existing at that time. The University will make efforts to provide courtesy notice to Employees at least 30 days prior to their annual disclosure date. However, the failure to provide such notice or the failure of an Employee to receive such notice does not relieve an Employee of the obligation to make a timely annual disclosure.

Employees failing to receive formal approval prior to commencing a Reportable Outside Activity as required

herein may be subject to administrative or disciplinary action as set forth in section 9 below. The absence of express disapproval of an outside activity does not constitute approval by the University.

2. Conflict of Commitment:

Employees must disclose Other Disclosable Activities to their supervisors in the manner specified by the supervisor before engaging in the activity. Irrespective of whether an Outside Activity is disclosed, however, it is the responsibility of all supervisors to identify any Conflicts of Commitment undertaken by their direct reports and manage it appropriately. If a supervisor is unsure whether a given activity poses a Conflict of Commitment or how to manage it, the supervisor should consult with the dean or vice president to whom they report.  In addition, Reportable Outside Activities may also be evaluated for Conflicts of Commitment through the formal disclosure process. Contracts/Agreements to engage in Other Disclosable Activities shall not be signed by Employees prior to formal disclosure and final approval of the relationship by the University of Florida.

B.   <u>What to Disclose</u>
1.   Employees must separately disclose each Reportable Outside Activity as defined in section 3(O) of this policy.
2.   If the expected or estimated compensation for a Reportable Outside Activity is $5,000 or more, the Employee must report the expected or estimated amount of the compensation and may be required to provide formal documentation of the number of compensated hours.
3.   Employees shall attach to the disclosure their contract or agreement associated with the Reportable Outside Activity.  If there is no formal agreement, Employees shall attach any email, correspondence, or other document that authenticates the Reportable Outside Activity and their responses to the questions in the disclosure.
4.   Employees must answer all required questions in UFOLIO or as otherwise directed by the University for any Employees not in the UFOLIO system.
5.   If the University cannot make a determination to approve a disclosure without additional information or clarification and an Employee fails to provide the information or clarification, the University may disapprove the disclosure.

C.   <u>How to Disclose</u>

1.   <u>Conflict of Interest</u>.  Employees must disclose Reportable Outside Activities in which they wish to engage through the University's online reporting system, UFOLIO, or as otherwise directed by the University. UFOLIO can be accessed here: https://ufolio.compliance.ufl.edu/.  Additional information and resources are located on the Conflicts of Interest Program website: https://coi.ufl.edu/.

2.   <u>Conflict of Commitment</u>. Disclosure of a potential Conflict of Commitment or Other Disclosable Activities shall be made to the Employee's supervisor in the manner specified by the respective Employee's department. In the absence of a specified manner for approval of a Conflict of Commitment, the Employee must at least obtain approval from the Employee's supervisor in writing and in a form that demonstrates the supervisor was informed of the full extent of the Outside Activity and commitment prior to approval. Outside Activities presenting a potential Conflict of Commitment must be disclosed and approved before the Employee undertakes the activity.

D.   <u>Failure to Disclose</u>

1.    Failure to disclose a Reportable Outside Activity by a respective deadline shall result in a written notification from the University, with copies to the Employee's supervisor, department chair and dean, directing the Employee to complete their disclosure within 10 business days.  Upon receipt of written notification, the Employee must cease the activity.  The Employee may choose to discontinue the activity with no further disclosure or may seek approval to continue the activity.

2.    Failure to disclose more than 10 business days following the receipt of a delinquency notification shall result in a written reprimand from the University, with copies to the Employee's supervisor, department chair and dean, as applicable, indicating the Employee must complete their disclosure within 10 business days.

3.    If an Employee fails to disclose more than 10 business days following receipt of a written reprimand, the University may take administrative or disciplinary action against the Employee up to and including termination of employment.

4.    Failure to make truthful and complete disclosure of all Reportable Outside Activities or Conflicts of Commitment may subject the Employee to administrative or disciplinary action as set forth in section 9 below.

5.    Employees commencing a Reportable or Other Disclosable Outside Activity before receiving formal approval as required herein may be subject to administrative or disciplinary action as set forth in section 9 below.

## 8.    Review and Adjudication

A.    For Reportable Outside Activities disclosed through UFOLIO, the Assistant Vice President for Conflicts of Interest (AVPCOI) and, depending upon the type of activity or interest, other applicable University officials, will determine the appropriate resolution including any reasonable and appropriate monitoring or management measures, or whether the disclosed activity or relationship presents an impermissible Conflict of Interest or Conflict of Commitment.  If the AVPCOI resolution involved a significant contribution by an ancillary reviewer, such contribution shall be documented within the UFOLIO system.

i.    The AVPCOI shall report the resolution, with a written explanation, of the Reportable Outside Activity to Employee not later than 30 days after Employee submitted the UFOLIO request. The written explanation shall provide a reason for the determination, with sufficient detail, and indicate whether a proposed disapproval is based on insufficient disclosure, Conflict of Interest or Conflict of Commitment. However, requests for clarifications, communications between supervisors and the Conflict of Interest Program, approvals for exemptions from applicable provisions of the Florida Code of Ethics for Public Employees, or ancillary reviews by other University offices may result in longer review times. Review status is viewable in UFOLIO at all times. If a decision has not been made within 30 days, Employees may allow the review process to continue or request via UFOLIO-help@ufl.edu and will receive a determination regarding the disclosure within 72 hours.

ii.    If the AVPCOI determines that a Reportable Outside Activity is a Conflict of Interest that can be approved with an appropriate plan for monitoring and mitigation ("Oversight Agreement"), such Monitoring Plan shall be presented to Employee. If Employee declines to comply with a proposed Monitoring Plan via UFOLIO-help@ufl.edu, the AVPCOI will notify the Provost's Advisory Committee within 3 business days of receiving

the Employee's written notice declining such plan and requesting Provost Advisory Committee review.

iii.    If the AVPCOI proposes to disapprove a Reportable Outside Activity based on a Conflict of Interest, the AVPCOI will notify the Employee at the time the AVPCOI notifies the Provost's Advisory Committee of the proposed disapproval.  The AVPCOI will notify the Provost's Advisory Committee within 3 business days after proposing the disapproval of a Reportable Outside Activity based on a Conflict of Interest.

iv.    In accordance with this Policy, the Provost's Advisory Committee shall review the proposed disapproval of a Reportable Outside Activity based on a Conflict of Interest.  The dean of each college will designate a representative to serve as a COI consultant and the Provost's Advisory Committee will seek input from the appropriate COI consultant as part of its review.  Not later than 30 days after receipt of the AVPCOI's proposed disapproval, the Provost's Advisory Committee will provide a written recommendation to the Provost to either approve or disapprove the Reportable Outside Activity.  The Provost shall decide to approve, approve conditioned on Employee's acceptance of a Oversight Agreement, or disapprove within 10 business days after receipt of the recommendation by the Provost's Advisory Committee.  Notwithstanding the deadlines set forth in Section 8.A.i-iv, in the event the AVPCOI proposes the disapproval of an Activity under Section 3.O.Item 9 on the basis of Conflict of Interest, the Provost shall make a final decision regarding such Activity no later than 30 days following the Employee's submission of a UFOLIO request to perform such Activity.

v.    If an Employee believes that the Provost's decision violates this Policy or the conflicts of interest article in an applicable collective bargaining agreement, the Employee may submit an appeal to the COI Appeal Panel here not later than 30 days after the Provost's issuance of a decision.  The COI Appeal Panel shall review Employee's appeal and make a final determination regarding any alleged violations of this Policy or applicable collective bargaining agreement article no later than 30 days after receipt of the COI Appeal Form.  The University is not required to process or adjudicate a COI Appeal Form that is not submitted in accordance with the procedures set forth in this Policy.  The COI Appeal Panel shall make a final determination regarding Activities under Section 3.O.Item 9 no later than 10 business days after the appeal is submitted by the Employee.  Two members of the COI Appeal Panel will constitute a quorum for purposes of this expedited determination.

vi.    An Employee may grieve a final decision by the COI Appeal Panel in accordance with the applicable University regulation or collective bargaining agreement.

B.    For Employees who do not have access to UFOLIO, Reportable Outside Activities will be disclosed and adjudicated as directed by the University.

C.    For Other Disclosable Activities, the Employee's direct supervisor, in consultation with the Assistant Vice President for Conflicts of Interest, will determine whether the activity constitutes a permissible Outside Activity with or without an approved conflicts management plan or is an impermissible Conflict of Commitment. In addition to an Employee's obligation to report a potential Conflict of Commitment to the Employee's supervisor, University supervisors shall be responsible for identifying any Conflict of Commitment of their direct reports and managing the conflict appropriately.

# 9.   Policy Violations

The University may take administrative or disciplinary action concerning violations of this Policy up to and including termination of employment.

_____

[1] Certain Outside Activities and Financial Interests must always be disclosed as set forth in section 7 of this Policy. When in doubt, supervisors must advise an Employee to disclose a potential conflict.

History

**Related Articles**

| | |
|---|---|
| Research Integrity | 499 |
| Endorsement of Commercial Services or Products by UF Employees | 330 |
| Classification and Management of External Support | 1.11K |
| University of Florida Investment Policy | 285 |
| Employment of Relatives | 21 |

**Trending Articles**

Alcoholic Beverage

Tabling Events

Remote Work Location

Registered Student Organization Classification and Officer Eligibility

Drug-Free Workplace

**Questions? Contact the Policy Hub**