# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

------------------------------------x

SHARON WRIGHT AUSTIN, MICHAEL
MCDONALD, DANIEL A. SMITH, JEFFREY
GOLDHAGEN, TERESA J. REID, and
KENNETH B. NUNN,

          Plaintiffs,

  v.

UNIVERSITY OF FLORIDA BOARD OF
TRUSTEES, the public body corporate acting for
and on behalf of the University of Florida; W.
KENT FUCHS, in his official capacity as
President of the University Florida; JOSEPH
GLOVER, in his official capacity as Provost of
the University of Florida; and LAURA
ROSENBURY, in her official capacity as Dean of
the Fredric G. Levin College of Law,

          Defendants.

1:21-cv-00184-MW-HTC

------------------------------------X

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

ARGUMENT ................................................................................................................2

I. This Court's Jurisdictional Holdings Were Correct and Need Not Be Reconsidered. ..............................................................................................3

II. The Record Is Clear That Defendants Belatedly Revised the Policy Because of This Court's Preliminary Injunction Ruling. ...............................3

III. Precedent Makes Clear That Plaintiffs Are Prevailing Parties as a Matter of Law. ..............................................................................................6

CONCLUSION ...........................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**

*Beta Upsilon Chi v. Machen*,
  2014 WL 4928902 (N.D. Fla. Oct. 1, 2014) ........................................................ 7

*Budinich v. Becton Dickinson & Co.*,
  486 U.S. 196 (1988) ........................................................................................... 7

*Common Cause Georgia v. Georgia*,
  17 F.4th 102 (11th Cir. 2021) .................................................................... 7, 8, 9

*Common Cause/Georgia v. Billups*,
  554 F.3d 1340 (11th Cir. 2009) ................................................................ 7, 8, 9

*Doe v. Busbee*,
  684 F.2d 1375 (11th Cir. 1982) ....................................................................... 10

*HomeAway.com, Inc. v. City of N.Y.*,
  523 F. Supp. 3d 573 (S.D.N.Y. 2021) ............................................................... 3

*Jacksonville Prop. Rts. Ass'n v. City of Jacksonville*,
  635 F.3d 1266 (11th Cir. 2012) ....................................................................... 10

*Sole v. Wyner*,
  551 U.S. 74 (2007) ............................................................................................ 8

*Thomas v. Bryant*,
  614 F.3d 1288 (11th Cir. 2010) ....................................................................... 10

Plaintiffs Sharon Wright Austin et al. respectfully submit this reply in support of their Motion for Attorneys' Fees and Costs, ECF No. 119.

## INTRODUCTION

Because Defendants removed unconstitutional restrictions on faculty speech only after this Court entered a preliminary injunction, they are unable to refute Eleventh Circuit precedent establishing that Plaintiffs are prevailing parties in this case. Instead, Defendants try to revisit this Court's prior rulings and rewrite history. Those meritless arguments should be rejected.

*First*, Defendants brazenly attempt to convert their opposition brief into a belated and improper motion to reconsider this Court's two prior jurisdictional rulings. Those decisions were correct, and there is no basis to revisit them here.

*Second*, Defendants suggest that, contrary to the litigation record, the University's October 2022 revisions to the Policy were not a belated break with the University's past First Amendment violations but rather an outgrowth of changes to the faculty collective bargaining agreement ("CBA") in July 2021 and the University's "Task Force" recommendations adopted in November 2021. But the University denied Plaintiffs' requests to participate in litigation after the July 2021 changes to the CBA, and this Court correctly found that the November 2021 recommendations amounted to "viewpoint discrimination on steroids." ECF No. 111. Then, in its December 2021 briefing before this Court, the University

doubled down, asserting that faculty lack First Amendment rights to participate in litigation *at all*. It took this Court's preliminary injunction ruling for the University to revisit that position.

*Third*, Defendants argue that the preliminary injunction did not provide sufficiently "enduring" relief, but that argument is inconsistent with Eleventh Circuit case law and common sense. The preliminary injunction removed an unconstitutional prior restraint on faculty speech until the University finally agreed to prohibit discrimination based on viewpoint and content when assessing the existence of a conflict of interest. As a result, Plaintiffs are prevailing parties in this action.

## ARGUMENT

Defendants make three principal arguments: (*i*) that this Court never had jurisdiction to issue a preliminary injunction; (*ii*) that the University was always planning to prohibit discrimination based on content and viewpoint when assessing the existence of a conflict of interest; and (*iii*) that this Court's preliminary injunction ruling provided insufficient relief to confer prevailing-party status. Opp. 7–23. The record in the case confirms that Defendants are wrong on all counts, and Plaintiffs are entitled to attorneys' fees and costs as prevailing parties.

## I. This Court's Jurisdictional Holdings Were Correct and Need Not Be Reconsidered.

This Court has correctly rejected Defendants' jurisdictional arguments in two comprehensive opinions, ECF Nos. 47, 65, and Defendants' arguments have not improved with age. Defendants point to no basis, procedural or otherwise, for reconsideration of those rulings, particularly when the only remaining question is whether the preliminary injunction—issued more than a year ago—conferred prevailing party status on Plaintiffs. *See HomeAway.com, Inc. v. City of N.Y.*, 523 F. Supp. 3d 573, 586 (S.D.N.Y. 2021) ("Section 1988 does not entitle the City to a litigation do-over upon a fee application.") (collecting cases). It is one thing for Defendants to preserve their arguments for appeal; it is something else entirely to act as though this Court has not already ruled that it had jurisdiction to enter a preliminary injunction.

## II. The Record Is Clear That Defendants Belatedly Revised the Policy Because of This Court's Preliminary Injunction Ruling.

Defendants' assertion that they were always planning to implement the October 2022 revisions to the Policy is belied by the University's conduct throughout this litigation. The University's October 2022 revisions, which belatedly brought the Policy into compliance with the First Amendment, were due in significant part to Plaintiffs' suit and this Court's entry of the preliminary injunction.

3

*First*, Defendants' suggestion that the University's July 2021 revisions to the CBA somehow "drove" its revisions to the Policy in October 2022, Opp. at 4, is inconsistent with the record. The July 2021 revisions to the CBA stated merely that faculty could engage in "approved Outside Activity . . . as long as the activities and interests are in accordance with the law and do not conflict with their University duties and responsibilities." Fuller Decl., ECF No. 122-1, ¶ 3. But the University denied Plaintiffs the opportunity to testify in litigation or sign *amicus* briefs against the State in July, August, and October 2021, on the view that "[o]utside activities that may pose a conflict of interest to the executive branch of the [S]tate of Florida create a conflict for the University of Florida." ECF No. 65 at 12–13, 16. The July 2021 changes to the CBA did not stop the University from engaging in viewpoint discrimination, because the University wrongly believed that it could define a "conflict with [] University duties and responsibilities" (in the words of the CBA) to include speech that the University disfavored or feared that the state government would disfavor. Fuller Decl. ¶ 3. Nor does the University have any explanation for why it would have taken an additional fifteen months after July 2021—along with an intervening preliminary injunction—for it to finally adopt a new Policy that prohibited discrimination based on viewpoint and content.

*Second*, the University's contention that the October 2022 Policy's prohibition on viewpoint and content discrimination resulted from the November

4

2021 task force recommendations is equally unfounded. The University implemented the task force's recommendations in November 2021, and that version of the policy was the same one that this Court found "akin to viewpoint discrimination on steroids," ECF No. 111, because it permitted the University to discriminate based on content or viewpoint whenever the University concluded that, in its own judgment, it had a good reason for doing so. This Court enjoined that November 2021 version of the Policy precisely because it vested the University with unbridled discretion to discriminate against speech based on viewpoint or content. ECF No. 65 at 39–65. As the Court's preliminary injunction order explained, the November 2021 version of the Policy "made no attempt to clarify that [Defendants] will not consider political considerations or viewpoint in applying UF's conflict-of-interest policy to expert witness testimony and legal consulting in litigation involving the State." *Id.* at 51. Defendants cannot avoid paying fees by arguing that the very Policy that this Court enjoined was a precursor to a later Policy that complied with the Constitution.

*Third*, Defendants' litigation conduct further undermines the University's contention that the October 2022 changes to the Policy were the natural result of changes enacted in July and November 2021. Back in December 2021, Defendants "took the remarkable position in their brief that 'it is not clear [that Plaintiffs] had a First Amendment right to [testify] while working for UF.'" *Id.* at 39 (quoting ECF

No. 43 at 22–23). Defendants similarly "denigrated their own professors as being no better than two-faced mercenaries when they seek to testify as experts in their field in cases challenging Florida law." *Id.* And as this Court detailed, the University "compared Plaintiffs to moonlighters, ECF No. 43 at 30, 'robbers,' *id.* at 23, traitors, *id.* (accusing Plaintiffs of feeding UF to a gator), political hacks, ECF No. 45-4 at 12, and—in counsel's most recent performance—disobedient liars." *Id.* at 30; *see also id.* at 30 n.30 (noting "the sad irony that UF touts its strong 'presumption' favoring speech with one breath and with the other condemns Plaintiffs as liars with unclean hands for having the audacity to presume that UF would approve their requests to speak"). As the Court has already found, the University was not respecting the First Amendment rights of faculty in the latter half of 2021; the University changed its tune only after this Court entered a preliminary injunction.

### III. Precedent Makes Clear That Plaintiffs Are Prevailing Parties as a Matter of Law.

Given Defendants' steadfast refusal in 2021 to bring the Policy into compliance with the First Amendment, this Court was required to issue a preliminary injunction enjoining the November 2021 version of the Policy. Once Defendants finally brought the Policy in line with this Court's preliminary injunction opinion, this case became moot and Plaintiffs became prevailing parties entitled to fees.

Defendants have no real response to the Eleventh Circuit's holding that "a preliminary injunction on the merits entitles one to prevailing party status and an award of attorney's fees" where, as here, the defendant subsequently moots the case by repealing the challenged law or policy. *Common Cause Georgia v. Georgia*, 17 F.4th 102, 107 (11th Cir. 2021) (quoting *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009)); *accord Beta Upsilon Chi v. Machen*, 2014 WL 4928902, at *4 & n.4 (N.D. Fla. Oct. 1, 2014). Defendants acknowledge *Billups* in a footnote, Opp. 14 n.1, but claim it is distinguishable because Defendants believe this case became moot before the Court issued a preliminary injunction—exactly the proposition that this Court properly rejected in two well-reasoned opinions. Under the Eleventh Circuit's case law, Defendants' decision to accede to the terms of the preliminary injunction and revise the Policy establishes Plaintiffs as the prevailing parties.[1]

---

[1] Contrary to Defendants' contention, Opp. 15–17, Plaintiffs' introduction of settlement discussions to demonstrate that Defendants made these changes at Plaintiffs' urging was warranted under well-settled law. Defendants ignore the cases cited in Plaintiffs' opening brief, which held that Federal Rule of Evidence 408 does not bar consideration of settlement discussions to determine whether Plaintiffs are prevailing parties. *See* Br. at 5 n.2. The Eleventh Circuit's Mediation Center rules are not to the contrary; they prohibit the submission of mediation discussions "to any court or adjudicative body that might address the appeal's merits." ECF No. 122-2 at 10. Assessing Plaintiffs' entitlement to fees is "collateral to and separate from the decision on the merits," *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988) (internal quotation marks omitted), so the Mediation Center's rule is not implicated. In any event, the settlement discussions merely confirm what the

7

Defendants' contention that the preliminary injunction provided Plaintiffs with no "enduring" relief, Opp. 20–23, misstates the law and the facts. Defendants rely on *Sole v. Wyner*, in which the Supreme Court "reserved the question" as to "whether the absence of a final judgment on a permanent injunction following a preliminary injunction precludes an award of attorney's fees." Opp. 20–21 (citing 551 U.S. 74, 86 (2007)). But Defendants omit that the Eleventh Circuit has decided that exact question in Plaintiffs' favor, concluding that *Sole*'s holding was "inapplicable" when the preliminary injunction "was not 'reversed, dissolved, or otherwise undone' by any judicial decision" following a preliminary injunction but rather was dissolved when the State "repealed the enjoined statute." *Billups*, 554 F.3d at 1356; *see also Common Cause Georgia*, 17 F.4th at 107–08 (concluding that award of TRO established plaintiff as prevailing party where defendant then modified the challenged law such that the parties agreed to dismiss the case).

Defendants are therefore wrong to claim that there was no "material alteration of the legal relationship of the parties" or that Plaintiffs are relying on the defunct "catalyst theory" as a basis for pursuing attorneys' fees and costs. Opp. 18. The Eleventh Circuit has held that "the underlying rule that a preliminary

---

public record makes plain: the University mooted this case only after this Court issued the preliminary injunction, and the University cannot plausibly contend that it was always planning to make those changes given its vociferous defense of the prior, unconstitutional versions of the Policy.

8

injunction is a 'material alteration of the legal relationship of the parties' remains good law." *Billups*, 554 F.3d at 1356. *Billups* is clear that plaintiffs are "prevailing parties" when a preliminary injunction "remained effective until [defendants] repealed the law at issue." *Id.*

And while Defendants seek to minimize this Court's preliminary injunction as awarding "no practical relief" to Plaintiffs, Opp. 22, that is simply not the case. This Court enjoined an unconstitutional, viewpoint-based prior restraint that prohibited Plaintiffs from engaging in core First Amendment activity. That preliminary injunction, issued in January 2022, was in effect for more than a year, until the Eleventh Circuit vacated it as moot in March 2023. That relief was far more enduring than, for example, the TRO that the Eleventh Circuit found sufficient to make a plaintiff a prevailing party, which enjoined the defendant from taking action for a mere two days. *See Common Cause Georgia*, 17 F.4th at 106–07. This Court's preliminary injunction was "a material alteration of the legal relationship of the parties," *Billups*, 554 F.3d at 1356, because it protected Plaintiffs' rights until the University begrudgingly agreed to respect the First Amendment by amending the Policy in October 2022 and mooting this case.

Defendants' suggestion that the Eleventh Circuit's vacatur of the injunction deprives Plaintiffs of prevailing party status, Opp. 21, ignores clear Eleventh Circuit precedent cited in Plaintiffs' opening brief. *See* Br. at 10 (citing *Thomas v.*

9

*Bryant*, 614 F.3d 1288, 1294 (11th Cir. 2010); *Jacksonville Prop. Rts. Ass'n v. City of Jacksonville*, 635 F.3d 1266, 1275 n.20 (11th Cir. 2012)). The University's reliance on *Doe v. Busbee* is misplaced, because the preliminary injunction there was vacated because it had been issued "under a mistake of law." 684 F.2d 1375, 1382 (11th Cir. 1982). There was no such mistake here, and this Court's injunction was vacated only because Defendants mooted the case while the appeal was pending, which the Eleventh Circuit has made clear does not deprive Plaintiffs of attorneys' fees and costs.

\*\*\*

This Court awarded Plaintiffs a preliminary injunction in light of unrebutted evidence that the University's Policy on faculty speech was an unconstitutional, viewpoint-based prior restraint. The University aggressively defended that Policy and attacked Plaintiffs for having the temerity to challenge it. Rather than litigate to final judgment, the University chose to moot this case by acceding to the terms of the preliminary injunction and granting Plaintiffs the relief they sought from day one: the University may not discriminate on the basis of content or viewpoint when assessing whether a professor can testify or sign *amicus* briefs. The preliminary injunction was thus the last word on the merits, such that Plaintiffs are prevailing parties entitled to reasonable attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Plaintiffs' opening brief, this Court should grant Plaintiffs' Motion for Attorneys' Fees and Costs.

Dated:  May 1, 2023
        Washington, D.C.

/s/ David A. O'Neil
DAVID A. O'NEIL (*pro hac vice*)
Debevoise & Plimpton LLP
801 Pennsylvania Avenue N.W.
Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com

MORGAN A. DAVIS (*pro hac vice*)
JAIME FREILICH-FRIED (*pro hac vice*)
SAMUEL ROSH (*pro hac vice*)
SOREN SCHWAB (*pro hac vice*)
Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000
mdavis@debevoise.com
jmfried@debevoise.com
sjrosh@debevoise.com
sschwab@debevoise.com

PAUL DONNELLY
Florida Bar No. 813613
LAURA GROSS
Florida Bar No. 858242
CONOR P. FLYNN
Florida Bar No. 1010091
Donnelly + Gross LLP
2421 NW 41st Street, Suite A-1
Gainesville, FL 32606
(352) 374-4001
paul@donnellygross.com
laura@donnellygross.com
conor@donnellygross.com

ALEXANDRA P. SWAIN (*pro hac vice*)
Debevoise & Plimpton LLP
650 California Street
San Francisco, CA 94108
(415) 738-5700
apswain@debevoise.com

*Counsel for Plaintiffs Sharon Wright Austin, Michael McDonald, Daniel A. Smith, Jeffrey Goldhagen, Teresa J. Reid, and Kenneth B. Nunn*

12

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I hereby certify that this memorandum of law contains 2,387 words.

/s/ David A. O'Neil
David A. O'Neil

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of May, 2023, a copy of this document was filed electronically through the CM/ECF system and furnished by email to all counsel of record.

<u>/s/ David A. O'Neil</u><br>
David A. O'Neil