IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SHARON WRIGHT AUSTIN,
et al.,

     *Plaintiffs*,

v.                                Case No.: 1:21cv184-MW/HTC

UNIVERSITY OF FLORIDA BOARD
OF TRUSTEES, et al.,

     *Defendants*.

_____/

## ORDER GRANTING MOTION TO DETERMINE ENTITLEMENT TO ATTORNEYS' FEES AND COSTS

This Court has considered, without hearing, Plaintiffs' motion to determine entitlement to reasonable attorneys' fees and costs, ECF No. 119, the Defendants' response in opposition, ECF No. 122, Plaintiffs' reply, ECF No. 124, and the parties' supplemental briefs, ECF Nos. 126 and 127.

I

Before diving into the parties' arguments, this Court first sets out the history of this case to situate its analysis for determining whether Plaintiffs are entitled to reasonable attorneys' fees. Plaintiffs filed this action on November 5, 2021, asserting one claim for violation of their First and Fourteenth Amendment rights based on the University of Florida's (UF's) viewpoint-discriminatory conflict-of-interest policy

that also functioned as an unconstitutional prior restraint. *See* ECF No. 1 ¶¶ 44–49. They amended their complaint on November 15, 2021, to add additional parties and factual allegations. ECF No. 19. On December 3, 2021, Plaintiffs moved for a preliminary injunction. ECF No. 30.

In response, on December 1, 2021, Defendants moved to dismiss the amended complaint for lack of jurisdiction and for failure to state a claim. With respect to jurisdiction, Defendants argued, among other things, that this case was moot because (1) Plaintiffs' previously rejected outside activity requests had been approved; and (2) President Fuchs had revised the challenged policy shortly after Plaintiffs filed their amended complaint, thus "making this moot case even mooter," in November 2021. *Id*. at 6.

In opposition to the motion for preliminary injunction, Defendants raised the same two mootness arguments. ECF No. 43 at 18. But Defendants also argued, in the alternative, that Plaintiffs had failed to show the revised policy violated the First Amendment. Defendants implied that the viewpoint of a given professor's proposed testimony was very much at issue when determining whether a conflict arises, noting that Plaintiffs had no First Amendment right to act as expert witnesses in cases challenging any state law because this involved "litigation against the State of Florida, their employer." *Id*. at 22. Defendants went even further to suggest that "no UF employee has a constitutional right to work for the Gator *and* feed their employer

to one." *Id*. at 23 (emphasis in original). This is so even in the context where, for example, professors had been asked to serve as expert witnesses, not in a case against the University of Florida, but instead in a case challenging recently enacted election laws. ECF No. 30 at 12–17.

Ultimately, this Court considered Defendants' jurisdictional arguments at length and concluded that Plaintiffs had standing, that their claims were ripe, and that neither UF's retroactive approvals of Plaintiffs' original requests to serve as expert witnesses nor the November 2021 revisions to the challenged policy mooted the controversy. *See* ECF No. 47. This Court separately analyzed these issues in its Order granting in part Plaintiffs' motion for preliminary injunction, dated January 21, 2022. *See* ECF No. 65. Defendants appealed the preliminary injunction on February 8, 2022. ECF No. 70.

On December 28, 2022, while Defendants' appeal was pending, Plaintiffs filed a motion for voluntary dismissal without prejudice, citing new revisions to UF's conflict-of-interest policy that were published on October 13, 2022. ECF No. 105. Plaintiffs asserted these recent revisions now mooted their claims. *Id*. In response, Defendants asserted that the case was already mooted by the November 2021 revisions and that this Court should wait for the Eleventh Circuit to decide Plaintiffs' motion to dismiss Defendants' appeal prior to dismissing Plaintiffs' claims. *See* ECF No. 110. In so doing, Defendants recognized that this Court had

already rejected Defendants' mootness arguments and that such issues were on appeal, making it improper for this Court to pass on those issues again before the Eleventh Circuit had a chance to do so. *Id*. at 11–12. Moreover, Defendants also asserted it was unnecessary for this Court to again determine whether it had jurisdiction to decide Plaintiffs' claims as it had already ruled on jurisdiction, "and UF [did] not expect to change the Court's mind." *Id*. at 14.

Ultimately, this Court decided that, for prudential reasons and judicial economy, it would take Plaintiffs' motion for voluntary dismissal under advisement and rule on it only after the Eleventh Circuit dismissed or resolved the appeal. ECF No. 111. Then, on March 20, 2023, the Eleventh Circuit granted Plaintiffs' motion to dismiss Defendants' appeal as moot, vacated the preliminary injunction, and directed this Court to dismiss the case as moot. ECF No. 116. In so doing, the Eleventh Circuit did not offer any discussion about *when* the case became moot. *Id*.

This Court vacated its preliminary injunction and dismissed Plaintiffs' claims as moot on March 23, 2023. ECF Nos. 117 and 118. Plaintiffs promptly moved this Court to determine entitlement to fees, ECF No. 119, and Defendants responded in opposition, arguing again that this case became moot in November 2021, if not earlier. ECF No. 22 at 23 ("Here, UF approved the Professors' requests before the lawsuit started and then voluntarily changed the conflicts policy soon after this litigation started. So UF's voluntary changes occurred well before any court order

in this case."). Defendants also suggested that even if the October 2022 revisions mooted this case, those revisions were not made *because of* this case or the preliminary injunction this Court granted. *Id*. at 21 (citing the declaration of Deputy General Counsel Ryan Fuller (the "Original Fuller Declaration")) stating that "revisions to UF Policy on Conflicts came about because of the Task Force recommendations and the need to bring the CBA into conformity with the other conflict policies"). This Court permitted Plaintiffs to file a reply, which they did on May 1, 2023. ECF No. 124.

This Court then ordered further supplemental briefing from the parties, as neither side had satisfactorily engaged with the question of whether this Court should consider additional evidence concerning Defendants' motivations in revising the challenged policy after this Court enjoined Defendants from enforcing their previous policy.[1] This Court allowed both sides an opportunity to address this Court's concerns, including whether this Court needed to conduct an evidentiary hearing due to the record before it. ECF No. 125. In response to this Court's Order, Defendants

---

[1] To the extent Defendants suggest this Court should not have *sua sponte* permitted Plaintiffs to file a reply, Defendants are mistaken. This Court prefers to have things done promptly and completely. Therefore, this Court routinely permits parties to file replies before they seek leave to do so. This Court was perplexed by both sides' failure to address whether this Court should consider Defendants' deficient Fuller declaration, and thus, this Court afforded both sides a chance to address this Court's concerns. This served to benefit Defendants, as evidenced by Defendants' apparent recognition of the deficiencies in their original filing and subsequent attempt to correct those mistakes by filing a second, unauthorized declaration by Fuller (the "Second Fuller Declaration").

filed a corrected declaration in support of their opposition to Plaintiffs' motion and argued, *for the first time*, that the "core issue" for determining whether Plaintiffs are prevailing parties is "whether the Court's injunction was the impetus for the October 2022 revisions." ECF No. 127 at 12–13. In turn, Plaintiffs asserted, in relevant part, that (1) this Court need not consider Defendants' subjective motivations for the latest revisions, (2) the Fuller Declarations do not create any relevant factual disputes, and (3) this Court can decide the motion without an evidentiary hearing. As Plaintiffs' motion is now fully briefed and both sides have responded to this Court's request for further briefing, this Court now turns to the merits of Plaintiffs' motion.

II

A

To start, this Court agrees with Plaintiffs' well-reasoned arguments and rejects Defendants' attempt to relitigate this Court's conclusions with respect to the justiciability of Plaintiffs' claims and this Court's jurisdiction to hear them. This Court incorporates by reference its earlier reasoning with respect to Plaintiffs' standing and the ripeness or mootness of Plaintiffs' claims. *See* ECF No. 47 at 4–17; ECF No. 65 at 25–37; *see also* ECF No. 111 at 1–2 ("[I]t is mystifying to this Court that Defendants continue to argue that the earlier rule change mooted this controversy. This Court has rejected that same argument on the merits and notes that the November 2021 'revisions' amounted to something akin to viewpoint

discrimination on steroids.").

For the same reasons this Court previously explained at length, *see* ECF No. 47 at 4–17 and ECF No. 65 at 25–37, this Court concludes that Plaintiffs had standing and that their claims were ripe, both at the time they filed their action and when this Court entered its preliminary injunction. As this Court noted in its Order enjoining Defendants from enforcing their viewpoint-discriminatory conflict-of-interest policy, Defendants' "revised" policy continued to permit viewpoint discrimination in determining their choice of interests that could overcome the toothless viewpoint-neutral "presumption" applied to outside activity requests. *See* ECF No. 65 at 54 ("[T]he policy permits UF to base a denial on the proposed testimony's viewpoint if UF decides in its unlimited discretion that the testimony contravenes UF's interests."); *see also id*. at 50–51 ("UF has had ample opportunity to limit its discretion to salvage its constitutionally infirm policy . . . . Indeed, Defendants have shown that they are fully capable of such explicit clarification because they have done just that with their *amicus* brief policy. But Defendants have made no attempt to clarify that they will not consider political considerations or viewpoint in applying UF's conflict-of-interest policy to expert witness testimony and legal consulting in litigation involving the State."). In short, for the reasons this Court has set out at length in its prior Orders, neither Defendants' approval of Plaintiffs' prior requests nor Defendants' asserted policy change in November 2021

mooted this case.

B

This Court now turns to whether Plaintiffs are "prevailing parties" for purposes of entitling them to attorneys' fees under 42 U.S.C. § 1988. "For private actions brought under 42 U.S.C. § 1983 . . . Congress enacted 42 U.S.C. § 1988, which authorizes federal district courts, in their discretion, to allow the prevailing party a reasonable attorney's fee as part of the costs." *Common Cause Ga. v. Georgia*, 17 F.4th 102, 107 (11th Cir. 2021) (cleaned up). "A plaintiff qualifies as a prevailing party entitled to attorneys' fees under 42 U.S.C. § 1988 if there is a material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Id*. The Eleventh Circuit has "interpreted this language to require either (1) a situation where a party has been awarded by the court at least some relief on the merits of his claim or (2) a judicial imprimatur on the change in the legal relationship between the parties." *Id*. (citations omitted). Specifically, under the Eleventh Circuit's precedent, "a preliminary injunction on the merits entitles one to prevailing party status and an award of attorney's fees." *Id*. (quoting *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009)).

Further, even when an injunction has been entered in the plaintiff's favor but the case is later mooted by the defendant's conduct, the plaintiff is entitled to "prevailing party" status for purposes of determining entitlement to attorneys' fees.

8

*See Beta Upsilon Chi Upsilon Chap. at Univ. of Fla. v. Machen*, 446 F. App'x 192, 192–93 (11th Cir. 2011) ("Although we ultimately dismissed the appeal on the ground that appellees' conduct in affording appellants relief they sought rendered moot the controversy and thus the appeal, we noted that an administrative panel of this court had granted, in the form of an injunction pending appeal, the relief the district court had denied them . . . . Appellants are prevailing parties under § 1988 and, thus, are entitled to a reasonable attorney's fee."); *see also Kansas Jud. Watch v. Stout*, 653 F.3d 1230, 1240 (10th Cir. 2011) (holding that the fact that a preliminary injunction was later vacated when the case became moot did not deprive plaintiffs of their status as "prevailing parties," because neither the Tenth Circuit nor the district court had "ever issued an order undermining the district court's assessment of the merits of" their claims or legal entitlement to relief); *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 453 (1st Cir. 2009) (distinguishing between reversal on the merits and vacatur of a moot case and holding that "[w]hen plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still 'prevailing parties' for the purposes of attorney's fees for the district court litigation"); *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008) ("*Buckhannon* does not stand for the proposition that a defendant should be allowed to moot an action to avoid the payment of the plaintiff's attorney's fees when a district court grants a preliminary

injunction based upon an unambiguous indication of probable success on the merits. Instead, we agree . . . that this preliminary injunction, coupled with the City's subsequent mooting of the case, is sufficient to establish prevailing party status.").

Defendants, in opposition, argue that (1) "the change in policy occurred irrespective of this Court's preliminary injunction," and (2) Plaintiffs "received no enduring relief from this Court." ECF No. 122 at 19, 24. This Court addresses both points in turn.

1

As to their first point, Defendants assert this Court's preliminary injunction did not cause Defendants to change their policy because they had changed the policy *before* this Court entered a preliminary injunction. ECF No. 122 at 23 ("UF's voluntary changes occurred well *before* any court order in this case. Put differently, there was no 'judicially sanctioned change' that affected UF's conduct." (emphasis added)). In so doing, Defendants again ignore this Court's determination that the November 2021 "policy change" to which they appear to refer was no meaningful change at all. And, as this Court has noted elsewhere, the 2021 "revisions" in fact amounted to "viewpoint discrimination on steroids." ECF No. 111 at 2. Specifically, although the 2021 revisions implemented a viewpoint-neutral "presumption" that professors would be permitted to testify as experts in litigation against the State of Florida, the University's asserted interests that could overcome this presumption

10

were entirely up to UF's discretion—including considering the viewpoint of the testimony and its importance to the State. Moreover, as Plaintiffs point out, it was only months *after* this Court granted a preliminary injunction that Defendants finally changed their conflicts policy to prevent the very viewpoint discrimination Plaintiffs challenged in this case. *See* ECF No. 119 at 9 n.1 (link to updated policy, last revised October 13, 2022).

Defendants have now switched gears and attempt to inject an issue as to the subjective motivation for revising the policy in October 2022. Defendants suggest that to the extent *this* change mooted the case, Defendants chose to revise their policy irrespective of this Court's preliminary injunction. In support of this argument, Defendants filed the Original Fuller Declaration, ECF No. 122-1, which sets out his conclusory assertions that the October 2022 revisions happened "organically," without providing any explanation for the basis of his knowledge. Mr. Fuller's original declaration is not competent evidence. *See Bazemore v. Jerfferson Capital Systems, LLC*, 827 F.3d 1325, 1327 (11th Cir. 2016) (holding that declaration in which declarant made conclusory statements and failed to assert was based upon personal knowledge was not competent evidence to support motion to compel arbitration). More importantly, Defendants' focus on the subjective motivation to revise their policy after this Court ordered relief on the merits is of no significance.

Defendants' attempt to create a factual dispute about Defendants' motive for

11

revising the policy in October 2022 appears to be based on Defendants' argument as to how this Court should determine whether Plaintiffs are prevailing parties. Specifically, Defendants assert this Court is required "to determine whether the preliminary injunction *caused* the October 2022 revisions." ECF No. 127 at 5 (emphasis added). Not so. Indeed, Defendants' argument directly contradicts the position the States of Florida, Georgia, and Alabama joined in an amicus brief before the United States Supreme Court regarding a pending petition for writ of certiorari on this very issue.[2] *See* Brief for Georgia, et al. as Amici Curiae Supporting Petitioners, at 20, *Hargett v. Tenn. St. Conf. of NAACP*, No. 22-773 (U.S. Docketed Feb. 21, 2023) (arguing that Fifth Circuit's purported test for fee eligibility conflicts with Supreme Court precedent as it "appears to have revived the circuits' old catalyst

---

[2] Defendants point out that this cert petition is now pending before the Supreme Court for a Sixth Circuit case concerning whether a preliminary injunction, without a subsequent ruling on the merits, is ever sufficient to confer "prevailing party" status. ECF No. 122 at 25. The parties in that dispute disagree as to whether there is even any circuit split with respect to the question presented. *See* Pet. for Cert., *Hargett v. Tenn. St. Conf. of NAACP*, No. 22-773 (U.S. Docketed Feb. 16, 2023). But even the petitioners—who argue that there is a circuit split—assert the Eleventh Circuit's analysis *does not consider causation* for purposes of determining whether a party has made the necessary showing for entitlement to fees. *See* Reply of petitioners Tre Hargett, et al., at 7, *Hargett v. Tenn. St. Conf. of NAACP*, No. 22-773 (U.S. Docketed May 9, 2023) ("Other courts, too, analyze the relief requirement without considering causation. For example, in *Common Cause/Georgia v. Billups*, the Eleventh Circuit noted that the 'injunction remained effective until Georgia repealed the law at issue,' without asking *why* the law was repealed." (emphasis added)). In other words, according to petitioners, the Eleventh Circuit *does not* require a showing that a preliminary injunction *caused* a subsequent, voluntary change to the challenged provision for a party to be entitled to "prevailing party" status. Moreover, in their amicus brief, Florida, Georgia, and Alabama point to only the Fifth Circuit as requiring any "causation" analysis and certainly do not suggest that the Eleventh Circuit requires a similar determination. Defendants' suggestion that the core issue before this Court is determining what caused their revisions in October 2022 appears to be contrary to what the Attorney Generals for the States of Florida, Georgia, and Alabama claim elsewhere to be binding precedent in this Circuit.

theory by declaring a party eligible for a fee award if it wins a preliminary injunction 'that *causes the defendant* to moot the action' by giving the plaintiffs the relief they sought in the lawsuit" (emphasis in original)).

More importantly, Defendants' argument that this Court must determine what caused Defendants' revision in October 2022 contradicts binding law in this Circuit. The law in the Eleventh Circuit requires that this Court determine whether Plaintiffs achieved "a 'judicially sanctioned change in the legal relationship of the parties.' " *Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1319 (11th Cir. 2002) (quoting *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001)). As this Court noted above, the Eleventh Circuit holds that a preliminary injunction on the merits—like the one this Court granted in *this* case—entitles Plaintiffs to prevailing party status and an award of attorney's fees. *Common Cause*, 17 F.4th at 107. This is true even when the case is later mooted on appeal based on the voluntary actions of the enjoined party. *Beta Upsilon Chi*, 446 F. App'x at 192–93.

Defendants' suggestion that their October 2022 revisions must have been directly motivated by this Court's preliminary injunction to entitle Plaintiffs to attorney's fees misconstrues the applicable law. Defendants seek to transform this case into one where a defendant voluntarily changed its policy or behavior *before* any judicially sanctioned change in the relationship between the parties. *See* ECF

No. 122 at 22–23. But Plaintiffs' motion for entitlement to attorney's fees does not rely on some defunct catalyst theory in violation of *Buckhannon*. Instead, Plaintiffs obtained a judicially sanctioned change in their relationship with Defendants when this Court reached the merits of their claims and granted a preliminary injunction prohibiting Defendants from enforcing their unconstitutional conflict-of-interest policy.

Defendants try to revive the catalyst theory by urging this Court to determine whether the preliminary injunction was the catalyst for Defendants' subsequent revisions to their own policy.[3] But, just as Plaintiffs are not permitted to wield the catalyst theory as a sword to prove entitlement to fees, Defendants are not permitted to use it as a shield to protect them from Plaintiffs' entitlement to fees. In short, the catalyst theory is dead.

The law in this Circuit is clear, and so is Plaintiffs' entitlement to fees as

---

[3] As noted above, this position is at odds with Florida, Georgia, and Alabama's arguments in support of the cert petition in *Hargett*. *See* Brief for Georgia, et al. as Amici Curiae Supporting Petitioners, at 13, *Hargett v. Tenn. St. Conf. of NAACP*, No. 22-773 (U.S. Docketed Feb. 21, 2023) (noting "the Fifth Circuit has added into its test the knotty question whether the preliminary injunction also 'caused the defendant to moot the action,'" which "pushes courts not only to assess motives and mental states of government officials, but also to make a subjective judgment about just how strong the causative link between the injunction and the mooting action has to be"); *id*. at 20 (suggesting Fifth Circuit precedent is at odds with Supreme Court precedent, because "[t]he Fifth Circuit even appears to have revived the circuits' old catalyst theory by declaring a party eligible for a fee award if it wins a preliminary injunction 'that causes the defendant to moot the action' by giving the plaintiffs the relief they sought in the lawsuit."). But the Eleventh Circuit has not adopted a test that requires this Court to determine whether its preliminary injunction *caused* Defendants to later change their policy and moot the case. To the extent Defendants invite this Court to err by applying this unnecessary test, this Court declines the invitation.

"prevailing parties" under section 1988. Plaintiffs are not seeking fees based on an impermissible catalyst theory. Next this Court turns to Defendants' second argument—namely, whether Plaintiffs' received "enduring relief" from this Court.

2

As to Defendants' second point, this Court disagrees that this Court's now-vacated preliminary injunction afforded Plaintiffs no "enduring" relief. Instead, the preliminary injunction constitutes relief on the merits, which prohibited Defendants from taking any steps to enforce their unconstitutional conflict-of-interest policy with respect to requests to engage as expert witnesses or provide legal consulting in litigation involving the State of Florida. ECF No. 65 at 74. This Court made an enduring change in the legal relationship between the parties by ordering Defendants not to enforce the unconstitutional policy. *See Roberts v. Neace*, 65 F.4th 280, 286 (6th Cir. 2023) (affirming fee award in case that was ultimately dismissed as moot and noting that preliminary injunctions limited Kentucky Governor from enforcing orders limiting certain interstate travel and mass gatherings during COVID-19 pandemic "in ways that he could not ignore," because "he could not continue to do what he had done before or prosecute the congregants for what they had already done"). This Court's injunction remained in effect from January 21, 2022, until March 23, 2023. *Id*. (noting that "longevity of relief" that district court's preliminary injunction afforded—lasting over a year before the case was mooted—qualified as

15

enduring).

Here, Defendants "did not secure an eventual ruling on the merits and the preliminary injunction was not superseded by a later ruling unfavorable to the Plaintiff." *See Joyce v. Potter*, 2007 WL 2050955, at *5 (M.D. Fla. Jul. 16, 2007) (Hodges, J.). Instead, Defendants finally amended their policy in October 2022—nearly nine months after the preliminary injunction went into effect—to prohibit *any* consideration of viewpoint or content of a UF employee's speech when determining whether a conflict of interest exists, thus permanently providing Plaintiffs the very relief they sought from the outset of this case. The fact that Plaintiffs obtained this favorable outcome that mooted their claims while Defendants' appeal was pending does not undo Plaintiffs' victory. *See id.*; *see also Beta Upsilon Chi*, 446 F. App'x at 192–93.

III

This Court finds that Plaintiffs are "prevailing parties" for purposes of entitlement to reasonable attorneys' fees under 42 U.S.C. § 1988. Accordingly, Plaintiffs' motion, ECF No. 119, is **GRANTED**. Pursuant to Local Rule 54.1(E), Plaintiffs shall file their motion to determine the amount of fees and supporting materials **on or before Friday, June 23, 2023**. Pursuant to Local Rule 54.1(F), Defendants' filing in opposition is due **no later than 30 days after Plaintiffs file their motion**—or Monday, July 24, 2023, if Plaintiffs do not file a motion until the

16

deadline set by this Order.[4]

**SO ORDERED on May 24, 2023.**

**s/Mark E. Walker**
**Chief United States District Judge**

---

[4] Pursuant to the Local Rules, the parties must confer in good faith to resolve any dispute as to Plaintiffs' claimed fee amount. *See* N.D. Fla. Loc. R. 54.1(A) and (G). In so stating, this Court is not requiring the parties to agree as to Plaintiffs' entitlement to fees. Obviously, the parties disagree, and Defendants do not waive their arguments with respect to entitlement by conferring in good faith with respect to Plaintiffs' claimed *amount* of fees.