## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

|  |  |
|---|---|
| SHARON WRIGHT AUSTIN, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNIVERSITY OF FLORIDA<br>BOARD OF TRUSTEES, *et al.*,<br><br>*Defendants*. | Case No.: 1:21-cv-00184-MW-HTC |

## DEFENDANTS' OBJECTIONS TO PLAINTIFFS' MOTION FOR
## <u>DETERMINATION OF AMOUNT OF ATTORNEY'S FEES</u>

Amy Meyers Hass
  *Vice President and General Counsel*
  Florida Bar No. 483346
Ryan Fuller
  *Associate Vice President and*
  *Deputy General Counsel*
  Florida Bar No. 635324
UNIVERSITY OF FLORIDA
  OFFICE OF GENERAL COUNSEL
123 Tigert Hall, P.O. Box 113125
Gainesville, FL 32611
(352) 392-1358
amhass@ufl.edu
ryanf@ufl.edu

H. Christopher Bartolomucci
  D.C. Bar No. 453423
Brian J. Field*
  D.C. Bar No. 985577
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com
bfield@schaerr-jaffe.com

*Admitted *pro hac vice*

*Counsel for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

OBJECTIONS.....................................................................................1

1.  Plaintiffs had no standing, and their claims were unripe and moot. ...............1

2.  Plaintiffs' success was technical or de minimis. ...............................................1

3.  No fees should be awarded for Plaintiffs' preliminary injunction motion
    because it was unnecessary....................................................................4

4.  Plaintiffs have unclean hands. ...............................................................5

5.  Plaintiffs' proposed hourly rates are too high. .................................................6

6.  Plaintiffs' total fee request is unreasonable due to overstaffing and
    overbilling...........................................................................................11

7.  Any fee award should be limited to time spent on the preliminary-
    injunction stage of the case..................................................................15

8.  Plaintiffs are not entitled to fees for appellate work. ....................................17

9.  Plaintiffs are not entitled to fees for unsuccessful work. .............................18

10. Mr. O'Neil failed to record his time to the nearest tenth of an hour.............19

11. Work unrelated to this case is not compensable............................................21

12. Vague entries are not compensable. ...........................................................22

13. Plaintiffs' attorneys performed non-attorney tasks. ....................................24

14. Plaintiffs' overall fee request should be reduced by 75 to 95 percent. .........24

15. Plaintiffs did not apply the Johnson factors. .................................................25

16. The request for litigation expenses should be disallowed.............................26

CONCLUSION....................................................................................26

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F) ......................28

CERTIFICATE OF SERVICE ................................................................29

# TABLE OF AUTHORITIES

## Cases

*Am. Civil Liberties Union of Fla. Inc. v. Dixie Cnty*.,
No. 1:07-cv-00018-MP-GRJ, 2012 WL 384925
(N.D. Fla. Feb. 6, 2012), *report and recommendation adopted
as modified*, 2012 WL 1004372 (N.D. Fla. Mar. 23, 2012) ........................ 10, 17

*Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423 (1999) ...........................6

*Am. Civil Liberties Union of Fla., Inc. v. Polk County*,
No. 8:05cv02266, 2006 WL 2147716 (M.D. Fla. July 28, 2006) ............... 16, 17

*Austin v. Univ. of Fla. Bd. of Trs.*, No. 22-10448 (11th Cir. Jan. 6, 2023) .............18

*Beta Upsilon Chi v. Machen*, No. 1:07cv135-MW/GRJ,
2014 WL 4928902 (N.D. Fla. Oct. 1, 2014), *aff'd*,
601 F. App'x 917 (11th Cir. 2015) ............................................................ *passim*

*Bivins v. Wrap it Up, Inc*., 380 F. App'x 888 (11th Cir. 2010) ...........................3, 25

*Brown v. Lawn Enf't Agency, Inc.*, 369 F. Supp. 3d 1224 (N.D. Fla. 2019) ...........24

*Caplan v. All Am. Auto Collision, Inc*., 36 F.4th 1083 (11th Cir. 2022) ........ 4, 5, 25

*Carroll v. Blinken*, 105 F.3d 79 (2d Cir. 1997) ........................................................4

*Ciulla v. Rigny*, 89 F. Supp. 2d 97 (D. Mass. 2000) .................................................6

*Common Cause/Ga. v. Billups*, 554 F.3d 1340 (11th Cir. 2009) ...........................17

*Davidson v. City of Avon Park*, 848 F.2d 172 (11th Cir. 1988) .............................17

*Farrar v. Hobby*, 506 U.S. 103 (1992) ........................................................ 1, 3, 25

*Fox v. Vice*, 563 U.S. 826 (2011) ........................................................... 14, 25

*Gray ex rel. Alexander v. Bostic*, 720 F.3d 887 (11th Cir. 2013) .........................2, 3

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................... 11, 12

*Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974) ...........25

*Marion v. Barrier*, 694 F.2d 229 (11th Cir. 1982) ..................................................18

*Martinez v. Wilson*, 32 F.3d 1415 (9th Cir. 1994) ..................................................1, 4

*Mills v. Freeman*, 118 F.3d 727 (11th Cir. 1997) ....................................................17

*Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799 (11th Cir. 2012) ...........25

*Norman v. Hous. Auth. of City of Montgomery*,
    836 F.2d 1292 (11th Cir. 1988) ...............................................................................6

*Oguachuba v. INS*, 706 F.2d 93 (2d Cir. 1983) .........................................................6

*Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*,
    391 U.S. 563 (1968)................................................................................................14

*Plaintiff B v. Francis*, No. 5:08cv79-RS/AK, 2009 WL 2913476
    (N.D. Fla. Sept. 8, 2009) .......................................................................................10

*Prison Legal News v. Inch*, 411 F. Supp. 3d 1198 (N.D. Fla. 2019).......................14

*Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*,
    538 F. Supp. 3d 1243 (N.D. Fla. 2021), *aff'd*, 59 F.4th 1158
    (11th Cir. 2023)........................................................................................................8

*Thomas v. Bryant*, 614 F.3d 1288 (11th Cir. 2010) .................................................18

*Thornton v. Wolpoff & Abramson*, L.L.P., 312 F. App'x 161
    (11th Cir. 2008).......................................................................................................25

*Trump v. Clinton*, 2023 WL 333699 (S.D. Fla. Jan. 19, 2023) .................................7

*U.S. Commodities Future Trading Comm'n v. S. Tr. Metals, Inc.*,
    No. 14-CV-22739-KING, 2020 WL 4664711 (S.D. Fla. July 9, 2020)..............6

*United States v. Everglades Coll., Inc.*, 855 F.3d 1279 (11th Cir. 2017)............2, 24

*Urecal Corp. v. Masters*, 413 F. Supp. 873 (N.D. Ill. 1976)....................................6

*Wyatt ex rel. Rawlins v. Sawyer*, 67 F. Supp. 2d 1331 (M.D. Ala. 1999) ..............17

*Wyner v. Struhs*, 179 F. App'x 566 (11th Cir. 2006),
    *rev'd on other grounds sub nom. Sole v. Wyner*, 551 U.S. 74 (2007)...............16

*Wyner v. Struhs*, No. 9:03-cv-80103-DMM, slip op.
(S.D. Fla. Aug. 16, 2004), ECF No. 102, *vacated after appeal*,
slip op. (S.D. Fla. May 2, 2008), ECF No. 112 ...................................................15

**Rules**

11th Cir. R. 39-2 ...........................................................................................17

N.D. Fla. Loc. R. 54.1 ............................................................................ 1, 18, 25

**Other Authorities**

The Florida Bar, *Results of the 2022 Economics and Law Office
Management Survey* § 4D (Oct. 2022) ...............................................................7

The Law Offices of Archibald J. Thomas, III, P.A., https://job-rights.com............10

Pursuant to N.D. Fla. Loc. R. 54.1(F), Defendants hereby object to Plaintiffs' motion for determination of the amount of attorney's fees (Docs. 131-132). Plaintiffs seek $406,284.75 in fees for 1,438.1 hours of work.  Doc. 131 at 1, 13.

## OBJECTIONS

### 1.      Plaintiffs had no standing, and their claims were unripe and moot.

As Defendants have argued in other filings, Plaintiffs never had standing in this case. *See* Doc. 122 at 7–11.  Therefore, no fees should be awarded. *See Martinez v. Wilson*, 32 F.3d 1415, 1422 (9th Cir. 1994) (refusing to award fees to a plaintiff "whose only success involved" a claim it "has no standing to assert" because such a fee award "would not be consistent with the purpose of section 1988").  In addition, Plaintiffs' claims were unripe and moot from the jump. *See* Doc. 122 at 11–15.  For these reasons, Plaintiffs should receive no fees.

### 2.      Plaintiffs' success was technical or de minimis.

Plaintiffs deserve no fees because their only court-ordered success on the merits, the preliminary injunction, was a technical or *de minimis* victory. *See Farrar v. Hobby*, 506 U.S. 103, 113–14 (1992); *id*. at 117 (O'Connor, J., concurring) ("When the plaintiff's success is purely technical or *de minimis*, no fees can be awarded.").  In a case involving a technical or *de minimis* victory, "the only reasonable fee is usually no fee at all." *Id*. at 115 (majority opinion).

A "plaintiff secure[s] only a 'technical' victory by proving a legal violation but suffer[ing] no actual damages." *United States v. Everglades Coll., Inc*., 855 F.3d 1279, 1292 (11th Cir. 2017). Here, this Court found that Plaintiffs were likely to succeed on their First Amendment claim and awarded a preliminary injunction. But that temporary relief remedied no actual injury. UF had already approved the requests of Plaintiffs Austin, McDonald, Smith, and Goldhagen to serve as expert witnesses in litigation against the State of Florida *before* they filed this lawsuit. And they made no other such requests while the preliminary injunction was in effect. Thus, the only relief they received, the preliminary injunction, was an academic matter.

The technical or *de minimis* nature of Plaintiffs' victory is also shown by the three factors considered in *Gray ex rel. Alexander v. Bostic*, 720 F.3d 887, 894 (11th Cir. 2013). First, Plaintiffs "achieved very limited success in this case." *Id*. at 895. Two of them, Reid and Nunn, actually achieved no success on the merits; their request for preliminary relief was denied. And the others achieved only limited success, i.e., the preliminary injunction. That injunction, however, never became permanent but was dissolved when the case became moot. And the preliminary injunction conferred no practical benefit upon Austin, McDonald, Smith, or Goldhagen. UF granted their outside activity requests to do expert witness work against the State before the injunction was even requested, and they made no other

such requests during the period the preliminary injunction was in effect.  Thus, the preliminary injunction did not allow Plaintiffs to do anything they wanted to do that they weren't already allowed to do.

Second, Plaintiffs prevailed at the preliminary-injunction stage, but their "victory carries very little legal significance, if any at all." *Gray*, 720 F.3d at 897. For reasons unrelated to this lawsuit, UF voluntarily changed the aspects of the policy that Plaintiffs challenged. *See* Doc. 110-1 at 4–6.  Plaintiffs did not claim in their motion that they achieved a significant victory.  They should not be heard to make such a claim in their reply brief.  This case "was not of the same caliber as landmark civil-rights cases that had served an enormous public good." *Bivins v. Wrap it Up, Inc*., 380 F. App'x 888, 891 (11th Cir. 2010).

Third, Plaintiffs "commenced the litigation to redress private injury, and it does not serve a public purpose." *Gray*, 720 F.3d at 899.  They "failed to establish anything more than that [they] had been denied a protected right" and did not "establish that [they] suffered actual injury," for the reasons stated above. *Id*.

Under *Gray*, even if Plaintiffs are prevailing parties, "the *de minimis* nature of [their] victory is apparent; [their] victory is not substantial enough to justify an award of attorney's fees." *Gray*, 720 F.3d at 894.  Because Plaintiffs' victory was technical or *de minimis*, the only reasonable fee is "no fee at all." *Farrar*, 506 U.S. at 115.

3

A Ninth Circuit case, *Martinez v. Wilson*, 32 F.3d 1415 (9th Cir. 1994), offers another reason why the proper fee award in this case is no fees. The reason is that Plaintiffs "obtained no direct benefit" from this Court's preliminary injunction "prior to its being mooted." *Id*. at 1423. They "obtained no direct benefit from the injunction, because the behavior enjoined was not occurring at the time the injunction issued, nor was there any imminent threat of its occurrence." *Id*.

Finally, as the Second Circuit has held, "in determining the reasonableness of a fee award in civil rights actions, the quantity and quality of relief obtained is a critical factor. Where the damage award is nominal or modest, the injunctive relief has no systemic effect of importance, and no substantial public interest is served, a substantial fee award cannot be justified." *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997). Under this authority, no fees should be awarded. The now-dissolved preliminary injunction that Plaintiffs obtained had "no systemic effect of importance" and it served "no substantial public interest."

### 3. No fees should be awarded for Plaintiffs' preliminary injunction motion because it was unnecessary.

"Work that is unnecessary should not be reflected in an attorney's time entries and should not be included in a fee award." *Caplan v. All Am. Auto Collision, Inc*., 36 F.4th 1083, 1091 (11th Cir. 2022). Here, Plaintiffs' motion for preliminary injunction was not necessary given the state of the case. Before Plaintiffs filed the motion (indeed, before they filed suit), UF had already approved the requests of

4

Professors Austin, McDonald, Smith, and Goldhagen to serve as expert witnesses in litigation against the State.  They had no other pending requests in that vein when they sought an injunction.  Thus, there was no need for them to seek an injunction. If during the litigation UF had denied another outside activity request made by them, a preliminary injunction motion may have been proper.  As it was, however, Plaintiffs' motion was premature and thus "unduly litigious," *id.* at 1092, not to mention expensive.  It constituted "unnecessary motion practice." *Id*.  All fees for work on the preliminary injunction motion should be denied.  And since obtaining the preliminary injunction was Plaintiffs' only success on the merits, if they are not awarded fees for the preliminary injunction, they should receive no fees at all.

### 4.   Plaintiffs have unclean hands.

Professors Austin, McDonald, and Smith worked as experts in the SB90 litigation without obtaining prior approval, and they continued to do so even after their requests were disapproved, in violation of the collective bargaining agreement negotiated by their union, UF Regulation 1.011, and UF's Policy on Conflicts in effect at the time.  Professor Goldhagen, who was also bound by the regulation and policy, participated as an expert in two school mask mandate cases despite the disapproval of his requests, and he tried to do the same a third time.

Because these Plaintiffs have unclean hands, they should receive no fees despite their limited success in the litigation.  *See Oguachuba v. INS*, 706 F.2d 93,

98, 99 (2d Cir. 1983) ("Oguachuba's misconduct constitutes a special circumstance rendering an award of attorneys' fees unjust. … In classic equity terms, Oguachuba is without clean hands."); *Ciulla v. Rigny*, 89 F. Supp. 2d 97, 105 (D. Mass. 2000) (awarding no fees because a fee award is an equitable remedy and plaintiff had unclean hands); *Urecal Corp. v. Masters*, 413 F. Supp. 873, 876 (N.D. Ill. 1976) (holding that "the 'clean hands' doctrine bars any award" of fees); *see also U.S. Commodities Future Trading Comm'n v. S. Tr. Metals, Inc.*, No. 14-CV-22739-KING, 2020 WL 4664711, at *1 (S.D. Fla. July 9, 2020) (acknowledging, but not reaching, CFTC's argument that "Escobio has unclean hands, which constitutes a 'special circumstance' precluding an award of fees").

### 5. Plaintiffs' proposed hourly rates are too high.

"The [fee] applicant bears the burden of producing satisfactory evidence that the requested [hourly] rate is in line with prevailing market rates." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Defendants agree the relevant market here is the Northern District of Florida. The Eleventh Circuit has offered an important guiding principle for determining proper rates (and hours): "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (1999).

Here, Plaintiffs seek an hourly rate of $450 for three partners, David O'Neil, Paul Donnelly, and Laura Gross, and $375 for Jung Yoon, also a partner.  Plaintiffs seek rates between $250 and $350 for its associate attorneys.  Doc. 131 at 9–10.

The rates Plaintiffs seek are too high.  According to the most recent Florida Bar survey, 67% of attorneys in North Florida charge $350 per hour or less.  Only 33% charge more than $350, and only 12% charge more than $400.  *See* The Florida Bar, *Results of the 2022 Economics and Law Office Management Survey* § 4D, at 10 (Oct. 2022), https://tinyurl.com/yv3bzjjs.[1]  To bring their rates in line with the rates most lawyers charge in North Florida, the rate for O'Neil, Donnelly, and Gross should be $350, and Yoon's rate should be $275—i.e., the proposed rate for each of them should be reduced by $100.

The Court is familiar with its order awarding fees in *Beta Upsilon Chi v. Machen*, No. 1:07cv135-MW/GRJ, 2014 WL 4928902 (N.D. Fla. Oct. 1, 2014) (*BYX*), *aff'd*, 601 F. App'x 917 (11th Cir. 2015) (per curiam).  The *BYX* litigation involved a First Amendment challenge to a UF policy that made the BYX student group ineligible for status as a registered student organization.  *BYX* may not be a "perfect analog" to this case, *Sabal Trail Transmission, LLC v. 18.27 Acres of Land*

---

[1] Rates in Southeast Florida are significantly higher, with 43% of attorneys there charging more than $400, according to the Florida Bar Survey § 4D, at 10.  This makes Plaintiffs' citation (Doc. 131 at 10) of *Trump v. Clinton*, 2023 WL 333699 (S.D. Fla. Jan. 19, 2023), inapposite.

in *Levy Cnty.*, 538 F. Supp. 3d 1243, 1259 (N.D. Fla. 2021), *aff'd*, 59 F.4th 1158 (11th Cir. 2023), but it is a good one given that both this case and *BYX* involve a challenge to a UF policy on First Amendment grounds.  Plaintiffs also cite *BYX*. Doc. 131 at 10-11.

This Court in *BYX* approved partner-level rates between \$275 and \$425,[2] saying they were "in line with the hourly rates found reasonable for similarly experienced lawyers *specializing in First Amendment litigation* in the Northern District of Florida."  *BYX*, *supra*, at *5 (emphasis added).

Here, none of Plaintiffs' lawyers claim to be specialists in First Amendment litigation.  Although Mr. O'Neil is well credentialed and very able, his background is in criminal law.  Doc. 131-1 ¶ 3.  Donnelly, Gross, and Yoon are labor and employment lawyers.  Doc. 132 ¶¶ 7–9.  And none of the seven associates who worked on this case are First Amendment specialists.  Doc. 131-1 ¶¶ 8–13; Doc. 132 ¶ 10.  Thus, the rates this Court greenlighted in *BYX* for First Amendment litigation specialists in the Northern District of Florida do not support the rates sought here.

Because Plaintiffs' lawyers are not First Amendment litigation specialists, the

---

[2] Notably, the hourly rates of the two lawyers who did most of the work in *BYX* were well below \$425.  The rate for Timothy Tracey, who billed the most hours (520.73 hours), was \$325.  *BYX*, *supra*, at *5.  The rate for Roger Gannam, who billed the second-most hours (93.5 hours), was even less, \$275.  *Id.* at *6.  *See also id*. at *5 ("Tracey performed almost all of the work on the merits of the case. … Gannam performed most the work on the attorney fee issues.").

fee order in *BYX* actually supports cutting their proposed rates by as much as 50%. This Court reduced by 50% the fees awarded to three of BYX's attorneys, Kimberlee Colby, Jeffrey Schafer, and Gregory Baylor, for their work on a part of the case where "these attorneys were no longer operating in their field of expertise in First Amendment law but supervising Gannam's work to establish attorney's fees." *BYX*, *supra*, at *7.  Here, Plaintiffs' attorneys were never operating as First Amendment experts.  Thus, applying *BYX*, it would be appropriate to cut their proposed rates in half.  Defendants, however, propose more modest rate reductions:  Again, the rate for O'Neil, Donnelly, and Gross should be $350, and Yoon's rate should be $275, i.e., $100 less than their proposed rates.

In *BYX*, this Court said that rates of $150 and $200 "are standard for this district for new associates." *BYX*, *supra*, at 7.  Some of Plaintiffs' associates are new associates and some are more experienced, but all of their proposed rates are too high.  Here, Morgan Davis's rate should be reduced to $250.  Alexandra Swain's rate should be reduced to $225; the rate for Jaime Freilich-Fried and Samuel Rosh should be reduced to $200; the rate for Soren Schwab and Katharine Witteman should be reduced to $150; and Conor Flynn's rate should be reduced to $225—i.e., $100 less than the proposed rate for each of them.  A $100-per-hour haircut for each of them is appropriate to bring the rates in line with rates in North Florida and this Court's opinion in *BYX*.

Plaintiffs cite two cases (other than *BYX* and *Trump v. Clinton*) in support of their proposed rates.  *See* Doc. 131 at 10 (citing *Am. Civil Liberties Union of Fla. Inc. v. Dixie Cnty.*, No. 1:07-cv-00018-MP-GRJ, 2012 WL 384925 (N.D. Fla. Feb. 6, 2012), *report and recommendation adopted as modified*, 2012 WL 1004372 (N.D. Fla. Mar. 23, 2012); *Plaintiff B v. Francis*, No. 5:08cv79-RS/AK, 2009 WL 2913476 (N.D. Fla. Sept. 8, 2009)).  This Court cited those two cases in *BYX* in support of its conclusion that "[t]he higher rates for the other [BYX] attorneys are in line with the hourly rates found reasonable for similarly experienced lawyers specializing in First Amendment litigation in the Northern District of Florida."  *BYX*, *supra*, at *5 (footnote omitted).  Because Plaintiffs' attorneys are not First Amendment litigation specialists, *Dixie County* and *Plaintiff B* do not support the rates sought here.

Finally, the declaration of Archibald J. Thomas, III (Doc. 131-3) does little or nothing to support Plaintiffs' proposed rates.  First, he does not claim to have knowledge of rates for First Amendment specialists in the Northern District of Florida.  Mr. Thomas practices exclusively in the area of labor and employment law, as the splash page on his website states:  "At The Law Offices of Archibald J. Thomas, III, P.A. our practice is limited to the representation of individuals in labor and employment related matters. … [T]he firm does not practice in any other area of the law."  https://job-rights.com (last visited July 24, 2023).  Thus, his knowledge of billing rates relates to labor and employment cases, and only that.

Second, his billing-rate knowledge relates to the Middle District of Florida, where he has his office and practices. *See* Doc. 131-3 at 3 (stating he has represented attorneys in relation to fees in "the Middle District of Florida, Jacksonville"). Third, the fact that his "normal or customary rate is $450.00 per hour" has little probative value. *Id*. It is a Middle District rate, and, only 12% of lawyers in the North Florida charge more than $400. And he is a labor and employment lawyer, not a First Amendment specialist.

### 6.   Plaintiffs' total fee request is unreasonable due to overstaffing and overbilling.

Overstaffing and overbilling renders the total fee requested unreasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (fee award must be reduced when a case is "overstaffed" or hours are "excessive"); *BYX*, 2014 WL 4928902, at *7 (reducing by 50% attorney time deemed "excessive"). Plaintiffs' legal team included four partners and seven associates from two law firms.[3] No client would pay out of her own pocket for a team of 11 lawyers, including four partners, for a case like this one. Plaintiffs seek fees for more than 1,400 hours of attorney time. Debevoise & Plimpton attorneys seek fees for 1184.2 attorney hours (more than 1,100 of which are associate hours) and Donnelly + Gross seeks fees for another 228.6 attorney hours. And Debevoise states that it wrote off another "nearly 1,200

---

[3] Plaintiffs also used nine legal assistants. Defendants, however, do not object to their $75 rate or hours, which were reasonable.

hours of work." Doc. 131-1 ¶ 18. It is a marvel that Debevoise recorded more than 2,400 hours on this case.

To be clear, Plaintiffs were free to hire all the lawyers they wanted and allow them rack up that many hours. But they can't expect UF to pay for it all. *See Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.") (emphases in original; quotation marks omitted).

Plaintiffs claim that "[t]he total amount of attorneys' fees requested by Plaintiffs' counsel in this case, $406,284.75 is … reasonable." Doc. 131 at 14. Not so. The fee award in *BYX* is the best comparator. And BYX's attorneys did much more work in that case than Plaintiffs' attorneys did here.

In *BYX*, the plaintiffs prepared a complaint, an amended complaint, and a second amended complaint. *See BYX*, No. 1:07cv135-MW/GRJ, ECF Nos. 1, 5, 46. They moved for a preliminary injunction, and presented oral argument on the motion. *Id.*, ECF Nos. 47, 92. After the motion was denied, the plaintiffs moved the district court for an injunction pending appeal. *Id.*, ECF No. 116. BYX propounded and responded to interrogatories, engaged in and *completed* document discovery, and both took and defended depositions. (Limited document production occurred in the instant case; no depositions were taken.) BYX moved for summary judgment and opposed UF's summary judgment motion. *Id.*, ECF No. 105, 122.

(No party sought summary judgment here.)  BYX opposed UF's motion to dismiss on mootness grounds and also moved to stay consideration of that motion.  *Id.*, ECF No. 173, 175.  BYX also filed at least *three* motions for attorney's fees; a motion to tax costs; a motion to review the clerk's denial of taxation of costs; and a motion for reconsideration of the denial of that motion.  *Id.*, ECF Nos. 245, 247, 295, 297, 346, 375, 380, 383.

BYX's attorneys sought fees for about 750.77 hours of attorney time plus additional paralegal hours.  *See BYX*, *supra*, at *5.  This Court's total fee award was $235,278.25 (*id.* at *8)—about 60% of the fees sought here.  True, those fees were awarded in 2014, but the passage of time does not account for the more than $170,000 difference between the fees awarded in *BYX* and the fees sought here.  That difference is mainly attributable to unreasonable and excessive rates, overstaffing, and overbilling.  The 1412.8 attorney hours for which Plaintiffs seek fees here are nearly *double* the hours that BYX's attorneys performed.  And BYX's attorneys did much work more than Plaintiffs' attorneys did here.

Because the total fees sought here are not reasonable when compared to the fees awarded in *BYX*, Plaintiffs' fee request should be reduced by $150,000.[4]  Such a reduction would do "rough justice" based on the "overall sense of [the] suit."  *Fox*

---

[4] To be clear, Defendants maintain that Plaintiffs should receive no fees at all.  *See* Objections 1–4.  This is an argument in the alternative.

*v. Vice*, 563 U.S. 826, 838 (2011); *see also Prison Legal News v. Inch*, 411 F. Supp. 3d 1198, 1209 n.11 (N.D. Fla. 2019) ("[T]his Court endeavors 'to do rough justice' in calculating the reasonable fee award.") (quoting *Fox*, 563 U.S. at 838).

Plaintiffs claim that "Defendants' counsel continuously engaged in tactics that protracted this litigation and required additional attorney hours on the part of Plaintiffs' counsel." Doc. 131 at 12. But the lead example they give reveals the weakness of this argument. Plaintiffs' motion for preliminary injunction did *not* make a free-standing *Pickering*[5] argument in support of Plaintiffs' likelihood of success on the merits. Plaintiffs made three arguments against UF's policy—"the Policy (*i*) vests the University with unbridled discretion to restrict Plaintiffs' speech based on content or viewpoint, (*ii*) has been weaponized as a prior restraint to discriminate on the basis of viewpoint, and (*iii*) is unconstitutionally overbroad." Doc. 30 at 17; *see also id*. at 17–25. Thus, their three arguments were unbridled discretion, viewpoint-based prior restraint, and overbreadth. See argument headings *id*. at 17, 20, and 22. Near the end of their overbreadth argument, Plaintiffs cite *Pickering*. *Id*. at 24. But this was not a *Pickering* argument; it was an *overbreadth* argument, which is a different kettle of fish. They cited Pickering a second time, *id*. at 29, as part of an argument that the changes to UF's policy recommended by the

---

[5] *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563 (1968).

Task Force did not solve the problems identified in arguments one, two, and three. *Id.* at 25–32.  Once again, this was not a free-standing *Pickering* argument.  Thus, Plaintiffs' counsel was responsible for the supplemental briefing and argument that stemmed from their failure to make a free-standing *Pickering* argument.

Plaintiffs also complain about a few of Defendants' arguments and actions—all well after the preliminary injunction, *see* Doc. 131 at 12—but these hardly "protracted this litigation" (*id.*) and did not cause Plaintiffs to expend 1,400 (or 2,600) hours of time on this case.

**7.     Any fee award should be limited to time spent on the preliminary-injunction stage of the case.[6]**

In *Wyner v. Struhs*, the district court granted a preliminary injunction to First Amendment plaintiffs.  Later, the court denied their summary judgment motion and request for a permanent injunction.  The court awarded attorney's fees for "the time spent on the preliminary injunction stage of the case as compared to the time spent on the entire case."  *Wyner v. Struhs*, No. 9:03-cv-80103-DMM, slip op. at 6 (S.D. Fla. Aug. 16, 2004), ECF No. 102, *vacated after appeal*, slip op. (S.D. Fla. May 2, 2008), ECF No. 112.  The court recognized that the plaintiffs were not "entitled to fees for time spent on other aspects of the case."  *Id.*

---

[6] This objection is offered in the alternative.  *Compare* Objection #3.

The Eleventh Circuit upheld the fee award.  It noted that "[t]he [district] court did award attorney's fees to Plaintiffs for the work they expended obtaining the preliminary injunction" and explained that "[t]he district court properly limited the fee award to the degree of Plaintiffs' success." *Wyner v. Struhs*, 179 F. App'x 566, 569 (11th Cir. 2006), *rev'd on other grounds sub nom. Sole v. Wyner*, 551 U.S. 74 (2007).  The Supreme Court reversed, not because the fee award was too low, but because it was too high.  It held that the plaintiffs were not prevailing parties and so not entitled to any fees:  Despite the preliminary injunction they obtained, the plaintiffs ultimately lost on the merits on summary judgment.

Consistent with *Wyner* is *American Civil Liberties Union of Florida, Inc. v. Polk County*, No. 8:05cv02266, 2006 WL 2147716 (M.D. Fla. July 28, 2006).  In that case, First Amendment plaintiffs obtained a TRO allowing them to erect a display in a county building during the Christmas season.  When Polk County abolished its display program, the plaintiffs' suit was dismissed as moot.  The plaintiffs then sought attorney's fees for all of their work in the case, but the district court rejected that request and held that the plaintiffs were entitled to fees only for their work on the TRO. The court explained:

> [T]he fee award must be limited to the degree of Plaintiffs' success. Thus, Plaintiffs are entitled to attorneys' fees and costs only in direct relation to the extent of their success in litigation. As noted above, Plaintiffs are considered prevailing parties only in so far as their success in obtaining the temporary restraining order which allowed the Plaintiffs to erect their displays on Defendant['s] property for the 2005 Christmas

16

season. However, in their Application for Attorneys' Fees, Plaintiffs
seek compensation for fees and costs throughout the duration of the
litigation. *This is inappropriate*.

*Id*. at *4 (citation omitted; emphasis added). The district court ordered that "the
Plaintiffs are entitled to an award of attorneys' fees and costs for obtaining the
temporary restraining order"—and only that. *Id*.

Contrary to *Wyner* and *Polk County*, Plaintiffs seek fees not just for the
preliminary-injunction stage of the case—the only stage in which they enjoyed any
merits success—but for the entire case. As the court said in *Polk County*, that is
inappropriate. Any fee award here should be confined to Plaintiffs' work on the
preliminary injunction.

### 8. Plaintiffs are not entitled to fees for appellate work.

"The Eleventh Circuit has made clear that a district court is not authorized to
award fees and expenses for appellate work." *Wyatt ex rel. Rawlins v. Sawyer*, 67
F. Supp. 2d 1331, 1346 (M.D. Ala. 1999). *See Common Cause/Ga. v. Billups*, 554
F.3d 1340, 1356 (11th Cir. 2009) ("The district court lacked authority to award
attorney's fees and costs for work performed before this Court.") (citing 11th Cir. R.
39-2); *Mills v. Freeman*, 118 F.3d 727, 734 (11th Cir. 1997); *Davidson v. City of
Avon Park*, 848 F.2d 172, 173 (11th Cir. 1988). Plaintiffs told the Eleventh Circuit
they were not seeking attorneys' fees for their appellate work. *See* Plfs.'/Appellees'
Mot. to Dismiss Appeal at 10 n.7, *Austin v. Univ. of Fla. Bd. of Trs.*, No. 22-10448

(11th Cir. Jan. 6, 2023), Doc. 25 (citing *Thomas v. Bryant*, 614 F.3d 1288, 1294 & n.3 (11th Cir. 2010)).

The following time entries (mostly Mr. Donnelly's) impermissibly seek fees for appellate work and should be disallowed: **Donnelly** 2/14/22 (0.2), 2/15/22 (0.2), 2/24/22 (0.2), 3/7/22 (0.1), 3/8/22 (0.2), 3/16/22 (0.4), 4/26/22 (0.8), 4/27/22 (two entries: 0.5, 0.6), 6/6/22 (1.6), 1/3/22 (0.2), 1/4/23(0.4), 2/3/23 (0.8); **Davis** 2/11/22 (0.2); **Flynn** 2/21/22 (0.1); **Yoon** 4/14/22 (0.7), 4/15/22 (0.2).   [ECF Nos. 131-2; 132-1].

### 9.    Plaintiffs are not entitled to fees for unsuccessful work.

"[T]he time devoted by an attorney to issues on which his client did not prevail may be excluded from the calculation of attorney's fees under section 1988." *Marion v. Barrier*, 694 F.2d 229, 230 (11th Cir. 1982).  *See BYX*, 2014 WL 4928902, at *7 ("Compensation for these entries will be denied because BYX did not prevail on its claim for taxable costs."); N.D. Fla. Loc. R. 54.1(E)(1) (party seeking fees must exclude "time devoted to matters … on which the party ... did not prevail").

Two Plaintiffs, Reid and Nunn, received no court-ordered relief on the merits in this case.  Their interest was in challenging UF's policy on *amicus* briefs.  But this Court denied preliminary relief as to that policy.  *See* Doc. 65 at 73 ("The motion is **DENIED** with respect to Plaintiffs' challenge to the *amicus* brief policy.").  Thus, none of the work relating to their claims was successful.  Because there were six

Plaintiffs, the time spent on work relating to the preliminary injunction should be cut by one-third.

Furthermore, the following time entries relate specifically to Reid and Nunn and should be disallowed: **Donnelly**: 11/4/21 (0.2), 11/8/21 (three entries: 0.3, 1.0, 0.2), 11/13/21 (2/3rds of 1.2), 11/16/21 (portion of 2.5), 12/1/21 (0.5), 12/7/21 (portion of 0.3), 12/21/21 (0.1), 12/27/21 (0.2), 1/7/22 (two entries: portion of 0.3, 0.2), 1/8/22 (0.3), 1/18/22 (0.1), 3/24/22 (0.2), 3/31/22 (0.1); **Davis**: 11/11/21 (4.0), 11/12/21 (1.8), 3/21/22 (1.2), 3/29/22 (half of 0.5), 3/31/22 (0.2), 4/20/22 (0.8); **Fried**: 11/11/21 (1.5); O'Neil: 1/12/21 (1.0). *See* Doc. 132-1 at 5–9, 11–13, 16–17 (Donnelly time); Doc. 131-2 at 3–4, 14–16 (remainder of entries).

**10.    Mr. O'Neil failed to record his time to the nearest tenth of an hour.**

All of Mr. O'Neil's time entries must be disallowed because he failed to record his time in tenths of an hour, in violation of Local Rule 54.1(C), which states: "No award of attorney's fees will be made based in whole or part on time devoted to a case unless the attorney or other timekeeper made a contemporaneous, detailed record of the time to the nearest tenth hour."

Mr. O'Neil has 41 time entries, 33 of which were billed to the nearest whole hour (.0) and eight of which were billed to the nearest half hour (.5). *None* of his entries show increments of time ending in .1, .2, .3, .4, .6, .7, .8, or .9. He is the only timekeeper who billed this way. No other timekeeper has time entries that look like

his.  Rounding up to the nearest hour or half hour is not permitted by Local Rule

54.1(C).  All of his time entries must be rejected for violating the rule.

For example, on November 4, 2021, Mr. O'Neil recorded 4.0 hours, consisting

of attention to the complaint (2.0), a team meeting (1.0), and a client meeting (1.0).

Doc. 131-2 at 2.  He recorded the same total hours and sub-hours for virtually the

same tasks on November 5.  *Id*.  On November 6, he recorded 1.0 hours for

"Correspondence with team re next steps to amend complaint and file PI."  *Id*.  It is

difficult to believe he spent a whole hour communicating with his team.  Only one

team member, Ms. Davis, billed any time (2.1 hours) on November 6, and she did

not mention speaking or emailing with Mr. O'Neil.  *Id*.  On November 9, Mr. O'Neil

billed 3.0 hours—1.0 for a team meeting, 1.0 for correspondence re same, and 1.0

for attention to the complaint.  Doc. 131-2 at 3.  Did all three tasks take exactly one

hour?  See also his time on 11/11/21 (2.0 for attention and 1.0 for meetings),

11/12/21 (2.0 for attention, 1.0 for meeting, 1.0 for another meeting), 11/22/21 (1.0

for attention and 1.0 for a meeting), 11/23/21 (1.0 for meeting and 1.5 for attention),

11/26/21 (2.0 and 1.0), 11/29/21 (2.0 and 1.0), 12/5/21 (1.0 and 1.0); 12/9/21 (2.0

and 1.5).  *See* Doc. 131-2 at 3–5, 7–8.  On nine days in December 2021, Mr. O'Neil

billed exactly 2.0 hours each day to the exact same task:  "Research for PI reply brief

and drafting same."  The dates were December 19, 20, 21, 22, 27, 28, 29, 30, and

31, 2021.  He used the same task description on December 17 but billed 3.5 hours.

20

### 11.     Work unrelated to this case is not compensable.

Plaintiffs' counsel seeks fees for work that was not related, or was merely tangentially related, to this case.  Such work is not compensable.  Plaintiffs' counsel seeks fees for work that was not related, or was merely tangentially related, to this case.  Such work is not compensable.  *See* **Davis** 11/18/21 (0.5) (review emails re union grievance filing); **Donnelly**, 12/1/21 (0.5) (Zoom conference with Nunn for media interview), 12/3/21 (0.4) (emails over final revisions to statement to accompany filing of PI motion), 12/8/21 (0.4) (Zoom with Austin & team re public statement), 12/16/21 (0.2) (reply to email from possible donor), 2/3/22 (0.2) (reply to emails from counsel in HB233 case), 3/16/22 (0.4) (review report re allegations of Covid data suppression and emails to Goldhagen re same), 3/16/22 (0.2) (review and reply to email from Austin re invitation to accept award from Commissioner of Agriculture), 4/6/22 (0.1) (review order denying motion to dismiss House Bill 233 case), 5/3/22 (0.3) (review slide deck re HB7 limiting speech of faculty); **Flynn** 10/28/21 (0.1) (review Governor's office filing), 11/4/21 (0.8) (read court's order in SB90 case), 11/23/21 (0.7) (ensure appropriate parallelism for engagement agreements for all Plaintiffs), 12/6/21 (0.5) (DeSantis public records correspondence), 12/17/21 (0.3) (client correspondence re establishment of legal defenses), 1/4/22 (0.2) (coordination with media team and Debevoise before hearing), 4/20/22 (0.3) (correspond with Debevoise media assistance re historical

background).  [ECF No. 131-2 at 2, 3, 5; ECF No. 132-1 at 3, 5, 8–11, 14, 16–18].

In addition, Mr. Donnelly improperly seeks fees for time spent time reviewing and reacting to press stories about this case.  *See*, *e.g*., **Donnelly** 10/29/21 (1.3), 10/30/21 (3.0), 10/31/2021 (2.0), 11/1/21 (2.0), 11/2/21 (1.0), 11/10/21 (1.0), 11/13/21 (1.0), 11/15/21 (2.0), 11/22/21 (1.0), 12/1/21 (0.8), 12/10/21 (1.3), 12/14/21 (0.8), 1/5/22 (0.4), 1/6/22 (0.5); *see also* **Flynn** 11/11/21 (1.5), 12/5/21 (0.1) [ECF No. 132-1 at 3–4, 6–10, 12].

### 12.    **Vague entries are not compensable.**

Per this Court's rules, "[a] detailed record must provide enough information to allow the Court to evaluate reasonableness; an entry like 'research' or 'conference' without a description of the subject will not do."  N.D. Fla. Loc. R. 54.1(C).  Many of the entries here—too many to list them all—violate this rule.  *See*, *e.g*., **Davis** 11/11/21 (1.0) (team call), 11/22/21 (0.5) (revising affidavits), 11/22/21 (0.7) (team call), 11/22/21 (0.1) (scheduling call with Donnelly & Gross); 11/24/21 (0.2) (emails re next steps), 11/29/21 (1.5) (prepare for and participate in team meeting),  12/5/21  (0.2)  (review  client  emails);  **Donnelly**  10/29/21  (0.3) (communication with witnesses), 10/31/21 (0.2) communication with legal scholars re legal issues), 11/1/21 (2.0) (working on letter to UF President), 11/3/21 (0.5) (communication with witness), 11/4/21 (1.0) (meeting with client), 11/5/21 (1.0) (client call with O'Neil), 11/17/21 (0.2) (t/c with witness); **Flynn** 10/19/21 (0.1)

(correspondence with Paul), 10/29/21 (0.3) (conference with witnesses), 10/30/21 (0.5) (correspondence with client), 10/30/21 (1.0) (conference call with Debevoise), 10/31/21 (1.0) (correspondence and coordination with Debevoise), 11/3/21 (1.0) (coordination with Debevoise), 11/3/21 (0.3) (call with clients), 11/12/21 (0.3) (correspondence with Debevoise), 11/17/21 (1.3) (research, drafting), 11/19/21 (0.4) (correspondence with legal team), 11/19/21 (1.0) (public records drafting), 11/19/21 (0.4) (researchreview [*sic*]), 12/5/21 (0.4) (case review and research), 12/8/21 (0.4) (Zoom meeting with team and client), 12/10/21 (0.1) (scheduling correspondence), 12/15/21 (0.5) (correspondence with clients and court), 12/15/21 (0.2) (privilege log correspondence), 12/16/21 (0.1) (correspondence with clients and Debevoise), 5/24/23 (half of improperly bundled 0.4) (correspondence with staff); **Fried** 11/4/21 (0.5) (team meeting), 11/4/21 (0.5) (call with K. Witteman), 11/4/21 (0.5) (call with outside counsel), 11/8/21 (0.2) (internal correspondence with team), 11/9/21 (0.7) (call with Goldhagen), 11/12/21 (0.6) (team meeting), 11/29/21 (0.8) (same), 11/30/21 (0.5) (read internal and client correspondence), 12/1/21 (0.5) (call with clients), 12/1/21 (0.5) (call with internal team), 12/2/21 (0.5) (team meeting), 12/4/21 (0.1) (reviewed client correspondence), 12/5/21 (0.1) (same), 12/7/21 (0.3) (reviewed internal and client correspondence), 12/20/21 (0.5) (team meeting), 1/11/22 (0.8) (call with Goldhagen); **O'Neil** 11/1/21 (1.0) (meeting with local counsel), 12/5/21 (1.0) (correspondence with clients); **Rosh** 12/1/21 (1.1) (attended

client call and discussed same with team); **Schwab** 12/15/21 (0.5) (revised attorney declaration), 12/17/21 (1.0) (same), 1/12/22 (1.0) (revised client declaration), 4/20/22 (0.3) (client call); **Swain** 11/14/21 (0.7) (reviewed outline), 11/14/21 (1.2) (conducted legal research); **Witteman** 11/15/21 (0.5) (team call), 11/29/21 (1.0) (team meeting), 12/7/21 (1.0) (team call), 1/3/22 (1.0) (same). [ECF No. 131-2 at 1–11, 16; ECF No. 132-1 at 2–5, 7–10, 21].

### 13.    Plaintiffs' attorneys performed non-attorney tasks.

Hours are unnecessarily billed when the billed tasks—such as preparing a summons and civil cover sheet—"could have been completed by a non-attorney." *Brown v. Lawn Enf't Agency, Inc.*, 369 F. Supp. 3d 1224, 1227 (N.D. Fla. 2019). *See*, *e.g.*, **Davis** 11/5/21 (0.5) (formatting and filing civil cover sheet and summons), 11/15/21 (portion of bundled 5.8) (filing complaint), 12/3/21 (portion of bundled 3.0) (filing PI motion), 2/2/22 (portion of 0.2) (filing joint status report); **O'Neil** 1/13/22 (portion of bundled 3.0) (file supplemental brief); **Rosh** 2/2/22 (0.3) (filed joint status report), 7/1/22 (.2) (filed initial status report).  [ECF No. 131-2 at 2, 4, 7, 11–12, 18].

### 14.    Plaintiffs' overall fee request should be reduced by 75 to 95 percent.

Plaintiffs should be awarded no fees. *See* Objections 1–4.  But if they are, the total fees requested should be cut by 75% to 95% for all of the reasons stated in Defendants' Objections. *See Everglades Coll.*, 855 F.3d at 1292–93 (upholding 95%

reduction of lodestar amount based on party's limited success); *Bivins*, 380 F. App'x at 891 (upholding 85% fee reduction where plaintiff sought $245,000 in fees but recovered $10,000 in damages); *Thornton v. Wolpoff & Abramson*, L.L.P., 312 F. App'x 161, 164 (11th Cir. 2008) (affirming 85% reduction where plaintiff obtained $1 in damages but requested $49,502 in fees); *Caplan*, 36 F.4th at 1094–95 (holding that across-the-board reduction of 75% was warranted for "excessive, unnecessary, and thus unreasonable" billing).  As the Supreme Court has stated, "fee awards under § 1988 were never intended to produce windfalls to attorneys." *Farrar*, 506 U.S. at 115 (quotation marks omitted).   A 75%-to-95% fee reduction would accomplish rough justice. *See Fox*, 563 U.S. at 838.  In suggesting this fee reduction, Defendants do not waive their "objection that fees should not be awarded at all." N.D. Fla. Loc. R. 54.1(F).

**15.   Plaintiffs did not apply the Johnson factors.**

Plaintiffs' motion (Doc. 131) does not apply, or even mention, the factors set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974). The Eleventh Circuit "has been clear that district courts may, but are not required to, consider those factors." *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 801 (11th Cir. 2012).  Given Plaintiffs' failure to rely on the *Johnson* factors, they may not be used to support the rates, hours, or fee award that Plaintiffs seek here.

**16.    The request for litigation expenses should be disallowed.**

Plaintiffs seek $286.54 for dubious "litigation expenses."  Doc. 132-2.  The expense relates to a public records request made by Donnelly + Gross.  The firm asked UF to search the email accounts belonging to Mark Kaplan, Steve Orlando, and Hesselin Fernandez de Cueto, each of whom works in community relations or public relations.   The request sought emails between October 29, 2021, and November 27, 2021, referring to Smith, McDonald, or Austin.

This expense should be disallowed.  Plaintiffs do not explain the relevance of the request, what records they received, or how the records were used in this litigation.  Plaintiffs simply assert, without explanation, that the records request "was reasonably necessary for the successful prosecution of Plaintiffs' case."  Doc. 131 at 14.  Finally, Plaintiffs could have served a discovery request on Defendants for the same records without incurring any costs.[7]

## CONCLUSION

Based on the foregoing objections, Plaintiffs should be awarded no fees.  In the alternative, their fee request should be significantly reduced.

---

[7] Defendants do not object to Plaintiffs' bill of costs, Doc. 102, assuming fees are awarded.

Respectfully submitted,

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci
  D.C. Bar No. 453423
Brian J. Field*
  D.C. Bar No. 985577
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com
bfield@schaerr-jaffe.com
*Admitted *pro hac vice*

Amy Meyers Hass
  *Vice President and General Counsel*
  Florida Bar No. 483346
Ryan Fuller
  *Associate Vice President and*
  *Deputy General Counsel*
  Florida Bar No. 635324
UNIVERSITY OF FLORIDA
OFFICE OF GENERAL COUNSEL
123 Tigert Hall, P.O. Box 113125
Gainesville, FL 32611
(352) 392-1358
amhass@ufl.edu
ryanf@ufl.edu

Dated:  July 24, 2023           *Counsel for Defendants*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

I hereby certify that the foregoing Defendants' Objections to Plaintiffs'

Motion for Determination of Amount of Attorney's Fees contains 6,471 words.

<u>*s/ H. Christopher Bartolomucci*</u>
H. Christopher Bartolomucci

Dated:  July 24, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of July, 2023, the foregoing document was filed electronically through the CM/ECF system and furnished by email to all counsel of record.

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci