## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**SHARON WRIGHT AUSTIN,**
**et al.,**

        *Plaintiffs*,

**v.**                                          **Case No.: 1:21cv184-MW/HTC**

**UNIVERSITY OF FLORIDA BOARD**
**OF TRUSTEES, et al.,**

        *Defendants*.

_____/

## ORDER ON PLAINTIFFS' MOTION TO DETERMINE
## THE AMOUNT OF ATTORNEYS' FEES AND EXPENSES

This Court previously determined Plaintiffs are entitled to fees under 42
U.S.C. § 1988 as the prevailing parties in this case. ECF No. 128. Plaintiffs now
moves for a determination of the amount of attorneys' fees and expenses to which
they are entitled. ECF No. 131. Plaintiffs initially sought a total award of
$406,284.75 in fees and $286.54 in expenses. *Id*. at 5.[1] This Court has considered,
without hearing, Plaintiffs' motion, ECF No. 131, Defendants' response, ECF No.
133, Plaintiffs' reply, ECF No. 135, as well as all related exhibits. Plaintiffs' reply
indicated that they had agreed to cut $25,400.00 from their total fee request in

---

[1] Plaintiffs arrived at these figures after imposing a 15% across-the-board reduction to fees
requested by counsel for Debevoise & Plimpton. ECF No. 131 at 17.

response to Defendants' objections, and this Court ordered Plaintiffs to submit updated time records to document the reductions. *See* ECF No. 139. This Court has considered Plaintiffs' updated time records. *See* ECF No. 140. For the reasons set out below, it is **ORDERED** that Plaintiffs' motion, ECF No. 131, is **GRANTED IN PART and DENIED in part** and Plaintiffs are awarded **$372,219.75** in attorneys' fees.

I

Plaintiffs Austin, McDonald, and Smith initiated this lawsuit on November 5, 2021. ECF No. 1. They alleged that the University of Florida, their employer, violated their First Amendment rights to free speech by preventing them from testifying as experts in a case challenging a recently enacted election law. Plaintiffs alleged that the University of Florida maintained an unconstitutional policy for professors who sought to participate in outside activities, like serving as expert witnesses, and this policy permitted viewpoint discrimination and amounted to an unconstitutional prior restraint on speech. Plaintiffs sought preliminary and permanent injunctive relief, declaratory relief, and reasonable attorneys' fees and costs.

Ten days later, Plaintiffs filed an amended complaint and added Plaintiffs Goldhagen, Reid, and Nunn. ECF No. 19. They also included additional allegations of (1) alleged limitations on University of Florida's law professors with respect to

signing amicus briefs submitted in cases challenging Florida law, (2) the denial of a professor's request to testify as an expert witness in a case challenging an Executive Order's ban on mask mandates in public schools, and (3) the University of Florida's shifting positions regarding expert testimony in the election case. Plaintiffs reasserted a single count alleging the University's policies violated their free speech rights and sought the same relief in their amended complaint.

Defendants filed a motion to dismiss on December 1, 2021. ECF No. 23. Plaintiffs filed their motion for preliminary injunction on December 3, 2021, ECF No. 30, and their opposition to the motion to dismiss on December 17, 2021, ECF No. 42. Defendants filed their response in opposition to the motion for preliminary injunction on December 17, 2021, ECF No. 43. Plaintiffs filed their reply in support of the motion for preliminary injunction on January 5, 2022. ECF No. 51.

The parties zealously litigated this case at every stage before this Court, culminating in multiple hearings on Plaintiffs' motion for preliminary injunction and extensive briefing at the voluntary dismissal stage after Defendants finally changed their unconstitutional policy to remove those aspects that previously permitted unbridled discretion and viewpoint-based discrimination in violation of the First Amendment. ECF Nos. 235–37.

After a full round of briefing, this Court denied Defendant's motion to dismiss on January 3, 2023, ECF No. 47, and granted in part Plaintiffs' motion for

preliminary injunction, ECF No. 65. This Court ruled against Plaintiffs with respect to their First Amendment claim challenging the amicus brief policy—noting Plaintiffs had failed to carry their burden to prove they were substantially likely to succeed on the merits of this claim—but ruled in Plaintiffs' favor with respect to their First Amendment claim challenging the conflict-of-interest policy on providing expert testimony or legal consulting in litigation involving the State of Florida. *Id.*

Specifically, this Court found that the University of Florida imposed an unconstitutional prior restraint on faculty and staff who sought to testify as expert witnesses outside of their ordinary job duties. And in both this Court's order denying the motion to dismiss and this Court's order granting in part the motion for preliminary injunction, this Court rejected Defendants' arguments that this case had been mooted by Defendants' subsequent approval of Plaintiffs' outside activity requests and President Fuchs's "revision" to the policy at issue. Instead, this Court found that the "revised" policy of November 2021 retained the features that Plaintiffs originally challenged and continued to harm them in the same fundamental way as the original policy. *See* ECF No. 47 at 17.

On February 8, 2022, Defendants appealed this Court's Order granting in part Plaintiffs' motion for preliminary injunction. *See* ECF No. 70. While this case was on appeal, the parties continued to engage in discovery, *see* ECF No. 104, and filed

motions to extend discovery while they engaged in settlement discussions with a mediator, *see, e.g.*, ECF No. 94 and 98.

In December 2022, while Defendants' appeal was pending, Plaintiffs filed a motion for voluntary dismissal without prejudice. ECF No. 105. They indicated that Defendants had finally changed their conflicts policy to align with Plaintiffs' sought-after relief, and thus, Plaintiffs' claims were *now* moot. *Id*. at 6. This Court ordered Plaintiffs to file supplemental briefing as to why they should not first seek dismissal at the appellate level given the pending interlocutory appeal of this Court's preliminary injunction. ECF No. 106. For prudential reasons and for judicial economy, this Court decided to take Plaintiffs' motion for voluntary dismissal under advisement after the Eleventh Circuit resolved the pending appeal. ECF No. 111. Ultimately, Plaintiffs moved to dismiss the appeal as moot and the Eleventh Circuit granted the motion. *See* ECF No. 116.

Plaintiffs moved for attorneys' fees under 42 U.S.C. § 1988 and costs under Federal Rule of Civil Procedure 54(d)(1). ECF No. 119. This Court determined that Plaintiffs are prevailing parties within the meaning of Section 1988 because Plaintiff succeeded on their First Amendment claim and were therefore entitled to fees under Section 1988 and costs under Rule 54(d)(1). ECF No. 128. The parties were then ordered to brief the issue of the amount of fees this Court should award. *Id*.

II

This Court will first address the appropriate amount of attorneys' fees to be awarded to Plaintiff. The Eleventh Circuit has adopted the lodestar method to determine the reasonableness of an award of attorneys' fees. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). To determine a lodestar amount, a court must ascertain a reasonable hourly rate and multiply it by the number of hours an attorney reasonably expended on the litigation. *Id.* Where the time or fees claimed seem excessive, or there is a lack of support for the fees claimed, "the court may make the award on its own experience." *Id.* at 1303. The burden of establishing that the fee request is reasonable rests with the fee applicant, who must "submit evidence regarding the number of hours expended and the hourly rate claimed." *U.S. ex rel. Educ. Career Dev., Inc. v. Cent. Fla. Reg'l Workforce Dev. Bd., Inc.*, No. 6:04-CV-93, 2007 WL 1601747, at *3 (M.D. Fla. June 1, 2007). Evidence in support of the fee applicant's request requires "sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.

This Court begins with an analysis of the hourly rates Plaintiffs' attorneys seek. This Court then considers whether Plaintiffs' submissions demonstrate that the number of hours claimed are reasonable. Finally, this Court considers whether the results in the case warrant adjustment of the lodestar figure.

A. <u>Reasonable Hourly Rates</u>

A "reasonable hourly rate" is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Maner v. Linkan LLC*, 602 F. App'x 489, 493 (11th Cir. 2015) (quoting *Norman*, 836 F.2d at 1299). "The party seeking attorney's fees bears the burden of establishing that the requested hourly rate is in line with prevailing market rates." *Id.* In establishing a reasonable hourly rate, the court may "rely on its own expertise and where appropriate" and may also consider certain case-specific factors.[2] *Id.* Here, Gainesville represents the relevant legal market for purposes of

---

[2] "These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Maner*, 602 F. App'x at 492 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)).

This Court rejects Defendants' suggestion that Plaintiffs' failure to explicitly mention the *Johnson* factors in their initial brief precludes them (or this Court) from relying on them. Defendants note that this Court may, but is not required to, rely on the *Johnson* factors in determining whether a requested fee is reasonable. ECF No. 133 at 30. However, Defendants cite no authority for their conclusory statement that "[g]iven Plaintiffs' failure to rely on the *Johnson* factors, they may not be used to support the rates, hours, or fee award that Plaintiffs seek here." *Id*. Moreover, Plaintiffs address the *Johnson* factors in their reply brief, ECF No. 135 at 10–11, and Defendants did not ask to file a sur-reply to address the issue further. Accordingly, to the extent Defendants object to the fee award based on Plaintiffs' failure to explicitly address the *Johnson* factors, this objection is rejected.

this analysis. Plaintiffs seek the following hourly rates for its attorneys, law clerks, and paralegals:[3]

| Name | Firm | Years of Legal Experience | Hourly Rate |
|------|------|---------------------------|-------------|
| David O'Neil | Debevois & Plimpton | 20+ | $450 |
| Paul Donnelly | Donnelly & Gross | 30+ | $450 |
| Laura Gross | Donnelly & Gross | 30+ | $450 |
| Jung Yoon | Donnelly & Gross | 20+ | $375 |
| Morgan Davis | Debevois & Plimpton | 6+ | $350 |
| Alexandra Swain | Debevois & Plimpton | 5+ | $325 |
| Conor Flynn | Donnelly & Gross | 3+ | $325 |
| Jaime Freilich-Fried | Debevois & Plimpton | 3+ | $300 |
| Samuel Rosh | Debevois & Plimpton | 3+ | $300 |
| Soren Schwab | Debevois & Plimpton | 2+ | $250 |
| Katherine Witteman | Debevois & Plimpton | 2+ | $250 |
| Legal assistants | Debevois & Plimpton | | $75 |

---

[3] This Court created this chart based on the information attached to Plaintiffs' motion, ECF No. 131, and the affidavit in support of their motion, ECF No. 132.

Plaintiffs also submitted a declaration from their attorneys' fee expert, Archibald J. Thomas, III. ECF No. 131-3. Mr. Thomas's declaration opines that, based on his expertise, his review of the case, and the lawyers' billing records, the hourly rates that Plaintiffs seek are reasonable.

In turn, Defendants assert the claimed rates are too high when compared to a recent Florida Bar survey, which shows that two thirds of attorneys in North Florida charge $350 or less, a third charge more than $350, and only 12% charge more than $400. ECF No. 133 at 12. Defendants also assert Plaintiffs' rates should each be reduced by $100 to track the rates awarded almost ten years ago in another First Amendment case challenging a University of Florida policy, particularly given that Plaintiffs' attorneys are not self-described "First Amendment specialists." *Id*. at 14. Finally, Defendants critique Mr. Thomas's declaration, pointing out that his knowledge and experience is limited to labor and employment cases and the Middle District of Florida, where he practices. *Id*. at 15. Defendants have offered no expert of their own to rebut Mr. Thomas.

This Court finds Plaintiff's proposed rates to be reasonable. First, this Court takes into consideration Mr. O'Neil's and Mr. Donnelly's excellent reputations and abilities in determining a reasonable fee for their firms' legal services. *See Maner*, 602 F. App'x at 493. Second, caselaw from the Northern District of Florida—particularly from the Gainesville Division—generally supports Plaintiffs' proposed

rates. *See Sabal Trail Transmission, LLC v. 18.7 Acres of Land in Levy Cnty.*, 538 F. Supp. 3d 1243, 1260 (N.D. Fla. 2021) (Walker, C.J.) (approving hourly rates ranging from $275 to $450 for Gainesville case involving novel issues of national importance and complexity); *Brown v. Lawn Enf't Agency, Inc.*, 369 F. Supp. 3d 1224, 1227 n.1 (N.D. Fla. 2019) (Walker, C.J.) (concluding that hourly rate of $375 was appropriate midrange rate for Gainesville attorney with about 20 years' experience in a relatively straightforward FLSA case that was not particularly laborious, involved no extenuating time limitations, and the results obtained were relatively low); *Beta Upsilon Chi v. Machen*, Case No.: 1:07cv135-MW/GRJ, 2014 WL 4928902, *1 (N.D. Fla. Oct. 1, 2014) (Walker, C.J.) (approving rates ranging from $150 to $425 in First Amendment case challenging UF policy). Third, based on this Court's own knowledge and experience of the hourly rates charged by attorneys throughout Florida, the hourly rates that Plaintiffs seek are reasonable. *See Norman*, 836 F.2d at 1303 ("The court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees . . . .") (quoting *Campbell v. Green*, 112 F.2d 143 (5th Cir. 1940)). Finally, this Court finds Plaintiffs' expert's opinion that these hourly rates are reasonable to be credible.

This Court is unpersuaded by Defendants' arguments in opposition. For one, the Florida Bar survey that Defendants rely upon lumps all North Florida attorneys together, including survey respondents who practice across the Northern District of

Florida—not just Gainesville—*and* those who practice in some counties that are part of the Middle District of Florida. *See* The Florida Bar, Results of the 2022 Economics and Law Office Management Survey § 4D, at 58 (Oct. 2022), https://tinyurl.com/yv3bzjjs (listing counties comprising regions). Simply put, survey is not a reliable measure of reasonable rates in the relevant market.

In addition, Defendants' reliance on the *Beta Upsilon Chi* case as a cap on fees for this case is misplaced. *See* ECF No. 133 at 13. Defendants insist that Plaintiffs' counsel are entitled to substantially lower hourly rates than what the attorneys received in *Beta Upsilon Chi* because they are not "First Amendment specialists." But "specialization" is not some talismanic defense to a fee award when Plaintiffs' requested rates are reasonable in relation to fees charged today for similar work by lawyers of comparable skill and experience in the Gainesville market.

Moreover, Defendants' suggestion that this Court should cap Plaintiffs' rates at the amounts awarded in 2014 ignores the fact that those rates are almost ten years old. This is contrary to the Eleventh Circuit's directive that "the court should take into account the time value of money and the effect of inflation and generally award compensation at current rates rather than historic rates." *Norman*, 836 F.2d at 1302; *accord Anderson v. Surgery Ctr. of Cullman, Inc.*, No. 2:12-cv-00598, 2018 WL 8807149, at *9 (N.D. Ala. Aug. 27, 2018) (finding that a lodestar calculation based on current rates was appropriate). Indeed, capping Plaintiffs' rates for their work on

this complex constitutional challenge at the 2014 amounts awarded in *Beta Upsilon Chi* would make no sense when the Gainesville market supported a *midrange* hourly rate of $375 in 2019 for a relatively simple FLSA case. *Cf. Brown*, 369 F. Supp. 3d at 1227 n.1.

Finally, although this Court finds Plaintiffs' expert's opinion regarding the reasonableness of the claimed rates to be credible, this Court also understands Defendants' critiques of the basis for the opinion. Mr. Thomas's opinion is based on his lengthy experience practicing in the Middle District of Florida. However, he does not explain how this experience informs his opinion regarding reasonable hourly rates in the Gainesville market, or the Northern District of Florida more generally. Accordingly, this Court assigns little weight to Mr. Thomas's opinion. Nonetheless, this Court need not find Mr. Thomas's opinion persuasive to conclude that Plaintiffs' hourly rates are reasonable. This Court will not reduce Plaintiffs' requested hourly rates. Given Plaintiffs' attorneys experience, reputations, and admirable skill employed in litigating this case, Plaintiffs' requested rates are reasonable.

## B. Numbers of Hours Reasonably Expended

The next step in the computation of the lodestar is a determination of reasonable hours expended on the litigation. A fee applicant must set out the general subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." *Norman*, 836 F.2d at

1303. Excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed. *Id.* at 1301. A fee applicant must exercise billing judgment by excluding "excessive, redundant, or otherwise unnecessary [hours]." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Where a fee applicant does not exercise billing judgment, "courts are obligated to do it for them." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

When a request for attorneys' fees is unreasonably high, the court "may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut," but it cannot do both. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350–51 (11th Cir. 2008).[4] The Eleventh Circuit has "recognized that in cases 'where fee documentation is voluminous,' it will not be feasible to require a court to 'engage in such a precise [hour-by-hour] review.' " *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (quoting *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)) (finding 569.3 hours to be sufficiently voluminous that no hour-by-hour analysis was required). Accordingly, this Court will address each of Defendant's specific objections, performing an hour-by-hour analysis where "feasible" and an across-the-board cut where appropriate.

---

[4] To be clear, this Court may apply both an hour-by-hour reduction to calculate the lodestar and an across-the-board reduction *after* computing the lodestar to account for the results obtained in the litigation. *See Fiedler v. Anglin's Beach Café, LLC*, No. 15-60989, 2017 WL 1278632, at *3 (S.D. Fla. Apr. 3, 2017) (construing *Bivins*).

Plaintiffs' attorneys expended 1,438.1 hours litigating this case. ECF No. 131 at 17. Multiplied by these attorneys' reasonable hourly rates this yields a lodestar figure of $406,284.75. *Id*. at 18. This figure incorporates a voluntary 15% reduction in fees requested by Debevoise & Plimpton "in recognition of the number of lawyers representing Plaintiffs in this case." *Id*. at 17.

Defendants raise numerous specific objections to certain billing entries submitted by Plaintiffs. *See* ECF No. 133 at 6-31. In response, Plaintiffs offered to reduce their claimed hours to address many of these objections, resulting in a reduction of over $25,000 to the lodestar. This Court ordered Plaintiffs to file updated time sheets accounting for the reductions that Plaintiffs proposed and has now considered those reductions. After a careful review of the specific line items to which Defendants object and Plaintiffs' responses thereto, this Court will make the following reductions in calculating the lodestar figure.[5]

> i.    *Fees for Appellate Work*

Defendants object to 7.4 hours, totaling $3,230.00 in fees, associated with appellate work for which this Court is not authorized to award to Plaintiffs. ECF No. 133 at 22. Plaintiffs concede that the inclusion of these hours was an error and have agreed to omit them. *See* ECF No. 135 at 14 (noting that "[f]ees associated with

---

[5] Importantly, this Court is not expected to be a "green-eyeshade accountant" seeking to "achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Rather, this Court endeavors "to do rough justice" in calculating the reasonable fee award. *Id.*

work on Defendants' appeal to the Eleventh Circuit . . . [were] inadvertently included in Plaintiffs' submission"). This Court agrees as well. Accordingly, Plaintiffs' reasonable hours are reduced by 7.4 hours, as identified at ECF No. 133 at 22, for a total reduction of $3,230.00.

### ii.     Entries Relating to Professors Nunn and Reid

Defendants object to approximately 15.5 hours expended on "unsuccessful work," totaling approximately $5,910.00 in fees. *See* ECF No. 133 at 23. Plaintiffs have offered to reduce their fee request to eliminate these hours. *See* ECF No. 135 at 14. To the extent Plaintiffs agree this time is not compensable when calculating the lodestar, this Court agrees and will reduce Plaintiffs' total hours by 15.5 hours, totaling approximately $5,910.00 as set out in ECF No. 133 at 23.

### iii.     Unrelated Work

Defendants object to 25.8 hours, totaling $10,997.50 in fees, associated with what Defendants identify as work unrelated to this case. ECF No. 133 at 26–27. This includes 6.1 hours, totaling $2,332.50 in fees, for things like reviewing emails regarding filing a union grievance, replying to an email from a possible donor, reviewing court orders from other cases addressing statutory challenges not before this Court in this case, etc. *Id*. at 26. In addition, this time includes 19.7 hours, totaling $8,665.00 in fees, for reviewing press stories regarding the events surrounding this litigation. *Id*. at 27.

Plaintiffs agree to omit its requested fees associated with the 6.1 hours spent on so-called "unrelated" work, *see* ECF No. 140 at 3, but maintain that they are entitled to fees for the 19.7 hours spent reviewing press stories regarding this case, *id*. *See also* ECF No. 135 at 13. Specifically, Plaintiffs assert that time spent reviewing news articles regarding the University's decision-making and corresponding rationales in the early stages of this case was necessary, given the shifting explanations the University offered for its actions. *Id*. According to Plaintiffs, they relied on such press coverage to uncover evidence that they included in their opposition to the motion to dismiss and in support of their motion for preliminary injunction. *Id*.

This Court has examined the time entries associated with the review of press coverage that Defendants specifically identified. When properly documented, time spent reviewing press stories for party admissions of evidentiary value may be compensable. But an attorney could also spend a half hour every morning reading media coverage about a newsworthy case without gleaning any useful evidence or using that information in any meaningful way as part of their legal strategy.

Here, Plaintiffs' time entries are not specific enough to justify an award of fees. This Court is not accusing Plaintiffs' counsel of simply reviewing the news every morning and recording that perfunctory exercise as billed time. But Plaintiffs should have provided more detail for the time spent presumably gathering evidence

for use in the early stages of this case. Indeed, 17.9 hours of those Defendants identified are for time spent generally "reviewing national/state coverage for evidence and info for case," or "reviewing news articles and developing factual background," or "reviewing media coverage for possible admissions and arguments," etc. Plaintiffs come a little closer to providing sufficient detail justifying the reasonableness of billing time for reviewing media coverage "for MTD response points and strategy," and for "evidence and admissions related to Fuchs resignation announcement," but still, these time entries are not particular enough for this Court to assess whether the time recorded is compensable. Accordingly, the time Plaintiffs' attorneys spent reviewing media coverage will also be deducted from the lodestar, yielding a total reduction of 25.8 hours, totaling $10,997.50 in fees, associated with the time entries Defendants have identified as work unrelated to this case. ECF No. 133 at 26–27.

### iv.    Vague Time Entries

Defendants object to 36.1 hours, totaling $12,047.50 in fees, for time entries that do not provide sufficient detail in violation of Local Rule 54.1(C). *See* ECF No. 133 at 27–28. "A fee applicant bears the burden of sufficiently describing the tasks for which he or she seeks fees." *Hodges v. School Bd. of Orange Cty., Fla.*, No. 6:11-cv-135, 2014 WL 6455436, at *10 (M.D. Fla. Nov. 13, 2014). Here, Plaintiffs agreed to omit the time entries that Defendants specifically identified in their objections as

providing insufficient detail of the tasks completed. *See* ECF No. 140 at 3. Accordingly, this Court finds it is appropriate to deduct the 36.1 hours that Defendants have identified, totaling a reduction of $12,047.50 from the lodestar amount.

*v.*     *Non-Attorney Tasks*

Defendants object to approximately 4.1 hours, totaling $1,510.00 in fees, for time expended on non-attorney tasks such as preparing the civil cover sheet and filing papers with this Court. *See* ECF No. 133 at 29. Plaintiffs agree to deduct this time from their fee request. *See* ECF No. 140 at 3. This Court finds this reduction is appropriate and will omit 4.1 hours, totaling $1,510.00 in fees, for work performed on non-attorney tasks from the lodestar amount.

*vi.*     *"Rounding up to the nearest hour or half hour"*

Defendants object to all of the time that Mr. O'Neil billed and accuse him of rounding his time entries up to the nearest hour or half hour in violation of Local Rule 54.1(C). *See* ECF No. 133 at 24. Defendants seek to strike all of Mr. O'Neil's time, amounting to 99 hours and totaling $44,550.00 in fees.[6] Defendants point to the fact that Mr. O'Neil's time entries generally do not look like the other

---

[6] This Court calculated the total time and fee amount based on the revised timesheets filed in response to this Court's Order, ECF No. 139. *See* ECF No. 140-1. This Court notes that the revised timesheet includes 99 hours as opposed to the 103 hours for Mr. O'Neil's time that Plaintiffs previously requested.

18

timekeepers' entries—he recorded time to the nearest hour or half hour, as opposed to tenth-of-an-hour intervals in between the hour and half hour. And, as an example demonstrating that Mr. O'Neil was rounding up, Defendants describe one inconsistency among multiple timekeepers. Specifically, Mr. O'Neil billed an hour for corresponding with his team about next steps to amend the complaint and file the preliminary injunction motion. The only other timekeeper for the same day did not mention speaking or emailing with Mr. O'Neil in her time entry. *See* ECF No. 133 at 25. But this example does not demonstrate that Mr. O'Neil was rounding up (or, for that matter, rounding down)—instead, if this Court were to take the worst possible inference, this example suggests that Mr. O'Neil simply lied on his time sheet about the hour he says he spent corresponding with his team because no other timekeeper mentioned this correspondence.

In response, Plaintiffs argue that Mr. O'Neil in fact rounded *down* when recording his time in this case, in addition to writing off a significant amount of time that was not included in the fee request. *See* ECF No. 135 at 10; *see also* ECF No. 131-1 ¶ 18. Plaintiffs assert, and their billing records reflect, that Mr. O'Neil was the sole partner from Debevois & Plimpton who worked on this case and that he personally drafted the written submissions and prepared and presented oral argument at the two hearings on Plaintiffs' motion for preliminary injunction. *Id*.; *see also* ECF No. 140-1. Mr. O'Neil also submitted a declaration attesting that the lawyers at

his firm (including himself) wrote off "nearly 1,200 hours of work performed," and "applied a 15% discount to the remaining fees . . . ." *See* ECF No. 131-1 ¶ 18. Of course, Mr. O'Neil's evidence that over 1,000 hours were written off could explain the inconsistency between multiple timekeepers that Defendants cite in support of their theory that Mr. O'Neil lacks candor with this Court.

Accordingly, absent any factual basis to support the inference that an officer of the court has repeatedly lied on his time sheets and submitted fraudulent records under the threat of myriad sanctions, this Court refuses to infer that Mr. O'Neil did so. That is not to say that one could never demonstrate that a timekeeper is improperly rounding up based on the submitted timesheets. Defendants could have pointed to consistent entries from various timekeepers that contradict another timekeeper who billed irregular times for the exact same activities or meetings. But here, the evidence submitted by the parties supports the reasonable inference that Mr. O'Neil—an officer of the court, just like Mr. Bartolomucci—under-reported the time he worked on this case, consistent with his declaration. Defendants' suggestion to the contrary shocks the conscience and severely undermines Defense counsel's credibility before this Court.

This Court has also reviewed Mr. O'Neil's time entries and finds the requested amount—less than 100 hours for substantial written submissions and stellar oral argument—represents a reasonable amount to bill for the work performed. To

blithely accuse someone of fraudulent billing is no small thing. Here, Defendants rely on supposition to insinuate that Mr. O'Neil has intentionally misrepresented the time he spent working on this case to obtain a higher fee award. Absent a factual basis to support Defendants' misguided attempt to accuse Mr. O'Neil of fraudulent billing and have this Court infer the worst about a fellow officer of the court, no deduction will be made to Plaintiffs' lodestar amount based on this objection.

### vii.    *Overstaffing and overbilling*

Defendants generally object that Plaintiffs overstaffed and overbilled this case, citing the fact that four law partners and seven associates from two different law firms participated in this litigation. *See* ECF No. 133 at 16. Defendants offer no specific explanation as to which billing entries were unnecessary or what aspect of this case was overstaffed or overbilled, aside from comparing this case to a 2014 case that also involved a First Amendment challenge against the University of Florida and requesting that any fee award in this case be reduced by $150,000. *Id*. at 16–18.

"[A] party opposing a fee application should submit objections and proof that are specific and reasonably precise, and . . . a failure to do so is generally fatal." *Hodges*, 2014 WL 6455436, at *9; *accord In re Home Depot Inc.*, 931 F.3d 1065, 1089 (11th Cir. 2019) ("The level of specificity required by district courts is proportional to the specificity of the fee opponent's objections."). Here, Defendants

generally object to overstaffing. But "there is nothing inherently unreasonable about a client having multiple attorneys." *ACLU of Ga.*, 168 F.3d at 433 (citation omitted). Instead, "a fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." *Id*. This Court's review of Plaintiffs' revised billing entries after accounting for the reduction in total hours and requested fees for the amounts explained *supra* does not reveal any obviously "unnecessary" or overstaffed tasks. Moreover, in making their fee request, Plaintiffs' attorneys with Debevois & Plimpton exercised billing judgment and offered to reduce their requested fee award by 15% in recognition of the number of attorneys who worked on this case. This Court finds this is an appropriate use of billing judgment. Accordingly, no further deduction will be made to Plaintiff's lodestar amount based on this objection.

### viii.   Limit Fee Award to Time Spent on Preliminary Injunction

Defendants assert Plaintiffs' fee award should be limited to time spent on the preliminary-injunction stage of this case. ECF No. 133 at 20. They compare this case to *Wyner v. Struhs*, 179 F. App'x 566 (11th Cir. 2006), *rev'd on other grounds sub nom. Sole v. Wyner*, 551 U.S. 74 (2007), where the Eleventh Circuit affirmed an award of attorneys' fees limited to work performed on a successful motion for

preliminary injunction. In that case, the district court granted a motion for preliminary injunction as to the plaintiff's as-applied challenge to a state park's interference with a planned protest involving public nudity. Ultimately, however, the plaintiff's facial challenge failed at summary judgment. Nonetheless, the district court awarded attorneys' fees for the work performed on the successful motion for preliminary injunction. But *Wyner* offers no help to Defendants because it involves a case where the plaintiff ultimately lost on the merits and fees should have never been awarded. *See Sole*, 551 U.S. at 83. Here, this Court has already determined Plaintiffs are prevailing parties and they ultimately succeeded in having the challenged policy officially amended to cure its constitutional defect.

In support of this objection, Defendants also cite *ACLU of Fla., Inc. (Greater Tampa Chap.) v. Polk Cnty.*, No. 8:05CV02266, 2006 WL 2147716, *1 (M.D. Fla. July 28, 2006). In that case, the parties reached a stipulated order permitting the plaintiffs to erect public displays on the defendant's property during the 2005 Christmas season. *Id*. at *3. But the district judge limited the plaintiffs' fee award to those fees incurred for obtaining the temporary restraining order, citing *Hensley* as the basis for limiting the fee award in this regard. Thus, the district court simply reduced the fee award based on the results obtained, consistent with *Hensley*. Accordingly, this Court views this objection as an additional argument to reduce the

lodestar amount based on the results obtained, which this Court will address further below.

### ix.    *Remaining Objections*

Defendant's remaining objections rehash many arguments that this Court has previously rejected. Specifically, Defendants object to an award of any fees because (1) Plaintiffs had no standing, (2) their claims were unripe and moot, (3) their preliminary injunction motion was "unnecessary," (4) their success was technical or *de minimis*, and (5) they have unclean hands.

This Court does not mean to minimize the importance of the jurisdictional and justiciability issues Defendants raise. But this Court has already addressed these arguments at length in prior orders. This Court recognizes that Defendants may be repeating many of the same arguments they have made throughout this case to preserve the record on appeal, but this Court need not rehash its prior, lengthy analysis here. Instead, this Court incorporates by reference its prior analysis as set out below.

As to standing, ripeness, and mootness, this Court addressed Defendants' arguments at length in its amended order denying Defendants' motion to dismiss. *See* ECF No. 47 at 1–17. This Court again addressed these arguments in its order granting in part the motion for preliminary injunction. *See* ECF No. 65 at 25–37. And this Court rejected Defendants' arguments in its order granting Plaintiffs'

motion to determine entitlement to fees and costs. *See* ECF No. 128 at 6–7. No reviewing court needs this Court to repeat the same analysis that this Court has already engaged in multiple prior orders. Accordingly, this Court again incorporates by reference its analysis rejecting Defendants' arguments that Plaintiffs lacked standing and that their claims were both unripe and moot. *See* ECF No. 47 at 1–17; ECF No. 65 at 25–37; ECF No. 128 at 6–7. Similarly, Defendants' argument that the preliminary injunction motion was "unnecessary," is simply an extension of their justiciability arguments concerning the ripeness of Plaintiffs' request for a preliminary injunction. *See* ECF No. 133 at 9–10. This Court previously rejected Defendants' contention that because Plaintiffs had not made any new outside activity requests before they moved for a preliminary injunction, their motion was not yet ripe. *See* ECF No. 65 at 33–34. Again, this Court incorporates its prior reasoning by reference and rejects Defendants' assertion that Plaintiffs' motion was premature and "unduly litigious."

This Court also rejects Defendants' argument that Plaintiffs' success was technical or *de minimis*. Defendants minimize the relief that Plaintiffs received in this case. They suggest that Plaintiffs' preliminary injunction "was an academic matter" because they made no outside activity requests while the preliminary injunction was in effect. ECF No. 133 at 7. They also argue that Plaintiffs' success was "very limited" because Plaintiffs Reid and Nunn received no relief, and the

25

remaining plaintiffs only achieved a preliminary injunction. *Id*. In addition, Defendants assert Plaintiffs' success at the preliminary-injunction stage carries little legal significance because UF voluntarily changed the challenged policy "[f]or reasons unrelated to this lawsuit." *Id*. at 8. And, finally, Defendants assert, in conclusory fashion, that Plaintiffs commenced this case to redress a private injury and that this case did not serve a public purpose. *Id*.

With respect to whether Plaintiffs received meaningful relief, Plaintiffs point out that this Court already addressed the matter in its Order finding that Plaintiffs are prevailing parties in this case. *See* ECF No. 135 at 6 (quoting ECF No. 128 at 15). Indeed, Defendants have repeated many of the same arguments this Court rejected in granting Plaintiffs' motion to determine entitlement to attorneys' fees. *See* ECF No. 128 at 16 (noting that "Defendants finally amended their policy in October 2022—nearly nine months after the preliminary injunction went into effect—to prohibit *any* consideration of viewpoint or content of a UF employee's speech when determining whether a conflict of interest exists, thus permanently providing Plaintiffs the very relief they sought from the outset of this case"). Despite repackaging these arguments in opposition to Plaintiffs' request to determine a reasonable fee amount, this Court is not persuaded. *See also William v. City of Atlanta*, 2018 WL 2284374, at *10 (N.D. Ga. Mar. 30, 2018) (rejecting argument that plaintiffs' relief in First Amendment suit was *de minimis* where plaintiffs

received injunctive relief and small awards of compensatory damage, the injunctive relief benefitted other artists and members of the community subject to the same rules, the plaintiffs sought to vindicate core civil rights regarding the freedom of speech, and the action served a public purpose because it was "brought by a group of some of the City's prominent muralists to protect the City's existing murals and remove unconstitutional hurdles to future artistic creation within the City").

Here, like in *Williams*, Plaintiffs received enduring relief in the form of their preliminary injunction, followed by a substantial rule change that eliminated the constitutional issue that prompted Plaintiffs to bring this case to vindicate their First Amendment rights in the first place. Moreover, the injunction and subsequent rule change benefitted not only Plaintiffs, but also the entire community of faculty at the University of Florida by eliminating an unconstitutional hurdle to engaging in future protected speech involving their expertise. In this way, the case undoubtedly served a public purpose. *See, e.g.*, *Fox*, 563 U.S. at 833 ("When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves as a private attorney general, vindicating policy that Congress considered of the highest priority.") (internal quotation marks omitted); *Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987) ("The affirmation of constitutional principles produces an undoubted public benefit that courts must consider in awarding attorneys' fees under Section 1988."); *Dowdell v. City of Apopka*, 698 F.2d 1181, 1191 (11th Cir. 1983)

("While it is the litigant who has the grievance, it is the litigator who is the 'private attorney' furthering the 'general' interest. Attorneys' fees and expenses are awarded . . . to *reward* attorneys whose service has benefited the public interest.").

Lastly, Defendants assert this Court should not award any fees because Plaintiffs have "unclean hands." ECF No. 133 at 10. Defendants argue that because Professors Austin, McDonald, Smith, and Goldhagen violated the unconstitutional conflicts policy, they should not receive any attorneys' fees for vindicating their constitutional claims. *Id*. This Court already rejected this argument to the extent Defendants claimed it should preclude preliminary injunctive relief. *See* ECF No. 65 at 6 n.15, 30 n.30.

The cases Defendants cite to support their contention that Plaintiffs' actions preclude a fee award are both factually and legally distinguishable and offer no help for Defendants' continued efforts to avoid responsibility in this case. For example, Defendant compare this case to *Oguachuba v. I.N.S.*, 706 F.2d 93 (2d Cir. 1983), a case in which a Nigerian citizen "violated American law innumerous ways" for four years, "hoping to cause a technical error by the INS which would allow him to remain in this country." *Id*. at 99. In affirming the denial of Mr. Oguachuba's fee request associated with his successful habeas petition, the Second Circuit noted that "he would not have been incarcerated in the first place but for his notorious and repeated violations of United States immigration law." *Id*. Simply put, "[i]t is plainly

inequitable to allow Oguachuba to flout American law in this fashion and then to require the public fisc to support his legal bills to terminate his detention through a quirk in American law when, at any point, he could have ended that detention himself." *Id*. Here, however, nothing Plaintiffs did or did not do would have prevented them from being subject to the unconstitutional policy in place before and after they filed their claims in this case.

Indeed, Defendants fail to identify any case holding that the "unclean hands" doctrine bars attorney fees for a prevailing party in a First Amendment case involving alleged violations of the challenged government policy. Instead, in addition to *Oguachuba*, Defendants cite a case where a plaintiff's fee petition in a § 1983 Fourth Amendment challenge was rejected because she lied on the witness stand, *Ciulla v. Rigny*, 89 F. Supp. 2d 97 (D. Mass. 2000); a case involving a trademark dispute between two private parties wherein the plaintiff admitted that its mark was never registered, *Urecal Corp. v. Masters*, 413 F. Supp. 873 (N.D. Ill. 1976); and a case denying fees under the Equal Access to Justice Act because the Government's position regarding a contempt order was found to be substantially justified, *U.S. Comm. Futures Trading Comm'n v. S. Trust Metals, Inc.*, No. 14-CV-22739-KING, 2020 WL 466471, *1 (S.D. Fla. Jul. 9, 2020). None of these cases persuade this Court that Plaintiffs should be precluded from receiving attorneys' fees because they engaged in outside activity prior to, contemporaneous with, or after UF

denied their requests to do so under Defendants' unconstitutional policy Accordingly, this Court rejects Defendants' objection that Plaintiffs should get no fees based on "unclean hands."

## C.  Adjustment of Lodestar Due to Results Obtained

"[T]here is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Ela v. Destefano*, 869 F.3d 1198, 1203 (11th Cir. 2017) (internal quotation marks omitted). "If the lodestar is reasonable, a downward adjustment is merited only if the prevailing party was partially successful in its efforts." *Id.* (internal quotation marks omitted). "A district court must determine what counts as partial success on a case-by-case basis." *Id.*

"[I]n complex civil rights litigation involving numerous challenges to institutional practices or conditions," "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *See Hensley*, 461 U.S. at 436–40. But, "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. *"*Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours." *Norman*, 836 F.2d at 1302.

30

Here, Defendants argued for a one-third reduction in fees *and* a line-by-line reduction of fees for "unsuccessful work," ECF No. 133 at 23–24. Having already eliminated the fees based on Defendants' identified time entries related to Professors Reid and Nunn, this Court declines to make a further across-the-board reduction for results obtained. Indeed, to do so would result in an improper double reduction when this Court has already excluded "unsuccessful work" from the lodestar calculation.

Defendants also ask for a 75% to 95% reduction "for all of the reasons stated in [their] objections." *Id*. at 29–30. To support this request, Defendants assert that it serves to prevent Plaintiffs' counsel from receiving a "windfall" and will "accomplish rough justice." *Id*. at 30. Defendants also cite cases that affirmed or upheld similar across-the-board reductions involving limited success and excessive billing. But this Court, again, has already excluded fees related to "unsuccessful work," vague time entries, and unnecessary billing. This Court will not now apply a double reduction based on the same objections that this Court sustained in calculating the lodestar.

Moreover, this Court finds that Plaintiffs' success on its First Amendment claim is significant. "Congress has determined that 'the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). This Court finds Plaintiffs'

success on their First Amendment claim imparted a substantial public benefit by having this Court enter an injunction prohibiting Defendants from enforcing its unconstitutional conflicts policy. Said otherwise, Plaintiffs' victory on its First Amendment claim prevented Defendants from continuing to censor its employees' free speech in violation of the First Amendment until Defendants voluntarily amended their policy to eliminate its unconstitutional aspects.

In light of the forgoing analysis, the Court awards Plaintiff a total of **$372,219.75** in reasonable attorneys' fees, calculated as follows: ($313,934.75[7] for attorneys with Debevois & Plimpton + $92,350.00 for attorneys with Donnelly + Gross) - $25,400.00[8] in combined fees for stipulated reductions - $8,665.00 in combined fees for time spent reviewing news stories = $372,219.75 in total fees.

---

[7] This includes a 15% reduction to account for the number of attorneys who worked on this case.

[8] This Court's analysis in calculating the lodestar amount included a reduction of approximately $25,030.00 for the amounts Plaintiffs agreed to exclude—not $25,400.00, as proposed by Plaintiffs. This is explained by the fact that Defendants objected to several "portions" of billed time entries without specifying how much the "portion" represented for a given entry. Thus, this Court's estimates regarding these "portions" likely differ from Plaintiffs' estimates in proposing their own reductions in response to Defendants' objections. Nonetheless, this Court reiterates that it is not expected to be a "green-eyeshade accountant" seeking to "achieve auditing perfection." *Fox*, 563 U.S. at 838. Accordingly, in endeavoring to do "rough justice," this Court applies Plaintiffs' proposed reduction—which is greater than this Court's approximate sum—to the lodestar amount and reduces the total reasonable fees by $25,400.00 for all the reasons this Court explained above.

III

Plaintiffs seek $286.54 in litigation expenses—namely, for a public records request to the University of Florida. ECF No. 131 at 18. Plaintiffs submitted a copy of their invoice detailing the claimed expenses, the cancelled check associated with the expenses, and an attorney declaration attesting (albeit, in conclusory fashion) that this public records request was necessary for the successful prosecution of Plaintiffs' case. ECF No. 132-2; ECF No. 132 ¶ 16.

Defendants object to these expenses because Plaintiffs have not explained the relevance of their public records request, what records they received, or how the records request was reasonably necessary for the successful prosecution of their case. ECF No. 133 at 31. Plaintiffs assert, however, that "the public records request was also necessary to develop the factual record in this case, and therefore the claimed legal expenses are compensable." ECF No. 135 at 13. Plaintiffs offer no other basis to support their argument that this expense was reasonably necessary for the successful prosecution of this case.

"[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation or as an aspect of settlement of the case may be taxed as costs under section 1988." *Dowdell*, 698 F.2d at 1192. Reasonable litigation expenses may include public records requests. *Booher v. Marion Cnty.*, Case No.: 5:07-cv-282-Oc-

10GRJ, 2010 WL 11623534, at *9 (M.D. Fla. Sep. 14, 2020) (Hodges, J.) (citations omitted). While this Court agrees with the esteemed Judge Hodges—one of the best district judges Florida's ever had—that public records request expenses *may* be compensable, Plaintiffs must still explain why the expenses were reasonably necessary. But here, Plaintiffs rely only on a conclusory assertion in support of their request.[9] Accordingly, this Court agrees with Defendants and will not award Plaintiffs the requested $286.54 in litigation expenses based on this public records request.

IV

For these reasons, it is **ORDERED:**

1. Plaintiffs' Motion for Determination of Amount of Reasonable Attorneys' Fees and Costs, ECF No. 131, is **GRANTED in part** and **DENIED in part.**

2. Plaintiffs are entitled to **$372,219.75** in attorneys' fees.

3. Plaintiffs' request for $286.54 in litigation expenses is **DENIED**.

---

[9] Arguably, the materials Plaintiffs submitted in support of this request might satisfy Plaintiffs' burden. One could have argued that the invoice for the records request speaks for itself—Plaintiffs requested an email inbox search of three different UF employees for a specified time frame involving five key terms ("Dan Smith," "Michael McDonald," "Sharon Austin," "expert" and "testimony"). *See* ECF No. 132-2 at 2. Thus, Plaintiffs were searching for emails in which three of the Plaintiffs were mentioned or there was mention of expert testimony. *See id.* ("In subject or body of emails, search for: 'Dan Smith' OR 'Michael McDonald' OR 'Sharon Austin' OR (expert near(10) testimony)"). And Defendants identify the inboxes to be searched as belonging to employees in UF's community relations or public relations departments. ECF No. 133 at 31. But Plaintiffs did not make this argument and this Court will not make it for them to justify an award of litigation expenses based on a barebones request.

4. Without objection[10] from Defendants, Plaintiffs are entitled to $**1,575.45** in costs. *See* ECF No. 121. Accordingly, Plaintiff's total judgment amount is **$373,795.20**.

5. The Clerk shall enter a fee and cost judgment stating, "Plaintiffs are entitled to judgment against Defendants in the amount of **$372,219.75** in attorneys' fees and $**1,575.45** in costs, for a total judgment amount of **$373,795.20**, for which sum let execution issue."

6. The Clerk shall close the file.

**SO ORDERED on November 9, 2023.**

**s/Mark E. Walker**
**Chief United States District Judge**

---

[10] "Defendants do not object to Plaintiffs' bill of costs, Doc. [121], assuming fees are awarded." ECF No. 133 at 31 n.7.